UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONVERGEN ENERGY LLC, L'ANSE WARDEN ELECTRIC COMPANY, LLC, EUROENERGY BIOGAS LATVIA LIMITED, and LIBRA CAPITAL US, INC. | Civil Action No. **1:20-cv-03746 (LJL)** |
| Plaintiffs, | |
| -against- | |
| STEVEN J. BROOKS, NIANTICVISTA ENERGY LLC, GREGORY MERLE, RIVERVIEW ENERGY CORPORATION, DANIEL ESCANDON GARCIA, RAMON URIARTE INCHAUSTI, CHIPPER INVESTMENT SCR, SA, URINCHA SL, THEODORE JOHN HANSEN, BRIAN R. MIKKELSON, and CONVERGEN ENERGY WI, LLC, | |
| Defendants. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

SEIDEN LAW GROUP LLP
469 Seventh Avenue, Suite 502
New York, New York 10018
(212) 337-3502
Mstolper@seidenlegal.com

## PRELIMINARY STATEMENT

Plaintiffs respectfully submit this Memorandum of Law in support of their application for a temporary restraining order ("**TRO**"), preliminary injunction and expedited discovery against Defendants. As demonstrated herein and in the accompanying declaration,[1] Plaintiffs urgently require the aid of this Court to recover their trade secrets from Defendants' theft and to prevent further irreparable harm. Specifically, Plaintiffs seek emergency relief to: (i) cut off Defendants' unlawful and unauthorized access to Plaintiffs' emails and other electronic stored files; (ii) ward off a cyberattack by unknown hackers; (iii) obtain administrator access to certain Plaintiffs' own files, which currently Defendants unlawfully control; and (iv) recover computers and cellphones in the possession of certain defendants that contain Plaintiffs' trade secrets and other proprietary information.

## ARGUMENT

### I.      The Relevant Standard

Injunctive relief under Rule 65 of the Federal Rules of Civil Procedure is appropriate where the party seeking the injunction shows "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd*, 598 F.3d 30, 35 (2d Cir. 2010) (*quoting Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)). Additionally, injunctions are typically warranted where the balance of equities tips in the moving party's favor and where an injunction is in the public interest. *See Marsh*

---

[1] Also submitted herewith in support of the motion is the declaration of Phaedra Chrousos ("**Chrousos Decl**."). All facts pertinent to this motion are set forth in this declaration and are incorporated here by reference.

*USA Inc. v. Schuhriemen*, 183 F. Supp. 3d 529, 532 (S.D.N.Y. 2016), amended, No. 16CIV. 2998, 2016 WL 2731588 (S.D.N.Y. May 3, 2016). Under the Defend Trade Secrets Act, an injunction may be obtained "to prevent any actual or threatened misappropriation . . . on such terms as the court deems reasonable . . . if determined appropriate by the court, requiring affirmative actions to be taken to protect the trade secret." 18 U.S.C § 1836(b)(3)(A)(i) - 18 U.S.C § 1836(b)(3)(A)(ii).

For the reasons set forth below, Plaintiffs have satisfied these requirements, plus those required for relief under the DTSA, and should be granted a TRO and preliminary injunction to prevent Defendants from continuing to remain in possession of the trade secrets via their control of Plaintiffs' Office 365 accounts and devices.

## II.   **Plaintiffs' Irreparable Harm Absent Emergency Relief**

Plaintiffs will continue to suffer irreparable harm if this Court does not grant injunctive relief. Courts in this Circuit have long acknowledged that "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it were not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be granted." *Payment All. Int'l Inc. v. Ferreira*, 530 F. Supp. 2d 477, 480 (S.D.N.Y. 2007) (citation omitted). To satisfy this requirement, Plaintiffs must show that, in the absence of an injunction, they will suffer "'an injury that is neither remote nor speculative, but actual and imminent,' and one that cannot be redressed through a monetary award." *Id.* (*quoting Grand River Enter. Six Nations, Ltd v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)). Appropriately-tailored injunctions can be useful to protect plaintiffs from the effects of misappropriated trade secrets. See *generally Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 119 (2d Cir. 2009). Here, injunctive relief is necessary to obtain the return of and prevent the unlawful use of Plaintiffs' files, including their Office 365 accounts containing trade secrets. Relief is also needed to allow Plaintiffs to block

future cyberattacks and assess damage from the recent email hacks. Without injunctive relief, Plaintiffs will continue to be exposed and unprotected against an ongoing cyberattack.

In addition, Plaintiffs' emails and data contain the confidential roadmap upon which their businesses operate. These trade secrets do not only include client contracts, market analysis, potential transactions, investor lists, and strategic discussions, but also unique methods of optimally operating an array of energy assets, a unique fuel mix, and sophisticated legal agreements and work product. *See KCG Holdings, Inc. v. Khandekar*, No. 17-CV-3533 (AJN), 2020 WL 1189302, at *16 (S.D.N.Y. Mar. 12, 2020) (finding a presumption of irreparable harm with regard to a trade secret "is particularly appropriate when information at risk of disclosure is highly technical or can be used only by a few specialized businesses."). This information is the culmination of more than a decade's work and millions of dollars of investment. *See, e.g., Bancorp Servs., LLC v. Am. Gen. Life Ins. Co.*, No. 14-CV-9687 (VEC), 2016 WL 4916969, at *11 (S.D.N.Y. Feb. 11, 2016) (plaintiff demonstrated information was a trade secret upon showing that, among other things plaintiff  "spent five years and $10 million to develop the information").

Plaintiffs required employees to sign a confidentiality agreement and abide by and employee handbook that took pains to describe the care that must be taken with confidential information. Under the confidentiality agreements, Defendants Steven J. Brooks, Theodore John Hansen and Brian R. Mikkelson (collectively, the "**Defendant Insiders**") agreed that unlawful disclosure would result in "substantial damage which will be difficult to compute" and that each "consents and agrees" to an injunction in the event of a breach. *See N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 49 (2d Cir. 1999) (finding that defendant's acknowledgment in his employment agreement that a breach of confidentiality would cause "irreparable injury" weighs in favor of finding irreparable injury to plaintiff).

4

Since the defendants are in possession of all Convergen Latvia emails and whatever they continue to maintain on their computers and cellphones that they failed to return to Plaintiffs, it is not an exaggeration that they have all of the information upon which Plaintiffs' businesses and their competitive edge are based. These trade secrets would be extremely valuable in the hands of competitors, but its cost of dissemination to Plaintiffs would be incalculable. *FMC Corp. v. Taiwan Tainan Giant Indus. Co., Ltd.*, 730 F.2d 61, 63 (2d Cir. 1984) ("[I]t is clear that the loss of trade secrets cannot be measured in money damages.... A trade secret once lost is, of course, lost forever."). Plaintiffs do not need to imagine scenarios where bidders would be privy to all internal deliberations concerning assets, proven business models could be adapted to competing energy facilities, and competitors could jump ahead of Plaintiffs in proposed transactions. This is largely what has already occurred in the fraudulent pellet plant transaction. The parade of horribles is endless and the damages would be incalculable. Thus, monetary damages are not an adequate remedy.

"A rebuttable presumption of irreparable harm might be warranted in cases where there is a danger that, unless enjoined, a misappropriator of trade secrets will disseminate those secrets to a wider audience or otherwise irreparably impair the value of those secrets." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d at 118; *See Int'l Bus. Machs. Corp. v. Papermaster*, No. 08-cv-9078, 2008 WL 4974508, at * 7 (S.D.N.Y. Nov. 21, 2008) ("Courts routinely have noted that it is very difficult to calculate the monetary damages that would successfully redress the loss associated with trade secret misappropriation."). Here the misappropriators do not have the resources to make use of the trade secrets without disclosing them to third party investors or partners. In fact, the Defendant Insiders have done just that to procure the other defendants as investors in the pellet plant. Therefore, armed with Plaintiffs' trade secrets, there is an immediate

5

danger that these corporate moles will go ahead and make unlawful disclosures to similarly unscrupulous or unsuspecting third parties.

**III.**     <u>**Plaintiffs Are Likely to Succeed on The Merits of Their Claims**</u>

To obtain the injunctive relief that it seeks, Plaintiffs need only demonstrate that they are likely to succeed on one of their claims. *See Payment All.*, 530 F. Supp. 2d at 483. Based on the facts set forth in the accompanying declaration and alleged in the complaint, Plaintiffs have far exceeded this burden.

The Defend Trade Secrets Act of 2016 ("**DTSA**") provides a private cause of action to the "owner of a trade secret that is misappropriated." 18 U.S.C. § 1836(b)(1).[2] Trade secrets are defined in the DTSA as "all forms and types" of information that "derive[] independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).

New York law defines trade secrets very similarly as any "compilation of information which is used in one's business, and which gives [the owner] the opportunity to obtain an advantage over competitors who do not know or use it." *Estee Lauder Cos. v. Batra*, 430 F. Supp. 2d 158, 175 (S.D.N.Y. 2006) (quoting RESTATEMENT (FIRST) OF TORTS § 757, cmt. b (1939)).  Various factors determine whether information is a trade secret including, "(1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in

---

[2]     Due to COVID-19, certain forms of relief under the DTSA currently are not available and will be revisited as soon as restrictions are lifted.

developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." *Id*. "The most important consideration remains whether the information was secret." *Medtech Prod. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 787 (S.D.N.Y. 2008) (*quoting Payment Alliance Int'l, Inc. v. Ferreira*, 530 F. Supp. 2d 477, 481 (S.D.N.Y. 2007), *quoting Lehman v. Dow Jones & Co.*, 783 F.2d 285, 298 (2d Cir.1986)).

Under the DTSA, a defendant has misappropriated a trade secret by "(1) acquiring the trade secret by improper means, or (2) disclosing or using the trade secret without consent." *ExpertConnect, L.L.C. v. Fowler*, 2019 WL 3004161, at *6 (S.D.N.Y. July 10, 2019). "Improper means includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6)(a). Under New York law, to succeed on a claim for the misappropriation of trade secrets "a party must demonstrate: (1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *Medtech Prod. Inc.* at 787; *See ExpertConnect, L.L.C.,* 2019 WL 3004161, at *7 (noting the requirements for misappropriation under New York common law and the DTSA are similar).

As set forth in the Chrousos Declaration, Defendants have misappropriated Plaintiffs' trade secrets and other proprietary information in two ways. First, Defendants took emails and electronic files of Convergen entities as part of the fraudulent transaction. As alleged in the complaint, it is believed that Defendants (at least the Defendant Insiders) have accessed those files since the January 31, 2020 closing. Second, the Defendant Insiders have failed to return their company issued computers and cellphones, all believed to contain Plaintiffs' trade secrets and proprietary information. The information stored on the Office 365 accounts is password-

protected, not accessible outside the business, covered by confidentiality agreements, and took over a decade and millions of dollars to develop. *See ExpertConnect, L.L.C.*, 2019 WL 3004161, at *4 (finding that under the DTSA, a password and an NDA were reasonable steps to protect trade secrets and that storage on a secure server demonstrated their value as a trade secret). These trade secrets do not only include client contracts, market analysis, potential transactions, investor lists, and strategic discussions, but also unique methods of optimally operating an array of energy assets, a unique fuel mix, and sophisticated legal agreements and work product. Disclosure of these unique methods would undercut Plaintiffs' competitive edge. *See e.g. ExpertConnect, L.L.C.*, 2019 WL 3004161, at *5. Other suspected misappropriated files include company financials and accounts, spreadsheets, presentations, closing documents for numerous transactions, monthly reports, investor lists, and other information normally afforded to senior executives of an international conglomerate.

In the instant action, Plaintiffs are highly likely to succeed in showing that Defendants have misappropriated Plaintiffs' trade secrets in violation of their employment agreements and agreements to maintain confidentiality, engaged in outright theft of information, and accessed Plaintiffs' trade secrets without authorization. Complaint at ¶102-08; *See ExpertConnect, L.L.C.*, 2019 WL 3004161, at *6 (finding that defendants misappropriated trade secrets when defendants acquired the trade secrets through improper means, specifically by breaching employment agreements and taking the trade secrets "for purposes unrelated to their employment").

## IV.    The Balance of the Equities Weighs Heavily In Favor of Plaintiffs

The balance of equities and the public interest favors entering an order that would mandate the immediate return of Plaintiffs' misappropriated material. Defendants have no legitimate or lawful interest in, or claim to, Plaintiffs' devices or Office 365 accounts that contain all of their

emails as well as their data. On the contrary, the Defendant Insiders have breached their employment agreements and duties of loyalty by misappropriating Plaintiffs' files. Significantly, dissemination of the stolen trade secrets will have a significant detrimental impact on Plaintiffs and likely damage its ability to compete effectively as it could by leveraging the trade secrets it spent over a decade to develop. *See Juergensen Def Corp. v. Carleton Techs., Inc.*, No. 08-CV-959A, 2010 WL 2671339 (W.D.N.Y. June 21, 2010) (finding that balance of equities and public interest favored injunction where disclosure of trade secrets would ruin plaintiffs and threaten their "entire corporate mission"). In contrast, an injunction would have minimal if any impact on Defendants because it would simply require them to turn over what should not have been in their possession in the first place.

## V.      Plaintiffs Should Be Granted Leave to Take Expedited Discovery

While Federal Rule of Civil Procedure 34 generally provides that a party upon whom a document request is served must respond within thirty days, the rule specifically permits that "[a] shorter … time may be directed by the court." Fed. R. Civ. P. 34(b). "In order to be entitled to expedited discovery, '… the plaintiff must demonstrate (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.'" *Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs. Ltd.*, No. 94 CIV. 5620 (JFK), 1994 WL 719696, at *3 (S.D.N.Y. Dec. 28, 1994) (*quoting Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y.1982). "However, many recent cases reject *Notaro* and apply a more flexible 'good cause' test." *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326 (S.D.N.Y. 2005). "[T]he *Notaro* test is similar to the analysis necessary to justify the far more dramatic

decision to grant a preliminary injunction, and employing a preliminary-injunction type analysis to determine entitlement to expedited discovery makes little sense" *Id*. "Rather, in deciding on a matter merely of regulating the timing of discovery, 'it makes sense to examine the discovery request ... on the entirety of the record to date and the *reasonableness* of the request in light of all the surrounding circumstances.'" *Id*. (*quoting Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 624 (N.D.Ill.2000)).

The Defendant Insiders have already disseminated confidential information to their co-defendants. Narrowly tailored discovery to determine the scope of dissemination beyond the Defendants is necessary to determine what further acts Plaintiffs must take to protect their trade secrets and plug any leaks that have been overlooked. The facts and law presented above warrant expedited discovery under both the *Notaro* and the "good cause" test.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that this Court grant its application for a temporary restraining order, preliminary injunction and expedited discovery.

Dated: New York, New York
        May 18, 2020

Respectfully Submitted,

SEIDEN LAW GROUP LLP

By: */s/ Michael Stolper*

Michael Stolper
Dov Byron Gold
469 7th Avenue, Suite 502
New York, New York 10018
(212) 337-3502
Mstolper@seidenlegal.com

*Attorneys for Plaintiffs*