UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONVERGEN ENERGY LLC, L'ANSE WARDEN ELECTRIC COMPANY, LLC, EUROENERGY BIOGAS LATVIA LIMITED, and LIBRA CAPITAL US, INC.<br><br>       Plaintiffs,<br><br>-against-<br><br>STEVEN J. BROOKS, NIANTICVISTA ENERGY LLC, GREGORY MERLE, RIVERVIEW ENERGY CORPORATION, DANIEL ESCANDON GARCIA, RAMON URIARTE INCHAUSTI, CHIPPER INVESTMENT SCR, SA, URINCHA SL, THEODORE JOHN HANSEN, BRIAN R. MIKKELSON, and CONVERGEN ENERGY WI, LLC,<br><br>       Defendants. | Index No. 1:20-cv-03746 (LJL) |

# PLAINTIFFS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO STAY ARBITRATION

Dated: June 23, 2020
New York, New York

        SEIDEN LAW GROUP LLP

        Michael Stolper
        Jake Nachmani
        Dov B. Gold
        469 Seventh Avenue, Fifth Fl.
        New York, NY 10018
        (646) 766-1703

        *Counsel for Plaintiffs*

Plaintiffs Convergen Energy LLC, L'Anse Warden Electric Company, LLC ("L'Anse"), Euroenergy Biogas Latvia Limited, and Libra Capital US, Inc. (collectively, "Plaintiffs"), by and through their undersigned counsel, submit this memorandum of law, together with the annexed declaration of Dov B. Gold, in support of their motion to stay the arbitration initiated by Convergen Energy WI, LLC ("CEW") on June 4, 2020.[1]

## PRELIMINARY STATEMENT

Plaintiffs seek to stay an arbitration that was brought pursuant to an arbitration provision in a Supply Agreement that is entirely permeated by fraud. The Supply Agreement arises out of the fraudulent sale of Plaintiffs' renewable energy asset, the Pellet Plant, to Niantic in January 2020 (the "Acquisition"). If the arbitration is not stayed, the respondent in the arbitration, plaintiff L'Anse, will contend that the arbitration provision at issue is void, given that the Supply Agreement is the product of fraud – the exact same issue already being litigated in this Court.

The arbitration should be stayed for two reasons.

First, where, as here, there is substantial overlap between the subject matter of a court proceeding and an arbitration, courts routinely enjoin the arbitration because of the risk of inconsistent rulings. Here, absent a stay, the arbitrators will be asked to determine whether the Supply Agreement and its arbitration provision are void due to the massive fraud perpetrated by Defendants. This Court has been presented with the exact same issues. A stay is warranted for that reason alone.

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Complaint. ECF 1. "¶__" are references to the paragraphs of the Complaint. References to "Ex. __" are to exhibits attached to the Declaration of Dov B. Gold, submitted herewith. Unless otherwise noted, all emphasis is added, and all internal quotations and citations are omitted.

1

Second, where, as here, genuinely disputed factual issues exist with respect to whether a valid arbitration agreement exists, a trial is required. Numerous courts have stayed arbitrations where such disputed issues have existed.

For these reasons and as more fully explained herein, Plaintiffs' motion should be granted.

## RELEVANT BACKGROUND

**Relevant Agreements**

On January 29, 2020, Niantic entered into an Acquisition Agreement with Convergen and CEW, pursuant to which Niantic acquired the Pellet Plant. The sale closed on January 31, 2020. ¶37.

On January 31, 2020, concurrent with the fraudulent Acquisition, L'Anse was induced to sign the Supply Agreement with CEW. The Supply Agreement contains the arbitration provision (the "Arbitration Provision") which is the subject of this motion. The Arbitration Provision requires all disputes arising out of the Supply Agreement to be settled by arbitration. Ex. 1. The Arbitration Provision provides in relevant part:

> All Disputes shall be exclusively, finally and conclusively settled by binding arbitration under the Rules of Arbitration of the American Arbitration Association in accordance with its Commercial Arbitration Rules. . . As used herein, Dispute means any disagreement, controversy or claim that arises between [CEW] and [L'Anse] regarding the interpretation, fulfillment, or implementation of any provision of this Agreement, or regarding the rights and obligations of the parties (including, without limitation, the validity of the agreement of the parties to arbitrate, the arbitrability of the issues submitted to arbitration hereunder, and any conflict of laws issues in connection with this Agreement) . . .
>
> The arbitration shall be conducted in the English language in Madison, Wisconsin.

Ex 1. at 6.

On February 21, 2020, CEW, L'Anse, Convergen, and Niantic entered into an Amended and Restated Closing Statement ("Restated Closing Statement"). Ex. 2. The Restated Closing Statement provides in relevant part that:

> *Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Agreement may be brought against any of the parties in the courts of the State of New York, County of New York, or, if it has or can acquire jurisdiction, in the United States District Court for the Southern District of New York*, and each of the parties consents to the jurisdiction of such courts (and of the appropriate appellate courts) in any such action or proceeding and waives any objection to venue laid therein.

Ex. 2 at 2.

**The SDNY Litigation**

On May 14, 2020, Plaintiffs filed the Complaint. ECF No. 1. The Complaint alleges that Brooks, a former Senior Vice President of Libra Group, colluded with accomplices, including Defendant Merle, the CEO of Niantic, to defraud Plaintiffs by engaging in undisclosed self-dealing involving the Acquisition. ¶¶27-54. Brooks never disclosed to Plaintiffs that he was an owner of Niantic and a close friend of Merle's, and, accordingly, that he was effectively seeking to sell the Pellet Plant to himself. ¶¶4, 36, 43.

As extensively detailed in the Complaint, numerous fraudulent acts were committed by Brooks in connection with the Acquisition. ¶44. For example, in addition to Brooks' being an owner of Niantic and betraying Plaintiffs by having secretly orchestrated the Acquisition for his benefit, Plaintiffs' investigation into Brooks' fraud revealed that:

- Brooks intentionally undersold the Pellet Plant by at least $10 million, at a price *as low as one third of its fair market value* (¶45);

- Contrary to Libra Group's policies, Brooks failed to procure a single competing offer for the Pellet Plant – *and in fact had rejected another competitive offer* – in order to ensure that the purchase price of the Pellet Plant remained as low as possible and that he and Niantic would become the owners of the Pellet Plant (¶46);

3

- That the Supply Agreement purportedly required Plaintiffs to purchase pellets at *$10 more per ton than the Pellet Plant had previously sold pellets for*, locking in this significantly above-market price for 10 years and for a minimum contracted tonnage of 40,000 per year, *effectively guaranteeing that Brooks would profit from his purchase of the Pellet Plant* (¶47).

- To ensure the sale of the Pellet Plant closed, *Brooks put up a $2.3 million guarantee for Niantic* (¶54);

- *Brooks stole cash from Convergen* and ordered Pellet Plant employees *to make expensive improvements to the Pellet Plant immediately prior to the Acquisition* – improvements from which he and Niantic, as the new owners of the Pellet Plant would benefit, while the costs of these improvements would be borne by Plaintiffs.  ¶48.

**<u>The Wisconsin Litigations</u>**

In an effort to circumvent this Action and attempt to get a more favorable result closer to home, Defendants filed two cases that are currently pending in district courts in Wisconsin.

On June 10, 2020, CEW filed suit against L'Anse in the Circuit Court for Dane County, Wisconsin seeking injunctive relief requiring L'Anse to continue to perform under the Supply Agreement.  The matter was subsequently removed to the United States District Court for the Western District of Wisconsin on June 15, 2020 under the caption *Convergen Energy WI, LLC v. L'Anse Warden Electric Company, LLC*, 20-cv-00543 (W.D. Wis.)  (the "Western District of Wisconsin Action").

On June 18, 2020, pursuant to 28 U.S.C. § 1404(a), L'Anse sought to transfer the Western District of Wisconsin Action to a more appropriate forum – the Southern District of New York – where the present case is already significantly underway.  L'Anse's response to CEW's motion for a preliminary injunction and CEW's response to L'Anse's motion to transfer are both due to be filed today, June 23, 2020.

Similarly, in anticipation of this action, CEW, Theodore Hansen, and Brian Mikkelson, defendants here, filed a declaratory judgment action in the Circuit Court for Brown County, Wisconsin on May 14, 2020, seeking a declaration that they were released from their obligations to Plaintiffs under various agreements at issue in this Action, including the Acquisition Agreement

and the Restated Closing Statement, as well as a declaration that the Supply Agreement is fair and reasonable. L'Anse removed the matter to the United States District Court for the Eastern District of Wisconsin on June 2, 2020 under the caption *Convergen Energy WI, LLC et al v. Convergen Energy, LLC et al*, 20-cv-00823 (E.D. Wis.) (the "Eastern District of Wisconsin Action"). Because the Eastern District of Wisconsin Action seeks a declaration in respect to many of the issues which the parties here are litigating, Plaintiffs expect that the Eastern District case will be transferred to and consolidated with the this Action, as its claims are superfluous, if not duplicative, of the claims alleged here.

**The Arbitration**

On June 4, 2020, CEW (the owner of the Pellet Plant) filed an arbitration demand with the American Arbitration Association against L'Anse (the owner of the Power Plant) pursuant to an arbitration provision contained in the Supply Agreement. Ex. 3 ("Arbitration Demand"), seeking to recover payments purportedly due under the agreement.

L'Anse has not yet responded to the arbitration demand. However, if the arbitration is not stayed, L'Anse intends to challenge the enforceability of the Supply Agreement and the Arbitration Provision contained therein on the basis that they were procured as part of a fraudulent scheme.

By the present motion, Plaintiffs seek an order from the Court staying the arbitration. For the reasons stated herein, Plaintiffs' motion should be granted.

**ARGUMENT**

I. **THE ARBITRATION SHOULD BE STAYED BECAUSE IT WILL REQUIRE RESOLUTION OF THE SAME ISSUES THAT ARE ALREADY BEFORE THIS COURT**

Where there is a substantial overlap between the subject matter of a court proceeding and an arbitration, courts routinely enjoin the arbitration because of the risk of inconsistent rulings. *See New York Bay Capital, LLC v. Cobalt Holdings, Inc.*, 2020 WL 1989485, at *7 (S.D.N.Y. Apr. 27, 2020) (noting that, but for enjoining a pending arbitration, a party "will suffer irreparable harm . . . because of the possibility of inconsistent rulings from an arbitrator and the Court"). Courts also stay arbitrations in order to prevent waste of time and resources in concurrent court and arbitral proceedings involving the same issues. *See Gov't Employees Ins. Co. v. Cean*, 2019 WL 6253804, at *5 (E.D.N.Y. Nov. 22, 2019) (staying pending arbitrations and noting that the plaintiff "argues that wasting time and resources in arbitrations with awards that might eventually be, at best, inconsistent with judicial rulings and, at worst, essentially ineffective, constitutes irreparable harm. The Court agrees.").

Here, if the arbitration is not stayed, L'Anse will challenge the enforceability of the Supply Agreement and the Arbitration Provision contained therein on the basis that they were procured in a fraudulent scheme. These are the very same issues that L'Anse and the other Plaintiffs have already put before the Court in their Complaint that was filed over a month ago. If the arbitral tribunal were to leapfrog ahead of the Court to rule on these issues first, such a ruling would likely have a preclusive effect on this Court and raise the risk of inconsistent rulings.[2]  All the while,

---

[2] Courts give preclusive effect to an arbitrator's findings, which raises the specter of piecemeal resolution of issues by arbitrators. *See CBF Industria de Gusa v. AMCI Holdings, Inc.*, 850 F.3d 58, 77 (2d Cir. 2017) ("It is settled law that the doctrine of issue preclusion is applicable to issues resolved by an earlier arbitration.").

6

absent a stay of the arbitration, the parties would be forced to litigate the enforceability of the Arbitration Provision in two forums, thereby wasting judicial resources, time, and money.

Accordingly, a stay of the arbitration should be granted. *See New York Bay Capital, LLC.*, 2020 WL 1989485, at *7 (enjoining arbitration where arbitration and court case involved the same contract); *Allstate Ins. Co. v. Elzanaty,* 929 F. Supp. 2d 199, 220 (E.D.N.Y.2013) (temporarily enjoining arbitration to protect ongoing litigation in federal court after determining that it "would severely threaten any judgment of this Court to have pending arbitrations or future arbitrations result in inconsistent rulings"); *Dedon GmbH v. Janus et Cie*, 2010 WL 4227309, at *9 (S.D.N.Y. Oct. 19, 2010) (denying motion to compel arbitration in part because "the court is deeply concerned about the possibility of inconsistent rulings").[3]

## II. THE ARBITRATION SHOULD BE STAYED BECAUSE MATERIAL ISSUES OF FACT EXIST CONCERNING WHETHER A VALID ARBITRATION AGREEMENT EXISTS, WHICH MUST BE RESOLVED BY THIS COURT

A motion to stay an arbitration should be granted where material issues of fact exist with respect to the existence of a valid arbitration agreement. *See Bensadoun v. Jobe-Riat*, 316 F.3d 171, 178 (2d Cir. 2003) (directing district court to stay arbitration pending conclusion of lawsuit because material issues of fact existed concerning the formation of arbitration agreement, which warranted determination by the court and not the arbitral tribunal); *Di Martino v. Dooley*, 2009 WL 27438, at *5 (S.D.N.Y. Jan. 6, 2009) (granting stay of arbitration in part because issues of fact existed as to whether plaintiffs were considered parties to arbitration provision); *Endriss v. Eklof Marine Corp.*, 1998 WL 1085911, at *6 (S.D.N.Y. July 28, 1998) (granting plaintiff's motion to stay arbitration because issues of fact existed as to fraud in the formation of the arbitration

---

[3] A stay of the arbitration is also particularly appropriate in this case because CEW and L'Anse agreed in the Restated Closing Statement that proceedings to enforce their rights in connection with the Acquisition could be brought in this Court. *See* Ex. 2. L'Anse is proceeding to enforce its rights in this Court, the agreed-upon forum.

7

provision). It is settled Second Circuit law that if there is a genuinely disputed factual issue whose resolution is essential to determine whether a valid arbitration agreement exists, a trial in court is required. *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 172 (2d Cir. 2011); *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012); *Bensadoun,* 316 F.3d at 175; *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016).

Here, and as more fully described below, Plaintiff allege that the Supply Agreement was permeated by the fraud. ¶¶4-5, 44, 49, 71. Indeed, and in preempting Defendants' argument to the contrary, Plaintiffs allege that they *were not merely induced* to enter into the Supply Agreement because of Defendants' fraud. Rather, the negotiation of the Supply Agreement itself and the terms by which the parties purportedly agreed – *the formation of the Supply Agreement – were the result of fraud*. Accordingly, the Court must determine whether the Supply Agreement (and the arbitration provision contained therein) are valid before the arbitration can proceed.

Significantly, under New York law, a party alleging that a contract is void—and providing some evidence in support—is entitled to a trial on the contract's arbitrability. *Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co.*, 263 F.3d 26, 31 (2d Cir. 2001). Under New York law, fraud makes a contract and any arbitration clause contained therein void where the fraudulent conduct was "part of a grand scheme that permeated the entire contract." *Anderson St. Realty Corp. v. New Rochelle Revitalization, LLC*, 78 A.D.3d 972, 974 (2010). To demonstrate that fraud permeated the contract, it must be established that the agreement was not the result of an arm's length negotiation. *Id.*

The decision in *332 E. 66th St., Inc. v. Walker*, 59 Misc. 3d 1216(A), 106 N.Y.S.3d 727 (N.Y. Sup. Ct. 2018) is instructive. There, plaintiffs argued that management agreements entered into between plaintiffs and defendants were the product of self-dealing by an officer of plaintiffs' companies because the officer defendant was entering into those agreements with entities that he

8

secretly owned. *See id.* The officer defendant acknowledged that he entered into the agreements on behalf of the companies he owned to advance his personal financial interests, while failing to disclose his ownership interest in those entities to plaintiffs. *See id.* Because of defendant's flagrant self-dealing, the court found that the agreements were not the result of arm's-length negotiations and therefore that fraud permeated them, including the agreements' arbitration provisions. *See id.*

Here, the Complaint alleges similar facts as to Brooks' fraud and the Supply Agreement. For example, while purportedly negotiating the sale of the Pellet Plant to Niantic on behalf of Convergen:

- Brooks failed to disclose to Plaintiffs that he was an owner of Niantic, and, as such, *he was secretly a buyer of the Pellet Plant* (¶¶4, 36, 43);

- Brooks intentionally undersold the Pellet Plant by at least $10 million, at a price *as low as one third of its fair market value* (¶45);

- Brooks failed to procure a single competing offer for the Pellet Plant and *rejected another competitive offer to ensure that the purchase price of the Pellet Plant remained as low as possible and that he and Niantic would become the owners of the Pellet Plant* (¶46);

- Brooks duped Plaintiffs into entering the Supply Agreement *to ensure that he, as the new owner of the Pellet Plant, would profit from the fraudulently inflated price of pellets* which the Power Plant was obligated to purchase from the Pellet Plant for nothing short of a ten-year period (¶47);

- To ensure the sale of the Pellet Plant closed, *Brooks put up a $2.3 million guarantee for Niantic* (¶54);

- *Brooks stole cash from Convergen* and ordered Pellet Plant employees *to make expensive improvements to the Pellet Plant immediately prior to the Acquisition* – improvements from which he and Niantic, as the new owners of the Pellet Plant would benefit, while the costs of these improvements would be borne by Plaintiffs. ¶48.

These allegations smack of fraud of and self-dealing, rendering the Supply Agreement (and the arbitration provision therein) void.

The Court should accordingly stay the arbitration in order to determine whether a valid arbitration agreement exists. *See 332 E. 66th St., Inc. v. Walker*, 59 Misc. 3d 1216(A), 106 N.Y.S.3d 727 (N.Y. Sup. Ct. 2018); *Loop Prod. v. Capital Connections LLC*, 797 F. Supp. 2d 338, 347–48 (S.D.N.Y. 2011) (arbitration agreement invalidated because transaction proposed by defendants, including the contract itself, was a sham designed to perpetrate defendants' fraudulent scheme); *Bongo–Astier v. Carefree Lifestyles, Inc.,* 27 Misc. 3d 1211(A), 910 N.Y.S.2d 403 (Civ. Ct. 2010) ("An intentional scam would permeate the contract with fraud and render it void ab initio and unenforceable.").

## **CONCLUSION**

For all the foregoing reasons, the Court should stay the arbitration.

Dated: June 23, 2020  
New York, New York

SEIDEN LAW GROUP LLP

By: /s/ Dov B. Gold  
Dov B. Gold  
Michael Stolper  
Jake Nachmani  
469 Seventh Avenue, Fifth Fl.  
New York, NY 10018  
(646) 766-1703

*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day I caused a true and correct copy of the foregoing to be filed using the Court's Electronic Filing System ("ECF System"). The document is available for viewing and downloading via the ECF System and will be served by operation of the ECF System upon all counsels of record.

Dated: June 23, 2020                                                            SEIDEN LAW GROUP LLP


                                                                                                /s/ Dov B. Gold
                                                                                                Dov B. Gold