IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONVERGEN ENERGY LLC, L'ANSE WARDEN ELECTRIC COMPANY, LLC, EUROENERGY BIOGAS LATVIA LIMITED, and LIBRA CAPITAL US, INC.<br><br>Plaintiffs,<br><br>v.<br><br>STEVEN J. BROOKS, NIANTICVISTA ENERGY LLC, GREGORY MERLE, RIVERVIEW ENERGY CORPORATION, DANIEL ESCANDON GARCIA, RAMON URIARTE INCHAUSTI, CHIPPER INVESTMENT SCR, SA, URINCHA SL, THEODORE JOHN HANSEN, BRIAN R. MIKKELSON, and CONVERGEN ENERGY WI, LLC.,<br><br>Defendants. | Case No. 1:20-cv-03746(LJL) |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO SERVE DEFENDANTS BY ALTERNATIVE MEANS OF SERVICE**

## TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT .........................................................................6

II.    ARGUMENT ...............................................................................................7

       A.    Specially-Appearing Defendants' Opposition Does Not Waive Their
             Objections to Personal Jurisdiction or Service of Process...........................7

       B.    Alternative Service Under Rule 4(f)(3) is Not Appropriate Because
             Plaintiffs Have Not Made Any Significant Efforts to Comply with the
             Hague Service Convention .........................................................................9

             1. Compliance with the Hague Service Convention is Mandatory..............9

             2. Plaintiffs Must Reasonably Attempt to Effect Service Under the Hague
             Service Convention Before Seeking Alternative Service Under Rule 4(f)(3)
             ....................................................................................................10

             3. Plaintiffs Did not Reasonably Attempt to Effect Service Under the Hague
             Service Convention....................................................................................13

             4. Plaintiffs Have Not Shown that Service Under the Hague Service
             Convention Would be Futile Such that Court Intervention is Necessary…18

       C.    Personal Service Under Rule 4(f)(2)(C)(i) is Not Permitted ....................21

       D.    Alternative Service by Postal Channels Must Comply with Rule 4 or
             Spanish Law...........................................................................................24

III.   CONCLUSION .................................................................................27

## **TABLE OF AUTHORITIES**

**Cases**

*Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen,* No. 14-CV-1112 (VSB), 2018 WL 4757939 (S.D.N.Y. Sept. 30, 2018) ........................................................... 15

*Advanced Aerofoil Techs., AG v. Todaro,* No. 11 CIV. 9505 ALC DCF, 2012 WL 299959 (S.D.N.Y. Jan. 31, 2012)................................................................................ 11, 18

*Altos Hornos de Mexico, S.A.B. de C.V. v. Rock Res. Ltd*., No. 15 CIV. 1671 JSR, 2015 WL 6437384 (S.D.N.Y. Oct. 19, 2015) ........................................................... 11

*Arista Records LLC v. Media Servs. LLC*, No. 06 CIV. 15319NRB, 2008 WL 563470 (S.D.N.Y. Feb. 25, 2008) .................................................................. 11, 18, 19, 20

*Banco Latino, S.A.C.A. v. Gomez Lopez*, 53 F. Supp. 2d 1273 (S.D. Fla. 1999)   10, 21, 22, 23, 24

*Bidonthecity.com LLC v. Halverston Holdings Ltd*., No. 12 CIV. 9258 ALC MHD, 2014 WL 1331046 (S.D.N.Y. Mar. 31, 2014) ......................................................... 11, 19

*Brown-Thomas v. Hynie,* 367 F. Supp. 3d 452 (D.S.C. 2019)....................................... 24

*Burda Media, Inc. v. Viertel*, 417 F.3d 292 (2d Cir.2005)............................................ 10

*Devi v. Rajapaska*, No. 11 Civ. 6634, 2012 WL 309605 (S.D.N.Y. Jan. 31, 2012)......... 11, 13, 14

*ePlus Tech., Inc. v. Aboud*, 155 F. Supp. 2d 692 (E.D. Va. 2001) ........................................ 22, 24

*Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co.,* No. 03CIV.8554(LTS)(JCF), 2005 WL 1123755 (S.D.N.Y. May 11, 2005)................................................................... 11

*Freeplay Music, LLC v. Rigol Techs. USA, Inc*., No. 18 CIV. 10980 (ER), 2020 WL 564232 (S.D.N.Y. Feb. 4, 2020) ...................................................................... 21

*Gateway Overseas, Inc. v. Nishat (Chunian) Ltd*., No. 05 CV 4260, 2006 WL 2015188 (S.D.N.Y. July 13, 2006)..................................................................... 11, 18, 20

*Geopolymer Sinkhole Specialist, Inc. v. Uretek Worldwide Oy*, No. 8:15-CV-1690-T-36JSS, 2015 WL 4757937 (M.D. Fla. Aug. 12, 2015) ...................................................... 27

*GMA Accessories, Inc. v. BOP, LLC*, No. 07CIV3219(PKC)(DCF), 2009 WL 2856230 (S.D.N.Y. Aug. 28, 2009) ........................................................................ 23

*Halvorssen v. Simpson,* 328 F.R.D. 30 (E.D.N.Y. 2018) ........................................... 11, 12, 13, 19

*Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58 (2nd Cir. 1999) ....................................... 8

*In GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262 (S.D.N.Y. 2012)............................ 10, 12, 15

*In re Coudert Bros. LLP*, No. 16-CV-8237 (KMK), 2017 WL 1944162 (S.D.N.Y. May 10, 2017) ...................................................................................................................... 11, 14

*In re Helicopter Crash Near Wendle Creek, British Columbia on Aug. 8, 2002*, 485 F. Supp. 2d 47 (D. Conn. 2007) ............................................................................................. 9

*In re Mak Petroleum, Inc.*, 424 B.R. 912 (Bankr. M.D. Fla. 2010)............................................. 24

*In re S. African Apartheid Litig.,* 643 F. Supp. 2d 423 (S.D.N.Y. 2009) ..................................... 18

*In re Sinohub, Inc. Sec. Litig.*, No. 12 Civ. 8478(WHP), 2013 WL 4734902 (S.D.N.Y. Aug. 14, 2013) .......................................................................... 7, 11, 12, 15, 16, 17, 27

*Innovation Ventures LLC v. Pittsburg Wholesale Grocers Inc.*, No. 13-CV-6397(KAM)(ST), 2019 WL 3817389 (E.D.N.Y. Aug. 14, 2019)...................................................................... 8

*Joshi Techs., Int'l, Inc. v. Consorcio Pegaso*, No. 17-CV-359-GKF-FHM, 2017 WL 3151282 (N.D. Okla. July 25, 2017)................................................................................................. 10

*Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria,* 265 F.R.D. 106 (S.D.N.Y. 2010) .................................................................................................................. 11,12, 21

*Magnoni v. Smith & Laquercia, LLP*, 701 F. Supp. 2d 497 (S.D.N.Y. 2010), aff'd, 483 F. App'x 613 (2d Cir. 2012) ...................................................................................................... 20

*Meimaris v. Royce*, No. 18CV4363GBDBCM, 2018 WL 9960113 (S.D.N.Y. Nov. 5, 2018) .... 11

*Peifa Xu v. Gridsum Holding Inc.*, No. 18 CIV. 3655 (ER), 2020 WL 1508748 (S.D.N.Y. Mar. 30, 2020) ........................................................................................................... 11, 13, 14

*Prediction Co. LLC v. Rajgarhia*, No. 09 CIV.7459(SAS), 2010 WL 1050307 (S.D.N.Y. Mar. 22, 2010) ........................................................................................................... 11, 14, 15

*Reeder v. Knapik*, 2007 WL 1521100 (S.D. Cal. May 22, 2007) ................................................. 17

*RSM Prod. Corp. v. Fridma*n, No. 06 CIV. 11512 (DLC), 2007 WL 1515068 (S.D.N.Y. May 24, 2007) ................................................................................................................ 9, 10

*Ryan v. Brunswick Corp.*, No. 02–CV–0133E(F), 2002 WL 1628933 (W.D.N.Y. May 31, 2002) ................................................................................................................ 18

*S.E.C. v. Alexander*, 248 F.R.D. 108 (E.D.N.Y. 2007) ................................................. 21

*S.E.C. v. Anticevic*, No. 05 Civ. 6991, 2009 WL 361739 (S.D.N.Y. Feb. 13, 2009) .................. 11

*S.E.C. v. China Ne. Petroleum Holdings Ltd.*, 27 F. Supp. 3d 379 (S.D.N.Y. 2014)..................... ....................................................................................... 10, 11, 13, 15, 16, 17

*S.E.C. v. Shehyn*, No. 04 Civ.2003(LAP), 2008 WL 6150322 (S.D.N.Y. Nov. 26, 2008).............. ................................................................................................. 11, 14, 15, 19

*Schweitzer ex rel. Schweitzer v. Crofton*, No. 08-CV-135 DRH ETB, 2010 WL 3516161, (E.D.N.Y. Sept. 1, 2010), *aff'd sub nom. Schweitzer v. Crofton*, 560 F. App'x 6 (2d Cir. 2014)..... ............................................................................................................... 4, 9

*Sec. & Exch. Comm'n v. Cluff*, No. 17CV2460RMBKNF, 2018 WL 896027 (S.D.N.Y. Jan. 10, 2018) ...................................................................................................... 11, 14

*Shull v. Univ. of Queensland*, No. 218CV01781APGPAL, 2018 WL 6834327 (D. Nev. Dec. 28, 2018) ........................................................................................................... 24

*Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329 (S.D.N.Y. 2015) .................... 11, 14

*TM Patents v. IBM*, 107 F. Supp. 2d 352 (S.D.N.Y. 2000) ........................................... 22

*United States v. Lebanese Canadian Bank SAL*, 285 F.R.D. 262 (S.D.N.Y. 2012) .................... 11

*Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988) ............................... 7

*Water Splash, Inc. v. Menon*, 137 S. Ct. 1504 (2017) ........................................... 24, 25

*Wyndham Hotel Grp. Canada, ULC v. 683079 Ontario Ltd.,* No. CV 17-4000 (JMV), 2018 WL 2078704 (D.N.J. May 4, 2018) .............................................................. 25, 26

*Zanghi v. Ritella,* No. 19 CIV. 5830 (NRB), 2020 WL 589409 (S.D.N.Y. Feb. 5, 2020) 25, 26, 27

**Treaties**

Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 .................................... 7, 9, 10, 11, 12, 13, 15, 17, 21, 22, 23, 24, 25, 27

**Rules**

Fed. R. Civ. P. 4 ................................................................ 10, 11, 12, 18, 19, 21, 22, 24, 25, 26, 27

Fed. R. Civ. P. 7 ............................................................................................................... 8

Advisory Committee Notes on Federal Rule of Civil Procedure 4 Subdivision (f) (1993) .... 12, 18

Fed. R. Civ. P. 12 ............................................................................................................. 8

**Treatises**

1 Moore's Federal Practice–Civil § 4.52[2][d] (2020) ............................................... 26

1 Ved P. Nanda, et al., *Litigation of International Disputes in U.S. Courts* § 2:8 Law of the destination state (2020) .................................................................................. 23

Defendants Daniel Escandon Garcia, Ramon Uriarte Inchausti, Chipper Investment SCR, S.A., and Urincha, SL (collectively, the "Specially-Appearing Defendants") respectfully submit this Memorandum of Law in opposition to Plaintiff's Motion to Serve Defendants by Alternative Means of Service ("Motion"). D.E. 57.

## I.    PRELIMINARY STATEMENT

Plaintiffs' application is premature. They have made no effort heretofore to serve the Specially Appearing Defendants, nor have they engaged in a meaningful investigation to ascertain the whereabouts of the Specially-Appearing Defendants. Indeed, Plaintiffs have not even had a summons issued for each and every Specially-Appearing Defendant.

Rather than approach counsel for the Specially-Appearing Defendants and seek a conference to discuss service and agree to a schedule to respond to the complaint, Plaintiffs' counsel curtly emailed counsel for the Specially-Appearing Defendants a single sentence stating "Please confirm the addresses of your clients." Gold Decl. Ex. A at 1. Of course, defense counsel is not a source of discovery for Plaintiffs and is not obligated to perform Plaintiffs' diligence for them in this action. No further correspondence was initiated by Plaintiffs' counsel, and they made no attempt to serve any of the Specially-Appearing Defendants. Instead they filed the instant premature application.

Moreover, at the outset of this litigation, and in response to the transmission of the Complaint by email to counsel for Specially-Appearing Defendants, the undersigned counsel notified Plaintiffs' counsel that he was not authorized to accept service on behalf of his clients and that they would be challenging any assertion of personal jurisdiction in New York. Previously, Plaintiffs' counsel had corresponded by email on multiple occasions with the Specially-Appearing Defendants, harassing those individuals and companies in anticipation of litigation, without engaging in any substantive discussions on the merits of this action. As a result, when counsel for

Specially Appearing Defendants was engaged to advise on this matter, he also notified Plaintiffs' counsel that any further communications should be directed to him. Given counsel's notice, service of process is not such a communication.

In any event, service upon the Specially-Appearing Defendants must be effected pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 ("Hague Service Convention"). Plaintiffs have failed to demonstrate that such service would not be feasible and that alternative methods of service would be justified. Had Plaintiffs exercised any diligence, they would have found that, although it may take some time, service on the Specially Appearing Defendants under the Hague Service Convention is feasible. Moreover, had they conferred with counsel to the Specially Appearing Defendants, the parties may have agreed to service and worked out a response schedule on similar timing to what service under the Hague Service Convention would provide.

In sum, Plaintiffs' motion is a "a measure of convenience rather than necessity," *In re Sinohub, Inc. Sec. Litig.*, No. 12 Civ. 8478(WHP), 2013 WL 4734902, at *2 (S.D.N.Y. Aug. 14, 2013), and for that reason, and for the reasons more fully discussed herein, the Specially Appearing-Defendants respectfully request that the Motion be denied in its entirety.

## II.    ARGUMENT

### A. Specially-Appearing Defendants' Opposition Does Not Waive Their Objections to Personal Jurisdiction or Service of Process.

As an initial matter, in addition to contesting the instant Motion, and any alternative service, the Specially-Appearing Defendants contest this Court's exercise of personal jurisdiction over them. If and when service is properly effected upon them, the Specially-Appearing

Defendants will move to dismiss this action for lack of personal jurisdiction, among other grounds. The Specially-Appearing Defendants respond here solely for the purpose of contesting the Motion and alerting the Court of the actual facts material to this application, including with respect to the undersigned counsel's discussions with Plaintiffs' counsel.

Federal Rule of Civil Procedure 12(h) provides that a party may only waive a defense of lack of personal jurisdiction or improper service by: (1) omitting it from a motion; or (2) failing to include the defense in a responsive pleading or amendment as a matter of course. Fed. R. Civ. P. 12(h). This opposition is neither a "motion" nor a "responsive pleading" within the meaning of the Federal Rules of Civil Procedure. *See Innovation Ventures LLC v. Pittsburg Wholesale Grocers Inc.*, No. 13-CV-6397(KAM)(ST), 2019 WL 3817389, at *1 (E.D.N.Y. Aug. 14, 2019) (enumerating the filings under Rule 7(a) that constitute a "pleading.") (citing Fed. R. Civ. P. 7(a)).

Nor have the Specially Appearing Defendants delayed in providing notice that they intend to challenge personal jurisdiction in New York. *Hamilton v. Atlas Turner, Inc*., 197 F.3d 58, 60 (2nd Cir. 1999) ( "[d]elay in challenging personal jurisdiction by motion to dismiss may result in waiver, even where . . . the defense was asserted in a timely answer") (citations omitted). Indeed, counsel for the Specially Appearing Defendants notified Plaintiffs' counsel at the outset of this action that they would be challenging personal jurisdiction over them in this Court. *See* Gold Decl. Ex. A at 1 ("[W]e are not authorized to, nor will we accept, service of process on behalf of our Clients. Moreover, this response in no way represents consent to personal jurisdiction over our Clients in New York, or elsewhere in the U.S., which is expressly contested. Indeed, our Clients expressly reserve all available defenses to the claims in your putative action, including with respect to service of process, jurisdiction and venue."). Moreover, the Specially-Appearing Defendants expressly raise the defenses of lack of personal jurisdiction and improper service herein and

therefore do not waive those defenses. *In re Helicopter Crash Near Wendle Creek, British Columbia on Aug. 8, 2002*, 485 F. Supp. 2d 47, 52 (D. Conn. 2007) (holding defendant did not waive personal jurisdiction because his "initial response to the choice-of-law issue included a sentence that stated '[b]y filing this response, Croman does not intend to waive its defense that there is no personal jurisdiction over [defendant] in Connecticut.'"); *see, e.g., Schweitzer ex rel. Schweitzer v. Crofton*, No. 08-CV-135 DRH ETB, 2010 WL 3516161, at *7 (E.D.N.Y. Sept. 1, 2010), *aff'd sub nom. Schweitzer v. Crofton*, 560 F. App'x 6 (2d Cir. 2014) (holding personal jurisdiction not waived by failure to raise in a pre-motion letter because defense was later raised in Rule 12 motion).

Accordingly, by appearing for the sole purpose of contesting the instant Motion, the Specially-Appearing Defendants do not waive their right to assert the defenses of personal jurisdiction and, if relevant, improper service of process, venue and/or any other affirmative defense and basis for dismissal of the complaint against them.

**B. Alternative Service Under Rule 4(f)(3) is Not Appropriate Because Plaintiffs Have Not Made Any Significant Efforts to Comply with the Hague Service Convention**

**1.    Compliance with the Hague Service Convention is Mandatory**

As the Supreme Court has made clear: "[w]e acknowledged last Term, and the Court reiterates today . . . the terms of the [Hague Service Convention] are 'mandatory,' not 'optional' with respect to any transmission that Article 1 covers." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 708 (1988). Article 1 of the Hague Service Convention states that it "shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." Hague Service Convention, Art. 1 (emphasis added). Here, the Specially-Appearing Defendants are residents of Madrid, Spain, and since Spain is a signatory to the Hague Service Convention, Plaintiffs must serve them through the Hague Service

Convention. *Banco Latino, S.A.C.A. v. Gomez Lopez,* 53 F. Supp. 2d 1273, 1278 (S.D. Fla. 1999) ("Spain is a signatory to the Hague Convention."); *RSM Prod. Corp. v. Fridman*, No. 06 CIV. 11512 (DLC), 2007 WL 1515068, at *1 (S.D.N.Y. May 24, 2007) ("Service on a foreign defendant pursuant to the Hague Convention . . . is 'mandatory' when serving a defendant who resides in a foreign country that is a signatory to the convention.") (citing *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 299-300 (2d Cir.2005)) (other citations omitted).

> **2.     Plaintiffs Must Reasonably Attempt to Effect Service Under the Hague Service Convention Before Seeking Alternative Service Under Rule 4(f)(3)**

In circumstances where the Hague Service Convention does not apply, none of which are found here, a court can exercise its discretion to grant an order permitting alternative service under Rule 4(f)(3). *See In GLG Life Tech Corp. Sec. Litig*., 287 F.R.D. 262, 266 (S.D.N.Y. 2012); *RSM Prod. Corp. v. Fridman*, 2007 WL 1515068. Plaintiffs, however, bear the burden of effecting proper service and demonstrating that alternative service under Rule 4(f)(3) is appropriate. *See generally, S.E.C. v. China Ne. Petroleum Holdings Ltd*., 27 F. Supp. 3d 379, 398 (S.D.N.Y. 2014); *Joshi Techs., Int'l, Inc. v. Consorcio Pegaso*, No. 17-CV-359-GKF-FHM, 2017 WL 3151282, at *3 (N.D. Okla. July 25, 2017) ("[Plaintiff] has not carried its burden to justify alternative service under Rule 4(f)(3)."). Here, Plaintiffs have made no diligent attempt to satisfy their burden, and ignore the threshold criteria that courts in this circuit consider when determining whether alternative service is appropriate:

> [d]istrict courts in this Circuit routinely examine two threshold questions before authorizing alternative service: (1) Did the plaintiff reasonably attempt to effectuate service? And, (2) has the plaintiff made a showing that the court's intervention is necessary?

*Peifa Xu v. Gridsum Holding Inc*., No. 18 CIV. 3655 (ER), 2020 WL 1508748, at *14 (S.D.N.Y. Mar. 30, 2020) (citation omitted); 287 F.R.D. at 266 ("In cases such as this one, where service is first attempted pursuant to an international agreement, there will undoubtedly be many instances where significant efforts to make service under the Hague Convention should be required by a court before alternative service is ordered.") (emphasis added); *China Ne. Petroleum Holdings*, 27 F. Supp. 3d at 398 ("[w]hen courts have allowed for alternative service, they have done so when plaintiffs have been unable, despite diligent efforts, to serve the defendant in the [foreign country] according to the Hague [ ] Convention procedures.") (quotation and internal quotation marks omitted) (alteration in original) (emphasis added); *Devi v. Rajapaska*, No. 11 Civ. 6634, 2012 WL 309605, at *1 (S.D.N.Y. Jan. 31, 2012) ("[d]istrict courts in this Circuit generally impose two additional threshold requirements before authorizing service under Rule 4(f)(3): (1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary."); *accord In re Sinohub*, 2013 WL 4734902; *S.E.C. v. Shehyn*, No. 04 Civ.2003(LAP), 2008 WL 6150322 (S.D.N.Y. Nov. 26, 2008).[1]

Indeed, the precedent Plaintiffs rely upon for their central proposition that service under Rule 4(f)(3) is neither a "last resort" or "extraordinary relief," and thus can be ordered without an

---

[1] Cases in accord are legion. *See S.E.C. v. Anticevic*, No. 05 Civ. 6991, 2009 WL 361739 (S.D.N.Y. Feb. 13, 2009); *Advanced Aerofoil Techs., AG v. Todaro*, No. 11 CIV. 9505 ALC DCF, 2012 WL 299959 (S.D.N.Y. Jan. 31, 2012); *Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co.*, No. 03CIV.8554(LTS)(JCF), 2005 WL 1123755 (S.D.N.Y. May 11, 2005); *Arista Records LLC v. Media Servs. LLC*, No. 06 CIV. 15319NRB, 2008 WL 563470 (S.D.N.Y. Feb. 25, 2008); *Gateway Overseas, Inc. v. Nishat (Chunian) Ltd.*, No. 05 CV 4260, 2006 WL 2015188 (S.D.N.Y. July 13, 2006); *Prediction Co. LLC v. Rajgarhia*, No. 09 CIV.7459(SAS), 2010 WL 1050307 (S.D.N.Y. Mar. 22, 2010); *Bidonthecity.com LLC v. Halverston Holdings Ltd.*, No. 12 CIV. 9258 ALC MHD, 2014 WL 1331046 (S.D.N.Y. Mar. 31, 2014); *Madu*, 265 F.R.D. at 116; *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 331 (S.D.N.Y. 2015); *Altos Hornos de Mexico, S.A.B. de C.V. v. Rock Res. Ltd.*, No. 15 CIV. 1671 JSR, 2015 WL 6437384 (S.D.N.Y. Oct. 19, 2015); *United States v. Lebanese Canadian Bank SAL*, 285 F.R.D. 262, 267 (S.D.N.Y. 2012); *Meimaris v. Royce*, No. 18CV4363GBDBCM, 2018 WL 9960113 (S.D.N.Y. Nov. 5, 2018); *In re Coudert Bros. LLP*, No. 16-CV-8237 (KMK), 2017 WL 1944162 (S.D.N.Y. May 10, 2017); *Sec. & Exch. Comm'n v. Cluff*, No. 17CV2460RMBKNF, 2018 WL 896027 (S.D.N.Y. Jan. 10, 2018).

attempt of service under the Hague Service Convention, <u>denied</u> the movant's motion for alternative service because "Plaintiffs [had] <u>not met their threshold requirement of reasonably attempting to effect service on defendants</u>." *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 116 (S.D.N.Y. 2010) (emphasis added); Mot. at 5.

Courts impose these threshold requirements in the interests of international comity. *See GLG Life Tech Corp.*, 287 F.R.D. at 266 ("[p]rinciples of comity encourage the court to insist, as a matter of discretion, that a plaintiff attempt to follow foreign law in its efforts to secure service of process upon defendant.") (quotation omitted). And to ensure that the situation here does not occur, i.e. that plaintiffs do not "whimsically" seek an alternative means of service and that their motion is not "a measure of convenience rather than necessity." *In re Sinohub*, 2013 WL 4734902 at *2. The Advisory Committee Notes to Rule 4(f)(3) reflect this threshold requirement and policy. *See Halvorssen v. Simpson*, 328 F.R.D. 30, 34 (E.D.N.Y. 2018) (explaining that this threshold requirement "has be[en] engrafted" on to Rule 4(f)(3) "to ensure that parties do not avoid the requirements of the Hague Convention and instead, whimsically seek an order of alternative service.") (quotation marks and citation omitted) (alteration added); Fed. R. Civ. P. 4 Advisory Committee Notes on Subdivision (f) (1993) (indicating that alternative service is only appropriate in certain exigent circumstances).

Accordingly, in the Second Circuit, Plaintiffs must first demonstrate that they have engaged in significant efforts to serve the Specially-Appearing Defendants under the Hague Service Convention, and only after failing to do so may they petition this Court for alternative service under Rule 4(f)(3). They have not done so.

### 3.   Plaintiffs Did not Reasonably Attempt to Effect Service Under the Hague Service Convention

Several factors are relevant to a determination of whether "reasonable attempts to effect service," have been made under the Hague Service Convention. First, courts review the actual number of attempts to properly effect service under the Hague Service Convention, and contacts with the relevant central authority. In *China Ne. Petroleum Holdings*, the court found that "one attempt to serve . . . pursuant to the Hague Convention" and not engaging the relevant "authorities after the first attempt at service under the Hague Convention could not be completed" indicated insufficient diligence to justify alternative service. 27 F. Supp. 3d at 398. Similarly, in *Devi*, 2012 WL 309605, at *2, the court found that plaintiff had not engaged in significant efforts to effect service where the plaintiff:

> vaguely claim[ed] to have made arrangements (or attempted to have made arrangements) to personally serve defendant . . . but plaintiff [did] not suggest that he [had] actually carried out an attempt to serve defendant . . . plaintiff [had] not attempted to serve defendant through the Hague Convention, the traditional mechanism for effectuating service abroad. While we recognize the distinct possibility that service through the Hague Convention will prove unsuccessful, we believe that requiring use of the Convention is nevertheless important in this instance.

*Id*. (emphasis and alterations added). Finally, in *Peifa Xu*, 2020 WL 1508748, at *14, the court found that the plaintiffs had not engaged in significant efforts justifying alternative service because "service was not even attempted in the correct jurisdiction" and for one defendant "proper service has not been attempted at all." *Id.* The *Peifa Xu* court noted that: "[t]he plaintiffs must at least attempt service in the proper jurisdiction before asking the Court to provide an alternative to the Hague Convention." *Id.* (emphasis added); *see also Halvorssen,* 328 F.R.D. at 35 (denying motion for alternative service where "[p]laintiff has certainly demonstrated the possible difficulty of serving the Venezuelan Defendants pursuant to the terms of the Hague Convention. However,

there is no question but that, other than referring to efforts to obtain Defendants' home addresses, he has attempted no such service.").

Plaintiffs here have not even attempted service on the Specially-Appearing Defendants under the Hague Service Convention or by any other method. On this ground alone the Motion should be denied. *Devi*, 2012 WL 309605, at *2 (denying alternative service where "plaintiff [did] not suggest that he [had] actually carried out an attempt to serve defendant . . . plaintiff [had] not attempted to serve defendant through the Hague Convention . . . ."); *Cluff*, 2018 WL 896027, at *4 (denying motion for alternative service where the "plaintiff did not take any steps to attempt to use the Hague Convention to serve [defendant] . . . .); *In re Coudert Bros.*, 2017 WL 1944162, at *13 (denying motion for alternative service where "there [was] no evidence that Plaintiff has attempted service of the summons and complaint in a form sanctioned by Rules 4(f)(1) or 4(f)(2).").

Indeed, the record belies Plaintiffs' conclusory assertion that they "have begun the process of serving through the Central Authority." Mot. at 2. Plaintiffs have not even filed a request for summons on Specially-Appearing Defendant Daniel Escandon Garcia, nor have they provided any evidence that they have translated any summons into Spanish or contacted the Spanish Central Authority to request that they effect service. Instead, Plaintiffs merely sent one email to the Spanish Central Authority asking if there were any delays in service due to COVID-19 and then waited one month before filing the instant Motion, throwing up their hands and proclaiming service to be "futile." This is not an attempt at service, nor does it evince sufficient diligence to warrant alternative service. *See Shehyn*, 2008 WL 6150322, at *2 ("Service under the Hague Convention is commenced when a plaintiff requests that the 'Central Authority' of a signatory country effect service on a defendant residing within that country."); *Peifa Xu*, 2020 WL 1508748, at *14, ("[t]he

plaintiffs must at least attempt service in the proper jurisdiction before asking the Court to provide an alternative to the Hague Convention.") (emphasis added); *Devi*, 2012 WL 309605; *Cluff*, 2018 WL 896027; *In re Coudert Bros.*, 2017 WL 1944162; *cf. Sulzer Mixpac*, 312 F.R.D. at 332 (finding significant efforts where "[p]laintiff timely attempted service through the Hague Convention; has made multiple queries to the Chinese Central Authority; and has diligently kept the Court apprised of these efforts.") (emphasis added).

Next, courts may review the location of the defendants and the plaintiffs' efforts to locate a valid address for service.[2] In *China Ne. Petroleum Holdings*, the court found that failure to conduct "a meaningful investigation to ascertain [the Defendant's] whereabouts," did not constitute significant efforts justifying alternative service. 27 F. Supp. 3d at 398. Similarly, the court in *In re Sinohub,* found that unlike the defendants in *GLG Life Tech*, the defendants were foreign citizens and therefore the plaintiff "should first attempt to effect service on these defendants through the Hague Convention." 2013 WL 4734902, at *2. The *In re Sinohub* court also held that the plaintiff's efforts at investigating the defendant's whereabouts where insufficient because although the plaintiff's "private investigator ha[d] been unable to locate [the Defendants], the affidavit submitted by the investigator indicates only that he has searched public databases." *Id.*; *cf. Shehyn*, 2008 WL 6150322, at *4 (granting motion for alternative service where "[p]laintiff exhibited comprehensive and diligent efforts to locate [defendant's] whereabouts by contacting, subpoenaing and deposing many of his known associates in the United States and in Spain. Indeed, it appears that Plaintiff exhausted all available leads in its search for Defendants."); *cf. Prediction*

---

[2] Plaintiffs must also engage in reasonable diligence to discover the defendants' addresses before asserting that the Hague Service Convention does not apply. *Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, No. 14-CV-1112 (VSB), 2018 WL 4757939, at *4 (S.D.N.Y. Sept. 30, 2018) ("Courts in this Circuit have found an address is 'not known' if the plaintiff exercised reasonable diligence in attempting to discover a physical address for service of process and was unsuccessful in doing so.") (citation omitted) (emphasis added). For the same reasons that Plaintiffs' failure to engage in any reasonable diligence to discover the Specially-Appearing Defendants' addresses does not justify alternative service, it also does not demonstrate that the Hague Service Convention does not apply. *Id.*

*Co.*, 2010 WL 1050307, at *2 (finding plaintiff made reasonable efforts to effectuate service by "having <u>actively</u>, though unsuccessfully, attempted to obtain [Defendant]'s <u>address in a variety of ways</u>.") (emphasis added).

The Specially-Appearing Defendants are located in Madrid, Spain, a fact of which Plaintiffs have been well aware since the filing of the complaint in May. Indeed, <u>the complaint alleges addresses for all of the Specially-Appearing Defendants</u>. *See* D.E. 1 ¶¶ 17-20. Plaintiffs, nonetheless, have made no showing that they engaged in a "meaningful investigation to ascertain [the Defendant's] whereabouts." *China Ne. Petroleum Holdings*, 27 F. Supp. 3d at 398. There is no indication that Plaintiffs have hired a private investigator or expended any effort to confirm the Specially-Appearing Defendants' addresses. Instead, Plaintiffs appear to have only cursorily searched publicly available databases for information and sent one email to the undersigned counsel asking him to do Plaintiffs' job for them. This is not a meaningful investigation. *In re Sinohub*, 2013 WL 4734902, at *2 ("[Plaintiff's] request to bypass the Hague Convention after a trail of public records turned cold strikes this Court as a measure of convenience rather than necessity."). Plaintiffs cannot recast their lack of diligence in identifying the Specially-Appearing Defendants' addresses as an exigent circumstance justifying alternative service, particularly where they attach copies of readily available Spanish government documents containing addresses for two such defendants, list prospective addresses in the complaint, and had the means and wherewithal to timely effect service on every domestic defendant. *See* D.E. 37-43.

Plaintiffs attempt to excuse their failure to investigate by mischaracterizing the record to accuse the undersigned counsel of purposefully withholding the addresses and engaging in "gamesmanship." *See* Mot. at 1, 4 ("This court should permit alternative service immediately because the Spanish Investors' counsel at KWM have refused to accept service on behalf of their

clients or even confirm the Spanish Investors' addresses. . . ."). The undersigned is under no obligation to assist Plaintiffs' counsel in serving his clients or to reveal his clients' confidences. *See, e.g., Reeder v. Knapik*, 2007 WL 1521100, at *1 (S.D. Cal. May 22, 2007) ("[A] defendant has no duty or obligation to plaintiff to assist in the service of the complaint by providing co-defendants' addresses."). Moreover, the record plainly indicates that the undersigned merely relayed that his clients had not authorized him to accept service of process and that his clients did not consent to this Court's jurisdiction. *See* Gold Dec. Ex. A at 1 ("[W]e are not authorized to, nor will we accept, service of process on behalf of our Clients. Moreover, this response in no way represents consent to personal jurisdiction over our Clients in New York, or elsewhere in the U.S., which is expressly contested. Indeed, our Clients expressly reserve all available defenses to the claims in your putative action, including with respect to service of process, jurisdiction and venue."). Accordingly, when Plaintiffs' counsel requested that the undersigned counsel confirm his clients' addresses, he did not respond to that request, which plainly asked for him to reveal attorney-client communications and confidences. Had Plaintiffs attempted to discuss alternative service of process with the undersigned, the parties could have negotiated service and a schedule to respond to the complaint in good faith.

Since Plaintiffs have not even attempted service on the Specially-Appearing Defendants under the Hague Service Convention, or otherwise, and have done virtually nothing to ascertain or confirm the Specially-Appearing Defendants' addresses, their Motion is plainly a "measure of convenience rather than necessity" and should be denied. *In re Sinohub*, 2013 WL 4734902, at *2; *China Ne. Petroleum Holdings*, 27 F. Supp. 3d 379.

4.    **Plaintiffs Have Not Shown that Service Under the Hague Service Convention Would be Futile Such that Court Intervention is Necessary**

Service under the Hague Service Convention here would not be futile, nor have Plaintiffs made any showing that it would be. *See Ryan v. Brunswick Corp.*, No. 02–CV–0133E(F), 2002 WL 1628933, at *2 (W.D.N.Y. May 31, 2002) ("[T]his Court will require parties seeking relief under FRCP 4(f)(3) to show that they have reasonably attempted to effectuate service on the defendant(s) and that the circumstances are such that the district court's intervention is necessary to obviate the need to undertake methods of service that are unduly burdensome or that are untried but likely futile.").

Courts in this district routinely hold that: "[a] plaintiff seeking relief under Rule 4(f)(3) must adequately support the request with affirmative evidence of the lack of judicial assistance by the host nation, conclusory assertions of the futility of Hague service are unavailing." *Arista Records*, 2008 WL 563470, at *1 (emphasis added); *see also Gateway Overseas*, 2006 WL 2015188, at *4 (granting motion to dismiss for improper service and noting that plaintiff's conclusory representations "that it was informed that an attempt to serve through Pakistan's central authority, pursuant to the Hague Convention, would be futile" was insufficient).

Ordinarily, futility is shown through evidence that the central authority has been uncooperative or has engaged in undue delay in effecting service. *See, e.g. Advanced Aerofoil Techs.*, 2012 WL 299959, at *2 (denying motion for alternative service because "[t]his is not a matter where the foreign state has refused to take action or where service has been unduly delayed by the foreign state."); *In re S. African Apartheid Litig.*, 643 F. Supp. 2d 423, 433 (S.D.N.Y. 2009) ("Court-directed service is particularly appropriate where a signatory to the Hague Service Convention has refused to cooperate for substantive reasons."); *see also* Fed. R. Civ. P. 4 Advisory Committee Notes on Subdivision (f) (1993) ("Article 15 does provide that alternate methods may

18

be used if a Central Authority <u>does not respond within six months</u> . . . there have been occasions when the signatory state was dilatory or refused to cooperate for substantive reasons. <u>In such cases, resort may be had to the provision set forth in subdivision (f)(3)</u> . . . Other circumstances that might justify the use of additional methods include the <u>failure of the foreign country's Central Authority to effect service within the six-month period</u> provided by the Convention . . . <u>In such cases</u>, the court may direct a special method of service <u>not explicitly authorized by international agreement if not prohibited by the agreement</u>.") (emphasis added).

Accordingly, in the absence of a significant (at least six-month) delay in service or substantive lack of cooperation by the central authority, alternative service under Rule 4(f)(3) would be inappropriate. *Shehyn*, 2008 WL 6150322, at *3 ("[i]f a Central <u>Authority is dilatory or refuses to cooperate</u>, a plaintiff may request a U.S. court to order alternative service methods pursuant to Rule 4(f)(3), <u>so long as the plaintiff waits at least six months from her initial application to the foreign Central Authority</u>.") (emphasis added).

No such circumstances warrant alternative service here. Plaintiffs cannot demonstrate any undue delay because they filed the instant Motion one month after contacting the Spanish Central Authority; not after six months after the Spanish Central Authority refused to cooperate or was otherwise dilatory. Nor is there any indication that the Spanish Central Authority has been obstructionist or non-cooperative. *Cf. Arista Records*, 2008 WL 563470, at *2 (finding service in Russia would be futile because "the Central Authority of the Russian Federation denies all requests for service of process originating from the United States [and] judicial cooperation between the two countries has been suspended since July, 2003."); *cf. Bidonthecity.com LLC v. Halverston Holdings Ltd.*, No. 12 CIV. 9258 ALC MHD, 2014 WL 1331046, at *10 (S.D.N.Y. Mar. 31, 2014) ("Plaintiffs have met that burden [of showing futility of service under the Hague Service

Convention] as the Court takes judicial notice of the fact that Russia refuses to transmit service requests through its Central Authority and thus requests go unexecuted.").

Plaintiffs argue only the baseless assertion that "[d]ue to COVID-19 and gamesmanship by counsel of the Spanish Investors, it is impossible to serve the Spanish Investors through the Central Authority in Spain per the Hague Convention." Mot. at 2. This false and conclusory statement does not sufficiently demonstrate futility. *Arista Records,* 2008 WL 563470, at *1 ("[C]onclusory assertions of the futility of Hague service are unavailing."); *Gateway Overseas*, 2006 WL 2015188. As established *supra* at pp. 6, 16-17, there was no "gamesmanship" by the undersigned counsel and the Spanish Central Authority did not indicate that service could not be timely effected on the Specially-Appearing Defendants; it merely informed Plaintiffs that it would "not be able to <u>ensure the processing of every request</u> received for the duration of this exceptional situation . . . only urgent requests, with due accreditation of said urgency . . . will effectively be processed." *See* Gold Dec. Ex. B. at 1 (emphasis added). Plaintiffs are free to mark their service of process as urgent and attempt to serve the Specially-Appearing Defendants.

Further, service of process in Spain may no longer be delayed or impacted by the COVID-19 pandemic. In the time since Plaintiffs contacted the Spanish Central Authority, Spain has since reopened its borders and government following the coronavirus pandemic, and Plaintiffs have apparently made no further inquiries of the Spanish Central Authority. *See, e.g.,* Greg Dickinson, Spain to reopen borders on June 21, The Telegraph, https://www.telegraph.co.uk/news/2020/06/14/travel-news-police-have-issued-no-quarantine-fines-week/ (last visited June 30, 2020).[3]

---

[3] The Specially-Appearing Defendants request that the Court take judicial notice of this website and the FedEX website on page 21, *infra*, and their content pursuant to Federal Rule of Evidence 201. *Magnoni v. Smith & Laquercia, LLP*, 701 F. Supp. 2d 497, 501 (S.D.N.Y. 2010) ("It is generally proper to take judicial notice of articles and [websites] published on the [i]nternet.") (citation and quotation marks omitted), *aff'd*, 483 F. App'x 613 (2d Cir. 2012).

Accordingly, Plaintiffs have not demonstrated that service upon the Specially-Appearing Defendants under the Hague Service Convention would be futile. The Spanish Central Authority has not been uncooperative, Plaintiffs have not attempted service, and six-months have not passed since their initial communication with the Spanish Central Authority, indicating an absence of undue delay. Moreover, Plaintiffs have not engaged in <u>any effort whatsoever</u> to serve the Specially-Appearing Defendants under the Hague Service Convention or otherwise, nor have they engaged in a "meaningful investigation" to discover or confirm their whereabouts. As such, the Motion for alternative service under Rule 4(f)(3) should be denied.[4]

### C.  Personal Service Under Rule 4(f)(2)(C)(i) is Not Permitted

Rule 4(f)(2)(C)(i) provides that if there is no internationally agreed means of service or if an international agreement allows, but does not specify other means, service may be effected by delivering a copy of the summons to the individual personally so long as that service is not prohibited by the foreign country's law. Fed. R. Civ. P. 4(f)(2)(C)(i). Plaintiffs argue that Rule 4(f)(2)(C)(i) permits personal service upon the Specially-Appearing Defendants because Article 19 of the Hague Service Convention states that any method of service not specifically objected to by a signatory is permitted. Mot. at 5 (quoting *S.E.C. v. Alexander*, 248 F.R.D. 108, 111 (E.D.N.Y. 2007)). In support, Plaintiffs rely principally on *Banco Latino*, 53 F. Supp. 2d 1273. In *Banco*

---

[4] For these same reasons, service upon the undersigned counsel pursuant to Rule 4(f)(3) would be impermissible. *Madu*, 265 F.R.D. at 116 (denying motion for alternative service upon counsel because "Plaintiffs have not met their threshold requirement of reasonably attempting to effect service on defendants . . . Plaintiffs' unsupported statements do not constitute a reasonable attempt to effectuate service that courts in this Circuit require before obtaining the Court's assistance."); *Freeplay Music, LLC v. Rigol Techs. USA, Inc.*, No. 18 CIV. 10980 (ER), 2020 WL 564232, at *4 (S.D.N.Y. Feb. 4, 2020) (denying motion for alternative "service <u>on [Defendant's] U.S. counsel</u>," noting that "courts in this Circuit have generally required: (1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary" and that plaintiff "<u>has failed to articulate good reasons why it could not have realistically served [Defendant]</u> until now . . . This is not a case where repeated amended pleadings would have rendered service via the Hague Convention useless . . . or where [Defendant] has withheld its address from [Plaintiff] . . . or where [the central authority] has refused to effect service under the Hague Convention . . . <u>Though the Court is mindful that service under the Hague Convention is time-intensive, in the instant case, this alone does not excuse [Plaintiff] from attempting such service at all</u>.") (internal quotations and quotation marks omitted) (alterations and emphasis added).

*Latino,* the court interpreted Article 19 of the Hague Service Convention "so as to permit service by any means, subject to the Federal Rules of Civil Procedure, not proscribed by the foreign country." *Id.* at 1280. Article 19 provides:

> to the extent that the internal law of a Contracting State permits methods of transmission, other than those provided for in the preceding Articles, of documents coming from abroad, for service within its territory, the present Convention shall not affect such provisions.

Hague Service Convention Art. 19. The *Banco Latino* court then reviewed whether personal service by an individual was "proscribed" by Spain and concluded that personal service by a process server is neither authorized nor proscribed under Spanish law and as a result, personal service was permitted under Rule 4(f)(2)(C)(i). *Banco Latino*, 53 F. Supp. 2d at 1280.

As an initial matter, Specially-Appearing Defendants Chipper and Urincha are corporations and cannot be served personally. Fed. R. Civ. P. 4(h)(2) (explaining that a foreign corporation that is not within any judicial district of the United States may be served "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)."). As to the remaining Specially-Appearing Defendants, neither *Banco Latino*, nor any of the other precedent Plaintiffs cite is binding upon this court and the Court should not interpret Article 19 in the same manner. *See TM Patents v. IBM*, 107 F. Supp. 2d 352, 353 (S.D.N.Y. 2000) ("Only decisions of the United States Supreme Court and the *relevant Courts of Appeals* are binding on a District Court, and as neither the Supreme Court nor the Second Circuit has ever construed 28 USC § 1498, there is no binding authority for me to follow, only *persuasive authority*.") (emphasis in original).

Although similarly nonbinding, the court in *ePlus Tech., Inc. v. Aboud*, 155 F. Supp. 2d 692, 699 (E.D. Va. 2001) cogently and comprehensively explained that Article 19 of the Hague Service Convention permits alternative service not contemplated by the convention only if such

methods are *expressly authorized* by that state's law. The court began by noting that the plain

dictionary meaning of "permit" in Article 19, authorizes "only those service methods that are

explicitly sanctioned by the law of the receiving country." *Id.* Further, Article 19 notes that the

convention "shall not affect <u>such provisions</u>," referencing antecedent provisions that expressly

permit methods of transmission, not the absence of prohibition. The court went on to explain that

elsewhere in the Hague Service Convention, the word "permit" is used in the sense of "express

authorization" and the *Banco Latino* interpretation would render certain provisions superfluous.

*Id.* The *Banco Latino* interpretation of Article 19 also leads to absurd results. If Article 19 permits

service by any method not specifically prohibited by that state:

> contracting states would be placed in the awkward and difficult position of having to
> imagine every sort of objectionable or obnoxious mode of service and then expressly
> prohibiting them under Article 19. This nonsensical result would provide no guidance to
> litigants and increase disputes over the propriety of service of process under Article 19. It
> would, in short, defeat the Convention's stated purpose of' "improv[ing] the organisation
> of mutual judicial assistance ... by simplifying and expediting the procedure.' Preamble.
> Accordingly, Article 19 is appropriately and sensibly read as allowing only those methods
> of service explicitly sanctioned by the contracting state.

*Id.* at 700. (citing Hague Service Convention Preamble). Indeed, as commentators have noted:

> as a ludicrous example, if a state objected to service by a private person, would service by
> a private person's trained monkey be allowed because the state had failed to envision, and
> object to, that contingency? Administrative practicalities dictate that the method employed
> be one that the law of state of destination expressly states as constituting a valid method of
> service.

1 Ved P. Nanda, et al., *Litigation of International Disputes in U.S. Courts* § 2:8 Law of the

destination state (2020). As such, the Court should adopt the reading of Article 19 espoused by the

*ePlus* court: personal service is permitted upon the non-corporate Specially-Appearing Defendants

only if such personal service is expressly authorized by Spanish law. *See GMA Accessories, Inc.*

*v. BOP, LLC*, No. 07CIV3219(PKC)(DCF), 2009 WL 2856230, at *3 (S.D.N.Y. Aug. 28, 2009)

("[O]nly those methods of service <u>that specifically allow</u> the service of documents coming from

outside the country in question will satisfy Article 19."); *accord Brown-Thomas v. Hynie,* 367 F.

Supp. 3d 452, 466 n.9 (D.S.C. 2019) ("The court is persuaded by a well-reasoned opinion by Judge

Ellis of the Eastern District of Virginia, which concludes that Article 19 'allow[s] only those

methods of service explicitly sanctioned by the contracting state.'") (quoting *ePlus,* 155 F.Supp.2d

at 700) (alteration in original); *In re Mak Petroleum, Inc*., 424 B.R. 912, 920 (Bankr. M.D. Fla.

2010). As Plaintiffs have not explained what personal service is permissible under Spanish law or

limited their Motion to such service, it should be denied.[5]

### D.  Alternative Service by Postal Channels Must Comply with Rule 4 or Spanish Law

Although not entirely clear, Plaintiffs also argue that the Specially-Appearing Defendants

can be served via postal channels pursuant to Art. 10 of the Hague Convention and request that

they be permitted to serve the Specially-Appearing Defendants by mail "without requiring a

signature upon delivery," as required by Rule 4. Fed. R. Civ. P. 4(f)(c)(2)(ii) ("[u]sing any form

of mail that the clerk addresses and sends to the individual and that requires a signed receipt.");

Mot. at 6. The Supreme Court has recently opined that: "in cases governed by the Hague Service

Convention, service by mail is permissible if two conditions are met: first, the receiving state has

not objected to service by mail; and second, service by mail is authorized under otherwise-

applicable law." *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1513 (2017). Plaintiffs provide no

support for their conclusory assertion that Spain has not objected to service by mail. Mot. at 6.

Moreover, Plaintiffs have not shown that service by mail is authorized under "otherwise-applicable

law" and their Motion should be denied on this ground alone. *Id.*; *see Shull v. Univ. of Queensland*,

No. 218CV01781APGPAL, 2018 WL 6834327, at *4 (D. Nev. Dec. 28, 2018) (denying motion to

---

[5] Although Plaintiffs do not explain what service is expressly permitted under Spanish law, the *Banco Latino* court
noted that "Spain, although authorizing service by delivery, does not permit such service to be effectuated by private
individuals. Rather, Spanish law mandates that the deliverer of service be a certain judicial official." *Banco Latino*,
53 F. Supp. 2d at 1279. Accordingly, personal service by a process server would appear to be impermissible.

serve via mail where plaintiff had "not provided a memorandum of points and authorities addressing whether service by mail is affirmatively authorized in the . . . jurisdiction where defendants are located . . . The court need not do [plaintiff's] legal research for him.").

Further, no "otherwise-applicable law," i.e. the Federal Rules of Civil Procedure, permits such service here. *See Wyndham Hotel Grp. Canada, ULC v. 683079 Ontario Ltd*., No. CV 17-4000 (JMV), 2018 WL 2078704, at *5 (D.N.J. May 4, 2018) (Explaining that under *Water Splash*, "[t]he Court must look to the 'otherwise-applicable law' of the forum in this case: the Federal Rules of Civil Procedure.") (citing *Water Splash*, 137 S. Ct. at 1508); *Water Splash*, 137 S. Ct. at 1513 (explaining that the Texas Court of Appeals . . . "had no occasion to consider whether Texas law[,the law of the forum,] authorizes the methods of service used . . . ."). Rule 4(f)(1) only applies to "internationally agreed means of service . . . such as those authorized by the [Hague Service Convention]." Fed. R. Civ. P. 4(f)(1). As the Supreme Court explained, however, the Hague Service Convention does not authorize service by mail and it is therefore not an "internationally agreed" means of service under Rule 4(f)(1): "to be clear, this does not mean that the Convention affirmatively *authorizes* service by mail." *Water Splash,* 137 S. Ct. at 1513. (emphasis in original); *Zanghi v. Ritella*, No. 19 CIV. 5830 (NRB), 2020 WL 589409, at *3 (S.D.N.Y. Feb. 5, 2020) ("Rule 4(f)(1) is inapposite because the Hague Convention . . . does not authorize service by email or mail . . . ."). To the extent Plaintiffs' Motion seeks alternative service under Rule 4(f)(3), as explained *supra* at pp. 9-24, Plaintiffs have not met the threshold requirements for such alternative service. This leaves Rule 4(f)(2)(A) and Rule 4(f)(2)(c)(ii), which would permit service if either: (1) Plaintiffs serve the Specially-Appearing Defendants in a manner "prescribed by [Spain]'s . . . law for service in . . . [Spain] in an action in its courts of general jurisdiction;" or (2) they request that the clerk of court serve the Specially-Appearing Defendants using a form of mail that "requires

a signed receipt," respectively. Fed. R. Civ. P. 4(f)(2)(A), (C)(ii); *see* 1 Moore's Federal Practice–Civil § 4.52[2][d] (2020) (explaining that sending service by mail under the Federal Rules of Civil Procedure pursuant to "otherwise-applicable law" must be effected pursuant to Rule 4(f)(2)(C)(ii), requiring service by mail to be sent by the clerk of court).[6] Rule 4(f)(2)(C)(ii) is inapposite as it specifically requires a signed receipt and Plaintiffs have not shown that service by mail without return receipt is a method "prescribed by Spanish law" and they have "therefore failed to . . . meet their burden under Rule 4(f)(2)(A) of demonstrating such compliance." *Zanghi*, 2020 WL 589409, at *4; *Wyndham,* 2018 WL 2078704, at *6 (concluding plaintiff failed to establish service under Rule 4(f)(2)(A) because plaintiff failed to "provide analysis of methods of proper service for Canadian courts of general jurisdiction").

Notwithstanding the clear strictures of Rule 4, Plaintiffs make a confused argument that they should be permitted alternative service under Rule 4(f)(3), foregoing the requirements of Rule 4(f)(2)(c)(ii) because: "in lieu of the current pandemic, it is impossible to guarantee a mail carrier will be able to obtain a signature upon delivery." Mot. at 6. Plaintiffs provide no support for this baseless assertion and have not met the threshold requirements for alternative service under Rule 4(f)(3). *Id.* Moreover, a brief review of the FedEx website reveals that FedEx continues to deliver packages that require receipt by signature in Europe: "Temporarily suspending signature required for most deliveries in Europe except for shipments with adult signature required." *See* FedEx, *Safety Above All during COVID-19*, https://www.fedex.com/en-es/coronavirus.html (last visited June 30, 2020).

---

[6] This same logic applies to service by email upon the Specially-Appearing Defendants. Plaintiffs do not meet the threshold requirements for service under Rule 4(f)(3) nor do they indicate that service by email is authorized by the Hague Service Convention or by Spanish law pursuant to Article 19. *See, e.g., Zanghi,* 2020 WL 589409, at *5 ("[e]mail is not a permitted method of service under the Hague Convention . . . .").

Service by mail must be effected within the strictures of Rule 4(f)(2)(C)(ii) or as prescribed by Spanish law pursuant to Rule 4(f)(2)(A). *Zanghi,* 2020 WL 589409; *accord Geopolymer Sinkhole Specialist, Inc. v. Uretek Worldwide Oy*, No. 8:15-CV-1690-T-36JSS, 2015 WL 4757937, at *3 (M.D. Fla. Aug. 12, 2015) ("[A] plaintiff located in the United States may serve process via mail on a foreign defendant located in a country that is a signatory of the Hague Convention if (1) the receiving country does not object and (2) service by mail is performed in accordance with either Rule 4(f)(2)(C)(ii) or Rule 4(f)(3)."). Accordingly, the Court should deny the Motion, including Plaintiffs' request for service by mail without signatures.

## III.        CONCLUSION

Plaintiffs' Motion should be denied. Compliance with the Hague Service convention is mandatory. Plaintiffs have provided no persuasive justification for their complete and total failure to even attempt to effect service upon the Specially-Appearing Defendants or perform a meaningful investigation into their whereabouts. Instead, Plaintiffs mischaracterize the record to recast their failures as urgency warranting this Court's intervention. Given their lack of significant efforts, Plaintiffs' motion is plainly a "a measure of convenience rather than necessity" that should be denied. *In re Sinohub,* 2013 WL 4734902, at *2.

Dated: July 2, 2020
New York, NY

Respectfully submitted,

By: /s/ Vincent Filardo Jr.

Vincent Filardo, Jr.
Evan Zatorre

KING AND WOOD MALLESONS LLP
500 Fifth Avenue, 50th Floor
New York, NY 10110
Tel.: (347) 926-7570
vincent.filardo@us.kwm.com
evan.zatorre@us.kwm.com

*Attorneys for Defendants Daniel Escandon Garcia, Ramon Uriarte Inchausti, Chipper Investment SCR, S.A., and Urincha, SL*