UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONVERGEN ENERGY LLC, L'ANSE WARDEN ELECTRIC COMPANY, LLC, EUROENERGY BIOGAS LATVIA LIMITED, and LIBRA CAPITAL US, INC. <br><br> Plaintiffs, <br><br> -against- <br><br> STEVEN J. BROOKS, NIANTICVISTA ENERGY LLC, GREGORY MERLE, RIVERVIEW ENERGY CORPORATION, DANIEL ESCANDON GARCIA, RAMON URIARTE INCHAUSTI, CHIPPER INVESTMENT SCR, SA, URINCHA SL, THEODORE JOHN HANSEN, BRIAN R. MIKKELSON, and CONVERGEN ENERGY WI, LLC, <br><br> Defendants. | Index No. **1:20-cv-03746** (LJL) |

## PLAINTIFFS' REPLY IN SUPPORT OF
## MOTION TO SERVE DEFENDANTS
## BY ALTERNATIVE MEANS OF SERVICE

Dated: July 9, 2020
New York, New York

SEIDEN LAW GROUP LLP

Michael Stolper
Dov B. Gold
469 Seventh Avenue, Fifth Fl.
New York, NY 10018
(646) 766-1703

*Counsel for Plaintiffs*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................... 1

I.    The Spanish Defendants Do Not Substantively Address COVID-19 ............................. 2

II.   The Spanish Defendants Are Wrong About Means of Service ...................................... 3

III.  Plaintiffs' Motion is Not About Addresses................................................................. 6

IV.   The Opposition Filibusters Through Inapplicable or Uncontroverted Law................... 7

V.    The Spanish Defendants Have Repeatedly Rebuffed Plaintiffs .................................... 8

CONCLUSION........................................................................................................... 9

## <u>PRELIMINARY STATEMENT</u>

The Spanish defendants Daniel Escandon Garcia, Ramon Uriarte Inchausti, Chipper Investment SCR, S.A. and Urincha, SL (collectively, the "**Spanish Defendants**") submitted a 28-page opposition ("**Opposition**") of mostly uncontested or inapplicable legal principals, but very little airtime is given to the primary reason for alternative service: COVID-19 and the ensuing global pandemic.[1] COVID-19 has proven to be both extremely disruptive and durable such that the Central Authority of Spain – the agency through which service in Spain is ordinarily processed – advised Plaintiffs in writing that it cannot ensure processing of requests for "the duration of this exceptional situation." This statement led Plaintiffs to seek alternative service.

Facing an unassailable basis for Plaintiffs' request, the Spanish Defendants simply argue that Plaintiffs should have done more to effectuate service. Plaintiffs should have tried to negotiate with counsel for the Spanish Defendants despite counsel's express unwillingness to accept service or engage in any meaningful conversation about the case. Plaintiffs should have continued to press the Central Authority for at least six months despite the express statement that service could not be ensured during the unprecedented circumstance presented by COVID-19. This wishful thinking – that Plaintiffs should effectively bang their collective heads against a wall for at least six months – is not grounded in any cited law or submitted evidence. On the contrary, the argument ignores and is therefore in conflict with the now conceded fact that the Spanish Defendants received and continue to have access to Plaintiffs' trade secrets and proprietary information.[2] The current temporary restraining order and the upcoming injunction hearing are intended to address Plaintiffs'

---

[1]	All capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Complaint.

[2]	While the non-Spanish Defendants have failed to comply with most of the Court-ordered expedited discovery demands, one of the few concessions they provided is in connection with the Spanish Defendants. *See* Gold Dec. ¶ 8.

claims of irreparable harm, including harm caused by the Spanish Defendants. The Spanish Defendants would have Plaintiffs sit on their hands for at least six months to see what happens in Spain. The argument is, at bottom, quite comical.

Perhaps the Spanish Defendants were hoping to confuse the Court by conflating the primary reason for alternative service (COVID-19) with Plaintiffs' request to serve <u>one</u> of the individual Spanish Defendants through counsel because of a lack of a confirmed address for that one defendant. This is reflected in the Opposition's avoidance of COVID-19 and alternative focus on Plaintiffs' efforts to investigate the addresses of <u>all</u> the Spanish Defendants, especially when only one address is at issue. (Plaintiffs stand by their investigative efforts but the bases on which they seek alternative service are muddled in the Opposition.) The mischaracterizations and misplaced legal principals populating the Opposition do not overcome the incontrovertible need for alternative service.

I.     <u>The Spanish Defendants Do Not Substantively Address COVID-19</u>

It is no coincidence that the Opposition does not attempt to address COVID-19 until page 20, where it suggests that "Plaintiffs are free to mark their service of process as urgent" in order to increase the odds that service through the Central Authority of Spain will be effectuated. This is nothing more than conjecture on the part of the Spanish Defendants. They cite to no authority suggesting that service in this civil case would satisfy the narrow exception of service in Spain for "urgent" matters. They also leave out the Central Authority's qualifier that "urgent" matters also require "due accreditation of said urgency"; surely marking documents as urgent as they suggest would not be sufficient. *See* Dkt. 59-2. If this matter qualified for such exigent treatment, the Spanish Authority would have so advised Plaintiffs' counsel in response to its initial inquiry; the Spanish Authority did not. Nonetheless, Plaintiffs have requested the Central Authority to explain what would constitute sufficient urgency but have not received a response. *See* Declaration of Dov

Gold ¶ 7 ("Gold Dec."). This is likely because the Central Authority, which is part of Spain's Ministry of Justice, is on the verge of collapse along with the rest of Spain's justice system. *See* Gold Dec. ¶ 9.

## II.    **The Spanish Defendants Are Wrong About Means of Service**

The Spanish Defendants are wrong in contending that the Court must wait six months before granting service under Rule 4(f)(3). There is no explicit six-month waiting period under the Hague Convention to seek alternative service. The six-month requirement applies only with respect to entering a default judgment. Article 15 of the Hague Convention states that a judge may enter a *judgment* even where service has not been received if "a period of time of not less than six months" has passed since the request was sent to the Central Authority (emphasis added); *See* Hague Convention on the Service, Article 15; *see generally Burda Media, Inc. v. Viertel*, 417 F.3d 292, 302 (2d Cir. 2005). This is not a prohibition that would limit Rule 4(f)(3), and "[t]he Hague Convention [] authorizes special forms of service in cases of urgency if convention methods will not permit service within the time required by the circumstances." *See also* Fed. R. Civ. P. 4 Advisory Committee Notes on Subdivision (f) (1993). The Spanish Defendants received Plaintiffs' trade secrets and confidential information presumably as part of their role in funding the fraudulent acquisition. *See* Gold Dec. ¶ 8. The suggestion that Plaintiffs should wait six months prior to requesting this relief is inconsistent with the facts and temporary restraining order granted by the Court.

The Southern District of New York often allows alternative service under Rule 4(f)(3) without a six-month delay. *See Zanghi v. Ritella*, No. 19 CIV. 5830 (NRB), 2020 WL 589409, at *7 (S.D.N.Y. Feb. 5, 2020) (finding service by e-mail proper under Rule 4(f)(3) where the e-mail

was sent one month after the complaint was filed);[3] *Washington State Inv. Bd. v. Odebrecht S.A.,* No. 17 CV. 8118 (PGG), 2018 WL 6253877, at *8 (S.D.N.Y. Sept. 21, 2018) (allowing service through Defendant's attorney under Rule 4(f)(3) without a six month delay); *Stream SICAV v. Wang*, 989 F. Supp. 2d 264, 280 (S.D.N.Y. 2013) (allowing service to Defendants registered agent and counsel within four months after amended pleadings had been filed because requesting service through the Hague would lead to an "inefficient result" and service on counsel "will be just as reliable, if not more so."); *In GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 266 (S.D.N.Y. 2012) (granting alternative service because "the Court is concerned that the length of time required for service under the Hague Convention, approximately six to eight months . . . may unnecessarily delay this case. Courts have frequently cited delays in service under the Hague Convention as supporting an order of alternative service under Rule 4(f)(3)."). There is no clear timeline for when service would be accomplished, except that it will certainly be delayed, which weighs in favor of granting alternative service.

Service on the Spanish Defendants' counsel under 4(f)(3) is permissible. The *Madu* case cited by the Spanish Defendants is not analogous to their relationship with counsel. In *Madu*, service on counsel did not satisfy due process standards because the attorneys were not even engaged by the defendants. *See Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria,* 265 F.R.D. 106, 116 (S.D.N.Y. 2010) ("Mr. Lovi of Steptoe & Johnson contends that no one at Steptoe & Johnson ever has represented Rwabwogo and Adabla. [] Moreover, Steptoe & Johnson does not know where they live or work or how to contact them."). The Spanish Defendants' cite to *In re Sinohub* for support that service on counsel would not be proper. However, *In re Sinohub* is easily distinguished; in that case the attorneys only communicated with the defendants twice and both

---

[3]     Spanish Defendants wrongly cite *Zhanghi* for the proposition that email service is not authorized under the Hague Convention. *See* Opposition at 26, FN 6.

times were through a third-party. *See In re Sinohub, Inc.* Sec. Litig., No. 12 CIV. 8478 WHP, 2013 WL 4734902, at *3 (S.D.N.Y. Aug. 14, 2013). Counsel for the Spanish Defendants has not articulated any difficulty communicating with the Spanish Defendants; on the contrary, counsel has been formally engaged and filed this opposition.

The Spanish Defendants incorrectly assert that Plaintiffs "have not shown that service by mail is authorized."[4] This ignores Plaintiffs' Memorandum of Law in Support of Motion to Serve Defendants by Alternative Means of Service at 6, explaining how such service is authorized under Rule 4(f)(3) (citing *Ackermann v. Levine*, 788 F.2d 830, 839 (2d Cir. 1986) and *Unite Nat'l Ret. Fund v. Ariela, Inc.*, 643 F. Supp. 2d 328, 334 (S.D.N.Y. 2008)). While the Spanish Defendants cite to Florida caselaw for the argument that service by mail must be effectuated pursuant to "Rule 4(f)(2)(C)(ii) or as prescribed by Spanish law pursuant to Rule 4(f)(2)(A)[,]" Spanish Defendants' own citation clearly states that "service by mail is performed in accordance with either Rule 4(f)(2)(C)(ii) *or Rule 4(f)(3)*." *See* Opposition at 27 (citing *Geopolymer Sinkhole Specialist, Inc. v. Uretek Worldwide Oy*, No. 8:15-CV-1690-T-36JSS, 2015 WL 4757937, at *3 (M.D. Fla. Aug. 12, 2015) (emphasis added)). Therefore, this Court should grant service by mail[5] because Spain does not object and service is proper under Rule 4(f)(3).[6]

As Plaintiffs stated in their initial brief, "New York courts have interpreted Rule 4(f)(2)(C)(i) to permit personal service so long as the law of the foreign jurisdiction does not specifically forbid personal service." *See Plaintiff's Memorandum of Law in Support of Motion to*

---

[4]    *See* Opposition at 24.
[5]    At the time of filing the Motion, Plaintiffs understood that Fedex would not require a signature for deliveries in Spain. Fedex currently does offer a service to require a signature for deliveries in Spain and the Plaintiffs would do so if granted this relief.
[6]    Spain is a signatory to the Hague Convention and has not objected to Article 10. *See* The Hague Conference on Private International Law Spain - Central Authority & practical information (https://www.hcch.net/en/states/authorities/details3/?aid=273).

*Serve Defendant's by Alternative Means of Service* at 3 (citing *S.E.C. v. Alexander*, 248 F.R.D. 108, 111 (E.D.N.Y. 2007) (internal quotations omitted); *see also S.E.C. v. Juno Mother Earth Asset Management, LLC*, 2012 WL 685302 at *4 (S.D.N.Y. Mar. 2, 2012); *see also SAT Int'l Corp. v. Great White Fleet (US) Ltd.,* No. 03 CIV. 7481 (KNF), 2006 WL 661042, at *15 (S.D.N.Y. Mar. 16, 2006) ("Unless prohibited by the law of the foreign country, service may be effected by: (i) delivering to an individual, personally, a copy of the summons and the complaint[.]") (citing Fed.R.Civ.P. 4(f)(2)(C)(i-ii)). The Spanish Defendants have cited no New York caselaw stating otherwise.

The Spanish Defendants vaguely cite to *In GLG Life Tech Corp. Sec. Litig.* for the proposition that international comity would require that Plaintiffs follow foreign law in its service efforts. Plaintiffs have not suggested serving in violation of Spanish law and the Spanish Defendants have not offered any evidence that Spanish law proscribes Plaintiffs' requested methods of alternative service. The cited case also did not find that comity was offended and authorized alternative service. *See In GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 266 (S.D.N.Y. 2012).

### III.    <u>Plaintiffs' Motion is Not About Addresses</u>

The Opposition plays games with the issue of addresses. On the one hand, the Opposition concedes that Plaintiffs have located addresses for the Spanish Defendants. Opposition at 16. On the other hand, the Opposition contends that "there is no indication that Plaintiffs have hired a private investigator or expended any effort to confirm the [Spanish Defendants'] addresses." Opposition at 16. This is just one of the inherently conflicting positions within the Opposition. Regardless, the accuracy of the Spanish Defendants' addresses is not at issue; only the address of

Case 1:20-cv-03746-AS   Document 71   Filed 07/09/20   Page 9 of 11


one of the Spanish Defendants (Escandon) was uncertain.[7] Escandon's address will be established shortly in discovery and service can be effectuated immediately thereafter. Contrary to the Opposition, a client's address is not privileged: "[T]he identity and address of a client are not generally held to be confidential communications and, thus, not privileged[.]" *Allen v. W. Point-Pepperell Inc.*, 848 F. Supp. 423, 431 (S.D.N.Y. 1994) (request for client's identity denied on other grounds as the client was not a party to the pending litigation); *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 130 F.R.D. 25, 26 (S.D.N.Y. 1990) (allowing deposition of attorney to ascertain a client's whereabouts as generally "information which identifies a client is unprotected by the attorney-client privilege.").

## IV.    The Opposition Filibusters Through Inapplicable or Uncontroverted Law

To create the illusion that Plaintiffs' motion conflicts with applicable legal principals, the Opposition wastes pages upon pages referencing cases or principals that are not at issue. For example, the Opposition argues that personal service on corporations abroad is prohibited. However, the Plaintiffs have not requested such relief with respect to the two corporate Spanish Defendants.

Similarly, the Opposition points out that a summons had not been requested for Spanish Defendant Daniel Escandon Garcia. This is because Plaintiffs had not been able to confirm his address as of the filing of this motion (but have since done so). But this has nothing to do with the primary reason for alternative service – the impact COVID-19 has had on the Central Authority of Spain. In any case, Plaintiffs have requested the clerk to issue a summons for Escandon with a newly obtained address. *See* Dkt. 70; Gold Dec. ¶ 10.

---

[7]    Plaintiffs have since identified Escandon's address and no longer base its alternative service request, in part, on the absence of a confirmed address for Escandon.

The Opposition's reference to translating the summons is similarly a red herring. Plaintiffs have translated the summonses and Complaint. *See* Gold Dec. ¶ 12. In sum, Plaintiffs have done all they can to serve through the Central Authority. Plaintiffs have sent their formal request for the Central Authority to serve Ramon Uriarte Inchausti, Chipper Investment SCR, S.A. and Urincha, SL. *See* Gold Dec.  ¶ 11.

## V.     The Spanish Defendants Have Repeatedly Rebuffed Plaintiffs

One of the more incredible contentions in the Opposition is the suggestion that Plaintiffs should have called Spanish Defendants' counsel to negotiate service. This ignores the fact that the Spanish Defendants and their counsel have been obstructive at every turn. On May 11, Plaintiffs' counsel emailed the Spanish Defendants a copy of the complaint, seeking to negotiate a settlement prior to filing this action. *See* Gold Dec. ¶ 1. On May 14, counsel for the Spanish Defendants responded by threatening to "seek appropriate sanctions" and stating, "we are not authorized to, nor will we accept, service of process." *See* Gold Dec. ¶ 4. On May 18, in response to notice of Plaintiffs' emergency application, Spanish Defendants' counsel took the opportunity to state that service "on our clients can only be properly effected through the Hague Service Convention." *See* Gold Dec. ¶ 5. On May 22, Plaintiffs' counsel wrote to request confirmation of the Spanish Defendants' addresses; counsel for the Spanish Defendants never responded. *See* Gold Dec.  ¶ 6. There is nothing in this brief history to suggest that the Spanish Defendants or their counsel were amenable to any discussion about service or that any such overture would be anything but futile. This futility is reinforced by three uncontested facts: (i) the Spanish Defendants never called Plaintiffs, even after the filing of this motion; (ii) the Spanish Defendants opted to submit a 28-page opposition rather than place a phone call to Plaintiffs; and (iii) the opposition itself failed to set forth terms on which the Spanish Defendants would agree to accept service. If such terms existed, they would have been stated. Instead, the Opposition merely alludes to the possibility of

such terms. This is the kind of gamesmanship employed by the Spanish Defendants and their counsel from the onset of this matter. Obviously, the only way the Spanish Defendants will accept service is if they are ordered to do so.

## **CONCLUSION**

The Spanish Defendants would like to watch from the sidelines while the litigation proceeds forward without them, their documents, or their testimony. Meanwhile, the Plaintiffs: (i) have sent the Complaint to the Central Authority despite COVID-19's uncertainties; (ii) do not know which trade secrets the Spanish defendants have; (iii) and want to avoid inefficiencies in litigating the issues raised. Although COVID-19 is unprecedented, the law is clear; the requested relief is not extraordinary and should be granted.

Dated: July 9, 2020       SEIDEN LAW GROUP LLP
New York, New York

           By:  /s/ Dov Gold
             Dov B. Gold
             Michael Stolper
             469 Seventh Avenue, Fifth Fl.
             New York, NY 10018
             (646) 766-1703

             *Counsel for Plaintiffs*