## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

CONVERGEN ENERGY LLC, et al.,

               Plaintiffs,

v.                                 CASE NO.: 1:20-CV-03746 (LJL)

STEVEN J. BROOKS, et al.,

               Defendants.

## ELMERINA BROOKS' BRIEF IN SUPPORT OF MOTION TO QUASH SUBPOENAS AND MOTION FOR PROTECTIVE ORDER

Non-party Elmerina Brooks ("Ms. Brooks") respectfully submits this brief in in support of her Motion to Quash and Motion for a Protective Order concerning the third-party subpoenas Plaintiffs served on Ms. Brooks.

## **INTRODUCTION**

At the request of her son (Defendant Steven Brooks), non-party Ms. Brooks provided a loan to Defendant NinaticVista Energy, LLC, through her limited liability company, Clark Kent, LLC. That is the entirety of Ms. Brooks' relationship to this case, a fact that Defendants explained to Plaintiffs well before Plaintiffs served the sweeping subpoenas in question on Ms. Brooks. Despite this, and despite the fact that the Court permitted only *limited* expedited discovery on matters pertinent to Plaintiffs' *preliminary injunction*, Plaintiffs served non-party Ms. Brooks with two far-reaching subpoenas, seeking an in-person deposition in New York on all matters relevant (and irrelevant) to this case, and an equally broad document request, seeking any and every document Ms. Brooks may have relating to the Plaintiffs. The subpoenas are inappropriate, overly broad, and seek discovery that Plaintiffs could have (and in many cases, already have) obtained

from Defendants. The Court should quash the subpoenas, and issue a Protective Order barring Plaintiffs from harassing Ms. Brooks further during expedited discovery.

**FACTS**

**A.      Ms. Brooks Had No Substantive Involvement in the Events at Issue this Case.**

Non-party Ms. Brooks is the sole member of Clark Kent, LLC ("Clark Kent"). (Declaration of Ryan M. Billings (July 13, 2020) ("Billings Decl."), Ex. 2, at 2.) Clark Kent, at the request of Ms. Brooks' son Defendant Steven Brooks, loaned money to Defendant NianticVista Energy, LLC ("Niantic"). (ECF No. 72-4, at 3 (Response to Interrogatory 4).) In connection with that loan, Ms. Brooks was told the (now-public, but non-public at the time) information that Convergen Energy LLC was selling its subsidiary Convergen Energy WI, LLC, to Niantic. This is the sum total of Ms. Brooks' relationship to this case.

Defendants have explained this in sworn statements to Plaintiffs. (*See id.*) Despite having knowledge of Ms. Brooks' non-involvement, and despite the Court's Order permitting only limited discovery on matters pertaining to Plaintiffs' request for a preliminary injunction, Plaintiffs provided notice to Defense counsel after business hours on June 29, 2020, that they intended to serve two subpoenas on Ms. Brooks. (Billings Decl. ¶ 2 & Ex. 1.) The subpoenas seek an extremely broad array of documents and testimony on any and all matters that could relate in any way to this case (and many that do not).

Because Ms. Brooks, a senior citizen and "at risk" person, was concerned about exposure to Covid-19 from a process server, on June 30, 2020, Ms. Brooks asked undersigned counsel to waive personal service on her behalf, which waiver Plaintiffs confirmed on June 30. (*Id.*, ¶ 3.) Counsel was formally retained by Ms. Brooks to represent her with respect to the subpoenas on July 13, 2020, the date of this filing. (*Id.*, ¶ 6.)

The response date for Ms. Brooks' deposition is July 14, 2020 (Billings Decl. Ex. 1, at 2[1]),

which at the time the subpoenas were served was past the deadline for submission of evidence in

support of Plaintiffs' preliminary injunction. (ECF Nos. 32 (original schedule), 36, 51, 62, 75

(extensions); Billings Decl. Ex. 2, at 6 (confirming Plaintiffs' understanding that declarations and

exhibits in support of or in opposition to Plaintiffs' motion were to be served by July 9).) Thus,

not only did the subpoenas seek substantial information that has nothing to do with Plaintiffs'

motion for an injunction, the testimony obtained could not even be used by Plaintiffs in support of

their motion!

Despite this (and even in advance of being formally retained), counsel below reached out

to Plaintiffs on July 7, 2020, to notify Plaintiffs that Ms. Brooks was seeking counsel to represent

her, but intended to move to quash the subpoenas. (*Id.*, ¶ 4 & Ex. 2, at 2.) In the same

correspondence, Defense counsel suggested that the parties participate in a meet-and-confer

conference on outstanding issues. (*Id.*, Ex. 2, at 3-4.) On July 12, undersigned counsel contacted

Plaintiffs again and offered to arrange a meet-and-confer conference to conciliate as to the

subpoenas. (*Id.*, ¶ 5.) As of the filing of this brief, Plaintiffs have not responded to either offer.

(*Id.*)

---

[1] The subpoena for documents required compliance by July 9, 2020. (Billing Decl. Ex. 1, at 8.) Assuming personal service of the subpoenas (which were finalized on the evening of June 29) could have been accomplished by July 2, this would have given non-party Ms. Brooks only seven calendar days (five business days) to respond. Fortuitously for Plaintiffs, Ms. Brooks waived service due to Covid-19 concerns, accepting service effective June 29 (11 calendar and eight business days before the response deadline). Either way you look at it, this is an unreasonable time for compliance under Rule 45(d)(3)(A)(I). *See In re Rule 45 Subpoena Issued to Cablevision Sys. Corp. Regarding IP Address 69.120.35.31*, No. 08-347 ARR MDG, 2010 WL 2219343, at *6 (E.D.N.Y. Feb. 5, 2010), *report and recommendation adopted in part,* No. 08MC347 ARR MDG, 2010 WL 1686811 (E.D.N.Y. Apr. 26, 2010) (holding that allowing a non-party only seven days to respond is unreasonable and fails to comply with Rule 45, and collecting cases). In such circumstances, courts have held that the non-party should be given at least 14 days to object or otherwise respond, especially where, as here: (1) the subpoena is overbroad on its face; (2) the non-party acted in good faith; and (3) counsel for the witness was in contact with the serving party's counsel in advance of challenging the subpoena. *See id.*; *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996) (permitting objections after the return date in a case where it had been repeatedly extended). This filing is made within 14 days of June 29, is made on the same day counsel was retained, and further all criteria (1)-(3) above are satisfied.

**B.     The Subpoenas are Just the Latest in a Series of Abusive and Improper Litigation Tactics by Plaintiffs.**

Those are the facts pertinent to Ms. Brooks. However, to understand fully the impropriety of Plaintiffs' subpoenas, some context of how the subpoenas fit within Plaintiffs' abusive litigation tactics is needed. On the afternoon of May 11, 2020, Plaintiffs' counsel sent an email to all the Defendants in this action, attaching a 27-page, six-count New York state-court draft complaint, and writing:

> Absent resolution of the issues in the attached complaint by noon Thursday, May 14, 2020, we will be seeking relief in a New York court, as time is of the essence due to the ongoing irreparable harm at issue. Be guided accordingly.

(ECF No. 68-1.) Less than 72 hours later, before Defendant Steven Brooks had even had the opportunity to secure counsel, let alone evaluate, consider and resolve all the "issues" raised in a 27-page complaint, Plaintiffs filed this suit. (ECF No. 1.) Less than three business days later, Plaintiffs filed an *ex parte* motion for emergency relief, including a temporary restraining order ("TRO"). (ECF No. 24.)[2]

At the time Plaintiffs' motion was filed, none of Defendants Steven Brooks, Greg Merle, Niantic or Riverview Energy Corporation ("Riverview") had been served. (Billings Decl. Ex. 3, at 2:11-14, 21-24.) Niantic and Riverview had not yet retained attorneys, and agreed to be represented by counsel below just hours before the call with the Court concerning Plaintiffs' *ex parte* emergency request. (*Id.*, at 27:5-7.) Four of the Defendants (two Spanish nationals and two Spanish

[2] As will be established in subsequent filings, Plaintiffs' claims are utterly lacking in merit, and were knowingly brought in the wrong forum despite the many arbitration contracts (drafted by the Libra Group's General Counsel) entered into by the Libra Group.

companies (the "Spanish Investors")) notified Plaintiffs they intended to contest the Court's personal jurisdiction over them, and did not attend the call.

During the call, one issue flagged by Defendants' counsel was that Defendant Steven Brooks is in quarantine with his mother (Ms. Brooks) in Connecticut, and that Ms. Brooks is a senior citizen and a person who is "at-risk" with respect to Covid-19. (Billings Decl. Ex. 3, at 26:1-13.) In their *ex parte* TRO, Plaintiffs sought to command Steven Brooks to break quarantine and travel to Manhattan to retrieve his Libra work phone from Mr. Brooks' New York apartment. (*Id.*) As counsel explained during the May 19 call, Steven Brooks was concerned that he might become infected with Covid-19 during such a trip, and thereby expose his at-risk mother when he returned to their Connecticut home. (*Id.*[3])

In Plaintiffs' TRO motion papers, they told the Court that Plaintiffs needed only very limited expedited discovery, related to the New York and federal trade secret claims they brought.[4] And with respect to those claims, Plaintiffs represented they needed only "[n]arrowly tailored discovery to determine the scope of dissemination beyond the Defendants…to determine what further acts Plaintiffs must take to protect their trade secrets and plug any leaks that have been overlooked." (ECF No. 25, at 10.) Similarly, Plaintiffs' proposed order on their *ex parte* TRO filing requested "expedited discovery to determine who has had or continues to have access to Plaintiffs' trade secrets, and where such trade secrets are stored." (Order to Show Cause, ECF No. 24, at 3(e)).)

---

[3] Out of this concern, both Steven and Ms. Brooks have affirmatively waived service of the Complaint and subpoenas, respectively, to avoid contact with a process server.

[4] To the extent Plaintiffs' Stored Communications Act claim or the alleged "hack" are pertinent to Plaintiffs' preliminary injunction motion, these have nothing to do with Ms. Brooks, as the "stored communications" and "hack" relate solely to electronic information on Defendant Convergen Energy WI, LLC's server, and certain Office 365 accounts administered by Convergen Energy WI.

After the call with the Court on May 19, 2020, the Court granted Plaintiffs' motion, and entered a revised version of Plaintiffs' proposed order, permitting expedited discovery "to address all issues relevant to the application for a preliminary injunction." (ECF No. 28.) The Court also permitted the parties to take limited depositions during a short window of time, and solely of persons who submitted a Declaration in support of or opposition to Plaintiffs' preliminary injunction motion. (ECF No. 32.)

Given the concerns Plaintiffs raised in their *ex parte* motion papers, Defendants expected that Plaintiffs would serve discovery: (1) seeking the identification of individuals who have received information about the Plaintiffs (which Plaintiffs sought in interrogatories, and Defendants fully answered (*See* ECF Nos. 72-3, at 4 (Response to Interrogatory 1), 72-4, at 2 (same)), and; (2) the identification of specific electronic devices that might contain Plaintiffs' purported trade secrets (which Plaintiffs have not pursued in written discovery).

Instead, emboldened by the Court's Order, Plaintiffs decided to conduct a deep dive into the merits of this case, asking, over a nearly 18-month period, for every document that contained any "non-public" information about any member of the Libra Group, all emails sent or received from Steven Brooks' personal email address that contained such information, and all emails on any subject sent to or received from one of Fidel Andueza's email addresses, even though Mr. Andueza remains a high-ranking executive with the Libra Group, and Plaintiffs have full access to Mr. Andueza's emails. (*See* Billings Decl. Ex. 2, at 2-3.[5]) The subpoenas served on Ms. Brooks are representative of the kinds of discovery Plaintiffs have been seeking.

---

[5] As Defendants explained to Plaintiffs in a sworn statement, Defendants are in the process of reviewing approximately 262,000 emails to respond to the concerns Plaintiffs have raised.

In addition to seeking merits discovery from the Defendants, Plaintiffs have to date served four separate subpoenas on third-parties, including the subpoenas for testimony and documents on Ms. Brooks. (*Id.*, ¶ 8.) Because Plaintiffs cannot take Steven Brooks' deposition unless he submits a declaration, Plaintiffs have decided to target his mother, Ms. Brooks, commanding her in the subpoenas to travel to midtown-Manhattan on July 14 during a work day and sit for a deposition (no remote-appearance option was presented by Plaintiffs in their lengthy subpoena papers), and demanding that Ms. Brooks produce any and all documents she may have that relate in any way to this case. (*See generally* Billings Decl. Ex. 1.)

**C.    The Subpoenas Have an Extremely Broad Scope.**

The subpoenas served on Ms. Brooks seek a full merits inquiry. The subpoena for testimony indicates that the topics of deposition are:

1.    Your knowledge of the Acquisition [of Convergen Energy WI, LLC by Defendant Niantic].

2.    Your knowledge of your son, Steven Brooks' work at Libra Group or Convergen Energy WI, LLC concerning the Acquisition.

3.    Your knowledge of "Trade Secrets and Confidential Information of Plaintiffs" [defined as "all non-public data" concerning the Plaintiffs].

4.    Your knowledge of the agents, employees, officers, directors, ownership, membership, or those with a pledge, loan, guarantee, shareholding or other financial interest in Clark Kent, LLC.

5.    Your knowledge of the agents, employees, officers, directors, ownership, membership, or those with a pledge, loan, guarantee, shareholding or other financial interest in Riverview Energy LLC.

6.    Your knowledge of the agents, employees, officers, directors, ownership, membership, or those with a pledge, loan, guarantee, shareholding or other financial interest in Niantic Vista Energy, LLC.

7.    Your knowledge of the agents, employees, officers, directors, ownership, membership, or those with a pledge, loan, guarantee, shareholding or other

financial interest in Cypress Lane, LLC or 4406 Cypress Lane, LLC.

    8.     Your knowledge of the Complaint (attached) and the allegations therein.

(Billings Decl. Ex. 1, at 5-6.)

The subpoena for documents has an equally broad scope. It seeks:

    1.     All documents and communications concerning the Acquisition [of Convergen Energy WI, LLC].

    2.     All documents and communications with your son, Steven Brooks, concerning Libra Group or Convergen Energy WI, LLC.

    3.     All documents and communications concerning Trade Secrets and Confidential Information of Plaintiffs [defined as all "non-public data" concerning the Plaintiffs].

    4.     All documents and communications reflecting the agents, employees, officers, directors, ownership, membership, or those with a pledge, loan, guarantee, shareholding or other financial interest in Clark Kent, LLC.

    5.     All documents and communications reflecting the agents, employees, officers, directors, ownership, membership, or those with a pledge, loan, guarantee, shareholding or other financial interest in Riverview Energy LLC.

    6.     All documents and communications reflecting the agents, employees, officers, directors, ownership, membership, or those with a pledge, loan, guarantee, shareholding or other financial interest in Niantic Vista Energy, LLC.

    7.     All documents and communications reflecting the agents, employees, officers, directors, ownership, membership, or those with a pledge, loan, guarantee, shareholding or other financial interest in Cypress Lane, LLC or 4406 Cypress Lane, LLC.

    8.     All documents and communications concerning the Complaint (attached) and the allegations therein.

(*Id.*, Ex. 1, at 16.)

Through these two subpoenas, Plaintiffs seek to conduct a complete investigation of the merits of this case. Counsel below informed Plaintiffs on July 7, 2020, that Ms. Brooks would be

seeking to quash the subpoenas (Billings Decl. Ex. 2, at 2), which are unnecessary and unreasonable, beyond the scope of Court's limited discovery Order,[6] and would needlessly threaten Ms. Brooks' health, given her disclosed status as an "at-risk" person with respect to Covid-19. In that same July 7 communication, undersigned counsel offered to participate in a prompt meet-and-confer conference, and renewed that offer on July 12. (*Id.*, Ex. 2, at 3-4 & ¶ 5.) As of the time of this filing, Plaintiffs have not responded to either offer. (*Id.*)

## ARGUMENT

### I.      Plaintiffs Had The Obligation To Avoid Imposing Undue Burden or Expense on Non-Party Ms. Brooks.

Rule 45 requires the party issuing a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." *City of Almaty, Kazakhstan v. Sater*, No. 19CV2645AJNKHP, 2020 WL 2765084, at *2 (S.D.N.Y. May 28, 2020) (quoting Fed. R. Civ. P. 45(d)(1).) The court "*must* quash or modify a subpoena" if it "subjects a person to undue burden." *Id.* (quoting Fed. R. Civ. P. 45(d)(3) (emphasis in *Almaty*).) In assessing burden, "special weight [should be given] to the burden on non-parties of producing documents to parties involved in litigation." *Cohen v. City of New York*, 255 F.R.D. 110, 117 (S.D.N.Y. 2008) (internal quotation omitted); *see also Fears v. Wilhelmina Model Agency, Inc.,* No. 02 Civ. 4911, 2004 WL 719185, at *1 (S.D.N.Y. April 1, 2004) ("[T]he Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on [a] nonparty."); *Concord Boat Corp. v. Brunswick Corp.,* 169 F.R.D. 44, 49 (S.D.N.Y. 1996) ("[T]he status of a

---

[6] One additional reason that merits discovery should not proceed at this stage is that this Court is the wrong forum, as the parties agreed in numerous contracts to arbitrate this dispute.

witness as a nonparty to the underlying litigation entitles [the witness] to consideration regarding expense and inconvenience." (internal quotation omitted) (alteration in original)).

Factors to consider when assessing burden include "the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Id.* at 117-18. Third-party subpoenas are subject to Rule 26(b)(1), and therefore the discovery sought must also be proportional to the needs of the case. *KOS Bldg. Grp., LLC v. R.S. Granoff Architects, P.C.*, No. 19CV2918 (PMH)(LMS), 2020 WL 1989487, at *2 (S.D.N.Y. Apr. 24, 2020). In addition, whether considering party or non-party discovery, the Court "must limit the frequency or extent of discovery" if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C). Further, any person from whom discovery is sought may move for a Protective Order, and, for good cause, the Court may issue an order to protect a person "from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

Here, the subpoenas impose an undue burden on non-party Ms. Brooks, are cumulative and duplicative of discovery Plaintiffs have sought from Defendants, and seek to annoy, embarrass, harass and oppress a senior citizen with no substantive ties to the events in dispute in this case, let alone the limited issues involved in Plaintiffs' motion for a preliminary injunction.

## II.     The Subpoenas are Unnecessary, Burdensome, Harassing, and Beyond the Scope of the Court's Order Permitting Limited Expedited Discovery.

### A.     The Subpoena *Ad Testificandum* is Unduly Burdensome, Duplicative and Inappropriate.

*1.     It is unduly burdensome to insist that Ms. Brooks attend an in-person deposition in Manhattan.*

In its Order establishing the protocol for Plaintiffs' motion for a preliminary injunction, the Court authorized the parties to take depositions (during a limited window) only of persons who submit Declarations in support of or in opposition to Plaintiffs' motion. (ECF No. 32, at 1.) As Plaintiffs know, Steven Brooks does not intend to submit a Declaration concerning Plaintiffs' preliminary injunction motion. Because they cannot depose Steven Brooks, Plaintiffs have sought to circumvent the Court's Order by seeking to depose Mr. Brooks' mother. The subpoena for testimony should be quashed as an improper back-door attempt to avoid the procedure set in place by this Court.

In addition, it is patently improper to command someone like Ms. Brooks, who is known to Plaintiffs to be "at risk" for Covid-19, to travel from her home in Connecticut to downtown Manhattan during a work day to sit for an in-person deposition. In-person depositions are simply not being taken during this pandemic, and at minimum Plaintiffs should have offered Ms. Brooks the option of appearing remotely for a video-conference or telephonic deposition, consistent with this Court's emergency practices in civil and criminal cases. *See* Lewis J. Liman, Covid-19 Emergency Individual Practices in Civil and Criminal Cases (Apr. 19, 2020), at § 3(A). While any deposition of non-parties is improper at this preliminary stage, an *in-person* deposition of a non-party is even more inappropriate.

2.      *The topics of deposition are impermissibly broad.*

The scope of the topics of deposition are also unreasonably broad, extending far beyond the parameters of the Court's limited Order permitting expedited discovery, and seeking discovery that is available through other means that would not require burdening Ms. Brooks. The topics of deposition can be divided into three categories: (1) merits inquiries (Topics 1, 2, and 8); (2) duplicative inquiries (Topics 4-7), and (3) inquiries without sufficient definition (Topic 3.)

First, there could be no better indication that Plaintiffs seek a full merits deposition than deposition Topic 8, seeking Ms. Brooks' "knowledge of the Complaint (attached) and the allegations therein." (Billings Decl. Ex. 1, at 6; *see also id.*, at 5 (Topic 1, requesting testimony concerning Ms. Brooks' "knowledge of the Acquisition [of Convergen Energy WI]," and Topic 2, requesting testimony concerning "Your knowledge of your son, Steven Brooks' work at Libra Group or Convergen Energy WI, LLC concerning the Acquisition.").)

The Court in its Order permitting expedited discovery allowed discovery "to address all issues relevant to the application for a preliminary injunction." (ECF No. 28, at ¶ 5(c).) Only two causes of action are even pertinent to the preliminary injunction (Plaintiffs' New York and federal trade secret misappropriation claims[7]). Even if *some* tailored inquiry into the merits is permissible in connection with the preliminary injunction, six of the Complaints' eight counts are not even at issue. Yet, Plaintiffs seek to depose Ms. Brooks on anything related to the Complaint.

Moreover, Plaintiffs represented to the Court in their *ex parte* TRO motion that all they needed was information about who has access to their purported trade secrets and where they are. (*See supra* Facts B.) The Court having granted Plaintiffs' *ex parte* emergency motion on the basis

---

[7] Plaintiffs' Stored Communications Act claim (if it is relevant at all to the preliminary injunction) is not implicated here, as it addresses emails and Office 365 accounts in the sole possession of Convergen Energy WI, LLC.

of these representations, Plaintiffs are bound by their representations and estopped from reversing

their position. *See, e.g.*, *Maas v. Cornell Univ.*, 683 N.Y.S.2d 634, 636 (N.Y. App. Div. 1999)

(explaining that when a party makes a representation to the Court and prevails on the basis of the

representation, the party is bound by that representation), *aff'd,* 721 N.E.2d 966 (1999).

Second, many of the topics are cumulative and duplicative of discovery Plaintiffs could

and did serve on Defendants. As to the members and agents of Clark Kent, Riverview, Niantic and

4406 Cypress Lane, L.L.C. ("Cypress"), Plaintiffs could have (and in fact did) ask Defendants

directly for this information. (*Compare* Billings Decl. Ex. 1, at 5 (Topics 4-7, requesting testimony

from Ms. Brooks as to the owners and agents of Clark Kent, Riverview, Niantic, and Cypress,

respectively) *with id.*, Ex. 2, at 2 (disclosing that Ms. Brooks is the sole member of Clark Kent),

ECF No. 72-4, at 2-3 (response to Interrogatory 4, explaining that Ms. Brooks loaned money to

Niantic through Clark Kent), Billings Decl. Ex. 4, at 5 (response to Interrogatory 3, disclosing

Cypress as the owner of Niantic, Merle as the only officer and member of Niantic or Cypress, and

excluding Riverview from the response because Riverview has no ownership interest in Convergen

WI); ECF No. 72-3, at 5-6 (response to Interrogatory 4, same).)

There is no reason to depose Ms. Brooks concerning information Plaintiffs already have.

Much of the discovery Plaintiffs seek through live testimony from Ms. Brooks is cumulative and

duplicative of sworn discovery responses Defendants have already provided, and the Court should

bar Plaintiffs from harassing Ms. Brooks to obtain discovery they have already obtained. Even in

full merits discovery, this information would be unreasonably cumulative and duplicative. In the

context of the limited discovery the Court has permitted, it is clearly over the line.

Third, for the one topic that actually addresses "Trade Secrets," this information could have

been pursued through timely interrogatories to Steven Brooks. (*See* Billings Decl. Ex. 1, at 5

(Request 3, seeking Ms. Brooks' "knowledge of Trade Secrets and Confidential Information of Plaintiffs.").) All Plaintiffs needed to do was to serve interrogatories asking Mr. Brooks questions like:

•      What did you tell Ms. Brooks about the Acquisition, and your role in it?

•      What non-public information did you provide Ms. Brooks about the acquisition?

Instead of serving limited discovery on Defendant Steven Brooks, Plaintiffs seek a free-for-all deposition of non-party Ms. Brooks. This is discovery that "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C). Plaintiffs should not have bypassed Mr. Brooks and sought burdensome discovery from non-party Ms. Brooks, when they could have obtained the same answers much more simply and with less burden from an actual party to this case.

Further, Plaintiffs' repeated failure to provide any meaningful definition of what Plaintiffs' "trade secrets" are, combined with the overbroad definition of "Trade Secrets" in the subpoenas as all "non-public" information, place an unreasonable burden on Ms. Brooks to gather documentation that is not related to the trade secret claims at issue in the preliminary injunction. (*Compare* Billings Decl. Ex. 1, at 5 (Request 3, seeking testimony as to Ms. Brooks' "knowledge of Trade Secrets and Confidential Information of Plaintiffs.") *and id.,* Ex. 1, at 7 (Definition 8, defining "Trade Secrets and Confidential Information of Plaintiffs" as all "non-public data" concerning Plaintiffs) *with id.*, Ex. 2, at 2-3 (explaining the difficulties Defendants have had in responding to an identical request served on Mr. Brooks, and describing the parties' conciliation efforts on this issue).) Again, it is reflective of Plaintiffs' shotgun approach to ask Ms. Brooks to provide every possible document she has, and allowing Plaintiffs to sort out later what information is relevant and a trade secret. That is unreasonable and unfair.

-14-

The deep dive Plaintiffs request in the subpoena for testimony, seeking to probe everything Ms. Brooks knows about the Complaint, the purchase at issue, and the Libra Group, extends far beyond the topics Plaintiffs told the Court they needed to pursue, and the subpoena is in no way the "[n]arrowly tailored" and targeted discovery the Plaintiffs asked the Court to allow them to serve in their *ex parte* TRO motion. Further, the subpoena did not seek evidence that Plaintiffs could actually offer in support of Plaintiffs' preliminary injunction, as its return date was five days *after* the deadline for submission of evidence in support of Plaintiffs' motion. While that date was subsequently extended (on July 13) by the Court, this shows Plaintiffs' intent at the time the June 29 subpoena for testimony was served. The subpoena should be quashed, and the Court should issue a Protective Order barring Plaintiffs from deposing Ms. Brooks during expedited discovery.

### B.    The Subpoena *Duces Tecum* is Equally Overbroad.

The subpoena *duces tecum* seeks documents concerning the same subject-matters as the subpoena *ad testificandum*, and is unduly burdensome for the same reasons.

First, like the subpoena for testimony, the subpoena *duces tecum* seeks a comprehensive probe of the merits, and is inappropriate. (*See* Billings Decl. Ex. 1, at 16 (Request 8, seeking "All documents and communications concerning the Complaint (attached) and the allegations therein."); *id.* (Request 1, seeking "All documents concerning the Acquisition [of Convergen Energy WI, LLC]."), Request 2, seeking "All documents and communications with your son, Steven Brooks, concerning Libra Group or Convergen Energy WI, LLC.").) The Court permitted expedited discovery on subjects relevant to the preliminary injunction; it did not permit Plaintiffs an unrestricted license to seek discovery on anything referenced in the Complaint, anything related to the purchase of Convergen WI, and detailed information as to the structure and agents of parties and non-parties associated with the Complaint. The subpoena *duces tecum* should be quashed for

-15-

vastly exceeding the Court's Order, and making no attempt to confine itself to the preliminary injunction.

Second, any documents Ms. Brooks would have must have come from one of the Defendants. Plaintiffs could have (and did) seek these documents from the Defendants, without burdening a non-party like Ms. Brooks.[8] Plaintiffs' overly broad and unparticularized inquiries to Defendants have already burdened the Defendants, a subject of the parties' ongoing meet-and-confer efforts. (*See* Billings Decl. Ex. 2, at 2-3.) Rather than working through that process, Plaintiffs have simply asked for the same burdensome (and now duplicative and cumulative) discovery from Ms. Brooks.

Relatedly, as with the topics of deposition, the subpoena *duces tecum* seeks documents concerning the owners and agents of Clark Kent, Riverview, Niantic and Cypress. (Billings Decl. Ex. 1, at 16, Document Requests 4-7.).) This information has already been provided through Defendants' interrogatory responses. (*See supra* Section II(A)(2).) The Court should issue a Protective Order barring Plaintiffs from burdening non-party Ms. Brooks, when they can get the same discovery from the Defendants. *See* Fed. R. Civ. P. 26(b)(2)(C).

Third, as with the subpoena for testimony, Plaintiffs' repeated failure to provide any meaningful definition of what Plaintiffs' "trade secrets" are, and the overbroad definition of "Trade Secrets" in the subpoena for documents concerning all "non-public" information exchanged over a nearly 18-month period, place an unreasonable burden on Ms. Brooks to gather documentation that is not related to the trade secret claims at issue in the preliminary injunction. (*Compare* Billings Decl. Ex. 1, at 16 (Request 3, seeking "All documents and communications concerning

---

[8] As explained in the parties' many joint applications to the Court and in the attached Exhibit 2, the parties continue to meet and confer on the scope of discovery and numerous other issues. (*See, e.g.*, Billings Decl. Ex. 2, at 2-3.)

Trade Secrets and Confidential Information of Plaintiffs") *and id.*, Ex. 1, at 15 (defined in Definition 9 as all "non-public data") *with id.*, Ex. 2, at 2-3 (explaining the difficulties Defendants have had in responding to an identical request served on Mr. Brooks, and describing the parties' conciliation efforts on this issue).) It is unreasonable and unfair to make Ms. Brooks sort through irrelevant information merely because Plaintiffs refuse to describe their trade secrets with any specificity.

Lastly, Plaintiffs have made no meaningful effort to tailor their requests to issues on which they claimed they needed discovery in their *ex parte* TRO papers. *See, e.g.*, *Maas*, 683 N.Y.S.2d at 636. Ms. Brooks should not have to respond to a full merits inquiry at this stage. The Court should quash the subpoena *duces tecum* and bar Plaintiffs from seeking cumulative, burdensome discovery from Ms. Brooks during expedited discovery. At minimum, the Courts should order the Plaintiffs to confine their requests to matters actually relevant to the preliminary injunction.

## CONCLUSION

For the foregoing reasons and in the interests of justice, Ms. Brooks respectfully asks the Court to quash the third-party subpoenas served upon her, and to enter a Protective Order barring Plaintiffs from seeking discovery from Ms. Brooks during the limited expedited discovery the Court permitted.

Dated this 13th day of July, 2020

By:    s/ Ryan M. Billings
Ryan M. Billings
S.D.N.Y. Bar No. RB0378
**KOHNER, MANN & KAILAS, S.C.**
4650 N. Port Washington Road
Milwaukee, WI 53212-1059
Telephone:   (414) 962-5110
Facsimile:   (414) 962-8725
Email:    rbillings@kmksc.com

-17-

Attorneys for Non-Party Elmerina Brooks,
for purposes solely of the subpoenas