UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
<u> </u>

| | |
|---|---|
| CONVERGEN ENERGY LLC, L'ANSE WARDEN ELECTRIC COMPANY, LLC, EUROENERGY BIOGAS LATVIA LIMITED, and LIBRA CAPITAL US, INC.<br><br>       Plaintiffs,<br><br>-against-<br><br>STEVEN J. BROOKS, NIANTICVISTA ENERGY LLC, GREGORY MERLE, RIVERVIEW ENERGY CORPORATION, DANIEL ESCANDON GARCIA, RAMON URIARTE INCHAUSTI, CHIPPER INVESTMENT SCR, SA, URINCHA SL, THEODORE JOHN HANSEN, BRIAN R. MIKKELSON, and CONVERGEN ENERGY WI, LLC,<br><br>       Defendants. | Index No. 1:20-cv-03746 (LJL) |

## PLAINTIFFS' REPLY MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO STAY ARBITRATION

Dated: July 14, 2020
New York, New York

              SEIDEN LAW GROUP LLP

              Michael Stolper
              Jake Nachmani
              Dov B. Gold
              469 Seventh Avenue, Fifth Fl.
              New York, NY 10018
              (646) 766-1703

              *Counsel for Plaintiffs*

Plaintiffs Convergen Energy LLC, L'Anse Warden Electric Company, LLC ("L'Anse"), Euroenergy Biogas Latvia Limited, and Libra Capital US, Inc. (collectively, "Plaintiffs"), by and through their undersigned counsel, submit this Reply Memorandum of Law together with the Declaration of Bert Diaz dated July 14, 2020 in further support of Plaintiffs' Motion to Stay the Arbitration initiated by Defendant Convergen Energy WI, LLC ("CEW").[1]

## PRELIMINARY STATEMENT

Defendants have failed to raise a plausible challenge to any of the persuasive reasons for staying the arbitration as set forth in Plaintiffs' Opening Brief. *First,* Defendants fail to respond to Plaintiffs' argument concerning the risk of inconsistent rulings and the conservation of judicial resources. Defendants seem to confuse the issue: they claim that the arbitration should go forward while, at the same time, their motion to dismiss should be briefed and decided. By Defendants' logic, two proceedings concerning identical factual and legal issues should go forward contemporaneously. This is nonsense.

*Second*, Defendants have the law of arbitrability wrong. In their view, any "arbitrable" issue is one for an arbitrator, not a district court, to decide. Additionally, they maintain that a district court has no place in reviewing an arbitration agreement to determine its validity where that agreement delegates arbitrable issues to an arbitrator. They are wrong on both points. The question of whether the parties have a valid arbitration agreement is an issue the Federal Arbitration Act assigns to the courts. The Second Circuit is clear on this.

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Complaint and in Plaintiffs' Opening Brief. "¶__" are references to the paragraphs of the Complaint. References to "Pl. Br." are to Plaintiffs' Opening Brief, and references to "Def Br." are to Defendants' Brief. References to "Ex. __" are to exhibits attached to the Declaration of Dov B. Gold, submitted herewith. References to "Diaz Decl." are to the Declaration of Bert Diaz submitted herewith. Unless otherwise noted, all emphasis is added, and all internal quotations and citations are omitted.

*Third*, in regard to Defendants' alleged fraud and its relationship to the Supply Agreement, Defendants' arguments fail across the board. Unable to confront the facts head on, Defendants mischaracterize the Complaint's allegations and the arguments set forth in Plaintiffs' Opening Brief, incorrectly maintaining that Plaintiffs allege fraudulent inducement only. Plaintiffs are not merely alleging that the Supply Agreement was fraudulently induced; Plaintiffs demonstrate that no agreement was ever formed because the "negotiation" of the agreement was entirely the product of self-dealing and fraud. Indeed, Defendant Brooks, Plaintiffs' rogue employee who "negotiated" the Supply Agreement, was, as CEW knew, defrauding his own employer and thus lacked the authority to bind Plaintiffs. Unable to challenge the body of Second Circuit law that supports staying the arbitration because the arbitration provision was produced by fraud, Defendants choose to ignore Plaintiffs' cited authorities, relying on their own inapposite ones (or cases that support Plaintiffs' position here). And finally, in what amounts to bad faith on Defendants' part, Defendants ignore evidence submitted in this matter – which they have already seen or provided – that supports a finding of their fraud.

Whether a valid arbitration agreement was ever formed is an issue for the Court to decide, not an arbitrator. And, based on the arguments in Plaintiffs' Opening Brief and set forth herein, the Court should find that no such agreement was ever formed, warranting a stay of the arbitration.

## ARGUMENT

**I.   STAYING THE ARBITRATION PREVENTS INCONSISTENT RULINGS**

Defendants do not—because they cannot—challenge Plaintiffs' argument that, where there is a substantial overlap between the subject matter of a court proceeding and an arbitration, as is the case here, district courts routinely enjoin the arbitration because of the risk of inconsistent rulings. *See* Pl. Br. at 6-7. Defendants' sole response to this core issue concerning a district court's

authority to stay an arbitration is contained in the conclusory statement in the introduction to their brief: "The fact of the matter is that this entire case—including disputes arising under the Supply Agreement—belongs in arbitration. Since the whole case should go to arbitration, there is no risk of inconsistent decisions." Def. Br. at 2.

Defendants' argument fails. *First*, the "whole case" cannot go to arbitration because the only parties that signed the Supply Agreement were L'Anse and CEW. This Action, on the other hand, includes four other plaintiffs and nine other defendants—thirteen other parties with no connection to the arbitration provision. Accordingly, allowing the arbitration to proceed while this Action continues with the non-arbitrating parties would raise the significant risk of inconsistent decisions over identical factual and legal claims and would waste judicial resources.

*Second*, CEW has not moved to compel arbitration. The issue before the Court is not whether Plaintiffs' claims in this Action must be arbitrated but whether the claims Defendants have submitted to arbitration must be stayed. They must be.[2]

## II.   THE COURT DETERMINES THE VALIDITY OF THE ARBITRATION AGREEMENT

Defendants' primary response to Plaintiff's Motion is that the issue of "arbitrability" is for the arbitrator and not the Court to decide. *See* Def. Br. at 6-8. Defendants are wrong.

While questions of arbitrability include both the existence of "a legally binding and valid arbitration agreement, as well as questions regarding the scope of a concededly binding arbitration agreement," the question of whether the parties have a valid arbitration agreement is an issue the

---

[2] In concluding their brief, Defendants maintain that the Court should refrain from making a decision here until Defendants submit their yet-to-be-filed motion to dismiss. Def. Br. at 13-14. This makes no sense. If the arbitration is allowed to go forward, there will be two parallel proceedings – this Action and the arbitration – concerning the same subject matter and legal issues. Such a situation is the exactly why a stay of arbitration is appropriate here: to avoid the risk of inconsistent rulings, unnecessarily straining judicial resources, and preserving time and money for the Parties and the Court. However, if the Court is not inclined to permanently stay the arbitration, it should temporarily stay it, pending the outcome of Defendants' motion to dismiss.

Federal Arbitration Act ("FAA") assigns to the courts. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 78. If a party challenges the validity of an arbitration agreement, the federal court must consider the challenge before ordering compliance with that agreement. *See Gingras v. Think Fin., Inc.*, 922 F.3d 112, 126 (2d Cir. 2019).

This is axiomatic and exactly the situation here. Indeed, Defendants concede this when they maintain that "Plaintiffs not only question the arbitrability of CE-Wisconsin's dispute under the Supply Agreement, ***they question the validity of the agreement itself***." Def. Br. at 7, n 2. Specifically, Plaintiffs have challenged the arbitration agreement, not based on its scope or its terms, but on how it was formed. Pl. Br. at 7-10. Accordingly, a district court and not an arbitrator should decide that issue. *See* 9 U.S.C. § 4 (If the making of the arbitration agreement … [is] in issue, the court shall proceed summarily to the trial thereof."); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) ("If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary."); *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 172 (2d Cir. 2011) (noting that a trial court is required where there exists a genuinely disputed factual issue whose resolution is essential to determine whether a valid arbitration agreement exists); *Dowe v. Leeds Brown Law, P.C.*, 419 F. Supp. 3d 748, 757 (S.D.N.Y. 2019) ("Where a party brings a challenge to the very formation of a contract containing an agreement to arbitrate … the court must resolve that challenge itself in order to determine whether to compel arbitration.").

In response to this black letter law, Defendants, relying principally on the recent Supreme Court case *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019) ("*Schein*"), maintain that the arbitration should not be stayed because L'Anse purportedly "clearly" and "unmistakably" agreed to allow the arbitrator to determine issues of arbitrability. Def. Br. at 7-9.

4

In Defendants' view, *Schein* stands for the proposition that, where an arbitration agreement delegates issues of arbitrability to an arbitrator, a court has no role in reviewing whether a valid arbitration agreement exists.  See Def. Br. at 7.

Defendants' interpretation of *Schein* is incorrect.  Indeed, *Schein*, whose holding is limited to the "wholly groundless" exception under the FAA (which is inapplicable here), reaffirms a court's mandatory role in determining the existence of a valid arbitration agreement ***before*** an arbitration can be compelled or stayed.  See *Schein*, 139 S. Ct. at 530 ("To be sure, ***before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists***.").[3]

The Second Circuit agrees that *Schein* has no bearing on a district court's mandatory review of whether a valid arbitration agreement exists before staying or compelling an arbitration.  See *Gingras*, 922 F.3d at 126 ("*Schein* dealt with an exception to the threshold arbitrability question— the so-called 'wholly groundless' exception—***not a challenge to the validity of an arbitration clause itself*** … As such, *Schein* has no bearing on this case [which concerned the formation of the arbitration agreement].").  Indeed, the court in *Gingras* directly refuted Defendants' position here, ruling that even where an arbitration agreement explicitly provides an arbitrator with "blanket authority" to decide "any issue concerning the validity, enforceability, or scope of ... the Agreement to Arbitrate," such an agreement does not strip a district court of its duty to review the issue of whether a valid agreement to arbitrate exists before it can rule on whether an arbitration should proceed.  *Id.* at 126.  As the Second Circuit has announced, ***this is an issue a "federal court must consider before" deciding whether an arbitration should go forward***.  *Id.*

---

[3] Defendants' also rely on *Schein* to support their position that Plaintiffs' allegations of fraud in connection with the formation of the arbitration provision does not purportedly constitute a basis for finding that no valid agreement to arbitrate exists.  See Def. Br. at 9.  However, *Schein* has nothing to do with fraud or arbitration agreements created as a result thereof.  Notably, none of Defendants' cited authorities concern an agreement that was allegedly formed as a result of fraud.

5

Defendants' view of *Schein* has no basis in the law, as courts of appeals around the country agree that *Schein* preserves a district court's mandatory role in determining whether a valid arbitration agreement was ever formed as a prerequisite to deciding whether an arbitration should proceed. *See, e.g.*, *Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019) ("Such provisions requiring the arbitration of arbitrability questions do not … preclude a court from deciding that a party never made an agreement to arbitrate any issue (which would necessarily encompass an arbitrability issue)"); *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 514 n. 2 (5th Cir. 2019) (noting that *Schein* "leaves intact the remainder of our two-part framework for assessing a claim's arbitrability" and therefore requires a court, not an arbitrator, to "first decide whether an arbitration agreement exists at all."); *Taylor v. Pilot Corp.*, 955 F.3d 572, 577 (6th Cir. 2020) ("the district court retains the authority to first satisfy itself that the agreement was validly formed before granting a motion to compel arbitration.").[4]

Defendants' other cited authority, *Metropolitan Life Insurance Company v. Bucsek*, 919 F.3d 184 (2d Cir. 2019) ("*Metropolitan Life*"), which pre-dates *Gringas*, is similarly unavailing.[5]

---

[4] Likewise, a recent district court decision in Wisconsin, applying Wisconsin contract law (which Defendants maintain should be applied to the issue of whether a valid agreement to arbitrate was ever formed) and reviewing a party's analysis of *Schein*, which was identical to what Defendants here have set forth, has stated that such an interpretation is either an "innocent misreading" or "deliberate misconstruction" of *Schein's* holding. *Velez v. PrimeFlight Aviation Servs. Inc.*, 2020 WL 551603, at *3 (E.D. Wis. Feb. 4, 2020). Indeed, contrary to Defendants' position otherwise, *Schein* "does not stand for the proposition that parties can agree to have the arbitrator determine whether an agreement to arbitrate was actually made. Rather, the Supreme Court [in *Schein*] addressed how courts should approach the common scenario where parties agree to delegate to an arbitrator the decision on whether a particular claim is covered by an arbitration agreement (arbitrability)." *Id.* at *3. Critically, *Schein* "does not eliminate courts' role in deciding whether an agreement to arbitrate—*i.e.* contract formation—was actually reached." *Id*.

[5] Unlike this case, the issue of arbitrability in *Metropolitan Life* had nothing to do with whether a valid agreement to arbitrate was ever formed; that a valid arbitration agreement existed there was presumed. *See Metro. Life Ins. Co. v. Bucsek*, 919 F.3d at 195. Relatedly, in that case, there were no allegations that the agreement was produced by fraud.

6

### III.  THE ARBITRATION AGREEMENT WAS FORMED BY FRAUD

In response to the well-pled allegations – and evidence – concerning Defendants' fraud and its relationship to the Supply Agreement, Defendants raise a host of meritless arguments. *First*, Defendants maintain that the arbitration should not be stayed because the Complaint alleges that the Supply Agreement was purportedly induced by fraud. Def. Br. at 8, 10. Defendants mischaracterize the Complaint's allegations and Plaintiffs' challenges set forth in this Motion.

Plaintiffs' Complaint alleges in detail that the Supply Agreement and the arbitration provision were formed as a result of Defendant Brooks' fraudulent self-dealing – his failure to disclose that he was a secret buyer of the Pellet Plant while purporting to "negotiate" its sale on behalf of his employer.  ¶¶4-5, 44, 49, 71; Pl. Br. at 3-4, 7-9.  Indeed, Brooks knowingly betrayed his employer when he "negotiated" the agreement, and this fact, together with the fact that his counterparty to the agreement participated in the fraud (which Brooks knew about), eviscerates the notion that Brooks had the authority to bind Plaintiffs or that any legitimate "meeting of the minds" ever occurred.  Accordingly, given the substantial factual questions around whether a valid arbitration agreement was formed, whether the arbitration should be stayed is a matter for this Court to decide.  *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n. 3, 449 (2006) ("*Buckeye*")[6]  (issues concerning the formation of an agreement to arbitrate are matters for a court to decide, such as "whether the signor lacked authority to commit the alleged principal" to arbitration agreement); *Gingras*, 922 F.3d at 126 (because plaintiffs alleged fraud in the making of an arbitration clause, the issue of arbitrability was "one for a federal court"; denying motion to

---

[6] Defendants maintain that *Buckeye's* holding should be applied here – that agreements to arbitrate are severable from the contracts that contain them – and therefore that challenges to the contract as a whole must be decided by an arbitrator. Def Br. at 7-8.  However, the challenge at issue in *Buckeye* concerned the purported illegality of the underlying usurious loan payment agreements (which included an arbitration clause), not, as is the case here, a challenge to the formation of the arbitration agreement itself.  *See Buckeye Check Cashing, Inc.*, 546 U.S. at 443.

7

compel arbitration); *Adams v. Suozzi*, 433 F.3d 220, 227 (2d Cir. 2005) (recognizing that a contract is "void" [as opposed to "voidable"] when there was fraud in the making of the contract); *see Loop Prod. v. Capital Connections LLC*, 797 F. Supp. 2d 338, 347–48 (S.D.N.Y. 2011) ("arbitration agreement invalidated because transaction proposed by defendants, including the contract itself, was an "intentional scam"); *Endriss v. Eklof Marine Corp.*, 1998 WL 1085911, at *6 (S.D.N.Y. July 28, 1998) (granting plaintiff's motion to stay arbitration because issues of fact existed as to fraud in the formation of the arbitration provision).

Indeed, Brooks could not have had the authority to negotiate the Supply Agreement and bind Plaintiffs to the arbitration provision because he was a rogue employee who, while purportedly conducting an arm's length negotiation, was in reality defrauding his own employer and that the counterparty to the Supply Agreement, Defendant CEW, knew that Brooks was acting as such. *See Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co.*, 263 F.3d 26, 32 (2d Cir. 2001) (recognizing rule that "if an agent that has been charged with negotiating a contract on behalf of the principal acts outside the scope of its agency, and the opposing party knows this, then the agent lacks both actual and apparent authority, and the principal is not bound to the contract, for the contract is void—it never came into legal existence."; citing cases); *Ministry of Indus. & Trade, The Hashemite Kingdom of Jordan v. S. Kasmas & Bros.*, 2001 WL 1035133, at *2 (S.D.N.Y. Sept. 7, 2001) (same; denying motion to compel arbitration).[7]

*Second*, Defendants fail to challenge the entire body of cited case law from within this Circuit and New York that stands for the proposition that, where an agreement to arbitrate was

---

[7] Defendants' argument concerning Libra Group's General Counsel purportedly negotiating the Supply Agreement or being induced to enter into the Supply Agreement (Def. Br. at 11) fails for the same reason. *See* Diaz Decl. That the Supply Agreement was created as a result of Brooks' secret self-dealing and his being a faithless agent of Plaintiffs gives rise to an issue of contract formation, which is for this Court to decide.

produced by fraud, "permeated by fraud," or was part of a scheme to defraud plaintiffs, that arbitration provision is invalid and void. *See* Pl. Br. at 7-10. Rather, Defendants conclusorily state, without case law or explanation, that "Plaintiffs lose."[8]

Lastly, Defendants maintain that Plaintiffs' allegations of fraud do not constitute the "actual evidence" purportedly required to find that a valid arbitration agreement was ever formed. Def Br. at 12-13. Defendants' argument smacks of bad faith.

No additional evidence is needed for the Court to review the arbitration provision before it decides whether the arbitration can proceed; Plaintiffs' well-pled allegations are enough. *See Gingras*, 922 F.3d at 126 (finding that arbitrability issue was a decision for the court to make because plaintiffs **"complaint alleges that [t]he delegation provision of the Purported Arbitration Agreement is also fraudulent**."); *Loop Prod.*, 797 F. Supp. 2d at 348 (invalidating arbitration agreement based on complaint's allegations of fraud).

---

[8] Defendants' maintain that Wisconsin law, not New York law, should apply to the claims here. Def. Br. at 11. Not so. The claims alleged here sound in fraud, not contract, rendering the choice of law provision in the Supply Agreement inapplicable here. *See Frontline Processing Corp. v. Merrick Bank Corp.*, 2014 WL 837050, at *8 n. 4 (S.D.N.Y. Mar. 3, 2014) ("The Defendant argues that the contractual choice-of-law provision disposes of the choice-of-law analysis for the fraud claims. However, under New York law [...] tort claims are outside the scope of contractual choice-of-law provisions that specify what law governs construction of the terms of the contract."); *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996) ("While a choice-of-law provision is effective as to breach of contract claims, it does not apply to fraud claims, which sound in tort."). Moreover, the law to be applied to Plaintiffs' tort claims is the law of locus of the tort, where the injury was inflicted – New York. *See In re Thelen LLP*, 736 F.3d 213, 220 (2d Cir. 2014) ("for claims based on fraud, the locus of the tort is generally deemed to be the place where the injury was inflicted"); *Innovative BioDefense, Inc. v. VSP Techs., Inc.*, 2013 WL 3389008, at *6 (S.D.N.Y. July 3, 2013) ("With respect to fraud claims, courts in this Circuit have held that the paramount concern is the locus of the fraud; i.e., the place where the injury was inflicted, as opposed to the place where the fraudulent act originated."; "the place in which the injury is deemed to have occurred is usually where plaintiff is located."; citing authorities).

However, assuming that Wisconsin law applies, which it does not, courts in Wisconsin, not arbitrators, routinely determine the issue of whether an arbitration provision was validly formed and deny arbitrations based on contract-based defenses, such as fraud and unconscionability. *See Greer v. N.A.B.S.A. Benefit Servs.*, 2009 WL 10710786, at *2 (E.D. Wis. Dec. 4, 2009) (where plaintiff alleged issues concerning "the formation of of the contract between the parties," it was for the court to determine whether a valid agreement to arbitrate existed; dismissed on grounds not applicable here); *Wisconsin Auto Title Loans, Inc. v. Jones*, 290 Wis. 2d 514, 546, 714 N.W.2d 155, 171 (court, not arbitrator, determined that arbitration agreement was not valid, as it was unconscionably formed); *Coady v. Cross Country Bank*, 299 Wis. 2d 420, 452, 729 N.W.2d 732, 748 (same).

Moreover, Plaintiffs and CEW have already submitted evidence of fraud. For example:

- In response to Plaintiffs' First Set of Amended Interrogatories, ***Defendants Brooks, Niantic, and Merle, inter alia, admitted that Brooks is: (i) a lender to [4406] Cypress Lane, L.L.C., an indirect owner of CEW; (ii) Clark Kent, LLC,*** [9] ***was a lender to Niantic, purchaser of the Pellet Plant; and (iii) Brooks is a personal guarantor of the debts of CEW to BMO Harris Bank N.A.*** Ex. 2, Interrogatory 4-4A.

- In February 2020, after Libra Group began to suspect Brooks was secretly on both sides of the Acquisition, ***Brooks was confronted in a recorded meeting at Libra Group's New York headquarters where he confessed to leading Defendants' fraud.*** Diaz Decl.

- At no time prior to this admission did Brooks ever provide any indication to Libra Group's General Counsel ("Diaz"), or anyone else at Libra Group, that Brooks had a personal interest in the Acqusition; ***Brooks represented that Niantic had made an unsolicted offer. Libra Group would never have allowed Brooks to negotiate the Acquisition if Libra Group had known about Brooks' interest.*** Diaz Decl.

- ***Diaz was not responsible for negotiating or drafting the terms of the Supply Agreement***. *Contra* Def. Br. at 4, 11. Indeed, the Supply Agreement was based on a decade-old template which included an arbitration provision, which Diaz did not draft or modify. ***Because Diaz did not have the technical experience needed for dealing with Libra Group's subsidiaries, he deferred to Brooks when it came to negotiating and drafting the terms of the Supply Agreement, including the arbitration provision, and incorporated nearly all of the revisions which Brooks sought to include in the Supply Agreement***. Accordingly, it was Brooks, not Diaz, who addressed, provided, negotiated, and revised all of material terms of the Supply Agreement. Diaz Decl. and Ex. 1 to Diaz Decl.

Such evidence of fraud warrants the Court to find that no valid arbitration agreement was ever formed. At minimum, it warrants the Court, not an arbitrator, to make this determination.

## **CONCLUSION**

---

[9] In response to Plaintiffs' First Set of Amended Interrogatories, CEW, Ted Hansen, and Brian Mikkelson admitted that Clark Kent, LLC was affiliated with Brooks' family. Ex. 1, Interrogatory 4A.

10

For all the foregoing reasons and the reasons set forth in Plaintiffs' Opening Brief, the Court should stay the arbitration.

| | |
|---|---|
| Dated: July 14, 2020<br>New York, New York | SEIDEN LAW GROUP LLP<br><br>By:    /s/ Dov B. Gold<br>     Dov B. Gold<br>     Michael Stolper<br>     Jake Nachmani<br>     469 Seventh Avenue, Fifth Fl.<br>     New York, NY 10018<br>     (646) 766-1703<br><br>*Counsel for Plaintiffs* |

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day I caused a true and correct copy of the foregoing to be filed using the Court's Electronic Filing System ("ECF System"). The document is available for viewing and downloading via the ECF System and will be served by operation of the ECF System upon all counsels of record.

Dated: July 14, 2020                                                          SEIDEN LAW GROUP LLP


                                                                              /s/ Dov B. Gold
                                                                              Dov B. Gold