UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CONVERGEN ENERGY LLC, L'ANSE WARDEN
ELECTRIC COMPANY, LLC, EUROENERGY
BIOGAS LATVIA LIMITED, and LIBRA CAPITAL
US, INC.

Index No. 1:20-cv-03746 (LJL)

Plaintiffs,

-against-

STEVEN J. BROOKS, NIANTICVISTA ENERGY
LLC, GREGORY MERLE, RIVERVIEW ENERGY
CORPORATION, DANIEL ESCANDON GARCIA,
RAMON URIARTE INCHAUSTI, CHIPPER
INVESTMENT SCR, SA, URINCHA SL, THEODORE
JOHN HANSEN, BRIAN R. MIKKELSON, and
CONVERGEN ENERGY WI, LLC,

Defendants.

## DECLARATION OF BERT DIAZ
## IN SUPPORT OF PLAINTIFFS' MOTION TO STAY ARBITRATION

I, Bert Diaz, declare as follows:

1.      I am General Counsel at Libra Group. I make this declaration based on my own

personal knowledge, and, if called upon to do so, could and would testify competently thereto.

2.      In opposing the motion to stay, certain of the defendants contend that I drafted and

am therefore responsible for the Acquisition Agreement covering the sale of Convergen Energy

WI, LLC ("**CEW**") to Nianticvista Energy LLC ("**Niantic**"). This is wholly inaccurate and

misleading.

3.      Counsel for Niantic sent Libra Group a draft Acquisition Agreement, which I

reviewed. I did not negotiate the comercial terms and I had very little input into the Acquisition

Agreement overall.

4.      I also had little input in the Supply Agreement between CEW and L'Anse Warden Electric Company, LLC ("**L'Anse**"). CEW had in its possession a draft pellet supply agreement with a third party from 2010 (the "**Template**"). I did not draft the Template; I merely had it in my electronic files. The Template came with an arbitration provision. I did not write it or modify that provision, except as to reflect edits suggested by defendants Brooks and Hansen.

5.      I generally do not get involved in drafting agreements relating to the operations of subsidiaries because I do not have the technical expertise or regular contact with the subsidiaries. In connection with the sale of CEW to Niantic, I was asked to provide a pellet supply agreement. Despite my inclination not to assist with an operational contract, I agreed to help because the Supply Agreement was part of the Acquisition Agreement, which was an asset sale. In response, on November 20, 2019, I emailed the Template to defendant Steve Brooks. On November 22, 2019, Brooks provided substantial edits from him and from defendant Ted Hansen. The edits referred to pellet quantity, pellet energy content, pellet specifications, pellet price, transfer of title, quality determination, pellet samples, shipping schedule, payment terms, and a force majeure clause.

6.      I incorporated all of Brooks and Hansen's edits into an initial draft and sent it to Brooks on November 26, 2019. The email exchanges and redline comparison of the intial draft reflecting all of Brooks and Hansen's edits to the Template are attached as **Exhibit 1**. The draft reflects almost no edits of my own to the Template.

7.      On February 3, 2020, after Libra Group began to suspect Brooks was secretly on both sides of the transaction, Brooks was confronted in a recorded meeting at Libra Group's New York headquarters where he confessed to leading the fraudulent scheme.

8.      Brooks provided no indication to me that he had a personal interest in the transaction. On the contrary, Brooks represented that Niantic had made an unsolicted offer. Libra Group would never have relied on Brooks to negotiate the price and contract terms for the transaction if this had been disclosed.

I declare under the penalty of perjury that the foregoing is, to the best of my knowledge and belief, true and correct.

Dated: New York, New York
       July 14, 2020


                                        _/s/ Bert Diaz___
                                        Bert Diaz