**OPERATIONS AND MANAGEMENT SERVICES AGREEMENT**

between

**L'ANSE WARDEN ELECTRIC COMPANY, LLC**

and

**CONVERGEN ENERGY WI, LLC**

dated as of

January 31, 2020

**EXHIBIT 7**

## TABLE OF CONTENTS

**ARTICLE I** SERVICES ....................................................................................................2

Section 1.01 Provision of Services. ....................................................................................2

Section 1.02 Standard of Service. ......................................................................................2

Section 1.03 Third-Party Service Providers. ......................................................................3

Section 1.04 Access to Premises. .......................................................................................3

**ARTICLE II** COMPENSATION .......................................................................................3

Section 2.01 Responsibility for Wages and Fees. ..............................................................3

Section 2.02 Terms of Payment and Related Matters. .......................................................3

Section 2.03 Extension of Services. ...................................................................................4

Section 2.04 Terminated Services. .....................................................................................4

Section 2.05 Invoice Disputes. ..........................................................................................4

Section 2.06 No Right of Setoff. ........................................................................................5

Section 2.07 Taxes. ............................................................................................................5

**ARTICLE III** TERMINATION .........................................................................................5

Section 3.01 Termination of Agreement. ...........................................................................5

Section 3.02 Breach. ..........................................................................................................5

Section 3.03 Insolvency. ....................................................................................................5

Section 3.04 Effect of Termination. ...................................................................................5

Section 3.05 Force Majeure. ..............................................................................................6

**ARTICLE IV** CONFIDENTIALITY .................................................................................6

Section 4.01          Confidentiality. ....................................................................................6

**ARTICLE V** LIMITATION ON LIABILITY[; INDEMNIFICATION]...........................7

Section 5.01 Limitation on Liability. ..................................................................................7

**ARTICLE VI** MISCELLANEOUS ...................................................................................7

Section 6.01 Notices. .........................................................................................................7

Section 6.02 Headings. .......................................................................................................8

Section 6.03 Severability. ...................................................................................................8

i

# EXHIBIT 7

Section 6.04 Entire Agreement.................................................................................................................8

Section 6.05 Successors and Assigns. ......................................................................................................9

Section 6.06 No Third-Party Beneficiaries............................................................................................9

Section 6.07 Amendment and Modification; Waiver. ...........................................................................9

Section 6.08 Governing Law; Submission to Jurisdiction....................................................................9

Section 6.09 Waiver of Jury Trial..........................................................................................................10

Section 6.10 Counterparts......................................................................................................................10

**EXHIBIT A**  SERVICES……..................................................................................................12

**EXHIBIT 7**

## OPERATIONS AND MANAGEMENT SERVICES AGREEMENT

This Operations and Management Services Agreement, dated as of January 31, 2020 (this "**Agreement**"), is entered into between L'Anse Warden Electric Company, LLC, a Delaware limited liability company ("**LWEC**"), and Convergen Energy WI, LLC, a Delaware limited liability company ("**CEWI**") (and collectively "the Parties").

### <u>RECITALS:</u>

**WHEREAS**, Convergen Energy LLC, a Delaware limited liability company ("**Seller**"), and Nianticvista Energy, LLC, a Delaware limited liability company ("**Buyer**"), have entered into that certain Acquisition Agreement of even date herewith (the "**Purchase Agreement**"), pursuant to which Seller has agreed to sell to Buyer, and Buyer has agreed to purchase from Seller, all (100%) of the membership interest of CEWI;

**WHEREAS**, prior to the consummation of the Purchase Agreement (the "**Closing**"), each of LWEC and CEWI were wholly-owned subsidiaries of the Seller

**WHEREAS**, after the Closing, LWEC shall continue to be a wholly-owned subsidiary of Seller;

**WHEREAS**, prior to the Closing Ted Hansen ("**Hansen**") was employed by Seller and provided managerial services to both LWEC and CEWI;

**WHEREAS**, after the Closing Hansen has had terminated his respective employment with Seller and has become an employee of CEWI;

**WHEREAS**, in order to ensure an orderly transition of LWEC's business after the Closing, CEWI and LWEC have agreed to enter into this Agreement, pursuant to which CEWI will provide LWEC, solely through Hansen, certain services in each case on a transitional basis and subject to the terms and conditions set forth herein.

**NOW, THEREFORE**, in consideration of the mutual agreements and covenants hereinafter set forth, CEWI and LWEC hereby agree as follows:

# EXHIBIT 7

# ARTICLE I
## SERVICES

**Section 1.01   Provision of Services.**

(a)      CEWI agrees to provide the services (the "**Services**") set forth on Exhibit A attached hereto (the "**Service Exhibit**") to LWEC for the period and on the other terms and conditions set forth in this Agreement.

(b)      The parties hereto acknowledge the transitional nature of the Services. Accordingly, prior to the expiration of the End Date (as defined below), LWEC agrees to use commercially reasonable efforts to make a transition of the Services to its own internal organization or to obtain alternate third-party sources to provide the Services.

(c)      Subject to **Section 2.03**, **Section 2.04** and **Section 3.05**, the obligations of CEWI under this Agreement to provide Services shall terminate with respect to the Services on December 31, 2020 (the "**End Date**"). Notwithstanding the foregoing, the parties acknowledge and agree that either party may terminate the Service, in whole and not in part, upon no less than ninety (90) days' prior written notice.

**Section 1.02   Standard of Service.**

(a)      CEWI represents, warrants and agrees that the Services shall be provided in good faith, in accordance with applicable law and, except as specifically provided in the Service Exhibit, in a manner generally consistent with the historical provision of the Services and with the same standard of care as historically provided. Subject to **Section 1.03**, CEWI agrees to make available Hansen for an average of 20 hours per month (the "**Target Work Period**") in accordance with the standards set forth in the preceding sentence; provided that CEWI and LWEC agree to increase or decrease, as applicable, on a case-by-case basis the compensation paid to CEWI for the provision of the Services pursuant to Article II on an equitable basis if during any period covered by an Invoice (as defined below) the time reasonably required for Hansen to perform the Services is materially different from the Target Work Period (such case-by-case adjustment to the compensation, a "**Targeted Compensation Adjustment**"), as determined by CEWI and LWEC in their respective reasonable discretion.

(b)      Except as expressly set forth in **Section 1.02(a)**, CEWI makes no representations and warranties of any kind, implied or expressed, with respect to the Services, including, without limitation, no warranties of merchantability or fitness for a particular purpose, which are specifically disclaimed. LWEC acknowledges and agrees that this Agreement does not create a fiduciary relationship, partnership, joint venture or relationships of trust or agency between the parties and that all Services are provided by CEWI as an independent contractor.

# EXHIBIT 7

**Section 1.03   No Third-Party Service Providers.** [It is understood and agreed that the Services shall be provided exclusively by Hansen and that CEWI may not use other CEWI employees or retain any third-party service providers to provide the Services or any portion thereof to LWEC.

**Section 1.04   Access to Premises.**

(a)      In order to enable the provision of the Services by CEWI, LWEC agrees that it shall provide Hansen, at no cost to CEWI, access to the facilities, assets and books and records of LWEC, in all cases to the extent necessary for CEWI to fulfil its obligations under this Agreement.

(b)      CEWI agrees that Hansen, when on the property of LWEC or when given access to any equipment, computer, software, network or files owned or controlled by LWEC, shall conform to the policies and procedures of LWEC concerning health, safety and security which are made known to CEWI in advance in writing.

## ARTICLE II
### COMPENSATION

**Section 2.01   Responsibility for Wages and Fees.** For such time as Hansen is providing the Services to LWEC under this Agreement, Hansen will remain an employee of CEWI and shall not be deemed to be an employee of LWEC for any purpose, and (b) CEWI shall be solely responsible for the payment and provision of all wages, bonuses and commissions, employee benefits, including severance and worker's compensation, and the withholding and payment of applicable Taxes relating to such employment.

**Section 2.02   Terms of Payment and Related Matters.**

(a)      As consideration for provision of the Services, LWEC shall pay CEWI the amount specified for the Services on the Service Exhibit. In addition to such amount, in the event that CEWI incurs, on behalf of Hansen, reasonable and documented out-of-pocket expenses in the provision of the Services, including, without limitation, travel and lodging expenses, but excluding payments made Hansen pursuant to **Section 2.01** (such included expenses, collectively, **"Out-of-Pocket Costs"**), LWEC shall reimburse CEWI for all such Out-of-Pocket Costs in accordance with the invoicing procedures set forth in **Section 2.02(b)**.

(b)      As more fully provided in the Service Exhibit and subject to the terms and conditions therein:

(i)      CEWI shall provide LWEC, in accordance with **Section 6.01** of this Agreement, with monthly invoices (**"Invoices"**), which shall set forth in reasonable detail, with such supporting documentation as LWEC may reasonably request with respect to Out-of-Pocket Costs, amounts payable under this Agreement; and

## EXHIBIT 7

(ii)      payments pursuant to this Agreement shall be made within thirty (30) days after the date of receipt of an Invoice by LWEC from CEWI.

(c)      It is the intent of the parties that the compensation set forth in the Service Exhibit reasonably approximate the cost of providing the Services, including the cost of Hansen's wages and compensation, without any intent to cause CEWI to receive profit or incur loss.  As opposed to a Targeted Compensation Adjustment pursuant to Section 1.02(a) hereof, if at any time CEWI believes that the payments contemplated by the Service Exhibit are materially insufficient to compensate it for the cost of providing the Services it is obligated to provide hereunder, or LWEC believes that the payments contemplated by the Service Exhibit materially overcompensate CEWI for such Services, such party shall notify the other party as soon as possible, and the parties hereto will commence good faith negotiations toward an agreement in writing as to the appropriate course of action with respect to pricing of such Services for future periods.


**Section 2.03   Extension of Services.** The parties agree that CEWI shall not be obligated to perform any Service after the applicable End Date; *provided*, *however*, that if LWEC desires and CEWI agrees to continue to perform any of the Services after the applicable End Date, the parties shall negotiate in good faith to determine an amount that compensates CEWI for all of its costs for such performance, including the time of Hansen and Out-of-Pocket Costs. The Services so performed by CEWI after the applicable End Date shall continue to constitute Services under this Agreement and be subject in all respects to the provisions of this Agreement for the duration of the agreed-upon extension period.


**Section 2.04   Terminated Services.** Upon termination or expiration of the Services pursuant to this Agreement, or upon the termination of this Agreement in its entirety, CEWI shall have no further obligation to provide the applicable terminated Services and LWEC will have no obligation to pay any future compensation or Out-of-Pocket Costs relating to such Services (other than for or in respect of Services already provided in accordance with the terms of this Agreement and received by LWEC prior to such termination).


**Section 2.05   Invoice Disputes.** In the event of an Invoice dispute, LWEC shall deliver a written statement to CEWI no later than ten (10) days prior to the date payment is due on the disputed Invoice listing all disputed items and providing a reasonably detailed description of each disputed item. Amounts not so disputed shall be deemed accepted and shall be paid, notwithstanding disputes on other items, within the period set forth in **Section 2.02(b)**(ii). The parties shall seek to resolve all such disputes expeditiously and in good faith. CEWI shall continue performing the Services in accordance with this Agreement pending resolution of any dispute.

4

**EXHIBIT 7**

**Section 2.06   No Right of Setoff.** Each of the parties hereby acknowledges that it shall have no right under this Agreement to offset any amounts owed (or to become due and owing) to the other party, whether under this Agreement, the Purchase Agreement or otherwise, against any other amount owed (or to become due and owing) to it by the other party.

**Section 2.07   Taxes.** LWEC shall be responsible for all sales or use Taxes imposed or assessed as a result of the provision of Services by CEWI.

# ARTICLE III
## TERMINATION

**Section 3.01   Termination of Agreement.** Subject to **Section 3.04**, this Agreement shall terminate in its entirety (i) on the date upon which CEWI shall have no continuing obligation to perform any Services as a result of the expiration or termination of this Agreement in accordance with **Section 1.01** or **Section 3.02** or (ii) in accordance with **Section 3.03**.

**Section 3.02   Breach.** Any party (the "**Non-Breaching Party**") may terminate this Agreement with respect to the Service, in whole but not in part, at any time upon prior written notice to the other party (the "**Breaching Party**") if the Breaching Party has failed (other than pursuant to **Section 3.05**) to perform any of its material obligations under this Agreement relating to such Service, and such failure shall have continued without cure for a period of fifteen (15) days after receipt by the Breaching Party of a written notice of such failure from the Non-Breaching party seeking to terminate such service. For the avoidance of doubt, non-payment by LWEC for the Service provided by CEWI in accordance with this Agreement and not the subject of a good-faith dispute shall be deemed a breach for purposes of this **Section 3.02**.

**Section 3.03   Insolvency.** In the event that either party hereto shall (i) file a petition in bankruptcy, (ii) become or be declared insolvent, or become the subject of any proceedings (not dismissed within sixty (60) days) related to its liquidation, insolvency or the appointment of a receiver, (iii) make an assignment on behalf of all or substantially all of its creditors, or (iv) take any corporate action for its winding up or dissolution, then the other party shall have the right to terminate this Agreement by providing written notice in accordance with **Section 6.01**.

**Section 3.04   Effect of Termination.** Upon termination of this Agreement in its entirety pursuant to **Section 3.01**, all obligations of the parties hereto shall terminate, except for the provisions of **Section 2.04**, **Section 2.06**, **Section 2.07**, **Article IV**, **Article V** and **Article VI**, which shall survive any termination or expiration of this Agreement.

# EXHIBIT 7

**Section 3.05   Force Majeure.** The obligations of CEWI under this Agreement with respect to any Service shall be suspended during the period and to the extent that CEWI is prevented or hindered from providing such Service, or LWEC is prevented or hindered from receiving such Service, due to any of the following causes beyond such party's reasonable control (such causes, "**Force Majeure Events**"): (i) acts of God, (ii) flood, fire or explosion, (iii) war, invasion, riot or other civil unrest, (iv) governmental order or applicable law, (v) actions, embargoes or blockades in effect on or after the date of this Agreement, (vi) action by any governmental authority, (vii) national or regional emergency, (viii) strikes, labor stoppages or slowdowns or other industrial disturbances, (ix) shortage of adequate power or transportation facilities, or (x) any other event which is beyond the reasonable control of such party.  The party suffering a Force Majeure Event shall give notice of suspension as soon as reasonably practicable to the other party stating the date and extent of such suspension and the cause thereof, and CEWI shall resume the performance of its obligations as soon as reasonably practicable after the removal of the cause. Neither LWEC nor CEWI shall be liable for the nonperformance or delay in performance of its respective obligations under this Agreement when such failure is due to a Force Majeure Event. The applicable End Date for any Service so suspended shall be automatically extended for a period of time equal to the time lost by reason of the suspension.

## ARTICLE IV
### CONFIDENTIALITY

**Section 4.01          Confidentiality.**

(a)          During the term of this Agreement and thereafter, the parties hereto shall, and shall maintain in confidence and not disclose the other party's financial, technical, sales, marketing, development, personnel, and other information, records, or data, including, without limitation, customer lists, supplier lists, trade secrets, designs, product formulations, product specifications or any other proprietary or confidential information, however recorded or preserved, whether written or oral (any such information, "**Confidential Information**"). Each party hereto shall use the same degree of care, but no less than reasonable care, to protect the other party's Confidential Information as it uses to protect its own Confidential Information of like nature. Unless otherwise authorized in any other agreement between the parties, any party receiving any Confidential Information of the other party (the "**Receiving Party**") may use Confidential Information only for the purposes of fulfilling its obligations under this Agreement (the "**Permitted Purpose**"). Any Receiving Party may disclose such Confidential Information only to its representatives who have a need to know such information for the Permitted Purpose and who have been advised of the terms of this **Section 4.01** and the Receiving Party shall be liable for any breach of these confidentiality provisions by such Persons; *provided*, *however*, that any Receiving Party may disclose such Confidential Information to the extent such Confidential Information is required to be disclosed by a governmental order,

6

**EXHIBIT 7**

in which case the Receiving Party shall promptly notify, to the extent possible, the disclosing party (the "**Disclosing Party**"), and take reasonable steps to assist in contesting such governmental order or in protecting the Disclosing Party's rights prior to disclosure, and in which case the Receiving Party shall only disclose such Confidential Information that it is advised by its counsel in writing that it is legally bound to disclose under such governmental order.

(b)    Notwithstanding the foregoing, "Confidential Information" shall not include any information that the Receiving Party can demonstrate: (i) was publicly known at the time of disclosure to it, or has become publicly known through no act of the Receiving Party or its Representatives in breach of this **Section 4.01**; (ii) was rightfully received from a third party without a duty of confidentiality; or (iii) was developed by it independently without any reliance on the Confidential Information.

(c)    Upon demand by the Disclosing Party at any time, or upon expiration or termination of this Agreement with respect to any Service, the Receiving Party agrees promptly to return or destroy, at the Disclosing Party's option, all Confidential Information. If such Confidential Information is destroyed, an authorized officer of the Receiving Party shall certify to such destruction in writing.

## ARTICLE V
### LIMITATION ON LIABILITY[; INDEMNIFICATION]

**Section 5.01   Limitation on Liability.** In no event shall CEWI have any liability under any provision of this Agreement for any punitive, incidental, consequential, special or indirect damages, including loss of future revenue or income, loss of business reputation or opportunity relating to the breach or alleged breach of this Agreement. LWEC acknowledges that the Services to be provided to it hereunder are subject to, and that its remedies under this Agreement are limited by, the applicable provisions of **Section 1.02**, including the limitations on representations and warranties with respect to the Services.

## ARTICLE VI
### MISCELLANEOUS

**Section 6.01   Notices.** All Invoices, notices, requests, consents, claims, demands, waivers and other communications hereunder shall be in writing and shall be deemed to have been given: (a) when delivered by hand (with written confirmation of receipt); (b) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); (c) on the date sent by facsimile or e-mail of a PDF document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next Business Day if sent after normal business hours of the recipient; or (d) on the [third] day after the date mailed, by certified or registered mail, return receipt requested,

**EXHIBIT 7**

postage prepaid. Such communications must be sent to the respective parties at the following addresses (or at such other address for a party as shall be specified in a notice given in accordance with this **Section 6.01**):

      (a)    if to CEWI:

CONVERGEN ENERGY WI, LLC
 600 Liberty Street, Green Bay, WI  54304
E-mail: ted.hansen@convergenenergy.com
Attention: Ted Hansen:  President


      (b)    if to LWEC:

L'ANSE WARDEN ELECTRIC COMPANY LLC
157 S. Main Street
L'Anse, MI 49946
E-mail:  Steven.Brooks@libra.com
Attention:  Steven Brooks, Vice President

with a copy (which shall not constitute notice) to:

LIBRA CAPITAL US, INC.
134 E. 40th Street
New York, NY 10016
E-mail:  Bert.Diaz@libra.com
Attention:  Bert Diaz, general Counsel


      **Section 6.02   Headings.** The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.


      **Section 6.03   Severability.** If any term or provision of this Agreement is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction. Upon such determination that any term or other provision is invalid, illegal or unenforceable, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.


      **Section 6.04   Entire Agreement.** This Agreement, including the Service Exhibit, constitutes the sole and entire agreement of the parties to this Agreement with

8

**EXHIBIT 7**

respect to the subject matter contained herein and supersedes all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter. In the event and to the extent that there is a conflict between the provisions of this Agreement and the provisions of the Purchase Agreement as it relates to the Services hereunder, the provisions of this Agreement shall control.

**Section 6.05   Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns. Neither party may assign its rights or obligations hereunder without the prior written consent of the other party.

**Section 6.06   No Third-Party Beneficiaries.** This Agreement is for the sole benefit of the parties hereto and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other person any legal or equitable right, benefit or remedy of any nature whatsoever, under or by reason of this Agreement.

**Section 6.07   Amendment and Modification; Waiver.** This Agreement may only be amended, modified or supplemented by an agreement in writing signed by each party hereto. No waiver by any party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving.  No failure to exercise, or delay in exercising, any right, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

**Section 6.08   Governing Law; Submission to Jurisdiction.** This Agreement shall be governed by and construed in accordance with the internal laws of the State of Wisconsin without giving effect to any choice or conflict of law principles. Any legal suit, action or proceeding arising out of or based upon this agreement or the transactions contemplated hereby may be instituted in the federal courts of the United States of America or the courts of the state of Wisconsin in each case located in the city of Madison and county of Dane, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding. Service of process, summons, notice or other document by mail to such party's address set forth herein shall be effective service of process for any suit, action or other proceeding brought in any such court. The parties irrevocably and unconditionally waive any objection to the laying of venue of any suit, action or any proceeding in such courts and irrevocably waive and agree not to plead or claim in any such court that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum.

9

**EXHIBIT 7**

     **Section 6.09   Waiver of Jury Trial.** Each party irrevocably and unconditionally waives any right it may have to a trial by jury in respect of any legal action arising out of or relating to this agreement or the transactions contemplated hereby. Each party to this agreement certifies and acknowledges that (a) no representative of any other party has represented, expressly or otherwise, that such other party would not seek to enforce the foregoing waiver in the event of a legal action, (b) such party has considered the implications of this waiver, (c) such party makes this waiver voluntarily, and (d) such party has been induced to enter into this agreement by, among other things, the mutual waivers and certifications in this **Section 6.09**.

     **Section 6.10   Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, e-mail or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

[SIGNATURE PAGE FOLLOWS]

**EXHIBIT 7**

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

L'ANSE WARDEN ELECTRIC
COMPANY, LLC

By _____

Name: FIDEL ANDUEZA

Title:

CONVERGEN ENERGY WI,
LLC

By _____

Name: Gregory Merle

Title: President

11

**EXHIBIT 7**

## EXHIBIT A

## SERVICES

| | |
|---|---|
| **Description of Service:** | Hansen is to provide management services to LWEC in a manner that is consistent with the services he provided to LWEC immediately prior to the Closing. |
| **End Date:** | December 31, 2020 |
| **Fee:** | $10,000 per month |
| **Time Commitment:** | 20 hours per month |
| **CEWI Contact:** | Ted Hansen<br>c/o Convergen Energy WI, LLC<br>600 Liberty Street<br>Green Bay, WI  54304<br>Phone No.:  (920) 427-5390<br>E-mail:  ted.hansen@convergenenergy.com |
| **LWEC Contact:** | Steven Brooks<br>c/o LIBRA CAPITAL US, INC.<br>134 E. 40th Street<br>New York, NY 10016<br>Phone No.: (212) 401-9324<br>E-mail:  Steven.Brooks@libra.com |

**EXHIBIT 7**