**LIMITED LIABILITY COMPANY OPERATING AGREEMENTOF**
**L'ANSE WARDEN ELECTRIC COMPANY LLC**

THIS LIMITED LIABILITY COMPANY OPERATING AGREEMENT OF L'ANSE WARDEN ELECTRIC COMPANY LLC, a Delaware limited liability company (the "Company"), dated as of November 8, 2016, is entered into by CONVERGEN ENERGY LLC ("Convergen"), as the sole member of the Company.

**RECITALS**

A.     The Company was formed as a Delaware limited liability company pursuant to the filing of the Certificate of Formation of the Company in the office of the Secretary of State of Delaware on December 21, 2006, and such Certificate of Formation remains in full force and effect.

B.     Considar WP Acquisition Corp., as the Company's initial Member, entered into and adopted a Limited Liability Company Operating Agreement on January 1, 2007 (as subsequently amended, the "Initial LLC Agreement").

C.     The Initial LLC Agreement was terminated pursuant to the terms of the Termination Agreement dated November 8, 2016.

D.     Pursuant to and in accordance with the Act (as hereinafter defined), by entering into and adopting this Agreement, the new sole Member of the Company hereby adopts this Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Member hereby agrees that the following shall be the limited liability company agreement of the Company:

**ARTICLE 1**
**Definitions**

As used in this Agreement, the following terms shall have the meanings set forth below:

(a)     "Act" means the Limited Liability Company Act as enacted in the State of Delaware, as the same has been amended from time to time

(b)     "Agreement" means this Limited Liability Company Operating Agreement, as it may from time to time be amended, supplemented or otherwise modified.

(c)     "Capital Account" when used with respect to any Member means the capital account maintained for such Member in accordance with Section 5.3 hereof, as such capital account may be increased or decreased from time to time pursuant to the provisions of Section 5.3.

**EXHIBIT 20**

(d)     "Capital Contribution" means the total amount of cash and the agreed net value of property other than cash contributed to the Company by a Member pursuant to Section 5.1 hereof.  Any reference to the Capital Contribution of a Member shall include the Capital Contribution made by any predecessor holders of such Member's Membership Interest.

(e)     "Certificate of Formation" means the Certificate of Formation of the Company filed with the Delaware Secretary of State on December 21, 2006, as it may from time to time be amended, supplemented or otherwise modified.

(f)     "Code" means the Internal Revenue Code of 1986, as amended, or any superseding federal revenue statute.

(g)     "Distribution" means any cash, securities, property or other assets paid or distributed to the Member by the Company.

(h)     "Fiscal Year" means the calendar year.

(i)     "Managers" has the meaning set forth in Section 4.1 of this Agreement.

(j)     "Member" means Convergen and any other Person that may hereafter become a member of the Company pursuant to the terms hereof.

(k)     "Member Nonrecourse Debt" means a nonrecourse debt of the Company within the meaning of Section 1.704-2(b)(4) of the Treasury Regulations.

(l)     "Member Nonrecourse Deductions" means the items of loss, deduction and expenditure attributable to Member Nonrecourse Debt within the meaning of Section 1.704-2(i)(2) of the Treasury Regulations.

(m)     "Membership Interest" means the respective percentage interests in the Company held by each Member, of which initially 100% is held by Convergen.

(n)     "Net Losses" means the losses of the Company, if any, determined in accordance with federal income tax principles.

(o)     "Net Profits" means the income of the Company, if any, determined in accordance with federal income tax principles.

(p)     "Person" means any individual, corporation, governmental authority, limited liability company, partnership, trust, joint stock company, business trust, joint venture, unincorporated association or other entity.

(q)     "Treasury Regulations" means all proposed, temporary and final regulations promulgated under the Code as from time to time in effect.  References in this Agreement to specific sections of the Treasury Regulations shall also refer to the corresponding sections of succeeding Treasury Regulations as they may be amended from time to time.

2

**EXHIBIT 20**

**ARTICLE 2**
**Organization**

2.1    Name.    The name of the Company is L'ANSE WARDEN ELECTRIC COMPANY LLC, or such other name as the Managers may from time to time select.

2.2    Principal Place of Business.    The address of the principal place of business of the Company is 157 S Main St, L'Anse, MI 49946, or such other place as the Managers may determine. The Managers may, at any time, change the principal place of business of the Company, subject to the provisions of the Act.    In addition, the Company may establish any other places of business as the Managers may deem advisable from time to time.

2.3    Registered Office and Registered Agent. The Company's registered office shall be located c/o Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808, or such other place in the State of Delaware as the Managers may from time to time determine.

2.4    Duration.    The duration of the Company shall be perpetual, unless the Company is dissolved sooner pursuant to this Agreement or the Act.

2.5    Purposes; Powers.    The purpose of the Company shall be to carry on any lawful business, purpose or activity, whether or not for profit, to the fullest extent provided in the Delaware Act. The Company shall possess and may exercise all the powers and privileges granted by the Delaware Act or by any other law or by this Agreement, together with any powers incidental thereto, so far as such powers and privileges are necessary or convenient to the conduct, promotion or attainment of the businesses, purposes or activities of the Company.

**ARTICLE 3**
**Members**

3.1    Name and Address.    As of the date hereof, Convergen is the sole Member of the Company, and its address is c/o Libra Capital US, Inc, 134 East 40th Street, New York, NY 10016, U.S.A.

3.2    Additional Members. One or more additional members of the Company may be admitted to the Company after the date of this Agreement with the prior written consent of Members holding at least a fifty percent (50%) interest in the Company's Membership Interest at the time of the proposed transfer.

3.3    Restriction on Transferability of Interests.    Without the prior written consent of of Members holding at least a fifty percent (50%) interest in the Company's Membership Interest at the time of the proposed transfer, no Member may sell or assign, in whole or in part, any of such Member's Membership Interest.

3.4    Limitation of Liability.    A Member's liability to the Company, to any other Member or to any third party shall be limited to the maximum extent permitted by law.    A Member shall not be personally liable for any indebtedness, liability or obligation of the Company, except that such Member shall remain personally liable for the payment of its Capital

3

**EXHIBIT 20**

Contribution and as otherwise expressly set forth in this Agreement, the Act and any other applicable law.

3.5 <u>Priority and Return of Capital</u>. If there is more than one Member, no Member shall have a right to demand a return or payment of his or her Capital Contribution and no Member shall have priority over any other Member, whether for the return of a Capital Contribution or for Net Profits, Net Losses or a Distribution; *provided, however*, that this Section 3.5 shall not apply to any loan or other indebtedness (as distinguished from a Capital Contribution) made by a Member to the Company.

3.6 <u>Liability of a Member to the Company</u>. A Member that rightfully receives the return of any portion of a Capital Contribution is liable to the Company only to the extent now or hereafter provided by the Act. A Member that receives a Distribution made by the Company in violation of this Agreement or made when the Company's liabilities exceed its assets (after giving effect to such Distribution) shall be liable to the Company for the amount of such Distribution.

3.7 <u>Financial Adjustments</u>. No Member admitted after the date of this Agreement shall be entitled to any retroactive allocation of losses, income or expense deductions incurred by the Company. If there is more than one Member, the Managers may, at their discretion, at the time a Member is admitted, close the books and records of the Company (as though the Fiscal Year had ended) or make pro rata allocations of loss, income and expense deductions to such Member for that portion of the Fiscal Year in which such Member was admitted, in accordance with the Code.

3.8 <u>Action by Members Without a Meeting</u>. Whenever the Members of the Company are required or permitted to take any action by vote, such action may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the Members who hold voting interests having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all of the Members entitled to vote thereon were present and voted and shall be delivered to the administrative office of the Company, or to an employee or agent of the Company.

3.9 <u>No Exclusive Duty to Company</u>. A Member may have other business interests and may engage in other activities in addition to those relating to the Company, whether or not such business interests or activities may be competitive with those of the Company.

### ARTICLE 4
### <u>Management</u>

4.1 <u>Management of the Business</u>. The business, affairs and management of the Company, including its policies and administration, shall be exclusively vested in one or more managers, each of whom may, but need not to be, a Member (the "<u>Manager</u>" and collectively, the "<u>Managers</u>"). The number of Managers and the designation of Managers shall be designated by the Members. Initially the number of Managers shall be two (2) and Fidel Andueza and Bert Diaz are hereby designated as the Initial Managers. The Managers shall conduct, direct and

4

**EXHIBIT 20**

exercise full control over all activities of the Company. The Managers shall have full power and authority to do all things they deem necessary or desirable to conduct the business of the Company.

4.2     Binding Authority of Managers. No Member is an agent of the Company solely by virtue of being a Member, and no Member has authority to act for the Company solely by virtue of being a Member. Only the Managers and, to the extent authorized pursuant to Section 4.3, the officers of the Company may act for the Company in connection with the ordinary course of its day to day business and with respect to all other matters.

4.3     Officers. The Managers may designate one or more individuals as officers of the Company, who shall have such titles and exercise and perform such powers and duties as shall be assigned to them from time to time by the Managers. Any officer may be removed by the Managers at any time, with or without cause. Each officer shall hold office until his or her successor is elected and qualified, unless earlier removed by the Managers. Any number of offices may be held by the same individual. The salaries and other compensation of the officers, if any, shall be fixed by the Managers.

4.4     Liability of the Managers. The Managers shall not have any liability for the obligations or liabilities of the Company except to the extent provided in the Act and other applicable law. The Managers shall not be personally liable for any indebtedness, liability or obligation of the Company, except as otherwise set forth in this Agreement, the Act and any other applicable law. Except as may otherwise be specifically set forth in this Agreement, the Managers' personal liability shall be limited to the fullest extent under the Act and other applicable law.

4.5     Indemnification. Subject to the standards and restrictions, if any, set forth in this Agreement, the Company shall, to the fullest extent permitted by law, indemnify and hold harmless the Managers or any officer or agent of the Company, made, or threatened to be made, party to an action or proceeding, whether civil or criminal, by reason of the fact that such person is or was a Manager, or an officer or agent of the Company, against amounts paid in settlement and reasonable expenses, including attorneys' fees, actually or necessarily incurred by him, her or it in connection with the defense or settlement of such action, or in connection with an appeal therein; *provided, however*, that no indemnification shall be made to or on behalf of the Managers or any officer, agent or other person if a judgment or other final adjudication adverse to such person establishes (a) that his, her or its acts were committed in bad faith or were the result of active and deliberate dishonesty and were material to the cause of action so adjudicated, or (b) that he, she or it personally gained in fact a financial profit or other advantage to which such person was not legally entitled.

## ARTICLE 5
### Capital Contributions

5.1     Capital Contribution. The Capital Contribution of the Member is as set forth on the books and records of the Company.

**EXHIBIT 20**

5.2    Additional Capital Contributions.  Except as set forth in Section 5.1 of this Agreement, no Member shall be required to make any additional capital contributions.

5.3    Capital Accounts.  If there is more than one Member, a Capital Account shall be maintained for each Member.  Said Capital Account shall be kept in accordance with the provisions of Section 1.704-1(b)(2)(iv) of the Treasury Regulations.  Without limiting the foregoing, each Member's Capital Account shall be (a) increased by the net agreed value of each Capital Contribution made by such Member, allocations to such Member of the Net Profits and any other allocations to such Member of income pursuant to the Code, and (b) decreased by the net agreed value of each Distribution made to such Member by the Company, allocations to such Member of Net Losses and other allocations to such Member pursuant to the Code.

5.4    Transfers.  Upon a permitted sale or other transfer of a Membership Interest in the Company, the Capital Account of the Member transferring his or her Membership Interests shall become the Capital Account of the Person to whom such Membership Interest is sold or transferred in accordance with Section 1.704-1(b)(2)(iv) of the Treasury Regulations.

5.5    Modifications.  The manner in which Capital Accounts are to be maintained pursuant to this Section is intended to comply with the requirements of Section 704(b) of the Code.  If in the opinion of the Managers the manner in which Capital Accounts are to be maintained pursuant to this Agreement should be modified to comply with Section 704(b) of the Code, then the method in which Capital Accounts are maintained shall be so modified; *provided, however*, that any change in the manner of maintaining Capital Accounts shall not materially alter the economic agreement between or among the Members.

5.6    Deficit Capital Account.  Except as otherwise required in the Act or this Agreement, no Member shall have any liability to restore all or any portion of a deficit balance in a Capital Account.

5.7    Withdrawal or Reduction of Capital Contributions.  A Member shall not receive from the Company any portion of a Capital Contribution until all indebtedness and liabilities of the Company, except any indebtedness, liabilities and obligations to Members on account of their Capital Contributions, have been paid or there remains property of the Company, in the sole discretion of the Members, sufficient to pay them.  A Member, irrespective of the nature of the Capital Contribution of such Member, has only the right to receive cash in return for such Capital Contribution.

### ARTICLE 6
### Allocations and Distributions

6.1    Allocations of Profits and Losses if There is One Member.  So long as there shall be only one Member, the Net Profits and Net Losses of the Company shall belong to such Member and any distributions of cash or property may be made as determined by such Member. Sections 6.2, 6.3 and 6.4 apply if there shall be more than one Member.

6.2    Allocations of Profits and Losses.  If there is more than one Member, the Net Profits and the Net Losses for each Fiscal Year shall be allocated among the Members in accordance with the respective Membership Interests.

6

EXHIBIT 20

6.3     Required Special Allocations if there is More than One Member. Notwithstanding Section 6.2 hereof, if there is more than one Member:

(a)     Appropriate adjustments shall be made to the allocations of Net Profits and Net Losses to the extent required under Section 704(c) of the Code and the Treasury Regulations thereunder and under Sections 1.704-1(b)(2)(iv)(d), (e), (f) and (g) of the Treasury Regulations.

(b)     Any Member Nonrecourse Deductions shall be specially allocated to the Member(s) that bear(s) the economic risk of loss with respect to the Member Nonrecourse Debt to which the Member Nonrecourse Deductions are attributable in accordance with Section 1.704-2(i)(1) of the Treasury Regulations.

(c)     Appropriate adjustments shall be made to the allocations of Net Profits and Net Losses to the extent required to comply with the "qualified income offset" provisions of Section 1.704-1(b)(2)(ii)(d) of the Treasury Regulations, the Company "minimum gain chargeback" provisions of Section 1.704-2(f) of the Treasury Regulations, and the Member "minimum gain chargeback" provisions of Section 1.704-2(i)(4) of the Treasury Regulations, all issued pursuant to Section 704(b) of the Code.

6.4     Distributions. If there is more than one Member, the Managers may from time to time make Distributions pro rata in proportion to Membership Interests as of the record date set for such Distribution.

6.5     Offset. The Company may offset all amounts owing to the Company by a Member against any Distribution to be made to such Member.

6.6     Limitation Upon Distributions. No Distribution shall be declared and paid unless, after such Distribution is made, the assets of the Company are in excess of all liabilities of the Company.

6.7     Interest on and Return of Capital Contributions. No Member shall be entitled to interest on his or her Capital Contribution or to a return of Capital Contribution, except as specifically set forth in this Agreement.

6.8     Accounting Period. The accounting period of the Company shall be the Fiscal Year.

## ARTICLE 7
### Taxes; Books and Records; Information.

7.1     Tax Returns. If there is more than one Member, the Managers shall cause to be prepared and filed all necessary federal and state income tax returns for the Company. The Managers shall furnish to the Members all pertinent information in their possession relating to Company operations that is necessary to enable the Company's income tax returns to be prepared and filed.

**EXHIBIT 20**

7.2    Tax Elections.   The Company shall make the following elections on the appropriate tax returns:

(a)    To adopt a calendar year as the Fiscal Year; and

(b)    Any other election that the Managers may deem appropriate and in the best interests of the Members including an election under Section 754 of the Code.

Neither the Company nor any Member may make an election for the Company to be taxed as a corporation under the Code or any similar provisions of applicable state law, and no provisions of this Agreement shall be interpreted to authorize any such election.

7.3    Tax Matters Partners.  If there is more than one Member, the Managers shall be or shall designate another Member to be the "tax matters partner" of the Company pursuant to Section 6231(a)(7) of the Code.

7.4    Books and Records; Bank Accounts.  (a)  The Managers shall maintain (or cause to be maintained) accurate and complete books and records for the Company (including, without limitation, financial books and records) as required to be maintained under the Act and in accordance with sound business practices in the manner determined by the Managers.

(b)    All receipts, funds and income of the Company shall be deposited in the name of the Company in such banks as are determined by the Managers.  Withdrawals from said banks shall be made on signatures of such person or persons as shall be authorized by the Managers.  There shall be no commingling of the monies and funds of the Company with monies and funds of any other entity.

7.5    Information.  A Member may inspect during ordinary business hours and at the principal place of business of the Company, the Certificate of Formation, this Agreement, the minutes of any decision of the Members or the Managers, any tax returns of the Company for the immediately preceding three Fiscal Years, and all other business records in the possession of the Company.

## ARTICLE 8
### Dissolution

8.1    Dissolution.  The Company shall be dissolved and its affairs shall be wound up upon the first to occur of the following:

(i)    the latest date on which the Company is to dissolve, if any, as set forth in the Certificate of Formation;

(ii)    the unanimous vote or written consent of the holders of all the Membership Interests; or

(iii)    the entry of a decree by a court of competent jurisdiction that dissolution and liquidation of the Company is required by law.

8

**EXHIBIT 20**

8.2    Winding Up.  Upon the dissolution of the Company, the Managers may, in the name of and for and on behalf of the Company, prosecute and defend suits, whether civil, criminal or administrative, and sell or otherwise dispose of the Company's assets to the extent permitted by any agreement dealing with the Company's assets, discharge the Company's liabilities for which a Member or Members have assumed personal liability and distribute to the Members any remaining assets of the Company, all without affecting the liability of Members. Upon such a winding up of the Company, the assets shall be distributed as follows:

(a)    To creditors, including any Member who is a creditor, to the extent permitted by law, in satisfaction of liabilities of the Company, including any expenses of the Company incidental to such winding-up and dissolution, other than liabilities for Distributions to Members under the Act;

(b)    To the setting up of any reserves which the Managers may deem reasonably necessary for any contingent or unforeseen liabilities or obligations of the Company as provided in Section 18-804(b) of the Delaware Act and, subject to such Section 18-804(b), at the expiration of such period as the aforesaid person or persons may deem advisable, for distribution in the manner hereinafter provided;

(c)    To Members and former Members in satisfaction of liabilities for Distributions under the Act; and

(d)    To Members first for the return of their Capital Contributions, to the extent not previously returned, and second respecting their Membership Interests, in the proportions in which the Members share in Distributions in accordance with this Agreement.

8.3    Cancellation of Certificate of Formation.  Upon the completion of the distribution of the Company's assets as provided in Section 8.2 hereof, the Certificate of Formation of the Company shall be canceled and all such other actions as may be necessary will be taken to terminate the Company.

8.4    Deficit Capital Account.  If the Company has more than one Member, upon a liquidation of the Company within the meaning of Section 1.704-1(b)(2)(ii)(g) of the Treasury Regulations, if any Member has a deficit Capital Account (after giving effect to all contributions, distributions, allocations and other adjustments for all Fiscal Years, including the Fiscal Year in which such liquidation occurs), such Member shall have no obligation to make any Capital Contribution, and the negative balance of any Capital Account shall not be considered a debt owed by the Member to the Company or to any other Person for any purpose.

8.5    Nonrecourse to Other Members.  Except as provided by applicable law or as expressly provided in this Agreement, upon dissolution, each Member shall receive a return of his or her Capital Contribution solely from the assets of the Company.  If the assets of the Company remaining after the payment or discharge of the debts and liabilities of the Company are insufficient to return any Capital Contribution of any Member, such Member shall have no recourse against any other Member [or the Managers].

8.6    Termination.  Upon completion of the dissolution, winding up, liquidation, and distribution of the assets of the Company, the Company shall be deemed terminated.

9

**EXHIBIT 20**

**ARTICLE 9**
**General Provisions**

9.1    Notices. Any notice, demand or other communication required or permitted to be given pursuant to this Agreement shall have been sufficiently given for all purposes if (a) delivered personally to the party or to an executive officer of the party to whom such notice, demand or other communication is directed or (b) sent by registered or certified mail, postage prepaid, addressed to the Member or the Company at its address set forth in this Agreement. Except as otherwise provided in this Agreement, any such notice shall be deemed to be given (i) when received, if delivered personally or by overnight courier and (ii) three business days after the date on which it was deposited in a regularly maintained receptacle for the deposit of United States mail, addressed and sent as set forth in this Section.

9.2    Amendments. This document sets forth the entire operating agreement of the Company and may be amended by the Member as it sees fit or, if there is more than one Member, by the unanimous consent or approval of all of the Membership Interests.

9.3    No Rights of Creditors and Third Parties Under Agreement. This Agreement is entered into by the Member for the exclusive benefit of the Company, its Members and permitted successors and assigns. This Agreement is expressly not intended for the benefit of any creditor of the Company or any other Person. No such creditor or any third party shall have any rights under this Agreement or any agreement between the Company and any Member with respect to any Capital Contribution or otherwise.

9.4    Construction. Whenever the singular number is used in this Agreement and when required by the context, the same shall include the plural and vice versa, and the masculine gender shall include the feminine and neuter genders and vice versa.

9.5    Headings. The headings in this Agreement are for convenience only and shall not be used to interpret or construe any provision of this Agreement.

9.6    Waiver. No failure of a Member to exercise, and no delay by a Member in exercising, any right or remedy under this Agreement shall constitute a waiver of such right or remedy. No waiver by a Member of any such right or remedy under this Agreement shall be effective unless made in a writing duly executed by all Members and specifically referring to each such right or remedy being waived.

9.7    Severability. Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law. However, if any provision of this Agreement shall be prohibited by or invalid under such law, it shall be deemed modified to conform to the minimum requirements of such law or, if for any reason it is not deemed so modified, it shall be prohibited or invalid only to the extent of such prohibition or invalidity without the remainder thereof or any other such provision being prohibited or invalid.

9.8    Binding Effect. This Agreement shall be binding upon and inure to the benefit of all Members, and each of the successors and assignees of the Members, except that no right or obligation of a Member under this Agreement may be assigned by such Member to another Person without first obtaining the written consent of the Managers.

10

**EXHIBIT 20**

9.9    Agency.   If there is more than one Member, each Member shall designate a natural person to act as such Member's sole authorized agent for all matters relating to the Company and to this Agreement (which agent may, in the case of a Member who is a natural person, be the Member).   Unless and until a Member shall have given written notice to each other member to the effect that such agency has been terminated, (a) any consent or other instrument to be made or given under the provisions of this Agreement that may be executed by a Member shall be executed on behalf of such Member only by such agent, and (b) each other Member shall be entitled conclusively to rely on the execution by the agent as if it were the execution by the Member.

9.10    Governing Law.   This Agreement shall be governed by, and interpreted and construed in accordance with, the laws of the State of Delaware.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

11

**EXHIBIT 20**

IN WITNESS WHEREOF, the undersigned has executed this Agreement as of the date first above written.

MEMBER:

CONVERGEN ENERGY LLC

By: _____
Name: Fidel Andueza
Title:   President

12

**EXHIBIT 20**