UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CONVERGEN ENERGY LLC, et al.,

                Plaintiffs,

-v-

STEVEN J. BROOKS, et al.,

                Defendants.

Civil Action No. 20-cv-3746 (LJL)

## SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION TO STAY ARBITRATION

Specially appearing defendant Convergen Energy WI, LLC ("CE-Wisconsin") respectfully submits this Surreply in Opposition to Plaintiffs' Motion to Stay Arbitration.

## ARGUMENT

Plaintiffs cannot rely only on unproven allegations in a complaint to maintain their case, much less convince the Court to ignore the arbitration clause set forth in the parties' supply agreement. (CE-Wisconsin's brief in opposition to the motion to stay Doc. No. 69, pp. 12-13.)

With the new Declaration of Bert Diaz, Plaintiffs attempt to offer—for the first time[1]— actual "proof" to back up their heretofore unsupported allegations that the Supply Agreement was induced by defendants' "fraudulent scheme," such that the arbitration clause in that agreement should be ignored. However, Mr. Diaz's statements only serve to support CE-Wisconsin's argument that, under applicable law, this Court should not interfere with the AAA arbitration.

---

[1] Up until this point, Plaintiffs (both here and in related cases) have relied almost exclusively on hearsay and the unproven allegations in their Complaint, citing those allegations as if they were actual established facts. A primary example of Plaintiffs' tendency towards gamesmanship is found in briefing on CE-Wisconsin's motion for preliminary injunction before the Western District of Wisconsin case (now transferred to and pending before this Court). There, Plaintiffs submitted a declaration from Camilo Patrignani, purporting to provide "evidence" of a fraudulent scheme. (Case No. 20-CV-5240 (LJL) (the "WIWD Case"), Doc. No. 22.) However, that declaration is composed largely of hearsay, and is not admissible. (*See* CE-Wisconsin's Reply in Support of Motion for Preliminary Injunction, WIWD Case, Doc. No. 29, pp. 3-4.)

There are two critically important points regarding the Diaz Declaration of which the Court should be aware: 1) evidence available to the Plaintiffs at the time of the filing of their motion, such as the Diaz Declaration, should not later be allowed in reply; and 2) the Diaz Declaration evidences the origin of the arbitration clause as solely Plaintiffs' proposal without any taint of fraud.

First, Plaintiffs' late submission of the Diaz Declaration is a tacit admission that Plaintiffs failed to make the minimal evidentiary showing necessary to support the assertion that the arbitrability decision should be reserved for this Court. (*See* CE-Wisconsin's Resp. Br., Doc. No. 69, p.13.)  Plaintiffs should not be allowed to provide new evidence on reply that was clearly available to them at the time they first filed their motion.  *Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381,387 (SDNY 2010) ("It is plainly improper to submit on reply evidentiary information that was available to the moving party at the time that it filed its motion and that is necessary in order for that party to meet its burden.")

Second, and more importantly, the Diaz Declaration only bolsters CE-Wisconsin's positions.  The gravamen of Plaintiffs' original argument to stay the Wisconsin arbitration is that the Supply Agreement—along with the other agreements at issue in this case—were "permeated by fraud."  (Doc. No. 65, pp. 8-9.)   Citing New York State law, Plaintiffs contended that the arbitration clause in the Supply Agreement may be ignored, because the agreement is so "permeated by fraud," that the entire agreement is void. Plaintiff submits the Diaz Declaration in the hopes of shoring up that argument.

However, as demonstrated in CE-Wisconsin's opposition brief, New York law does not govern the Court's analysis. (Doc. No. 69, pp. 11-12.)  Rather, the Court's decision is governed by the Federal Arbitration Act ("FAA" or "Act.")  The "permeated by fraud" concept is wholly a

2

creature of New York State law, and is not recognized as a means of evading arbitration under the FAA. (*Id.*)[2]  Under the FAA, the arbitration clause is considered a severable, stand-alone agreement, and its validity should be considered separately from the rest of the contract. *See Prima Paint v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402 (1967) ("[A]rbitration clauses as a matter of federal law are 'separable' from the contracts in which they are embedded"); *Buckeye Check Cashing Inc. v. Cardegna*, 546 U.S. 440, 449 (2006).

Notably, Plaintiffs' reply does not even mention *Prima Paint*, much less question the applicability of the severability doctrine in this case.  Under this controlling law, when considering the validity of the arbitration clause under the FAA, the Court **must** consider the arbitration clause **separately** from the rest of the contract, even if a party alleges that the contract itself was induced by fraud.  Plaintiffs' "fraudulent scheme" arguments are a red herring to distract the Court from considering the arbitration clause independently and should be disregarded.

Under the *Prima Paint* analysis, the Diaz Declaration convincingly demonstrates that the mandatory arbitration clause was the **least** controversial point in the drafting of the Supply Agreement.   Indeed, Mr. Diaz first **admits** that he was the source of the first draft of the Supply Agreement.  (Diaz Dec., Doc. No. 85, ¶ 4.) As such, although he attempts to minimize this fact by asserting that the draft was just a "template," Diaz's declaration is an admission that the mandatory arbitration clause in that draft also came from him.  (*Id.*).  One wonders if the decision to expressly venue the arbitration proceeding in Madison, Wisconsin in the first draft was part and parcel of the "template"?  Obviously, as the General Counsel to the Libra Group, Mr. Diaz is a sophisticated attorney who had the wherewithal to modify the arbitration clause, if he saw fit, but he did not.

---

[2] Even under New York law, the validity of the "permeated by fraud" concept is dubious.  (*See* Doc. No. 69, pp. 11-12.)

Mr. Diaz goes on to aver that Mr. Brooks made a number of comments and suggested changes to the draft Supply Agreement, and then returned them to Mr. Diaz. (*Id.*, ¶¶ 5-6, Exh. I.) Notably, **none** of the changes proposed by Mr. Brooks had anything to do with the arbitration clause. (*Id.*, Exh. I.) As a result, the mandatory arbitration clause in the final document contains the same language that Mr. Diaz originally proposed. There is simply no basis whatsoever to argue that the arbitration clause itself was fraudulently induced, or is somehow otherwise invalid. Diaz's declaration convincingly demonstrates only that the arbitration clause itself was one of the least controversial parts of the Supply Agreement.

As a result, when reviewing the validity of the arbitration clause independent of the other contractual terms in the Supply Agreement, as required under the *Prima Paint* analysis, the Diaz Declaration supports the conclusion that the Court may not interfere with the Wisconsin arbitration, and that Plaintiffs' motion to stay the arbitration should be denied.

Plaintiffs also dispute CE-Wisconsin's reliance on *Henry Schein Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019), under which the Court may not interfere when the arbitration clause reserves issues of arbitrability to the arbitrator. Plaintiffs argue that, even under the FAA and under *Schein*,[3] this Court still has some responsibility to determine whether a case should go to arbitration.

Plaintiffs' argument misses the point. While this Court may have a "gatekeeper" function with regard to whether a case should go to arbitration, the scope of this Court's review is minimal, essentially limited to a determination of whether an arbitration clause actually exists. *See, e.g., Lloyd's Syndicate 457 v. FloaTEC, LLC*, 921 F.3d 508, 515 n.4 (5th Cir. 2019); *Schein*, 139 S. Ct.

---

[3] On reply, Plaintiffs abandon any overt reliance upon New York state "permeated by fraud" cases, instead propounding their arguments under the FAA and federal authorities. Nevertheless, Plaintiffs continue to advance the incorrect position that an arbitration clause can be ignored, where the entire contract was induced by fraud.

at 530.  This is especially true where the parties' agreement explicitly reserves questions of arbitrability to the arbitrator.  Under such circumstances, the Court's role is only to look at the contract in question to verify that there is a valid arbitration clause that covers the dispute at bar.  Under the severability doctrine announced by *Prima Paint*, that gatekeeper role is limited to the review of the formation of the arbitration clause itself, not the entire agreement.  If it is the case that the arbitration clause is valid, which it is here, then all other questions of arbitrability must be reserved for the arbitrator.

The Diaz Declaration demonstrates that (1) Mr. Diaz was the source of the language of the clause that was unchanged through execution, and (2) Mr. Brooks could not have misled anyone with regard to the arbitration clause.  The conclusion from the Diaz Declaration is that the arbitration clause, granting the arbitrator the issue of arbitrability, was not fraudulently induced.[4]

These facts are determinative of the Court's decision in its role as a gatekeeper.  The arguments raised by Plaintiffs—that the entire Supply Agreement was fraudulently induced and, therefore, the arbitration clause is invalid "by proxy"—are not within this Court's purview.  Rather, arguments as to the enforceability of the contract as a whole are reserved to the arbitrator pursuant to the arbitration clause and governing law.

---

[4] Relying upon complaint allegations and hearsay declarations, Plaintiffs' continue their unfounded mantra of "fraud" on the part of Steven Brooks.  They use this allegation to claim the arbitration clause is unenforceable.  At some point the actual provable facts must matter. Fidel Andueza, Libra's Chief Investment Officer and the Manager and President of LWEC, signed the Supply Agreement, not Mr. Brooks.  (*See* Supp. Dec. of Theodore Hansen, WIWD Case, Doc. No. 30, ¶¶ 5-7; Doc. No. 29, pp. 4-5.)  Mr. Andueza was Mr. Brooks superior at Libra. (*Id*.)  Mr. Andueza (who is still employed by Libra) orchestrated the transaction that is now alleged to be procured fraudulently.  Mr. Brooks fully disclosed his involvement and others to Mr. Andueza. (*Id*., 7.)   Yet, we have not heard from Mr. Andueza.  Thus, Plaintiffs' must rely upon the complaint allegations and hearsay declarations in addition to the Diez Declaration. Mr. Andueza's execution of the Supply Agreement that was drafted by his General Counsel means Libra signed the Supply Agreement with full knowledge of the content and terms of it.  There is no factual basis to argue inducement by fraud.

## **CONCLUSION**

For the reasons set forth herein, as well as the reasons stated in CE-Wisconsin's Opposition Brief, Plaintiffs' motion to stay the Wisconsin arbitration should be denied.

Dated this 21st day of July, 2020.

*s/Benjamin LaFrombois, Esq.*
Benjamin D. LaFrombois, Esq.
WI State Bar No. 1027910

William E. Fischer
WI State Bar No. 1045725

von BRIESEN & ROPER, s.c.,
*Attorneys for Defendants, Theodore John Hansen, Brian R. Mikkelson and Convergen Energy WI, LLC*

Direct contact information:
Benjamin D. LaFrombois, Esq.
2905 Universal Street, Suite 2
Oshkosh, WI 54904
920.233.4704 direct dial
blafrombois@vonbriesen.com

William E. Fischer
920.232.4843 direct dial
wfischer@vonbriesen.com