**CONFIDENTIAL**
Convergen Energy Wisconsin LLC
October ___, 2019
Page 2

November ___, 2019

Convergen Energy LLC
134 East 40th Street
New York, NY 10016

To the Board of Directors of Convergen Energy:

As you are aware, **NianticVista Energy, LLC**, an affiliate of Riverview Energy Corporation ("Niantic") is pleased to submit this non-binding indication of interest for the potential acquisition of **Convergen Energy Wisconsin LLC** (the "Company"; and together with Niantic, collectively, the "parties").

Riverview Energy Corporation is part of a privately held sixth-generation, family-owned group which has operated in the energy industry since 1843. The collective operations of the group include the offering of a wide-range of carbon products including thermal coal, coking coal, and metallurgical coke, as well as supply coal and other materials. Our operations service large, multi-national needs in the power, metals, and cement production industries. Our group's operations span across Switzerland, France, Spain, India, Hong Kong, and the United States. Currently, in the United States we are developing a refining plant in Indiana, which will convert coal into ultra-low sulfur diesel fuel, Naptha, and other valuable fuels. The project represents a $2.5 billion investment. We also are invested in multiple baseload power production facilities globally.

An additional intended input of the Indiana project will be plastic waste materials, which will be converted alongside the coal feedstock. We see strategic value in the Company's business as it pertains to sourcing, processing, and handling plastic waste materials.

**I. Purchase Price and Date of Closing**

A summary of Niantic's preliminary thoughts regarding an acquisition structure in connection therewith are as follows: based on financial information shared to date (i.e. the unaudited financial statements of the Company dated July 31, 2019 and the prior management-prepared statements of the Company), and our meetings with representatives of the Company, we are prepared to initiate acquisition discussions between Niantic and the Company, whereby the Company will be acquired by Niantic (the "Transaction") for a Purchase Price of $5,800,000, on a debt-free basis with normalized working capital at the time of closing. For avoidance of doubt, the Purchase Price assumes the equipment, employees, and management of the Company would remain as such. Further, our offer contemplates a continuation of commercial relationships between the Company and its affiliate(s).

Assuming that our preliminary due diligence proves acceptable, Niantic will submit a draft of a definitive Purchase Agreement reflecting all proposed business terms of the Transaction. As such, this is a non-binding indication of interest and remains subject to due diligence and approval by both parties.

Niantic is prepared to conduct an efficient due diligence process and to target an expedited Closing Date, provided that due diligence is successfully completed to our satisfaction, and we are able to agree upon definitive documents for the Transaction. The Transaction will be

**CONFIDENTIAL**
Convergen Energy Wisconsin LLC
October ___, 2019
Page 3

subject to closing conditions, covenants, representations, warranties, indemnities and other terms that will be contained in definitive documents for the Transaction, all of which must be satisfactory to us and our counsel, and to you and your counsel prior to consummation of the Transaction. As a condition to closing, a supply agreement between the Company and its affiliate, the L'Anse Warden Electric Company, must be executed under standard market terms. As a further condition to closing, a management services agreement must be executed under standard market terms allowing Company's current executive team to continue managing L'Anse Warden Electric Company, as it does currently, for a period of twelve (12) months subsequent to closing.

**II. Due Diligence**

Our decision to proceed with the Transaction and the ultimate terms of the Transaction are dependent upon a number of factors, including without limitation, the results of our due diligence review of the Company during the fifty (50) days following your acceptance of this Letter of Intent, as well as our obtaining confirmation that the Transaction passes all existing regulatory compliance and will not adversely affect the operations of Niantic post-closing. In order to facilitate our due diligence review, Niantic and its legal, accounting and other representatives will need reasonable access to the books and records of the Company, and all matters and information that Niantic may reasonably request relating to the Company, in order to meet the targeted Closing Date. Additionally, Niantic will require access to the facilities and site of the Company for a tour on a mutually agreeable date. Niantic further requests the right to contact a mutually agreeable customer of the Company's for diligence purposes.

**III. Continued Ordinary Course of Business**

We ask that during the period of due diligence, and prior to executing definitive agreements, the Company conduct business only in the ordinary course, consistent with reasonable and customary past practice and using its best efforts to maintain the value of, and preserve intact, the Company as a going concern, with its assets and its relationships with its employees, customers, suppliers and others having ongoing dealings with it, intact. During this period, except in the ordinary course of business consistent with past practice, the Company will not, without the written consent of Niantic, (a) sell or transfer any assets of the Company; (b) enter into any transactions other than on an arms-length basis relating to the Company, or (c) increase any compensation or benefit arrangement for any employee, officer or director of the Company.

**IV. Conditions to Closing**

The conditions to closing the Transaction will include (a) the negotiation and execution of a binding a definitive membership interest purchase agreement, pursuant to which Niantic would purchase 100% of the Company's membership interest, containing representations, warranties, indemnities, conditions and covenants which are customary for transactions of this type;, (b) the absence of any change that would materially adversely affect the assets, liabilities, condition (financial or other), business, results of operations or prospects of the Company since the date of the financial statements furnished to us, (c) our satisfactory completion of due diligence review, and (d) obtaining all government and third party consents and approvals necessary or desirable to facilitate and consummate the Transaction. Anything to the contrary herein notwithstanding, the parties' agree and understand that the Company's plant, equipment and all personal assets are being transferred on an "AS-IS, WHERE-IS" basis, it being understood that Niantic is to rely exclusively on its own property assessment and technical diligence with respect to the physical condition and adequacy of the Company's assets.

**CONFIDENTIAL**
Convergen Energy Wisconsin LLC
October ___, 2019
Page 4

## V. Confidentiality

Niantic and the Company agree to maintain the confidential nature of this Letter in accordance with the mutual non-disclosure agreement executed by the parties on September 6, 2019.

## VI. Fees and Expenses

In order to meet an expedited Closing Date, Niantic will be required to expend meaningful resources. Provided that after all conditions referenced in this Letter have been substantially satisfied, if Convergen Energy unreasonably refuses to not proceed with the Transaction after the execution of this Letter, Niantic will be reimbursed its reasonable due diligence costs and professional fees up to a limit of $50,000. Should Niantic decide to no longer proceed with the Transaction after the execution of this indication of interest each party will bear its own costs, in connection with the Transaction, including all due diligence costs and professional fees.

## VII. Exclusivity

In consideration of the foregoing, each party covenants that from the date of execution of this Letter indicating acceptance through the Termination Date, as defined below, it will not, and it will cause its directors, officers, employees, representatives and agents not to, directly or indirectly, solicit, or initiate, entertain, or enter into any discussions or transactions with, or encourage or provide any information to any individual, corporation, partnership or other entity or group (other than the other party and its designees) concerning any sale of the stock or assets of the Company or any of its subsidiaries, divisions, product groups or affiliates, or any merger, stock acquisition or similar transaction involving the Company, provided that nothing herein shall prohibit either party from furnishing information concerning it to any governmental authority or court of competent jurisdiction as shall be required by law or by such governmental authority or court to be so furnished. Each party will promptly notify the other party concerning any contact relating to any such matters. Notwithstanding the foregoing, the provisions of this paragraph shall terminate if one party notifies the other party

**CONFIDENTIAL**
Convergen Energy Wisconsin LLC
October ___, 2019
Page 5

in writing prior to the Termination Date that it has determined not to proceed with the contemplated Transaction and therefore terminates this Letter.

### VIII. Non-Disclosure

Pending closing of the Transaction, except as may be required by law, neither party will, without the consent of the other party, make any announcement about such Transaction to the public, to any person or entity, to its respective customers or employees other than those employees who have a need to know for purposes of evaluating and implementing the Transaction contemplated herein.

### IX. Entire Agreement

This Letter of Intent constitutes the entire agreement between the parties, and supersedes all prior oral or written understandings, representations and warranties, and courses of conduct and dealing between the parties on the subject matter hereof. Except as otherwise provided herein, this Letter of Intent may only be amended or modified in a written document executed by both parties.

### X. Termination Date

It is the parties' intention to execute Purchase Agreement by November 29, 2019 and to consummate the Transaction on or before December 31, 2019 (the "Closing Date"), but in no event later than January 31, 2020 (the "Termination Date"). In the event that the Transaction is not consummated by the Termination Date or any extension thereto, neither party will be bound by this letter (other than as stated below) and this letter will terminate.

### XI. Governing Law

The validity and enforceability of this letter shall be governed by the domestic substantive laws of the State of Delaware without giving effect to the conflicts of laws principles thereof.

### XII. Non-Binding

*This Letter of Intent is an expression of intent only and does not set forth all of the matters upon which agreement must be reached in order for the proposed Transaction to be consummated. Accordingly, this document does not constitute a legally binding document and does not create any legal obligations on the part of, or any rights in favor of Niantic, the Company or any other party; except that in consideration of the parties entering into this Letter of Intent and incurring expenses in connection herewith, the provisions of paragraphs V through VII of this Letter of Intent shall be legally binding upon and enforceable against the Company and Niantic.*

If the foregoing accurately reflects your understanding of our discussions, please indicate your intent to proceed with this Transaction by signing the enclosed counterpart of this Letter in the space provided below for such purposes and return such signed counterpart to my

**CONFIDENTIAL**
Convergen Energy Wisconsin LLC
October ___, 2019
Page 6

attention, so that our respective counsel may proceed with the preparation of a definitive purchase and sale agreement and related documents and with our due diligence investigation.

Very truly yours,

NIANTICVISTA ENERGY LLC

By: _____  11-1-19
Gregory Merle
Chief Executive Officer

AGREED AND ACCEPTED:

**Convergen Energy LLC**

By: _____ STEVEN S. BROOKS   Dated: November 6, 2019
VICE PRESIDENT ,  _____