UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CONVERGEN ENERGY LLC, L'ANSE WARDEN ELECTRIC COMPANY, LLC, EUROENERGY BIOGAS LATVIA LIMITED, and LIBRA CAPITAL US, INC.

                Plaintiffs,

-against-

STEVEN J. BROOKS, NIANTICVISTA ENERGY LLC, GREGORY MERLE, RIVERVIEW ENERGY CORPORATION, DANIEL ESCANDON GARCIA, RAMON URIARTE INCHAUSTI, CHIPPER INVESTMENT SCR, SA, URINCHA SL, THEODORE JOHN HANSEN, BRIAN R. MIKKELSON, and CONVERGEN ENERGY WI, LLC,

                Defendants.

Index No. 1:20-cv-03746 (LJL)

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION OF ORDER DENYING STAY OF ARBITRATION**

Dated: August 19, 2020
New York, New York

SEIDEN LAW GROUP LLP

Michael Stolper
Jake Nachmani
Dov B. Gold
469 Seventh Avenue, Fifth Fl.
New York, NY 10018
(646) 766-1703

*Counsel for Plaintiffs*

Pursuant to Federal Rule of Civil Procedure 60(b) and Local Rule 6.3, Plaintiffs Convergen Energy LLC, L'Anse Warden Electric Company, LLC ("L'Anse"), Euroenergy Biogas Latvia Limited, and Libra Capital US, Inc. (collectively, "Plaintiffs"), by and through their undersigned counsel, submit this memorandum of law in support of their motion for reconsideration of the Court's August 5, 2020 Opinion & Order ("Opinion) denying Plaintiffs' motion to stay the arbitration initiated by Convergen Energy WI, LLC ("CEW") on June 4, 2020.[1]

## PRELIMINARY STATEMENT

The Court's opinion denying Plaintiffs' motion to stay the arbitration was premised in large part on its understanding that it was "*undisputed*" that Mr. Fidel Andueza (L'Anse's signatory on the Supply Agreement) ("Mr. Andueza") had authority to bind L'Anse to the agreement. Respectfully, the Court's description of Plaintiffs' position was incorrect.

In fact, Plaintiffs contend that Mr. Andueza was engaged in a conspiracy with Mr. Brooks to defraud L'Anse with the knowledge and active involvement of L'Anse's counterparty to the Supply Agreement. Under well-established state law principles which have not been supplanted by the Federal Arbitration Act, Mr. Andueza lacked authority to bind L'Anse to the Supply Agreement under the circumstances. The Supply Agreement and the arbitration clause contained therein never came into existence as a matter of law. The arbitration should therefore be stayed.

Plaintiffs acknowledge that, in their briefing on the motion to stay, they did not alert the Court to their contention (which was reflected elsewhere in the record before the Court) that Mr. Andueza was part of the conspiracy to defraud Plaintiffs. However, the facts concerning Mr. Andueza's role are critical in determining whether the Supply Agreement was formed and, by

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Complaint. (ECF 1) and Plaintiffs' motion to stay the arbitration (ECF 63-65, 83) ("Motion to Stay Arbitration"). "¶__" are references to the paragraphs of the Complaint.

1

extension, whether the arbitration clause contained therein is enforceable. Plaintiffs respectfully submit that reconsideration is warranted in order to ensure that the Court's decision regarding a stay of arbitration is based upon a correct record.

Reconsideration is also warranted because the Court mistakenly assumed that L'Anse took delivery under the terms of the Supply Agreement. As explained further below, L'Anse has in fact made clear that it is not taking delivery under the terms of that fraudulent agreement.

**ADDITIONAL BACKGROUND RELEVANT TO RECONSIDERATION**

**A. Mr. Andueza Conspired With Mr. Brooks To Defraud Plaintiffs**

The record before the Court in this action and the related actions reflects Plaintiffs' contention that Mr. Andueza conspired with Mr. Brooks to defraud Plaintiffs. Plaintiffs' briefing on their motion to stay the arbitration should have (but did not) alert the Court to this fact.

On May 14, 2020, the same day this action was filed, CEW and Theodore Hansen filed a declaratory judgment action in Wisconsin state court. CEW attached to its complaint a December 15, 2019 email from Mr. Brooks' private Gmail account to Mr. Andueza's private Hotmail account, secretly confirming that Mr. Brooks and Mr. Andueza would together contribute $500,000 towards the $5.8 million purchase price for the pellet plant.[2] No one else was copied on this clandestine email.

Following the revelation of this extraordinary email, on June 23, 2020 (the same day that Plaintiffs' motion to stay the arbitration was filed in this Court), Plaintiffs contended in another Wisconsin action filed by CEW seeking an injunction (which has since been transferred to this Court) that "**[t]he two signatories to the supply agreement are both aligned in the fraud, one a**

---

[2] *See* Declaration of Dov Gold at ¶ 3.

2

*defendant, one an unnamed[3] co-conspirator.*"[4]

Subsequently, in this action, Defendants attempted to use Plaintiffs' contentions regarding Mr. Andueza to their advantage. On July 17, 2020, in their motion to dismiss that is currently pending before this Court, Defendants state:

> Plaintiffs have admitted in the related Supply Agreement litigation before this Court that Manager Andueza was aware of the "fraud" about which they now complain.
>
> In a Declaration submitted in the Supply Agreement litigation, Plaintiffs' counsel referred to Andueza as an "unnamed co-conspirator." . . . A co-conspirator by definition is someone who has knowledge of and agrees to an unlawful plan (here, the alleged "fraud").
>
> As noted, Plaintiffs subsequently admitted that the Manager for CE who executed the Acquisition Agreement on behalf of CE (Fidel Andueza) had full knowledge of the supposed fraud.[5]

### B. Plaintiffs' Proposed Amended Complaint

In light of the evidence concerning Mr. Andueza's participation in the conspiracy, concurrently with this motion, Plaintiffs are filing a motion seeking leave to file an amended complaint which will extensively detail Mr. Andueza's role in the fraud.[6] The proposed amended complaint alleges that: (i) Mr. Andueza was a co-conspirator of Brooks involved in selling the Pellet Plant to Defendants at below market value; (ii) Mr. Andueza had intended to have a secret financial interest in the purchase of the Pellet Plant that was directly adverse to Plaintiffs' interests in the transaction; (iii) Andueza and Brooks secretly agreed not to disclose their intended or actual

---

[3] Mr. Andueza is cooperating with Plaintiffs in the investigation of this matter and thus has not been named as a defendant.

[4] *See* L'Anse's Memorandum In Opposition of Renewed Motion For Preliminary Injunction, dated June 23, 2020, submitted in *Convergen Energy WI LLC v. L'Anse Warden Electric Company LLC,* 20-cv-05240-LJL (S.D.N.Y.) (ECF 20 at 7) (emphasis added).

[5] ECF 92 at 12, 12 n. 6, and 28 n. 17.

[6] A copy of the proposed Amended Complaint is attached to the Declaration of Dov Gold at ¶ 4.

3

personal financial stake in the transaction to Libra senior management; (iv) Defendants knew that Mr. Andueza was betraying his employer as a result of his intent to have a financial interest in the Pellet Plant and to keep his own conflicts secret; and (v) given Mr. Andueza's fraudulent intent and Defendants' knowledge of his fraudulent intent, Mr. Andueza lacked the authority to bind L'Anse to the Supply Agreement.

## ARGUMENT

"The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court." *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 383, 387 n.6 (S.D.N.Y. 2011) (citations and quotations omitted). A request for reconsideration must demonstrate controlling law or factual matters that the movant believes the court overlooked and that might reasonably be expected to alter the conclusion reached by the court. *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 256-57 (2d Cir. 1995).

Reconsideration is appropriate where a court makes an incorrect assumption. *See Agron v. Trustees of Columbia Univ. in City of New York*, 1998 WL 427620, at *2, *4, *6 (S.D.N.Y. July 29, 1998) (granting reconsideration as "the Court's previous holding was based on an erroneous assumption"); *Linde v. Arab Bank, PLC*, 2009 WL 1743988, at *1 (E.D.N.Y. June 18, 2009) (reconsideration granted because the court overlooked factual information and arguments submitted by movant). Reconsideration is also appropriate due to "the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citations and quotations omitted).

**I.   MR. ANDUEZA DID NOT HAVE AUTHORITY TO BIND L'ANSE**

    **A. The Court's Erroneous Assumption That Mr. Andueza's Authority Was "Undisputed" Directly Implicates Contract Formation**

In its Opinion, the Court correctly stated the general rule that, under the Federal Arbitration

4

Act and a series of decisions of the United States Supreme Court, allegations that an entire contract was fraudulently induced are insufficient to invalidate an arbitration clause contained within the contract. The Court also correctly acknowledged exceptions to this general rule, including situations in which the signor lacked authority to commit the alleged principal. As the Court stated:

> The Supreme Court has established only a limited carve-out to this rule. It ruled that the issue of the validity of a contract—which does not invalidate an arbitration clause—is different from the issue of whether an agreement was actually formed between the parties. *See Buckeye*, 546 U.S. at 444 n.1. Formation issues may include "whether the alleged obligor ever signed the contract, **whether the signor lacked authority to commit the alleged principal**, and whether the signor lacked the mental capacity to assent." *Id.* (internal citations omitted); *see also Dowe v. Leeds Brown Law, P.C.*, 419 F. Supp. 3d 748, 757 (S.D.N.Y. 2019) ("Where a party brings a challenge to the very formation of a contract containing an agreement to arbitrate, however, the court must resolve that challenge itself in order to determine whether to compel arbitration.").

Opinion at 8-9 (emphasis added).

The Court held, however, that none of the exceptions are applicable in this case. In reaching this conclusion, the Court emphasized that it was "*undisputed*" that Mr. Andueza (L'Anse's signatory on the Supply Agreement) had authority to bind L'Anse to the agreement. As the Court stated:

> Plaintiffs do argue that Brooks was a "faithless agent," Reply at 8 n.7, and that "the negotiation of the Supply Agreement itself and the terms by which the parties purportedly agreed—the formation of the Supply Agreement—were the result of fraud," Br. at 8. But those allegations do not go to the contract's formation or existence. ***Plaintiffs do not argue that they "did not enter into the agreement or that their principal or signatory did not possess the authority or capacity to do so." Ipcon***, 2011 WL 3806255, at *4. ***The Acquisition Agreement and the Supply Agreement were signed by Andueza on behalf of Plaintiffs, not by Brooks. It is undisputed that he had authority as the President of Convergen to sign those agreements.***

5

Opinion at 10 (emphasis added).

Respectfully, the Court's description of Plaintiffs' contentions is incorrect. Plaintiffs *have* disputed that Mr. Andueza had authority to sign the Supply Agreement. *See supra,* at 2-3.

Indeed, as explained in more detail below, because Mr. Andueza was engaged in a conspiracy with Mr. Brooks to defraud L'Anse (with the knowledge and active involvement of L'Anse's counterparty to the Supply Agreement), Mr. Andueza lacked authority to bind L'Anse to the Supply Agreement under controlling law. Accordingly, reconsideration is warranted in order that the Court's decision accurately reflect Plaintiffs' position. *See Virgin Atl. Airways, Ltd.*, 956 F.2d at 1255 (Reconsideration is appropriate due to, among other things, "the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.") (quotations and citations omitted).

### B. Under Controlling Law, Since Mr. Andueza Lacked Authority To Bind L'Anse, The Supply Agreement And Its Arbitration Clause are Void Ab Initio

The Court correctly recognized that "whether the signor lacked authority to commit the alleged principal" is for a court, not an arbitrator, to decide. Opinion at 9 (citations omitted).[7] Further, questions of contract formation, including whether a signor lacked authority to bind a principal, are governed by state law, not the FAA. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009) (stating that Sections 2 and 3 of the FAA do not "alter background principles of state contract law" and that state law "is applicable to determine which contracts are binding

---

[7] *See also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010) ("It is similarly well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide."); *Dedon GmbH v. Janus et Cie*, 411 Fed.Appx. 361, 363 (2d Cir. 2011) ("*Granite Rock* reconfirms this circuit's well-established precedent that where a party challenges the very existence of the contract containing an arbitration clause, a court cannot compel arbitration without first resolving the issue of the contract's existence."); *Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 406 fn. 5 (2d Cir. 2009)*("Buckeye* expressly limited its holding to challenges to a contract's validity, as distinguished from the issue whether any agreement between the alleged obligor and obligee was ever concluded, including, as relevant to this appeal, whether the signor lacked authority to commit the alleged principal.") (quotations and citations omitted).

6

under § 2 and enforceable under § 3 if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.") (citations and quotations omitted).[8]

In controlling decisions going back over a century, courts have consistently held that if an agent defrauds his employer in connection with signing an agreement and the counter-party knows that the agent is defrauding his employer, the agent lacks authority to bind his employer and the agreement is void *ab initio*.  See *Woodstock Iron Co. v. Richmond & D. Extension Co.*, 129 U.S. 643, 655–56 (1889) (contract signed by agent who, unbeknownst to principal, agreed to accept payment from contractual counterparty, was a "void contract, immoral in its conception, and corrupting in its tendency," and "***nothing less than the offer of a bribe to the latter company to be faithless to its engagements, and to do with reference to the business in which it was engaged what would amount to little less than robbery of its employer.***") (emphasis added); *Manhattan Life Ins. Co. v. Forty-Second & G. St. Ferry R. Co.*, 139 N.Y. 146, 151 (1893) ("It is an old doctrine, from which there has never been any departure, that ***an agent cannot bind his principal, even in matters touching his agency, where he is known to be acting for himself, or to have an adverse interest***.") (emphasis added); *Hidden Brook Air, Inc. v. Thabet Aviation Int'l Inc.*, 241 F. Supp. 2d 246, 262 (S.D.N.Y. 2002) (recognizing that an agent cannot bind a principal even when acts fall within the scope of agent's authority where the agent "***is known to be acting for himself,***

---

[8] Further, although the Supply Agreement is governed by Wisconsin law, there is a "logical flaw inherent in applying a contractual choice of law provision before determining whether the underlying contract is valid[.]"  *Schnabel v. Trilegiant Corp.,* 697 F.3d 110, 119 (2d Cir. 2012) (quoting *B–S Steel of Kansas, Inc. v. Texas Indus., Inc.,* 439 F.3d 653, 661 n. 9 (10th Cir. 2006) (quotations omitted)).  Thus, under New York's choice of law rules for contract formations, the Court can appropriately look to New York law as well as Wisconsin law, given the nexus of these two jurisdictions to the Supply Agreement.  *See Kulig v. Midland Funding, LLC*, 2013 WL 6017444, at *3, *4 (S.D.N.Y. Nov. 13, 2013) ("The validity of a contractual choice-of-law clause is a threshold question that must be decided not under the law specified in the clause, but under the relevant forum's choice-of-law rules governing the effectiveness of such clauses."; "New York rules apply a center of gravity analysis when deciding which state's law to apply to determine the validity of a contract's formation.") (quotations and citations omitted).

7

*or to have an adverse interest*.") (emphasis added) (quotations and citations omitted).[9]

Further, if sufficient evidence is presented that an agent lacked authority to bind a principal to a contract, an arbitration clause under that contract cannot be enforced until a court determines that a valid contract was formed.  *See Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co*., 263 F.3d 26, 32 (2d Cir. 2001) (a trial is required on arbitrability if sufficient evidence is presented that "an agent that has been charged with negotiating a contract on behalf of the principal act[ed] outside the scope of its agency, *and the opposing party kn[ew] this*" because, under those circumstances, "the agent lacks both actual and apparent authority, and the principal is not bound to the contract, for the contract is void—it never came into legal existence") (emphasis added); *Stevenson v. Tyco Int'l (US) Inc. Supplemental Exec. Ret. Plan*, 2006 WL 2827635, at *7 (S.D.N.Y. Sept. 29, 2006) (notwithstanding the broad arbitration clause in an agreement, "[i]f . . . [the contract signatory] was acting outside his authority and *[the counterparty] had actual knowledge that [the signatory] did not have authority to sign the [contract]*, the [contract] might be void and a trial on that issue would be merited prior to arbitration.") (emphasis added).

The well-established principles of the foregoing cases apply here.  Plaintiffs maintain that Mr. Andueza conspired with Mr. Brooks to defraud Plaintiffs by "selling" the Pellet Plant to an entity that they fraudulently represented to be a third party, but which was, in reality, secretly conspiring with Mr. Brooks and Mr. Andueza to strip the Pellet Plant from L'Anse at well below market value.  Defendants knew that Mr. Brooks had a personal financial interest in the transaction that was not disclosed to L'Anse.  Under these extraordinary circumstances (in which Mr. Andueza was effectively accepting a commercial bribe to protect his own conflicts (among other reasons)),

---

[9] The rule is the same under Wisconsin law, to the extent applicable.  *See, e.g.*, *Meade v. Bros*., 28 Wis. 689, 692–93 (1871) (where agent was "committing a gross fraud upon his principal" in signing a deed, "[t]he deed . . . not being executed in pursuance of the power conferred upon the agent, conveyed no title, and in fact was void as to the plaintiff.").

8

Mr. Andueza lacked authority to bind L'Anse as a matter of law.

At a minimum, material issues of fact exist with respect to whether Mr Andueza had such authority. The Court's statement that Plaintiffs' allegations "***do not go to the contract's formation or existence***"[10] did not take into account these material facts. (emphasis added).

Reconsideration is therefore appropriate. The Court should stay the arbitration pending its own determination of whether the Supply Agreement ever came into existence.

## II.  L'ANSE DID NOT ACCEPT DELIVERY UNDER THE SUPPLY AGREEMENT

In its Opinion, the Court stated that:

> Assuming the truth of its allegations, L'Anse had the option to refuse or assume the Supply Agreement. ***It has chosen to take delivery under the agreement***. Thus, even accepting Plaintiffs' version of events, the Supply Agreement was formed and exists.

Opinion at 11 (emphasis added).

The Court's assumption that L'Anse chose to take delivery under the terms of the Supply Agreement is incorrect. In fact, L'Anse expressly informed CEW that it would *not* take delivery of pellets at the minimum quantities required by the fraudulent Supply Agreement.[11] Moreover, L'Anse made clear that it would not pay for any pellets until the dispute with the Defendants concerning the fraudulent procuring of the Supply Agreement is resolved. *Id.* L'Anse is also currently in the process of transitioning to a new pellet supplier, and, once that is accomplished, will cease any further business relationship with CEW.[12] The facts do not in any way suggest

---

[10]  Opinion at 10 (emphasis added).

[11] *See* Declaration of Camilo Patrignani, at ¶¶ 3-7.

[12] *See* Declaration of Camilo Patrignani, at ¶ 7.

9

that L'Anse ratified the Supply Agreement.[13]

Significantly, in its briefing on the motion to stay the arbitration, CEW never contended that L'Anse's acceptance of pellets had any bearing on whether the Supply Agreement was enforceable or validly formed. Thus, Plaintiffs did not have a fair opportunity to address this issue, which was raised for the very first time in the Court's Opinion.

At a minimum, material factual questions exist with respect to whether L'Anse somehow ratified the Supply Agreement by accepting delivery of pellets, and CEW has the burden of proving whether any ratification occurred.[14] Given that ratification concerns contract formation, it is for the Court to determine, not an arbitrator. *See Granite Rock Co.*, 561 U.S. at 297 (stating that whether contract containing arbitration clause was ratified is a typical issue of contract formation to be determined by the courts); *Moglia v. Geoghegan*, 403 F.2d 110, 118 (2d Cir. 1968) ("ratification and adoption are only forms of acceptance of a contract and must conform to the general principles governing the formation of contracts.").

For these additional reasons, reconsideration is warranted.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiffs' motion for reconsideration and, upon reconsideration, issue an order staying the arbitration.

---

[13] *See Cammeby's Mgmt., Co., LLC v. Affiliated FM Ins. Co.*, 152 F. Supp. 3d 159, 165 (S.D.N.Y. 2016) (quoting *Chemical Bank v. Affiliated FM Ins. Co.*, 169 F.3d 121, 128 (1999), vacated on other grounds sub nom.) ("ratification 'must be performed with full knowledge of the material facts relating to the transaction, and the assent must be clearly established and may not be inferred from doubtful or equivocal acts of language.'"); *Principal Life Ins. Co. v. Locker Grp.*, 869 F. Supp. 2d 359, 366 (E.D.N.Y. 2012) ("ratification requires clearly established intent[.]").

[14] *See Banque Arabe Et Internationale D'Investissement v. Maryland Nat. Bank*, 850 F. Supp. 1199, 1213 (S.D.N.Y. 1994), aff'd, 57 F.3d 146 (2d Cir. 1995) ("Unlike plaintiff's burden to demonstrate promptness [in seeking rescission], ratification is an affirmative defense and the burden of proof belongs to defendant.").

Dated: August 19, 2020  SEIDEN LAW GROUP LLP
New York, New York

By: /s/ Michael Stolper
Michael Stolper
Jake Nachmani
Dov B. Gold
469 Seventh Avenue, Fifth Fl.
New York, NY 10018
(646) 766-1703

*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day I caused a true and correct copy of the foregoing to be filed using the Court's Electronic Filing System ("ECF System"). The document is available for viewing and downloading via the ECF System and will be served by operation of the ECF System upon all counsels of record.

Dated: August 19, 2020                                          SEIDEN LAW GROUP LLP


                                                                                     /s/ Michael Stolper
                                                                                     Michael Stolper