UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONVERGEN ENERGY LLC, L'ANSE WARDEN ELECTRIC COMPANY, LLC, EUROENERGY BIOGAS LATVIA LIMITED, and LIBRA CAPITAL US, INC.,<br><br>        Plaintiffs,<br><br>-against-<br><br>STEVEN J. BROOKS, NIANTICVISTA ENERGY LLC, GREGORY MERLE, RIVERVIEW ENERGY CORPORATION, DANIEL ESCANDON GARCIA, RAMON URIARTE INCHAUSTI, CHIPPER INVESTMENT SCR, SA, URINCHA SL, THEODORE JOHN HANSEN, BRIAN R. MIKKELSON, and CONVERGEN ENERGY WI, LLC,<br><br>        Defendants. | Index No. **1:20-cv-03746** (LJL) |

## DECLARATION OF CAMILO PATRIGNANI IN SUPPPORT OF MOTION FOR RECONSIDERATION

I, Camilo Patrignani, declare as follows:

  1.  I joined Libra Group in 2008 and led the acquisition of Convergen Energy WI, LLC ("CEW") in 2010 when it was a pilot facility, which I managed until I transitioned to a different energy related role at Libra Group in 2015. I have visited CEW's facility almost thirty times, led a complete rebuild and expansion of the facility to achieve commercial scale, held meetings with clients, suppliers, contractors and government officials in Wisconsin and elsewhere. I hired management and engaged lenders.

  2.  After leaving Libra Group in 2018, I re-joined in March 2020 and took the role of Senior Energy Advisor overseeing a portfolio of companies including L'Anse Warden Electric

1

Company, LLC ("L'Anse"). I am also the President of L'Anse and Convergen Energy, LLC ("CE").

3. Prior to the fraudulent acquisition of CEW, L'Anse did not have a contract for fuel pellets with CEW. Instead L'Anse ordered pellets from CEW at its sole discretion and would be billed via invoice at the non-inflated rate.

4. As part of the fraudulent acquisition of CEW, defendants Theodore Hansen ("Hansen") and Brian Mikkelson ("Mikkelson") ceased as employees of CE and became CEW employees but continued to manage L'Anse's power plant as they previously had done. Post-acquisition, Hansen and Mikkelson were essentially paying themselves out of L'Anse's coffers pursuant to the Pellet Supply Agreement until Plaintiffs terminated them in mid-April in conjunction with filing this lawsuit.

5. Subsequent to their termination, and after L'Anse was no longer under the control of defendants Hansen and Mikkelson, I changed the way in which L'Anse ordered pellets from the Pellet Plant in two distinct ways: (i) I reduced the amount of pellets to be ordered and (ii) I instructed L'Anse not to pay for any pellets until the dispute with the Defendants, including overcharges to L'Anse, was resolved. The amount of pellets needed to be modified because according to the fraudulent Supply Agreement, L'Anse was required to order more pellets than it could legally use or burn without violating environmental laws and putting at risk its permit.

6. As a further example of how we did not abide by the Supply Agreement, L'Anse ordered only a small amount of pellets from CEW. Free from the control of Defendants Hansen and Mikkelson, L'Anse did not accept pellets pursuant to the Pellet Supply Agreement; L'Anse was operating under the status quo prior to the fraud whereby it accepted pellets at its sole discretion and would be billed via invoice at the non-inflated rate.

7. L'Anse is in the process of transitioning to a new pellet supplier and once done, will cease any further business relationship with CEW.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: New York, New York
       August 19, 2020

*/s/ Camilo Patrignani*
Camilo Patrignani
