IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| CONVERGEN ENERGY LLC, L'ANSE WARDEN ELECTRIC COMPANY, LLC, EUROENERGY BIOGAS LATVIA LIMITED, and LIBRA CAPITAL US, INC.<br><br>Plaintiffs,<br><br>v.<br><br>STEVEN J. BROOKS, NIANTICVISTA ENERGY LLC, GREGORY MERLE, RIVERVIEW ENERGY CORPORATION, DANIEL ESCANDON GARCIA, RAMON URIARTE INCHAUSTI, CHIPPER INVESTMENT SCR, SA, URINCHA SL, THEODORE JOHN HANSEN, BRIAN R. MIKKELSON, and CONVERGEN ENERGY WI, LLC.,<br><br>Defendants. | Case No. 1:20-cv-03746(LJL) |

**MEMORANDUM OF LAW
IN SUPPORT OF THE SPANISH DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................................1

II.   BACKGROUND ................................................................................................2

   A.   Allegations In The Complaint.......................................................................2

   B.   The Spanish Defendants' Jurisdictional Facts .............................................3

      1. Ramón Uriarte Inchausti And Daniel Escandón Garcia .........................3

      2. Chipper Investment SCR, S.A. ..............................................................4

      3. Urincha SL .............................................................................................5

      4. The Investment Opportunity ..................................................................5

III.  ARGUMENT ....................................................................................................9

   A.   Plaintiffs Fail To Meet Their Burden Of Establishing A *Prima Facie* Case
      Of Jurisdiction Over The Spanish Defendants..............................................9

      1. Standard .................................................................................................9

      2. There Is No General Jurisdiction Over The Spanish Defendants ................10

      3. There Is No Specific Jurisdiction Over Any Of The Spanish Defendants ...................12

         a. CPLR § 302(a)(1): Transacting Business Within New York .....................13

            i. Standard ..............................................................................13

            ii. None Of The Spanish Defendants Transacts Or Transacted Business
             In New York....................................................................13

            iii. Articulable Nexus ................................................................21

         b. CPLR § 302(a)(3): Commission Of A Tort Outside New York ................27

            i. CPLR § 302(a)(3)(i)...............................................................28

            ii. CPLR § 302(a)(3)(ii) .............................................................28

      4. The Due Process Clause Does Not Permit Personal Jurisdiction Over Any Of The
      Spanish Defendants................................................................................29

         a. Each Of The Spanish Defendants Lacks Minimum Contacts With New York .........30

i. Purposeful Availment ................................................................30

ii. Relatedness ..............................................................................33

iii. Foreseeability..........................................................................35

b. Exercise Of Personal Jurisdiction Over The Spanish Defendants Would Be
   Unreasonable.........................................................................................38

B.  The Complaint Fails To State A Claim For Aiding And Abetting Fraud
    And Breach Of Fiduciary Duty...............................................................42

1. The Complaint Fails To Adequately Plead Fraud.........................................43

2. The Complaint Does Not Allege Facts That Give Rise To A Strong Inference That Any
   Of The Spanish Defendants Had Actual Knowledge Of The Alleged Fraud ..............43

3. The Complaint Fails To Allege Facts Providing How Any Of The Spanish Defendants
   Rendered "Substantial Assistance" In Aid Of Fraud. ...................................46

C.  Plaintiffs Fail To State A Claim For Aiding And Abetting
    Breach Of Fiduciary Duty......................................................................48

1. The Complaint Fails To Allege A Breach Of Fiduciary Duty ...................................48

2. The Complaint Fails To Plead Facts Sufficient To Plausibly Allege That Any Of The
   Spanish Defendants Knowingly Induced Or Participated In The Alleged Breaches Of
   Fiduciary Duty.............................................................................................49

3. The Complaint Fails To Allege That Any Of The Spanish Defendants Knowingly
   Induced Or Participated In The Alleged Breach Of Fiduciary Duties. .......................50

IV.  **CONCLUSION** ..........................................................................................**52**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Agape Litig.*, 773 F. Supp. 2d 298 (E.D.N.Y. 2011) ............................................42, 43, 45, 49

*Alki Partners, L.P. v. Vatas Holding GmbH*, 769 F.Supp.2d 478 (S.D.N.Y.2011) ........................3

*In re Allou Distributors, Inc.*, 395 B.R. 246 (Bankr. E.D.N.Y. 2008) ....................................34, 43

*Am./Int'l 1994 Venture v. Mau*, 146 A.D.3d 40 (2016) .........................................................21, 23

*In re Amaranth Nat. Gas Commodities Litig.*, 587 F. Supp. 2d 513 (S.D.N.Y. 2008), *aff'd*, 730 F.3d 170 (2d Cir. 2013)....................................................................................................................31

*AmTrust Fin. Servs., Inc. v. Lacchini,* 260 F. Supp. 3d 316 (S.D.N.Y. 2017)..............................35

*Art Assure Ltd., LLC v. Artmentum GmbH*, No. 14 CIV. 3756 LGS, 2014 WL 5757545 (S.D.N.Y. Nov. 4, 2014) ................................................................................................................17

*Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102 (1987)....................................................................................................................39

*Ashcroft v. Iqbal*, 556 U.S. 662................................................................................................51

*Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757 (2d Cir.1983) ..............................................20

*Beatie & Osborn LLP v. Patriot Sci. Corp.*, 431 F.Supp.2d 367 (S.D.N.Y.2006) .......................18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544......................................................................42, 43, 48

*Ben Hur Moving & Storage, Inc. v. Better Bus. Bureau*, No. 08 Civ. 6572(JGK), 2008 WL 4702458 (S.D.N.Y. Oct. 3, 2008) ................................................................................44

*Bensmiller v. E.I. Dupont de Nemours & Co., State of La.*, 47 F.3d 79 (2d Cir. 1995) ...............36

*Berkshire Capital Group, LLC v. Palmet Ventures, LLC*, 307 Fed.Appx. 479 (2d Cir.2008) ......21

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir.2007) ......................................................13

*Best Van Lines, Inc. v. Walker*, No. 03 CIV 6585 (GEL), 2004 WL 964009 (S.D.N.Y. May 5, 2004), *aff'd*, 490 F.3d 239 (2d Cir. 2007) ....................................................................................23

*Brown v. Lockheed Martin Corp.*, 814 F.3d 619 (2d Cir. 2016) .................................................11

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)........................................................36, 37

*Calder v. Jones*, 465 U.S. 783 (1984) ........................................................................15

*Casio Computer Co. v. Sayo*, No. 98CV3772 (WK),
2000 WL 1877516 (S.D.N.Y. Oct. 13, 2000) .........................................................34, 47

*Chew v. Dietrich*, 143 F.3d 24 (2d Cir. 1998) ...........................................................34

*Chirag v. MT Marida Marguerite Schiffahrts*, 604 Fed. Appx. 16 (2d Cir. 2015)........................9

*Chunky Corp. v. Blumenthal Bros. Chocolate Co*., 299 F.Supp. 110 (S.D.N.Y.1969) ...............28

*In re CIL Ltd.*, 582 B.R. 46 (Bankr. S.D.N.Y. 2018), *amended on reconsideration*, No. 13-
11272-JLG, 2018 WL 3031094 (Bankr. S.D.N.Y. June 15, 2018) ...............................40

*Citibank, N.A. v. Intercontinental Bank*, 646 N.Y.S.2d 261 (Sup. Ct. 1996) ...............................37

*Cohen v. BMW Investments L.P.*, 144 F. Supp. 3d 492 (S.D.N.Y. 2015), *aff'd*, 668 F. App'x 373
(2d Cir. 2016)........................................................................................................30

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ...........................................................10

*Dejana v. Marine Tech., Inc.*, No. 10–CV–4029(JS) (WDW), 2011 WL 4530012 (E.D.N.Y. Sept.
26, 2011) ..............................................................................................................32

*Del Monte Fresh Produce N.A., Inc. v. M/V AFRICA REEFER*, No. 12 CIV 3597 JPO, 2013 WL
1129998 (S.D.N.Y. Mar. 19, 2013) ...........................................................................39

*Digital Lab Sols., LLC v. Stickler*, 2007 WL 700821 (S.D.N.Y. Mar. 7, 2007)...........................20

*DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405 (S.D.N.Y. 2010) .........17, 18, 22

*Dix v. Peters*, 374 F. Supp. 3d 213 (N.D.N.Y. 2019), *aff'd*, 802 F. App'x 25(2d Cir. 2020) ..39, 40

*Doe v. Bausch & Lomb, Inc.*, No. 3:18-CV-000352 (KAD), 2020 WL 1164189 (D. Conn. Mar.
11, 2020) ...........................................................................................................14, 16

*Donini Int'l, S.p.A. v. Satec (U.S.A.) LLC*, No. 03 CIV 9471 (CSH), 2004 WL 1574645
(S.D.N.Y. July 13, 2004) ..........................................................................................31

*Eades v. Kennedy, PC Law Offices*, 799 F.3d 161 (2d Cir. 2015)...............................................39

*Exec. Life Ltd. v. Silverman*, 68 A.D.3d 715 (2009) ..................................................................21

*Feeley v. NHAOCG, LLC*, 62 A.3d 649 (Del. Ch. 2012)..............................................................48

*First City, Texas-Houston, N.A. v. Rafidain Bank*, 150 F.3d 172 (2d Cir. 1998).........................42

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*,
479 F. Supp. 2d 349 (S.D.N.Y. 2007).................................................................. *passim*

*Gerffert Co., Inc., Stephen Panigel v. Fratelli Bonella, SRL*, 49 Misc. 3d 1208(A), 26 N.Y.S.3d 724 (N.Y. Sup. Ct. 2015) ..........................................................................................16, 27

*Gerstle v. Nat'l Credit Adjusters, LLC*, 76 F. Supp. 3d 503 (S.D.N.Y. 2015).............................16

*Giuliano v. Barch*, 2017 WL 1234042 (S.D.N.Y. Mar. 31, 2017) ................................................19

*Gmurzynska v. Hutton*, 257 F. Supp. 2d 621 (S.D.N.Y. 2003),
*aff'd*, 355 F.3d 206 (2d Cir. 2004) .................................................................................40, 41, 42

*Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87 (S.D.N.Y. 2015) .....................................31, 34

*Hanson v. Denckla*, 357 U.S. 235 (1958) .....................................................................................33

*Hau Yin To v. HSBC Holdings PLC*, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017).................21, 34

*HDtracks.com, LLC v. 7digital Grp. PLC*, No. 18 CIV. 5823 (JFK), 2019 WL 6170838
(S.D.N.Y. Nov. 19, 2019) ...........................................................................................................21

*Henderson v. INS*, 157 F.3d 106 (2d Cir.1998) ............................................................................13

*Hill v. HSBC Bank* 207 F. Supp. 3d 333, 339 (S.D.N.Y. 2016) ..................................14, 16, 17, 18

*Hollenbeck v. Comeq, Inc.*, No. 5:03CV0825, 2007 WL 2484299 (N.D.N.Y. Aug. 28, 2007) ....15

*In re Hydrogen, L.L.C.*, 431 B.R. 337 (Bankr. S.D.N.Y. 2010) ........................................... *passim*

*In re Lehman Bros. Holdings Inc.*, 535 B.R. 608, 620 (Bankr. S.D.N.Y. 2015) ........................38

*IMAX Corp. v. The Essel Grp.*, 154 A.D.3d 464 (2017)...............................................................10

*Inspired Capital, LLC v. Conde Nast*, 803 F. App'x 436 (2d Cir. 2020)....................................50

*Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982)....42

*J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011) ..........................................................32

*Jazini v. Nissan Motor Co.*, 148 F.3d 181 (2d Cir.1998)..............................................................42

*Johnson v. Ward*, 4 N.Y.3d 516 (2005) .......................................................................................23

*Jones v. N.Y. State Div. of Military & Naval Affairs*, 166 F.3d 45 (2d Cir.1999) .......................52

*JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247 (S.D.N.Y. 2005) ........................ *passim*

*Kaufman v. Cohen*, 307 A.D.2d 113 (2003) ..........................................................................25, 51

*Kolbeck v. LIT Am., Inc.*, 939 F. Supp. 240 (S.D.N.Y. 1996),
*aff'd*, 152 F.3d 918 (2d Cir. 1998) .............................................................................................49

*Kottler v. Deutsche Bank AG*, 607 F.Supp.2d 447 (S.D.N.Y.2009) ........................................49, 51

*Krys v. Pigott*, 749 F.3d 117 (2d Cir. 2014) .................................................................45

*Kwon v. Yun*, No. 05 CIV.1142 GEL, 2006 WL 416375 (S.D.N.Y. Feb. 21, 2006)....................21

*Lehman Bros. Special Fin. Inc. v. Bank of Am., Nat'l Ass'n*,
535 B.R. 608 (Bankr. S.D.N.Y. 2015) ...................................................................31, 33

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir.2006) .................................................45

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013).....................23

*MacDermid, Inc. v. Deiter*, 702 F.3d 725 (2d Cir. 2012) .................................................30

*Mazzaro de Abreu v. Bank of Am. Corp.*, 525 F. Supp. 2d 381 (S.D.N.Y. 2007) ..................25, 44

*Merritt v. Airbus Americas, Inc.*, 202 F. Supp. 3d 294 (E.D.N.Y. 2016) ..............................10, 27

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996).....................38, 40, 41

*Meyer v. Bd. of Regents of Univ. of Oklahoma*, No. 13 CIV. 3128 CM, 2014 WL 2039654
(S.D.N.Y. May 14, 2014).....................................................................................12

*Millennium Access Control Tech., Inc. v. On the Gate, LLC*, No. 15-CV-6067(SJF)(AKT), 2017
WL 10445800 (E.D.N.Y. Feb. 14, 2017).......................................................................36

*MLSMK Investments Co. v. JP Morgan Chase & Co.*, 737 F.Supp.2d 137 (S.D.N.Y.2010).......46

*MMA Fighter Mgmt., Inc. v. Ballengee Grp., LLC*, No. 19 CIV. 11276 (AKH), 2020 WL
3000401 (S.D.N.Y. June 4, 2020)...........................................................................11

*Moncrief Oil International Inc. v. OAO Gazprom*, 481 F.3d 309 (5th Cir. 2007)........................32

*MTS Logistics, Inc. v. Innovative Commodities Grp., LLC*,
442 F. Supp. 3d 738 (S.D.N.Y. 2020).........................................................................3

*Nationwide Mut. Ins. Co. v. Morning Sun Bus Co.*, No. 10-CV-1777 ADS AKT, 2011 WL
381612 (E.D.N.Y. Feb. 2, 2011)..............................................................................26

*Nigerian Nat'l Petroleum Corp. v. Citibank, N.A.*, No. 98 Civ. 4960(MBM), 1999 WL 558141
(S.D.N.Y. July 30, 1999) ...................................................................................46

*Pagan v. Integrity Sol. Servs., Inc.,* 42 F. Supp. 3d 932 (E.D. Wis. 2014) .................................52

*Palace Expl. Co. v. Petroleum Dev. Co.*, 41 F. Supp. 2d 427 (S.D.N.Y. 1998).....................19, 20

*Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30 (2d Cir. 2010) ...........................................9

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163 (S.D.N.Y. 2006) ............................................................................................46, 47, 48

*Pincione v. D'Alfonso*, 506 F. App'x 22 (2d Cir. 2012) ...................................................21

*Porina v. Marward Shipping Co.*, No. 05 CIV. 5621, 2006 WL 2465819 (S.D.N.Y. Aug. 24, 2006) .............................................................................................37

*Ronar, Inc. v. Wallace*, 649 F. Supp. 310 (S.D.N.Y. 1986) .............................................29

*Roper Starch Worldwide, Inc. v. Reymer & Assocs., Inc.*, 2 F. Supp. 2d 470 (S.D.N.Y. 1998) ...................................................................................18, 20, 21

*Rosenblatt v. Coutts & Co. AG*, No. 17 CIV. 3528 (AKH), 2017 WL 3493245 (S.D.N.Y. Aug. 14, 2017), *aff'd*, 750 F. App'x 7 (2d Cir. 2018) .............................................................18

*Rothschild, Unterberg, Towbin v. McTamney*, 59 N.Y.2d 651(1983).........................................21

*RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010) .............................................................................52

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, 460 B.R. 106 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012) .................................................................38

*Shalik v. Coleman*, 111 A.D.3d 816 (2013) .................................................................21

*Shaw v. Am. Cyanamid Co.*, 534 F. Supp. 527 (D. Conn. 1982) ...................................................37

*In re Sledziejowski*, No. 13-22050 (RDD), 2016 WL 6155929 (Bankr. S.D.N.Y. Oct. 21, 2016) ............................................................32, 36, 37

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100 (2d Cir.2006)..................22

*SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161 (S.D.N.Y. 2015), *aff'd*, 882 F.3d 333 (2d Cir. 2018) ................................................................................34

*Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 22–23 (2d Cir.2004) ................................38

*Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720 (S.D.N.Y. 2010) ...........................................41

*Tech. Prod. Int'l, Inc. v. Integrated Electronics Inc.*, No. 85 CIV. 2111 (PKL), 1986 WL 2413 (S.D.N.Y. Feb. 19, 1986) ............................................................................19

*Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792 (S.D.N.Y. 2015), *aff'd*, 660 F. App'x 43 (2d Cir. 2016) ...............................................................................12

*Thomson–CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir.1995) ..........................52

*In re Ticketplanet.com*, 313 B.R. 46 (Bankr. S.D.N.Y. 2004)........................................51

*Tymoshenko v. Firtash*, No. 11-CV-2794 KMW, 2013 WL 1234943
(S.D.N.Y. Mar. 27, 2013) ........................................................................................41

*Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd.*, No. 18 CIV. 1876 (PAE), 2020 WL
4586729 (S.D.N.Y. Aug. 10, 2020) ......................................................................33, 34

*Walden v. Fiore*, 134 S. Ct. 1115 (2014) .....................................................30, 33, 38

*Whitaker v. American Telecasting, Inc.*, 261 F.3d 196 (2d Cir.2001) .....................................9, 29

*Wilhelmshaven Acquisition Corp. v. Asher*, 810 F. Supp. 108 (S.D.N.Y. 1993).........................20

*Williams v. PMA Cos., Inc.*, 419 F. Supp. 3d 471 (N.D.N.Y. 2019) ...............................................9

*Yellow Page Sols., Inc. v. Bell Atl. Yellow Pages Co.*, No. 00 Civ. 5663, 2001 WL 1468168
(S.D.N.Y. Nov. 19, 2001) ........................................................................................3

*Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682 (7th Cir. 2005) .....................................52

**Statutes**

N.Y. C.P.L.R. § 301 ..............................................................................................10

N.Y. C.P.L.R. § 302 ................................................................................... *passim*

**Other Authorities**

Federal Rule of Civil Procedure 9(b)....................................................................... *passim*

Federal Rule of Civil Procedure 12(b)(2) .............................................................. *passim*

Federal Rule of Civil Procedure 12(b)(6) .............................................................. *passim*

Defendants Daniel Escandón Garcia, Ramón Uriarte Inchausti, Chipper Investment SCR, S.A., ("Chipper") and Urincha SL ("Urincha") (collectively, the "Spanish Defendants") respectfully submit this Memorandum of Law along with the Declarations of Daniel Escandón Garcia ("Escandón Decl.") and Ramón Uriarte Inchausti ("Uriarte Decl.") executed on August 20, 2020, and the exhibits annexed thereto, in support of the Spanish Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 9(b) and 12(b)(2), (6) for lack of personal jurisdiction and failure to state a claim ("Motion"). For the reasons set forth herein, the Spanish Defendants respectfully request that the Court dismiss all the claims alleged against each of them in the Complaint filed in this action. D.E. 1.

## I.     INTRODUCTION

Messrs. Escandón and Uriarte are Spanish citizens who reside in Madrid, Spain. They have no connections to New York. Their respective corporations, Chipper and Urincha, are Spanish corporations each with a principal place of business in Madrid, Spain. None of the Spanish Defendants conducts any business whatsoever in the United States or New York.

This action concerns allegations of tortious misconduct in connection with the sale of a pellet plant (the "Pellet Plant") located in Green Bay, Wisconsin ("Pellet Plant Acquisition") and is principally directed at parties located in Wisconsin, Michigan, Delaware, and Florida. The Spanish Defendants are four separate individuals and entities, one of whom invested in the Pellet Plant Acquisition and thus their collective involvement in the underlying transaction was minimal and took place almost entirely in Spain and entirely outside of New York. Despite these unassailable jurisdictional facts, Plaintiffs allege by improper group pleading that this Court has personal jurisdiction over the Spanish Defendants sufficient to adjudicate their specious claims of (i) aiding and abetting fraud, and (ii) aiding and abetting breach of fiduciary duty.

1

Plaintiffs' Complaint is foul with conclusory allegations that improperly group the Spanish Defendants together and fail to establish a *prima facie* case of personal jurisdiction over each of them. Indeed, this Court does not have personal jurisdiction over any of the Spanish Defendants under New York law, and the exercise of personal jurisdiction over any of the Spanish Defendants would not comport with constitutional Due Process. Further, Plaintiffs' threadbare inchoate fraud and breach of fiduciary duty claims are not plead with sufficient particularity under Federal Rule of Civil Procedure 9(b) and fail to state a claim and plausible right to relief under Federal Rule of Civil Procedure 12(b)(6).

## II.      BACKGROUND

The following sets forth the relevant factual background for this this Motion.

### A.  Allegations In The Complaint

The Complaint lacks factual allegations sufficient to support to the assertion of personal jurisdiction over any of the Spanish Defendants. The Complaint's allegations under the heading "Jurisdiction and Venue" consist of three conclusory sentences that make no distinction between any Defendant:

> (1) each Defendant participated in and benefited from the fraudulent scheme, which was orchestrated and consummated in New York, where Defendant Steven Brooks ("Brooks") was employed and where Plaintiffs Convergen Energy LLC ("Convergen") and Libra Capital Us, Inc. ("Libra") are incorporated; (2) each Defendant wired money to New York, directly or indirectly through Niantic; and (3) each Defendant had extensive contacts with Brooks while he was in New York.

D.E 1 ¶ 25. Although not listed as jurisdictional allegations, the Complaint separately alleges that: (1) Brooks solicited the Spanish Investors funds in September, 2019 when he introduced Niantic to the Group, D.E. 1 ¶ 52; and (2) the Spanish Investors had "extensive contacts with Brooks while he was in New York and employed by the Company in New York and each wired funds directly or indirectly to New York for the fraudulent purchase of the Pellet Plant." *Id.*

These non-specific unsupported allegations are insufficient to warrant a finding of personal jurisdiction over any of the Spanish Defendants. *Yellow Page Sols., Inc. v. Bell Atl. Yellow Pages Co.,* No. 00 Civ. 5663, 2001 WL 1468168, at *3 (S.D.N.Y. Nov. 19, 2001) ("The plaintiff cannot rely merely on conclusory statements or allegations; rather, the prima facie showing must be factually supported.") (internal citations and quotation marks omitted).

## B.  The Spanish Defendants' Jurisdictional Facts

The Spanish Defendants set forth below the relevant jurisdictional facts based upon the sworn declarations of Daniel Escandón Garcia and Ramón Uriarte Inchausti (together, "Declarations").[1]

### 1. Ramón Uriarte Inchausti And Daniel Escandón Garcia

Messrs. Uriarte and Escandón are citizens of Spain and reside in Madrid, Spain. Uriarte Decl. ¶ 2; Escandón Decl. ¶ 2. They are not and have never been citizens of the United States or residents of New York. Uriarte Decl. ¶ 3; Escandón Decl. ¶ 3. They have never lived, worked, or been domiciled in New York or the United States. *Id.* Neither Mr. Escandón nor Mr. Uriarte regularly conducts business in New York or the United States, and neither of them derive revenue from New York. Uriarte Decl. ¶ 5 Escandón Decl. ¶ 6. Messrs. Uriarte and Escandón did not travel to New York in connection with the transaction that underlies the claims in this action, and they do not regularly travel to New York or the United States. Uriarte Decl. ¶ 4; Escandón Decl. ¶ 4. Mr. Uriarte has only visited New York once approximately ten years ago on vacation. Uriarte Decl. ¶ 6. Mr. Escandón has only visited New York twice in the past eleven years: in 2009 he spent one-week in New York City on vacation during Easter, and in February 2018, he spent one night in

---

[1] The jurisdictional allegations in the Complaint are conclusory, and therefore not legally sufficient.  Accordingly, the Court may rely upon the Declarations to establish the relevant jurisdictional facts. *Alki Partners, L.P. v. Vatas Holding GmbH*, 769 F.Supp.2d 478, 487 (S.D.N.Y.2011) ("Conclusory allegations lacking factual specificity . . . do not satisfy plaintiff's burden" of showing prima facie case for personal jurisdiction.); *MTS Logistics, Inc. v. Innovative Commodities Grp., LLC*, 442 F. Supp. 3d 738, 742 (S.D.N.Y. 2020) (considering defendant's affidavit as "allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits.").

New York City on a layover for a connecting flight to Madrid, Spain. Escandón Decl. ¶ 5. Neither

Mr. Uriarte nor Mr. Escandón owns and have never owned any real estate or bank accounts in New

York or the United States. Uriarte Decl. ¶ 7; Escandón Decl. ¶ 7. Mr. Escandón has known Mr.

Uriarte for approximately twenty-one (21) years and they and their corporations have collaborated

on multiple business opportunities over the years. Escandón Decl. ¶ 8. Neither Mr. Escandón nor

Mr. Uriarte are parties to the Acquisition Agreement or Supply Agreement that form the basis of

this dispute. Uriarte Decl. ¶ 27; Escandón Decl. ¶ 26; D.E. 92-3; D.E. 92-6.

### 2. Chipper Investment SCR, S.A.

Mr. Escandón has been a director of Chipper since March 19, 2014. Escandón Decl. ¶ 28.

Chipper is a Spanish corporation that was incorporated in Madrid, Spain on March 19, 2014. *Id.* ¶

29. Chipper's headquarters and principal place of business are located in Madrid, Spain. *Id.* ¶ 30.

Chipper has no other offices or place of business, and it has no office in New York or the United

States. *Id.* Chipper has three directors, all of whom are Spanish citizens and residents, and none of

whom reside in the United States or New York or regularly conduct business there. *Id.* ¶ 32.

Chipper has no other employees. *Id.* Chipper's primary business is investment in the share capital

of unlisted non-financial corporations, which it conducts in Spain. Escandón Decl. ¶ 33. It does

not regularly conduct any business outside of Spain, and it is not licensed to, nor does it conduct

any business in New York, or the United States, and it derives no revenue from New York or the

United States. *Id.* The investment in the Pellet Plant Acquisition was Chipper's first and only

investment in the United States. *Id.* ¶ 34. Chipper does not own, and has never owned, real estate

or a bank account in New York or the United States. *Id.* ¶¶ 31, 36. Chipper is not a party to the

Acquisition Agreement or Supply Agreement. *Id.* ¶ 35; D.E. 92-3; D.E. 92-6.

### 3. Urincha SL

Mr. Uriarte has been the CEO of Urincha since May 2009. Uriarte Decl. ¶ 32. Urincha is a Spanish corporation that was incorporated in Madrid, Spain on August 6, 2003. *Id.* ¶ 33. Urincha's headquarters and principal place of business are located in Madrid, Spain. *Id.* ¶ 34. Urincha has no other office or place of business, and it has no office in New York or the United States. *Id.* Urincha has one employee who is a Spanish citizen and resident, and who does not reside or conduct business in the United States or New York. *Id.* ¶ 36. Urincha does not own, and has never owned, real estate or a bank account in New York or the United States. *Id.* ¶¶ 35, 40. Urincha's primary business is investment in the share capital of unlisted non-financial corporations, which it conducts in Spain. *Id.* ¶ 37. It does not regularly conduct any business outside of Spain, and it is not licensed to, nor does it conduct any business in New York or the United States, and it derives no revenue from New York or the United States. *Id.* Urincha did not invest in the Pellet Plant Acquisition, and it is not a party to the Acquisition Agreement or Supply Agreement. *Id.* ¶¶ 38, 39. Urincha did not transfer any funds into New York or the United States in connection with the Pellet Plant Acquisition. *Id.* ¶ 38.

### 4. The Investment Opportunity

Mr. Uriarte has a long-standing business relationship with Fidel Andueza, President of Convergen and Convergen Energy Wi, LLC ("Convergen Wisconsin"), who he has known for approximately eleven (11) years. Uriarte Decl. ¶ 8; D.E. 92-3 at 43. From time to time, Andueza would propose investment opportunities in Spain and Europe for Mr. Uriarte. *Id.* ¶ 8. Andueza is a Spanish citizen who for the past two years, has resided and worked in Madrid, Spain. *Id.* ¶ 9. On May 27, 2019, Andueza contacted Mr. Uriarte in Madrid to propose another investment opportunity and to request a meeting with him and his business associate, Stephen Brooks. *Id.* ¶

10. Mr. Uriarte and Andueza agreed to meet over lunch on June 12, 2019, at a restaurant in Madrid, but Brooks did not attend. *Id.* During the meeting, Andueza summarized and explained that the investment opportunity was related to the Pellet Plant Acquisition. *Id.* ¶ 11.

On July 12, 2019, while both parties were in Madrid, Mr. Uriarte emailed Mr. Escandón a summary of the investment opportunity that he discussed with Andueza. *Id.* ¶ 12; Escandón Decl. ¶ 9. While Mr. Uriarte was in Madrid, Andueza contacted him on August 21, 2019 to propose a follow-up meeting in Cádiz, Spain to further discuss the investment opportunity in the Pellet Plant Acquisition. They met the next day over breakfast to discuss the opportunity. Uriarte Decl. ¶ 13. On September 11, 2019, Mr. Uriarte met with Andueza and Brooks over lunch in Madrid to further discuss the opportunity. *Id.* ¶ 14. At this meeting, they discussed the financial details of the transaction. *Id.* On September 16, 2019, Brooks sent a follow up email to Mr. Uriarte in Madrid containing a link to electronic information relevant to the proposed investment. *Id.* ¶ 15. Mr. Uriarte reviewed that information from his office in Madrid. *Id.*

On October 2, 2019, Messrs. Uriarte and Escandón met Andueza in Madrid for lunch. *Id.* ¶ 16; Escandón Decl. ¶ 12. This was the first time Mr. Escandón met Andueza in-person. *Id.* At this meeting, Andueza provided more detailed financial information about the proposed transaction, including handwritten notes. Uriarte Decl. ¶ 16; *id.* Ex A. Upon Andueza's urging, Messrs. Uriarte and Escandón also agreed to visit to the Pellet Plant in Green Bay, Wisconsin and the power plant in L'Anse Warden, Michigan so that they could physically inspect the premises and learn more about the investment. *Id.* Andueza coordinated their travel schedule and meetings with Convergen through Brooks. *Id.*

On October 21, 2019, Messrs. Uriarte and Escandón travelled from Madrid to Green Bay by way of Chicago to visit the Pellet Plant and meet Brooks. Uriarte Decl. ¶ 17; Escandón Decl. ¶

13. The next day, all three visited L'Anse Warden. *Id.* Messrs. Uriarte and Escandón returned to Madrid on October 23, 2019. *Id.*

On November 14, 2019, Andueza and Messrs. Uriarte, and Escandón met near Andueza's office in Madrid to further discuss the terms of the investment in the Pellet Plant Acquisition. Uriarte Decl. ¶ 18; Escandón Decl. ¶ 14. During this meeting, Andueza proposed new terms, requesting that that Messrs. Uriarte and Escandón increase their investment in the Pellet Plant Acquisition. *Id.* Messrs. Uriarte and Escandón jointly discussed the terms privately in Madrid, and on November 19, 2019, they jointly decided that the new terms were unacceptable. Uriarte Decl. ¶ 19; Escandón Decl. ¶ 15. On November 27, 2019, Mr. Uriarte called Andueza in Madrid and informed him that he and Mr. Escandón would not continue with the transaction on the terms as proposed on November 14, 2019. Uriarte Decl. ¶ 20. Andueza informed Mr. Uriarte that he would think of a solution, and, if not, he would find another more suitable investment opportunity for him in the future. *Id.*

After Messrs. Uriarte and Escandón rejected Andueza's proposal, on November 30, 2019, while Mr. Uriarte was in Madrid, Brooks sent him a message proposing new terms for the investment in the Pellet Plant Acquisition, decreasing the requested initial principal investment. Uriarte Decl. ¶ 21. On December 16, 2019, Brooks followed up on his previous email with another email containing a more detailed proposal of the new terms for the investment in the Pellet Plant Acquisition. *Id.* ¶ 22. On December 19, 2019, while Mr. Escandón was in Madrid, Brooks sent him an email with the new terms of the investment in the Pellet Plant Acquisition that he had previously sent to Mr. Uriarte. Escandón Decl. ¶ 19.

On December 27, 2019, Mr. Uriarte met with Andueza to further discuss the investment opportunity at a ski resort in Lleida, Spain where they were both spending their Christmas holiday.

*Id.* ¶ 24. The next day, Andueza asked Mr. Uriarte if he and Mr. Escandón agreed with the new terms he and Brooks had proposed for the investment in the Pellet Plant Acquisition. *Id.* ¶ 25. That evening, Mr. Uriarte spoke with Mr. Escandón in Madrid, and later confirmed to Andueza that the terms were agreeable, but only Chipper would move forward with the investment. Uriarte Decl. ¶ 25; Escandón Decl. ¶ 20.

As a result, on January 27, 2020, Chipper wired USD $549,945.00 from its account with Banco Bilbao Vizcaya Argentaria S.A. ("BBVA") in Madrid, Spain to an attorney trust account in the name of Clemente Mueller P.A. in Morristown, New Jersey. Escandón Decl. ¶ 21, Ex A. Although Chipper directed the funds be sent to an attorney trust account in New Jersey, according to the wire transfer receipt, those funds were routed through a New York Citibank account. *Id.* Upon information and belief, BBVA incidentally routed the wire through New York. Escandón Decl. ¶ 22. None of the Spanish Defendants controlled the route of the wire transfer or otherwise directed BBVA or any other entity to utilize a New York correspondent bank in the transfer to New Jersey. Uriarte Decl. ¶ 30; Escandón Decl. ¶ 22. Other than Chipper's one-time wire transfer, no other money was transferred by any of the Spanish Defendants into the United States or New York in connection with this transaction. Uriarte Decl. ¶¶ 29, 38; Escandón Decl. ¶¶ 23-24. Indeed, other than participating in the negotiation of the investment, neither Mr. Escandón nor Mr. Uriarte had any involvement in the underlying transactions and Urincha was not involved in the investment. Uriarte Decl. ¶¶ 27-29, 38-39; Escandón Decl. ¶¶ 23-24, 26, 34, 35. On January 29, 2020, the Acquisition Agreement was executed by Andueza on behalf of Convergen Energy Wisconsin, and Convergen. Uriarte Decl. ¶ 26; Escandón Decl. ¶ 25; D.E. 92-3 at 43. At no time during any of these meetings did Brooks or Andueza disclose to Mr. Uriarte or Mr. Escandón, nor were they aware, that Brooks was an owner of Niantic. Uriarte Decl. ¶ 31; Escandón Decl. ¶ 27.

They were also unaware of the allegations underpinning this action, including that the Pellet Plant was allegedly undervalued. *Id.*

III.     **ARGUMENT**

      **A.  Plaintiffs Fail To Meet Their Burden Of Establishing A *Prima Facie* Case Of Jurisdiction Over The Spanish Defendants**

           **1. Standard**

On a motion to dismiss, "plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010). At this stage of the proceedings, Plaintiffs need only make a *prima facie* showing, but "[a] plaintiff's allegations must provide the factual specificity necessary to confer jurisdiction as conclusory statements without supporting facts are insufficient." *Williams v. PMA Cos., Inc.*, 419 F. Supp. 3d 471, 487 (N.D.N.Y. 2019) (quotation omitted).

A federal court sitting in diversity may exercise personal jurisdiction over a foreign defendant only if the exercise of personal jurisdiction would be appropriate under the law of the forum state and would not violate constitutional due process. *Whitaker v. American Telecasting, Inc*., 261 F.3d 196, 208 (2d Cir.2001). Accordingly, to establish a *prima facie* case, Plaintiffs' must provide "non-conclusory fact-specific allegations or evidence" showing that the Spanish Defendants are subject to personal jurisdiction in New York under its Civil Practice Law and Rules ("CPLR"). *Chirag v. MT Marida Marguerite Schiffahrts*, 604 Fed. Appx. 16, 19 (2d Cir. 2015).

The nonspecific conclusory allegations in the Complaint do not meet this burden and would not be sufficient even if they were adequately pled. Indeed, the Complaint fails to provide *any* theory of personal jurisdiction, omitting citation to any provision of the CPLR under which the Court could exercise personal jurisdiction over any of the non-resident Spanish Defendants. *See* D.E. 1. As a result, each of the Spanish Defendants are left to speculate as to the purported basis

for personal jurisdiction over them. As provided *infra*, however, no such basis exists that could support the Court's exercise of personal jurisdiction here.

### 2. There Is No General Jurisdiction Over The Spanish Defendants

"Pursuant to general jurisdiction, courts in New York can adjudicate all claims against an individual or a corporation, even those unrelated to its contacts with the state." *Merritt v. Airbus Americas, Inc.*, 202 F. Supp. 3d 294, 298 (E.D.N.Y. 2016) (emphasis in original). "New York courts may not exercise general jurisdiction against a defendant under the United States Constitution or under CPLR 301 unless the defendant is domiciled in the state or in an exceptional case where an individual's contacts with a forum [are] so extensive as to support general jurisdiction notwithstanding domicile elsewhere." *IMAX Corp. v. The Essel Grp.*, 154 A.D.3d 464, 465–66 (2017); *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

There is no general jurisdiction over any of the Spanish Defendants in New York. The Complaint alleges that Urincha and Chipper have their principal place of business in Madrid, Spain, and that Messrs. Uriarte and Escandón are domiciled in Madrid, Spain. D.E. 1 ¶¶ 17-20. The Declarations attest to these facts: Urincha and Chipper were incorporated in and maintain their principal place of business in Madrid, Spain, Uriarte Decl. ¶¶ 33-34, Escandón Decl. ¶¶ 29-30, and Messrs. Uriarte and Escandón are Spanish citizens domiciled in Madrid. Uriarte Decl. ¶ 2; Escandón Decl. ¶ 2.

Nor does the Complaint adequately allege that any of the Spanish Defendants qualify as "exceptional cases." The Complaint alleges in conclusory fashion that the Spanish Defendants as a group: (1) had "extensive contacts with Brooks" while he was in New York and that he solicited their investment in the Pellet Plant Acquisition; (2) each wired funds "directly or indirectly" to New York for the purpose of the investment in the Pellet Plant Acquisition; and (3) participated in

and benefitted from Brooks' fraudulent scheme. D.E. 1 ¶¶ 25, 43, 52. These allegations "lack the factual specificity necessary" to establish that any of the Spanish Defendants had "continuous and systematic" contacts with New York so as to render each of them "at home" there. The Complaint fails to specifically identify the conduct of each Spanish Defendant and improperly makes allegations against them collectively despite their varying involvement in the investment. There is no allegation detailing the purported "extensive contacts" with Brooks, where or when they occurred, or to whom the alleged wires to New York were sent, or where or how Brooks "solicited investments" from each of the Spanish Defendants. *See MMA Fighter Mgmt., Inc. v. Ballengee Grp., LLC*, No. 19 CIV. 11276 (AKH), 2020 WL 3000401, at *2 (S.D.N.Y. June 4, 2020) (holding no general personal jurisdiction based on "the conclusory assertion that Defendants systematically and continually conduct business throughout New York."). Accordingly, Plaintiffs' nonspecific and conclusory allegations fail to establish *a prima facie* case of general personal jurisdiction over any of the Spanish Defendants.

Even if these jurisdictional allegations were true and adequately pled (they are not), *see, e.g.* Uriarte Decl. ¶¶ 10-25 (Andueza, not Brooks solicited the investment, and did so while he and the Spanish Defendants were in Spain), they would not be sufficient to establish that any of the Spanish Defendants have continuous and systematic contacts with New York. *MMA Fighter Mgmt.*, 2020 WL 3000401, at *2 ("[C]ourts require substantial solicitation that is carried on with a considerable measure of continuity and from a permanent locale within the state" to find general personal jurisdiction.); *see Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016) (holding no general jurisdiction where defendant's contacts included: continuous 30-year presence, four operations with 70 employees in forum state, and derived $160 million in revenue from its presence because defendant was not incorporated or headquartered in the forum state).

Finally, the Declarations confirm that each of the Spanish Defendants "[m]aintains no bank accounts in New York; owns no real estate in New York; has no offices in New York; has no employees in New York; has no telephone or other similar contact in New York; and does not routinely conduct or solicit business in New York." *Meyer v. Bd. of Regents of Univ. of Oklahoma*, No. 13 CIV. 3128 CM, 2014 WL 2039654, at *3 (S.D.N.Y. May 14, 2014) (finding no general jurisdiction); Uriarte Decl. ¶¶ 4-7, 34-37, 40; Escandón Decl. ¶¶ 4-7, 30-36. Given the foregoing, there can be no general jurisdiction over any of the Spanish Defendants in New York.

### 3. There Is No Specific Jurisdiction Over Any Of The Spanish Defendants

The Court also lacks specific jurisdiction over each of the Spanish Defendants. "[S]pecific jurisdiction is governed by CPLR § 302(a), which empowers New York courts to exercise jurisdiction over non-domiciliaries when the causes of action in the case arise from one of four specific kinds of contact with New York." *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 801 (S.D.N.Y. 2015), *aff'd*, 660 F. App'x 43 (2d Cir. 2016) (citing NY C.P.L.R. § 302(a)). These include: (1) transacting business in New York; (2) committing a tortious act inside New York; (3) committing a tortious act outside New York if the defendant regularly does business in New York or derives substantial revenue from interstate or international commerce; and (4) and owning real estate in New York. CPLR § 302(a).

Plaintiffs do not allege that each of the Spanish Defendants committed tortious acts within New York, or that they own or used any property in New York. Accordingly, the only bases to assert specific jurisdiction over them would be an alleged transaction of business within New York or the commission of a tortious act outside of New York causing injury to person or property within New York, pursuant to CPLR §§ 302(a)(1) and (3), respectively.

12

As with general personal jurisdiction, the Complaint's conclusory allegations lack the factual specificity to satisfy their burden of establishing a *prima facie* case of specific personal jurisdiction against each of the Spanish Defendants under CPLR §§ 302(a)(1) and (3). The Declarations establish that none of the Spanish Defendants' have sufficient contacts with New York to warrant the exercise of specific personal jurisdiction.

### a.  CPLR § 302(a)(1): Transacting Business Within New York

### i.  Standard

"To determine the existence of jurisdiction under section 302(a)(1), a court must decide (1) whether the defendant transacts any business in New York and, if so, (2) whether this cause of action aris[es] from such a business transaction." *Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 246 (2d Cir.2007) (alteration in original). First, "[c]ourts look to the totality of the defendant's activities within the forum, to determine whether the defendant 'transacted business' in such a way that it constitutes "purposeful activity." *Id.* Next, the court must determine if "there is an articulable nexus, or a substantial relationship, between the claim asserted and the [defendant's] actions that occurred in New York." *Henderson v. INS,* 157 F.3d 106, 123 (2d Cir.1998).

### ii.  None Of The Spanish Defendants Transacts Or Transacted Business In New York

Under New York law, "transacting business" is defined as an "[a]ct by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Best Van Lines*, 490 F.3d at 246. "It is the 'nature and quality' and not the amount of New York contacts that determine whether purposeful activity occurred." *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339 (S.D.N.Y. 2016).

First, the jurisdictional facts in the Complaint do not establish that each of the Spanish Defendants purposefully availed themselves of New York with sufficient "factual specificity" to

confer specific jurisdiction over them under § 302(a)(1). The Complaint does not identify each of the Spanish Defendants' "extensive contacts" with Brooks while he was in New York, or whether they were related to transacting business in New York. D.E. 1 ¶¶ 25, 52. There is no allegation concerning the content of Brooks' purported solicitations, where Brooks "solicited investments" from each of the Spanish Defendants, or how the solicitation of investment from Spain in the acquisition of a pellet plant in Wisconsin by a Delaware corporation effected through a contract governed by Delaware law that closed in New Jersey, indicates that each of the Spanish Defendants were "transacting business" in New York. D.E. 1 ¶¶ 25, 52; D.E. 92-3 at 4 (§1.3(b)), 42 (§ 9.8). Nor is there an allegation providing how each of the Spanish Defendants' alleged benefit in Madrid, Spain from the Pellet Plant Acquisition indicates that they "transacted business" in New York. D.E. 1 ¶¶ 43, 77. Finally, there is no allegation providing how many wire transfers were sent to New York, who sent them, or when or to whom they were sent. Indeed, the Complaint does not even allege whether wires were sent "directly" or "indirectly" into New York or through Niantic. D.E. 1 ¶¶ 25, 52. In fact, only one wire transfer was sent to a New Jersey lawyer's trust account and this wire was not sent through Niantic, but by BBVA to New Jersey through a New York correspondent account at its sole direction. Escandón Decl. ¶ 20; Ex. A; *see Doe v. Bausch & Lomb, Inc.,* No. 3:18-CV-000352 (KAD), 2020 WL 1164189, at *3 (D. Conn. Mar. 11, 2020) (dismissing complaint because jurisdictional allegations, such as "Defendants . . . transact business in Connecticut . . . [and] have substantial aggregate contacts with . . . this District" were "at best, vague" and too conclusory to support finding of specific jurisdiction); *Hollenbeck v. Comeq, Inc*., No. 5:03CV0825 LEKDEP, 2007 WL 2484299, at *4 (N.D.N.Y. Aug. 28, 2007) (holding plaintiffs failed to adequately plead "transacting business" in New York based on conclusory statements that defendants "engaged in the business of designing, manufacturing, advertising, marketing and

14

selling machinery and . . . transacts business within the State of New York, and contracts to supply goods or services in the State of New York.").

Crucially, the Complaint fails to separately allege the conduct that ties each of the Spanish Defendants to New York. The Complaint improperly groups together all Defendants or groups together all four Spanish Defendants, and alleges that they engaged in identical conduct. *Compare* D.E. 1 ¶ 25 ("[e]ach defendant participated in and benefitted from the fraudulent scheme," "each defendant wired money to New York either directly or indirectly through Niantic, to consummate the fraudulent transaction, and each of the defendants had extensive contacts with Brooks while he was in New York . . . ."), *with* D.E. 1 ¶¶ 52 (alleging that, *inter alia,* "the Spanish Investors had extensive contacts with Brooks while he was in New York and employed by the Company in New York, and each wired funds directly or indirectly to New York for the fraudulent purchase of the Pellet Plant."). However, there are four Spanish Defendants, two of whom are corporations and two of whom are individuals, and all of whom had varying levels of involvement with Brooks and the transaction underlying the claims in this action. Indeed, only Chipper invested in and wired funds in connection with the Pellet Plant Acquisition, and other than negotiating the terms of the investment, neither Mr. Uriarte nor Mr. Escandón had any involvement in the underlying transaction and Urincha had no involvement whatsoever. Uriarte Decl. ¶¶ 27-30, 38, 39; Escandón Decl. ¶¶ 23, 24, 26, 34, 35. As the Supreme Court has made clear, "[e]ach defendant's contacts with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984). The Complaint's nonspecific group pleading is emblematic of pleadings lacking sufficient "factual specificity" to establish specific jurisdiction. *See Gerstle v. Nat'l Credit Adjusters, LLC*, 76 F. Supp. 3d 503, 510 (S.D.N.Y. 2015) (holding no personal jurisdiction based on conclusory allegations whose "lack of specificity" was "highlighted" by "the use of the same boilerplate description for

actions of [multiple defendants].”); *Bausch & Lomb*, 2020 WL 1164189, at *3 (holding no personal jurisdiction under § 302 because “[p]laintiffs make factual allegations regarding the Defendants collectively . . . Such vague allegations levied against the Jurisdictional Defendants do not satisfy Plaintiffs' burden.”); *Gerffert Co., Inc., Stephen Panigel v. Fratelli Bonella, SRL*, 49 Misc. 3d 1208(A), 26 N.Y.S.3d 724 (N.Y. Sup. Ct. 2015) (holding no personal jurisdiction under § 302 because allegations against defendants “primarily consist of vague, undifferentiated claims of wrongdoing, which neither particularly describe the misconduct relied upon nor detail precisely how [defendants] individually engaged in purposeful activities within the State of New York.”).

Additionally, given the overwhelmingly foreign nature of both the transactions at issue and the Spanish Defendants’ involvement, the scant New York contacts alleged are insufficient to show that each of the Spanish Defendants were “transacting business” in and “purposefully availing” themselves of New York. Most courts examining analogous facts have reached the same conclusion. In *Hill*, plaintiffs alleged aiding and abetting breach of fiduciary duty and fraud against defendant HSBC. 207 F. Supp. 3d 333. The *Hill* plaintiffs based their claim on HSBC’s indirect involvement in an allegedly fraudulent investment in New York, governed by contracts negotiated and executed abroad, by communicating with New York parties and sending money into New York. *Id.* at 337-338. The court explained that with respect to “transacting business” under § 302(a)(1): “it is the ‘nature and quality’ and not the amount of New York contacts that determine whether purposeful activity occurred . . . <u>a foreign defendant's communications with a party in New York or sending of monies into New York are not sufficient to establish personal jurisdiction without the defendant having ‘projected’ himself into New York</u> for the purposes of conducting business there.” *Id.* at 339 (emphasis added). The court added, “[c]ommunications with and payments to New York merely to ensure compliance <u>with contract terms negotiated and executed</u>

outside of New York do not "project" a defendant into the state sufficiently to confer personal jurisdiction over it under § 302(a)(1)." *Id.* (emphasis added). The *Hill* court concluded that plaintiffs had failed to demonstrate that HSBC had "transacted business" under § 302(a)(1) because, like here, the "center of gravity" of the transaction was not New York. *Id.* The relevant contracts were negotiated and executed abroad, and HSBC's communication and transfer of funds into New York were merely incidental to HSBC's involvement with those foreign contracts. *Id.*; *see also DirecTV Latin Am., LLC v. Park 610, LLC,* 691 F. Supp. 2d 405, 420 (S.D.N.Y. 2010) (holding no jurisdiction under § 302(a)(1) for aiding and abetting fraud claim against Argentinean defendant, despite many communications with New York plaintiff because center of gravity of contract was "indisputably outside New York" as defendants were Argentinean and "most significantly" the agreement contemplated performance outside New York: "where a defendant's 'contacts with New York consist of . . . correspondence in connection with the negotiation of a contract that has a center of gravity well outside the state, there is no personal jurisdiction under C.P.L.R. § 302(a)(1)) (emphasis added).

Here, as in *Hill* and *DirecTV*, the contracts at issue have their "center of gravity" in Wisconsin and perhaps Michigan, but not New York. First, except for the two Plaintiffs and Brooks, every other party involved in the underlying transactions and claims is not a New York citizen or entity. D.E. 1 ¶¶ 8-23 (listing parties' citizenship and place of incorporation); *Art Assure Ltd., LLC v. Artmentum GmbH*, No. 14 CIV. 3756 LGS, 2014 WL 5757545, at *3–4 (S.D.N.Y. Nov. 4, 2014) (holding Swiss defendant did not "transact business" in New York by negotiating contract with New York plaintiff where majority of relevant parties were Japanese or Swiss); *Hill*, 207 F. Supp. 3d 333.

Further, the Acquisition Agreement expressly provides that it concerns the sale of a Wisconsin pellet plant to a Delaware corporation, is governed by Delaware law, and was executed in New Jersey. D.E. 92-3 at 4 (§1.3(b)), 42 (§ 9.8). The Supply Agreement, on which Plaintiffs also rely, D.E. 1 ¶ 39, is between a Michigan corporation and a Wisconsin corporation for the provision of pellets to Michigan, is governed by Wisconsin law, and contains an arbitration clause mandating arbitration in Wisconsin. D.E. 92-6; *see Beatie & Osborn LLP v. Patriot Sci. Corp.*, 431 F.Supp.2d 367, 388 (S.D.N.Y.2006) (holding no personal jurisdiction when "the clear majority of the performance under the [contract] occurred" outside of New York); *Roper Starch Worldwide, Inc. v. Reymer & Assocs., Inc*., 2 F. Supp. 2d 470, 474 (S.D.N.Y. 1998) (finding no jurisdiction under § 302(a)(1) as "contract between the parties was negotiated and executed either in Michigan or Illinois . . . [defendant] supervised the contract from her office in Illinois . . . [and] the contract contained no New York choice of law clause."); *Rosenblatt v. Coutts & Co. AG*, No. 17 CIV. 3528 (AKH), 2017 WL 3493245, at *3–4 (S.D.N.Y. Aug. 14, 2017), *aff'd*, 750 F. App'x 7 (2d Cir. 2018) (holding defendant did not "transact business" by communicating with and transferring funds to New York plaintiff for an agreement governed by Swiss law, executed in Switzerland, and concerning Swiss property); *DirecTV*, 691 F. Supp. 2d at 420. Notably, in *Hill*, the defendants were parties to and negotiated the relevant foreign contracts, but the court still found it had no jurisdiction under § 302(a)(1) – here, none of the Spanish Defendants negotiated the Acquisition Agreement or Supply Agreement and none is a party to those agreements. *See* D.E. 92-3, 6.

The Complaint's allegations that Brooks solicited the Spanish Defendants' investment and had "extensive contacts" with them while he was in New York are also insufficient because these communications were initiated by Brooks, not any of the Spanish Defendants. Uriarte Decl. ¶¶ 14, 15, 21-23; Escandón Decl. ¶¶ 17-19; *Palace Expl. Co. v. Petroleum Dev. Co*., 41 F. Supp. 2d 427,

434 (S.D.N.Y. 1998) ("[Plaintiff] gives great weight to the fact that it was located in New York for the entire length of the negotiations, <u>the proper focus of the jurisdictional inquiry under CPLR § 302(a)(1) is on the defendant's activities, not the plaintiff's presence, in the state</u>.") (emphasis added). Each of these email communications took place while all of the Spanish Defendants were in Madrid. *Id.* Moreover, "New York courts have repeatedly expressed the rule that solicitation alone is not enough to acquire jurisdiction over a non-domiciliary defendant." *Tech. Prod. Int'l, Inc. v. Integrated Electronics Inc*., No. 85 CIV. 2111 (PKL), 1986 WL 2413, at *1 (S.D.N.Y. Feb. 19, 1986) (collecting cases).

Further, each of the Spanish Defendants has no New York presence, Messrs. Uriarte and Escandón did not visit New York in connection with this transaction and have not been there for over a decade. Uriarte Decl. ¶¶ 4-6, 33-40; Escandón Decl. ¶¶ 4-6, 26, 30-36; *Giuliano v. Barch*, 2017 WL 1234042, at *9 (S.D.N.Y. Mar. 31, 2017) ("[C]ourts are generally loath to uphold jurisdiction under the transaction in New York prong of CPLR 302(a)(1) if the contract at issue was negotiated solely by mail, telephone, and fax <u>without any New York presence by the defendant</u>.") (emphasis added); *Palace*, 41 F. Supp. 2d at 434 (finding defendants did not "transact business" under §302(a)(1) where Defendant solicited New York plaintiff's involvement in Oklahoma contract because defendant had never been in New York). The Complaint does not allege that the investment in the Acquisition Agreement was negotiated in New York, and the Declarations attest that they did not. Other than one visit to Michigan and Wisconsin, the negotiations took place entirely in Spain in Madrid, Cádiz, and Lleida, with Andueza, a Spanish citizen and resident. Uriarte Decl. ¶¶ 10-16, 18-25; Escandón Decl. ¶¶ 9, 11, 12, 14, 15, 19, 20. Even if the negotiations had occurred in New York, "[c]orrespondence sent into New York, by a non-domiciliary defendant who is outside New York, generally are insufficient to establish

personal jurisdiction . . . [unless] the purpose of the calls is for the defendant to actively participate in business in New York." *Digital Lab Sols., LLC v. Stickler*, 2007 WL 700821, at *3 (S.D.N.Y. Mar. 7, 2007). Here, the purpose of the communications with Brooks were not to "actively participate in business in New York," or to "project" any of the Spanish Defendants into New York by "purposefully availing" the protections and benefits of its law. *Roper*, 2 F. Supp. 2d at 474. Rather, the email communications were related to Chipper's investment in the sale of a Wisconsin pellet plant to a Delaware corporation through a contract executed in New Jersey and governed by Delaware law. Accordingly, the communications with Brooks in New York were "correspondence in connection with the negotiation of a <u>contract that has a center of gravity well outside the state,</u> <u>[and] there is [therefore] no personal jurisdiction under C.P.L.R. § 302(a)(1).</u>" *Digital Lab Sols.*, 2007 WL 700821, at *3 (emphasis added); *Wilhelmshaven Acquisition Corp. v. Asher*, 810 F. Supp. 108, 113 (S.D.N.Y. 1993) ("In this action, contract negotiations were simultaneously taking place in New York and London. The center of gravity of the transaction was an oil refinery in Germany. Defendants' correspondence, telephone calls and telefax transmissions did not project them into events taking place in New York."); *Beacon Enterprises, Inc. v. Menzies,* 715 F.2d 757, 766 (2d Cir.1983) ("New York courts have consistently refused to sustain § 302(a)(1) jurisdiction solely on the basis of defendant's communication from another locale with a party in New York."); *Palace*, 41 F. Supp. 2d at 434 (holding foreign defendant did not "transact business" by soliciting New York plaintiff's involvement, negotiating agreement via phone, fax, and mail in New York, signing and executing agreement in New York, and providing half of consideration from New York bank because underlying contract was for oil exploration in Oklahoma with Oklahoma party).[2]

---

[2] The overwhelming majority of courts reviewing analogous facts are in accord. *See Pincione v. D'Alfonso,* 506 F. App'x 22, 25 (2d Cir. 2012) (holding defendant did not "transact business" in New York by negotiating deal in New

As to the wire transfer, only one Spanish Defendant, Chipper, sent a wire transfer, and it was sent from BBVA in Spain to a New Jersey attorney's trust account that was incidentally routed through a correspondent bank in New York with no direction to do so from any of the Spanish Defendants. Escandón Decl. ¶¶ 21-22. In any event, even the intentional transmission of a wire into New York would not be sufficient to establish personal jurisdiction under these circumstances. *Hau Yin To v. HSBC Holdings PLC*, 2017 WL 816136, at *5 (S.D.N.Y. Mar. 1, 2017) ("[s]ending of monies into New York [is] not sufficient to establish personal jurisdiction without the defendant having 'projected' itself into New York for the purposes of conducting business there."); *see also Roper*, 2 F. Supp. 2d at 474-75 ("[a]lthough [defendant] . . . made payments to [plaintiff's] New York office, this was not a requirement of the contract . . . [m]erely sending payment to New York is not sufficient to establish personal jurisdiction over a defendant under § 302(a)(1).").

 "[A]t bottom, the contacts alleged by [plaintiffs] between [defendants], the forum and the litigation amount to a handful of communications and transfers of funds . . . This is not enough." *HDtracks.com, LLC v. 7digital Grp. PLC*, No. 18 CIV. 5823 (JFK), 2019 WL 6170838, at *7 (S.D.N.Y. Nov. 19, 2019). Accordingly, Plaintiffs have not met their *prima facie* burden of demonstrating that considering the "totality of the circumstances," each of the Spanish Defendants are "transacting business" in New York within the meaning of CPLR § 302(a)(1).

### iii.    Articulable Nexus

Jurisdiction under § 302(a)(1) further requires that the claims alleged against each of the Spanish Defendants "arise out of" their contacts with New York. *DirecTV*, 691 F. Supp. 2d at 417.

---

York by phone because communications did not "project the defendants into New York . . . these contacts were intended to facilitate a business deal in Italy, where the relevant corporations and bank accounts were located."); *Berkshire Capital Group, LLC v. Palmet Ventures, LLC*, 307 Fed.Appx. 479, 481 (2d Cir.2008); *Kwon v. Yun*, No. 05 CIV.1142 GEL, 2006 WL 416375 (S.D.N.Y. Feb. 21, 2006); *Exec. Life Ltd. v. Silverman*, 68 A.D.3d 715 (2009); *Mau*, 146 A.D.3d 40; *Shalik v. Coleman*, 111 A.D.3d 816 (2013); *Rothschild, Unterberg, Towbin v. McTamney*, 59 N.Y.2d 651(1983).

A "claim aris[es] from a particular transaction when there is some articulable nexus between the business transacted and the cause of action sued upon or when there is a substantial relationship between the transaction or the claim asserted." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir.2006). Although the Court need not reach this element of the § 302(a)(1) inquiry given that each of the Spanish Defendants do not "transact" and have not "transacted business" in New York, the Complaint fails to allege any "substantial connection" between the alleged contacts of each of the Spanish Defendants with New York and the claims asserted against them.

As an initial matter, the sale of the Pellet Plant itself and any of the Spanish Defendants' connections therewith are not the basis for Plaintiffs' claims. The Complaint alleges no breach of contract, but that Plaintiffs' claims and damages arise from alleged misrepresentations made by, and breaches of duties purportedly owed by, Brooks and others to Convergen. *See, e.g.* D.E. 1 ¶¶ 62 (enumerating Brooks' material representations, such as the sale price of the Pellet Plant and his relationship with Merle and the other Defendants), 68-71 (alleging that Brooks, Hansen, and Mikkelson had duties to Convergen arising out of their status as officers and their employment agreements, which they breached "by participating in the fraudulent scheme.").

The Complaint alleges no articulable nexus between each of the Spanish Defendants' alleged New York contacts (i.e., investment negotiations with Brooks, and a wire transfer) and Brooks' alleged misrepresentations and breach of duties to Convergen that form the basis of Plaintiffs' claims, nor any nexus with Plaintiffs' aiding and abetting claims. *See Am./Int'l 1994 Venture v. Mau,* 146 A.D.3d 40 (2016) (holding defendants' joint venture contacts with New York had no nexus to claim arising from promissory note entered into as investment in that New York joint venture); *Johnson v. Ward*, 4 N.Y.3d 516, 520 (2005) (finding no nexus where plaintiffs'

injuries arose from car accident in New Jersey caused by plaintiff who held a New York driver's license driving New York-registered car because "[t]he negligent driver could have had a license from any state, or no license--that defendant had a New York license and registration is merely coincidental.").

Further, the lack of factual specificity in the Complaint is fatal to the establishment of any "substantial nexus" between each of the Spanish Defendants' alleged contacts with New York and the elements of Plaintiffs' aiding and abetting claims. *See Best Van Lines, Inc. v. Walker*, No. 03 CIV. 6585 (GEL), 2004 WL 964009, at *6 (S.D.N.Y. May 5, 2004), *aff'd*, 490 F.3d 239 (2d Cir. 2007) (finding no jurisdiction as "[Plaintiff] has not asserted that its injury is 'substantially related' to the [New York contacts], or indeed that they have any 'articulable nexus' to its injury at all . . . plaintiff states in a conclusory manner that its claim 'arises out of defendant's business activities.'").

"Whether a plaintiff's claim arises from a defendant's New York contacts depends upon "the nature and <u>elements of the particular causes of action pleaded</u>." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 169 (2d Cir. 2013) (emphasis added). Here, the Complaint alleges that the Spanish Defendants as a group are liable for aiding and abetting fraud and breach of fiduciary duty. D.E. 1 ¶¶ 74-85.[3] Accordingly, to make out *a prima facie* case under § 302(a)(1), the Complaint must allege that an element of Plaintiffs' aiding and abetting claims against each of the Spanish Defendants arises out of their connections to New York. It does not.

### 1.   Aiding And Abetting Claims – Element One: Underlying Fraud & Breach of Fiduciary Duty

The first element of both aiding and abetting claims is the existence of the underlying fraud and breach of fiduciary duty. *JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 252

---

[3] *See infra* pp. 43-52, at § B. for elements of fraud, breach of fiduciary duty, and aiding and abetting fraud and breach of fiduciary duty.

(S.D.N.Y. 2005); *In re Hydrogen, L.L.C.*, 431 B.R. 337, 352 (Bankr. S.D.N.Y. 2010). Plaintiffs'
premise these underlying claims upon the alleged misrepresentations of Brooks, Hansen, and
Mikkelson, their breach of fiduciary duties to Convergen, and Convergen's justifiable reliance
upon them. *See,* D.E. 1 ¶¶ 61-73. The Complaint, however, alleges no nexus between each of the
Spanish Defendants' contacts with New York and those underlying claims. First, the Complaint
does not allege that any of the email correspondence, or the wire transfer to New Jersey, somehow
encouraged Brooks to make misrepresentations to or conceal facts from Convergen. Instead, the
Complaint asserts that the alleged misrepresentations arose from Brooks' unilateral actions and
decisions in New York. *See id.* ¶¶ 62, 68-71. Second, there is no allegation concerning how
Plaintiffs' justifiable reliance arises out of each of the Spanish Defendants' New York contacts.
Rather, the Complaint alleges that Plaintiffs' reliance arose from their longstanding relationship
with and trust in Brooks, not emails from Mr. Uriarte or Escandon, or a wire transfer from Chipper
to New Jersey. *See* D.E. 1 ¶ 41 ("[T]he Company fortuitously learned that Brooks may have had
an economic interest in Niantic. The suggestion was greeted by extreme shock and utter
disbelief . . . Brooks was not only a trusted senior executive within the Company, but he also was
a personal friend of one of the principals of the Group."). Finally, the Complaint does not allege
that the emails or wire transfer evince awareness of Brooks' or any other party's duties to
Convergen or that any of the Spanish Defendants assisted him in breaching those duties or
committing fraud. Rather, the Complaint alleges that these duties arose from Brooks' status "as an
officer of [Convergen]" and his employment agreement with Convergen, *not* a connection of any
Spanish Defendant with New York. D.E. 1 ¶¶ 68-69. Accordingly, Plaintiffs have failed to connect
the alleged contacts of each of the Spanish Defendants with New York to the underlying fraud and
breach of fiduciary duty claims asserted against them.

### 2.  Aiding And Abetting Claims – Element Two: Knowledge

The next element of both aiding and abetting claims requires that the Complaint allege that each of the Spanish Defendants had actual knowledge of the fraud and breach of fiduciary duty. *Mazzaro de Abreu v. Bank of Am. Corp.*, 525 F. Supp. 2d 381, 388 (S.D.N.Y. 2007) ("[a]iding and abetting fraud requires actual knowledge by the aider and abettor of the fraudulent scheme."); *Kaufman v. Cohen*, 307 A.D.2d 113, 125 (2003) ("[t]here must be an allegation that such defendant had actual knowledge of the breach of [fiduciary] duty . . . ."). The Complaint fails to allege how any alleged New York contacts of each of the Spanish Defendants has any connection to their individual actual knowledge of the underlying torts.

The misrepresentations upon which the alleged fraud and breach of fiduciary duty claims are based are, *inter alia*: Brooks' alleged misrepresentations to Convergen as to the value of the Pellet Plant, that it was being sold at a discount, the "appropriateness" of the Supply Agreement, that Brooks was allegedly improperly double-dealing through his interest in Niantic, and the duties of Brooks, Hansen, and Mikkelson as officers of Convergen and under their employment agreements with Convergen and breaches of those duties. D.E. 1 ¶¶ 62-67-73.

The Complaint does not allege that Brooks or any other party informed any of the Spanish Defendants that: he was misrepresenting the sale price of the pellet plant, or that he was breaching his duties to Convergen to encourage their investment and get a better deal, or that any of them otherwise obtained actual knowledge of Brooks' or any other parties' misrepresentations through their alleged contacts with him while he was in New York. The only relevant allegations in the Complaint assert that the Spanish Defendants' collectively somehow "knew" of these misrepresentations with no factual basis. In any event, the Complaint does not tie that allegation to any of the Spanish Defendants' alleged contacts with New York:

> Brooks solicited the Spanish Investors on the basis that his doubledealing was expected to yield the Pellet Plant at a purchase price several million dollars below its fair market value . . . The Spanish Investors . . . knew that Brooks was using his unique position at the Company to double deal and close a fraudulent transaction to their benefit and to the detriment of Plaintiffs . . . All of the defendants . . . knew of Brooks' role and responsibilities at the Company.

D.E. 1 ¶¶ 52, 77, 83. Such conclusory allegations are insufficient to establish an "articulable nexus."

*Nationwide Mut. Ins. Co. v. Morning Sun Bus Co.*, No. 10-CV-1777 ADS AKT, 2011 WL 381612, at *8 (E.D.N.Y. Feb. 2, 2011) (finding no jurisdiction under § 302(a)(1) because plaintiff's "vague and conclusory allegations in the complaint . . . ha[ve] no 'articulable nexus' or 'substantial relationship' to the underlying cause of action"). Moreover, the Declarations attest that none of the Spanish Defendants had actual knowledge of Brook's misrepresentations or ownership in Niantic, and that the investment opportunity was presented by Andueza, not Brooks. Uriarte Decl. ¶ 31; Escandón Decl. ¶ 27.

### 3. Aiding And Abetting Claims – Element Three: Substantial Assistance & Participation

Finally, both aiding and abetting fraud and breach of fiduciary duty claims require "substantial assistance" in the fraud and "knowing participation or inducement" in the breach of fiduciary duty by the defendant that leads to plaintiff's injury. *Winnick*, 406 F. Supp. 2d at 252; *In re Hydrogen*, 431 B.R. at 352. "Under New York law, substantial assistance occurs when a defendant affirmatively assists, or helps conceal, or fails to act when required to do so, thereby enabling the fraud . . . to occur." *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 370 (S.D.N.Y. 2007).

Here, the Complaint's failure to allege each of the Spanish Defendants' New York contacts with specificity proves fatal. The Complaint does not allege the content of Brooks' communications with and solicitation of any of the Spanish Defendants, or how Chipper's wire

transfer was used to assist in the alleged fraud and/or breach of fiduciary duty. Consequently, the Complaint does not allege how these New York contacts are connected to "substantial assistance" and "knowing participation" by any of the Spanish Defendants in the alleged fraud and breach of fiduciary duty, or how this unpled assistance led to Plaintiffs' injuries. *Gerffert*, 26 N.Y.S.3d 724 (holding no nexus with New York because complaint was "lacking in specificity and detail" because it "relie[d] on allegations . . . that [Defendant] "orchestrated" in some unstated fashion, an undescribed "series of concerted acts"—which caused [Co-Defendants] to breach their respective transfer agreements with [Plaintiff] . . . .") (emphasis added).

The only relevant allegations are conclusory and do not even mention the alleged breaches of fiduciary duty. D.E. 1 ¶ 25 ("[e]ach of the defendants had extensive contacts with Brooks while he was in New York and employed by the Company in New York as part of the fraudulent scheme"); *id.* ¶ 83 ("The defendants knew of, enabled and participated in Brooks' fraudulent scheme."); *id.* ¶ 77 ("Brooks could not have perpetuated the fraud without funding from the Spanish Investors."); *see Merritt*, 202 F. Supp. 3d at 300 ("[j]urisdiction pursuant to CPLR § 302(a)(1) cannot be founded upon . . . a conclusory statement without sufficient supporting facts.").

Accordingly, Plaintiffs have failed to meet their *prima facie* burden of establishing an "articulable nexus" or "substantial connection" between their aiding and abetting fraud and breach of fiduciary duty claims against any of the Spanish Defendants and any of their alleged New York contacts, and have thus failed to allege specific jurisdiction under § 302(a)(1).

### b. CPLR § 302(a)(3): Commission Of A Tort Outside New York

CPLR § 302(a)(3) permits New York courts to exercise jurisdiction over non-domiciliaries where: the defendant commits a tort outside the state, that causes injury within the state and either: (i) the defendant regularly does or solicits business, or engages in any other persistent course of

conduct or derives substantial revenue from goods used or consumed in New York; or (ii) expects or should reasonably expect the act to have consequences in New York and the defendant derives substantial revenue from interstate or international commerce. CPLR § 302(a)(3)(i)-(ii). For the reasons discussed *supra*, Plaintiffs have failed to establish a *prima facie* case of jurisdiction under § 302(a)(3).

### i.    CPLR § 302(a)(3)(i)

The Complaint contains no allegation that any of the Spanish Defendants regularly solicit business, engage in persistent conduct, or derive substantial revenue from goods or services in New York as required by Section 302(a)(3)(i). The only plausibly relevant allegation is the conclusory assertion that the Spanish Defendants as a group had "extensive contacts" with Brooks and he solicited their investment in the Pellet Plant Acquisition. The Declarations, however, attest that Andueza solicited the investment in the Pellet Plant Acquisition, *see* Uriarte Decl. ¶¶ 10, 13, 16, 18-20, 24, 25; Escandón Decl. 9, 12, 14-16, 20, each of the Spanish Defendants had minimal (or no) contact with Brooks, none of the Spanish Defendants regularly do business in New York or the United States, and none derive any revenue from New York goods or services. Uriarte Decl. ¶¶ 4-6, 14, 15, 17, 21, 22, 29, 37-39; Escandón Decl. ¶¶ 4-6, 12, 13, 19, 24, 26, 33-36; *Chunky Corp. v. Blumenthal Bros. Chocolate Co.*, 299 F.Supp. 110, 115 (S.D.N.Y.1969) (holding defendant did not derive substantial revenue from New York under § 302(a)(3)(i) based on 4% of sales, but noting CPLR practice commentaries suggested "if a firm derived 10% of its revenue from New York it would be subject to personal jurisdiction under this subsection").

### ii.   CPLR § 302(a)(3)(ii)

With respect to Section 302(a)(3)(ii), there is no plausible allegation in the Complaint that any of the Spanish Defendants should have expected that their allegedly tortious email contacts

with Brooks (sent from Madrid) and Chipper's wire transfer to have any consequence in New York. The Pellet Plant Acquisition in which Chipper invested involved the sale of a Wisconsin pellet plant to a Delaware corporation through a contract governed by Delaware law and executed in New Jersey. D.E. 92-3. If anything, Chipper may have expected its investment to have an impact in Wisconsin and Michigan, which is why its representatives visited Convergen's facilities there. Uriarte Decl. ¶ 16; Escandón Decl. ¶ 21. The fact that Brooks resides in New York is of no consequence. *Whitaker*, 261 F.3d at 209 ("The occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York."). Moreover, the Complaint lacks any allegation that any of the Spanish Defendants "derive substantial revenue from interstate or international commerce." CPLR § 302(a)(3)(ii). Each of the Spanish Defendants are local Spanish investment corporations or individuals whose business is exclusively focused on investment in Spain, not international or interstate commerce. Uriarte Decl. ¶ 5, 36-37. Escandón Decl. ¶ 6, 32-34; *See Ronar, Inc. v. Wallace*, 649 F. Supp. 310, 317 (S.D.N.Y. 1986) (holding 20% of income was not "substantial revenue" from interstate commerce).

Accordingly, Plaintiffs have failed to meet their *prima facie* burden of establishing personal jurisdiction over the Spanish Defendants under § 302(a)(3) and thus have failed to establish specific personal jurisdiction over any of the Spanish Defendants under New York law.

### 4. The Due Process Clause Does Not Permit Personal Jurisdiction Over Any Of The Spanish Defendants

The second part of the two-part personal jurisdiction inquiry requires that Plaintiffs establish that the exercise of jurisdiction under New York law "accords with due process." *MacDermid, Inc. v. Deiter,* 702 F.3d 725, 729 (2d Cir. 2012). Satisfying due process "requires a plaintiff to allege (1) that a defendant has 'certain minimum contacts' with the relevant forum, and

(2) that the exercise of jurisdiction is reasonable in the circumstances." *Cohen v. BMW Investments L.P.*, 144 F. Supp. 3d 492, 499 (S.D.N.Y. 2015), *aff'd*, 668 F. App'x 373 (2d Cir. 2016). For the same reasons that none of the Spanish Defendants have "transacted business" under Section 302(a)(1), all lack minimum contacts with New York, and the exercise of jurisdiction over any of them would not be reasonable under the Due Process Clause.

### a. Each Of The Spanish Defendants Lacks Minimum Contacts With New York

The "[m]inimum contacts necessary to support specific personal jurisdiction exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there . . . ." *Cohen,* 144 F. Supp. 3d at 499. This analysis necessarily "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014).

### i. Purposeful Availment

The first element of the "minimum contacts" test looks to whether defendants "purposefully availed themselves" of the forum state by "deliberately direct[ing] [their] conduct at the forum." *Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 97 (S.D.N.Y. 2015). None of the Spanish Defendants have done so.

The analysis under § 302 is "in essence, the same as that established by the United States Supreme Court to evaluate the constitutionality of personal jurisdiction under long-arm statutes." *Donini Int'l, S.p.A. v. Satec (U.S.A.) LLC,* No. 03 CIV 9471 (CSH), 2004 WL 1574645, at *5 (S.D.N.Y. July 13, 2004). Accordingly, as discussed *supra* with respect to "transacting business" in New York, each of the Spanish Defendants' extremely limited contacts with New York do not constitute "minimum contacts" under the Due Process Clause. *See supra* pp. 13-21. None of them has ever "commenced any suit, registered an office, been qualified or licensed to do business, paid

30

or been required to pay taxes, employed any officers or agents, leased or purchased any property, acquired a telephone number, or engaged in any other activity reasonably expected of a business venture under the protection and permission of domestic laws." *In re Amaranth Nat. Gas Commodities Litig.*, 587 F. Supp. 2d 513, 537 (S.D.N.Y. 2008), *aff'd*, 730 F.3d 170 (2d Cir. 2013), and *aff'd*, 730 F.3d 170 (2d Cir. 2013) (holding no minimum contacts). Indeed, Messrs. Uriarte and Escandón have not even visited New York in over a decade. Uriarte Decl. ¶ 6; Escandón Decl. ¶ 5; *Lehman Bros. Special Fin. Inc. v. Bank of Am., Nat'l Ass'n*, 535 B.R. 608, 622 (Bankr. S.D.N.Y. 2015) (holding no minimum contacts because defendant "was organized and headquartered outside of the United States; had no offices, employees, or property in the United States; was not registered to, and did not, conduct business in the United States; and did not advertise or otherwise solicit business in the United States.").

Further, none of the Spanish Defendants purposefully availed themselves of the benefits of doing business in New York or its laws through their involvement with the transactions at issue. Those contracts have their center of gravity in Wisconsin and Michigan, respectively, Chipper's investment in the transaction originated in Spain and was sent to New Jersey, and the relevant negotiations took place entirely outside New York. *In re Sledziejowski,* No. 13-22050 (RDD), 2016 WL 6155929, at *5 (Bankr. S.D.N.Y. Oct. 21, 2016) (holding no minimum contacts due to "the overwhelmingly foreign nature of the transactions at issue here. Investments were made . . . in Polish real estate with Polish entities under Polish law . . . each of the Movants is located outside of the United States and . . . the transactions at issue involved investments outside of the United States."); *see also Moncrief Oil International Inc. v. OAO Gazprom*, 481 F.3d 309, 312–13 (5th Cir. 2007) (holding Russian corporations lacked minimum contacts in dispute centered around investment in gas field in Russia, where contract required performance in Russia, and provided for

arbitration in Russia under Russian law where Defendant regularly travelled to Houston to negotiate contract).

Nor are there any other indications that any of the Spanish Defendants engaged in any commercial activities to purposefully avail themselves of the benefits and protections of New York. None of the Spanish Defendants: (i) market or sell goods or services in New York; (ii) maintains a bank account in New York; (iii) are licensed to do business in New York; (iv) own property in New York; (v) derive revenue from New York; or (vi) have otherwise directed their conduct at New York. Uriarte Decl. ¶ 5, 7, 35-40; Escandón Decl. ¶ 6-7, 31-36; *see J. McIntyre Mach., Ltd. v. Nicastro,* 564 U.S. 873, 886 (2011) (holding British defendant had not "engaged in conduct purposefully directed at New Jersey" because it "[h]ad no office in New Jersey; it neither paid taxes nor owned property there; and it neither advertised in, nor sent any employees to, the State.") (plurality opinion); *Dejana v. Marine Tech., Inc.*, No. 10–CV–4029(JS) (WDW), 2011 WL 4530012, at *5 (E.D.N.Y. Sept. 26, 2011) (explaining defendants did not "reveal an intent to invoke or benefit from the protection of [New York's] laws . . . they do not have representatives in New York, they have not delivered boats to New York, and they do not solicit sales in New York.") (citing *id.*); *Lehman Bros.*, 535 B.R. at 622.

Second, the contacts with New York alleged in the Complaint all concern Brooks and are contacts that he himself initiated. D.E. 1 ¶ 52 ("Brooks solicited investments from the Spanish Investors in September 2019 . . . .") (emphasis added); *Id.* ¶ 43 ("Brooks explained that he had raised the funds to buy the Pellet Plant from . . . the Spanish Investors.") (emphasis added); Uriarte Decl. ¶¶ 14, 15, 21-23; Escandón Decl. ¶¶ 17-19. As the Supreme Court has emphasized with respect to the Due Process Clause: "the relationship must arise out of contacts that the defendant *himself* creates with the forum State," "not the defendant's contacts with persons who reside there."

*Walden*, 134 S. Ct. at 1122 (emphasis in original); *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State [under the Due Process Clause].").

The only contact with New York that any of the Spanish Defendants allegedly initiated was Chipper's wire to New Jersey that was incidentally routed through New York. D.E. 1 ¶ 52. The Declarations attest that Chipper's wire transfer was sent to an attorney trust account in New Jersey, which happened to be routed through a correspondent bank account in New York by the originating bank without any direction from any of the Spanish Defendants. Uriarte Decl. ¶ 30; Escandón Decl. ¶ 21-22, Ex. A. That circumstance does not establish that any of the Spanish Defendants "purposefully availed" themselves of the privilege of doing business in New York or its laws. *See Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd*., No. 18 CIV. 1876 (PAE), 2020 WL 4586729, at *12 (S.D.N.Y. Aug. 10, 2020) (holding foreign bank did not purposefully avail itself of New York by maintaining New York correspondent bank for wire transfers as there were only three wire transfers through New York, it did not control the route of the wire transfers through New York, and use of bank account was not necessary element of claim). Moreover, even a single wire transfer intentionally sent to New York would not be sufficient under these circumstances to satisfy the requirements of due process. *Id; Hau Yin To*, 2017 WL 816136, at *5; *Casio Computer Co. v. Sayo*, No. 98CV3772 (WK), 2000 WL 1877516, at *26 (S.D.N.Y. Oct. 13, 2000) (holding pattern of wire transfers into and through New York totaling over $30 million as part of money laundering scheme were below threshold for finding of minimum contacts).

### ii.    Relatedness

The second prong of the minimum contacts inquiry is the "'relatedness' prong, whereby the court determines whether the controversy at issue arose out of or related to the entity's in-forum

conduct." *Gucci*, 135 F. Supp. 3d at 97. "Where the defendant has had only limited contacts with the state it may be appropriate to say that he will be subject to suit in that state only if the plaintiff's injury was proximately caused by those contacts." *Chew v. Dietrich*, 143 F.3d 24, 29 (2d Cir. 1998). This analysis overlaps with the discussion of "articulable nexus" under Section 302(a)(1). The Complaint fails to sufficiently allege facts necessary to meet that less exacting standard for the reasons discussed *supra*, and thus the Complaint also fails to sufficiently allege that Plaintiffs' injuries were proximately caused by any of the Spanish Defendants' contacts with New York. *See supra* pp. 21-27.

Here, the proximate cause standard applies as each of the Spanish Defendants have limited contacts with New York. *See SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 170 (S.D.N.Y. 2015), *aff'd*, 882 F.3d 333 (2d Cir. 2018) (applying proximate cause standard where defendant foreign banks acted "entirely abroad" and "with only sporadic or indirect contacts with the United States."). Proximate cause is present only where it was reasonably foreseeable that the damage alleged would follow from the wrongful act. *In re Allou Distributors, Inc.*, 395 B.R. 246, 268 (Bankr. E.D.N.Y. 2008). The Complaint fails to allege how Plaintiffs' injuries, namely receiving a below-market price for the Pellet Plant, the overcharges in the Supply Agreement and from Hansen's services, and the $196,420 in missing cash, were the reasonably foreseeable result of any of the Spanish Defendants' alleged New York contacts. *See* D.E. 1 ¶¶ 65, 72. The Complaint alleges that Plaintiffs' harms were proximately caused by Brooks', Hansen's, and Mikkelson's alleged misrepresentations to Convergen regarding the Pellet Plant Acquisition, and breaches of their duties arising from their employment relationship with Convergen, *not* any contacts between any of the Spanish Defendants and New York. *See, e.g.* D.E. 1 ¶¶ 62-65 (listing misrepresentations, including sale price of pellet plant and relationship with other defendants, and alleging that

34

"Plaintiffs have been injured as a proximate cause of each of these fraudulent acts . . ."). The Complaint does not allege that in any email communication with Brooks, any of the Spanish Defendants encouraged him to make misrepresentations, to undervalue the sale, or to breach his fiduciary duty to Convergen. None of the Spanish Defendants are parties to and were not involved in the negotiation of the Pellet Plant Acquisition or Supply Agreement, and the Complaint does not allege otherwise. Only Chipper invested in the Pellet Plant Acquisition and only it sent payment by wire transfer to an attorney trust account in New Jersey, and the Complaint does not allege how it was used to assist in the fraud or how the wire transfer otherwise proximately caused Plaintiffs' injuries. *See AmTrust Fin. Servs., Inc. v. Lacchini*, 260 F. Supp. 3d 316, 332 (S.D.N.Y. 2017) (holding foreign arbitrator's emails to US did not constitute minimum contacts in suit alleging fraudulent tampering with Italian arbitration because there were no allegations that emails into US "advanced the allegedly wrongful scheme").

Moreover, the allegations as to causation merely parrot the elements of the alleged claims without any factual support and are thus insufficient to establish proximate cause. *See, e.g.,* D.E. 1 ¶ 72 ("Plaintiffs have been injured <u>as a proximate result</u> of Brooks, Hansen, and Mikkelson's breaches of their fiduciary duties . . . .") (emphasis added); *Millennium Access Control Tech., Inc. v. On the Gate, LLC,* No. 15-CV-6067(SJF)(AKT), 2017 WL 10445800, at *11 (E.D.N.Y. Feb. 14, 2017) (dismissing complaint because "Plaintiff's conclusory allegation that '<u>[a]s a direct and proximate cause</u> of Defendants unlawful acts, [it] has suffered, and is suffering, and will continue to suffer damage' . . . lacks specificity") (emphasis added).

### iii.    Foreseeability

Finally, to determine whether a defendant has "minimum contacts" with the forum state, courts also review whether, based on a defendant's contacts with the forum, he or she could

"reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). None of the Spanish Defendants could anticipate being haled into New York based on any email transmitted from Madrid to Brooks, or a wire transfer made to New Jersey.

First, as discussed *supra*, the center of gravity of this dispute is not New York – the underlying transaction is the sale of a Wisconsin Pellet Plant to a Delaware entity via a contract governed by Delaware law executed in New Jersey, and only three of fifteen parties (20%) to this action are New York entities or residents. *See supra* pp. 16-21; *In re Sledziejowski*, 2016 WL 6155929, at *5 (noting "the overwhelmingly foreign nature of the transactions at issue" and holding defendants could not reasonably anticipate suit in New York); *Bensmiller v. E.I. Dupont de Nemours & Co., State of La*., 47 F.3d 79, 85 (2d Cir. 1995) (holding defendant could not anticipate being haled into Connecticut when relationship with plaintiff was formed in Texas and governed by Texas law).

Second, none of the Spanish Defendants could anticipate being sued in New York because none derive revenue from, or have an office or bank account, own real estate, or do business in New York. *Citibank, N.A. v. Intercontinental Bank*, 646 N.Y.S.2d 261, 263 (Sup. Ct. 1996) (foreign defendant could not anticipate suit in New York where it had no offices in New York, did no business, and owned no property there). Further, Chipper's investment in the Pellet Plant Acquisition did not occur in New York; Andueza proposed and guided that investment in Madrid, Cadiz, and Lleida, Spain. Uriarte Decl. ¶¶ 10-11, 13-14, 16, 18, 24-25; Escandón Decl. ¶¶ 9, 12, 14, 20. Indeed, of the seventeen interactions between these parties, sixteen occurred in Spain, and seven involved only Andueza; even the visit to Michigan and Wisconsin was coordinated by Andueza. Uriarte Decl. ¶ 16; *Porina v. Marward Shipping Co*., No. 05 CIV. 5621, 2006 WL 2465819, at *8 (S.D.N.Y. Aug. 24, 2006) ("[a] Cypriot corporation with is sole place of business

in Limassol, Cyprus . . . <u>does not have substantial business contacts with the State of New York</u> <u>that would cause it to expect to have to defend a lawsuit here</u>.") (emphasis added).

Third, the alleged contacts with New York are limited to emails initiated by Brooks and one wire transfer. But the wire transfer was sent to an attorney trust account in New Jersey and was only incidentally routed through a New York correspondent bank account by BBVA without direction from any Spanish Defendant. Escandón Decl. ¶ 20; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (explaining that due process "ensures that a defendant will not be haled into a jurisdiction solely as a result of the unilateral activity of another party or a third person); *Shaw v. Am. Cyanamid Co*., 534 F. Supp. 527, 532 (D. Conn. 1982) (foreign defendant could not anticipate being haled into court in Connecticut based on sale in New Jersey that third party resold into Connecticut).

Fourth, the choice of law clause in the underlying contracts is Wisconsin law, not New York law. *See In re Sledziejowski*, 2016 WL 6155929, at *6 ("[w]hile not determinative, the choice of law is relevant to the question of whether the Movants could foresee any dispute regarding the transactions in question would be litigated in the United States, and therefore the defendants could not foresee being haled into court in New York because the agreements were governed by Polish law."); *see also Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC,* 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012) ("The Second Circuit has indicated that entering into a contract with a New York choice of law clause is "a significant factor in a personal jurisdiction analysis because the parties . . . invoke the benefits and protections of New York law.") (quoting *Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 22–23 (2d Cir.2004)).

Finally, even if any of the Spanish Defendants could have theoretically foreseen that Brooks or Libra might have been financially harmed if the Pellet Plant Acquisition was not

commercially successful, "the foreseeability of causing harm in the forum state, without more, is not enough to establish minimum contacts." *In re Lehman Bros. Holdings Inc.*, 535 B.R. 608, 620 (Bankr. S.D.N.Y. 2015); *Walden*, 134 S.Ct. at 1125 ("[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."). Accordingly, the Spanish Defendants lack minimum contacts with New York sufficient for the exercise of jurisdiction under the Due Process Clause.

### b. Exercise Of Personal Jurisdiction Over The Spanish Defendants Would Be Unreasonable

Finally, the exercise of jurisdiction over any of the Spanish Defendants would not be reasonable under the Due Process Clause. Given their scant contacts with New York, the Spanish Defendants' burden of establishing the unreasonableness of the exercise of personal jurisdiction over them in New York is minimal. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 569 (2d Cir. 1996) ("[T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant needs to show in terms of unreasonableness to defeat jurisdiction.").

In the Second Circuit, the relevant factors to determine whether it would be reasonable to exercise personal jurisdiction over a defendant are:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 169 (2d Cir. 2015). First, the burden that the exercise of jurisdiction in New York would impose upon each of the Spanish Defendants is immense, particularly as none could not foresee litigation here. The Spanish Defendants are all Spanish citizens and corporations whose primary business is investment in Spanish corporations.

None have any U.S. or New York presence whatsoever. *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 114 (1987) ("unique burdens placed upon one who must <u>defend oneself in a foreign legal system should have significant weight in assessing the reasonableness</u> of stretching the long arm of personal jurisdiction . . . .") (emphasis added); *Dix v. Peters*, 374 F. Supp. 3d 213, 226 (N.D.N.Y. 2019), *aff'd*, 802 F. App'x 25 (2d Cir. 2020) ("Having no agents or offices in New York, the exercise of jurisdiction over [Defendant] would impose an undue burden."); *Del Monte Fresh Produce N.A., Inc. v. M/V AFRICA REEFER*, No. 12 CIV. 3597 JPO, 2013 WL 1129998, at *5 (S.D.N.Y. Mar. 19, 2013) (holding that burden on defendant was unreasonable because "[d]efendants are foreign corporations with no local contacts, offices, employees, telephone listings, or designated agents in the United States.").

Second, New York has little interest in adjudicating this dispute because the center of gravity of the dispute is not New York. The transactions at issue involve the sale of a Wisconsin Pellet Plant to a Delaware entity through a contract executed in New Jersey and governed by Delaware law, and an agreement between a Wisconsin corporation and a Michigan power plant to supply pellets to Michigan through a contract governed by Wisconsin law with an arbitration clause mandating arbitration in Madison, Wisconsin. D.E. 92-3; 92-6. None of the Spanish Defendants had any involvement with these underlying transactions, and only three of the fifteen parties involved in this action are New York parties, of whom Convergen is the only New York party to have signed any of the relevant agreements. D.E. 1 ¶¶ 8-23; D.E. 92-3; *Metro*, 84 F.3d at 574 ("We find that the dispute between Met Life and Robertson implicates absolutely no interest of the State of Vermont. The acts and omissions that serve as the basis for Met Life's suit occurred in Texas, Missouri, and Florida."); *Dix*, 374 F. Supp. 3d at 226–27 ("New York has little interest

in adjudicating a contract dispute involving a contract that was formed in Virginia and it would be likely more convenient for Plaintiff to adjudicate this matter in Virginia . . . .").

Third, Plaintiffs do not have a uniform interest in obtaining convenient and effective relief in New York, as only two of them are New York parties. There is no indication that it would be more convenient for Plaintiffs to litigate this action in New York as opposed to Wisconsin, particularly as the New York Plaintiffs are all part of a conglomerate that can easily coordinate their actions in Wisconsin, and this dispute could be resolved by arbitration in Wisconsin. *Gmurzynska v. Hutton*, 257 F. Supp. 2d 621, 628 (S.D.N.Y. 2003), *aff'd*, 355 F.3d 206 (2d Cir. 2004) (holding plaintiff would not be significantly prejudiced if it had to litigate in Germany because it had an office there). Moreover, Plaintiffs' claims against the Spanish Defendants are inchoate and therefore dependent upon the underlying claims against Brooks and the other Defendants. *Winnick*, 406 F. Supp. 2d at 252; *In re Hydrogen,* 431 B.R. at 352. Thus, the dismissal of all of the Spanish Defendants from the action, would not prevent Plaintiffs from obtaining effective relief from the remaining Defendants on those underlying claims. *See In re CIL Ltd*., 582 B.R. 46, 80 (Bankr. S.D.N.Y. 2018), *amended on reconsideration*, No. 13-11272-JLG, 2018 WL 3031094 (Bankr. S.D.N.Y. June 15, 2018) ("While there is undoubtedly an interest in the plaintiff obtaining convenient and effective relief, the dismissal of [defendant] based on lack of personal jurisdiction does not mean that the Trustee would not be able to . . . ultimately obtain effective relief."). Indeed, litigating this action in New York could be inconvenient since only one Defendant is a New York party, all the contracts at issue will require interpretation of another state's law, and enforcing any judgment against non-New York Defendants could require further enforcement litigation in Wisconsin, Delaware, and Florida. *See Tymoshenko v. Firtash,* No. 11-CV-2794 KMW, 2013 WL 1234943, at *6 (S.D.N.Y. Mar. 27, 2013) (finding jurisdiction unreasonable and

plaintiffs' interest in the forum diminished where the action would require interpretation of foreign law and enforcement of judgment from forum abroad could require further litigation).

Fourth, "courts generally consider where witnesses and evidence are likely to be located." *Metro.,* 84 F.3d at 574. Most of the evidence and witnesses are likely to be located outside New York as only three of the fifteen parties are located in New York. *Metro.*, 84 F.3d at 574–75 ("[n]o witness or other evidence is located in Vermont, and defendant is a nonresident . . . Florida, the locus of the alleged tort . . . [has] far more significant interests in resolving the dispute."). Further, Plaintiffs' claims are not based on documentary evidence, but on alleged misrepresentations made by Brooks, Merle, Mikkelson, Hansen, and the alleged acts of the Spanish Defendants, all of which occurred outside New York in Wisconsin, Michigan, and Spain. *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 732 (S.D.N.Y. 2010) ("Although some documents may be held by the correspondent banks in New York, most of the witnesses and evidence are located in Israel and Lebanon. It is clear that the center of this controversy is the Middle East."); *Gmurzynska*, 257 F. Supp. 2d at 628 (holding jurisdiction unreasonable over German defendant "since most of the alleged unlawful activity took place in Germany, the evidence and many of the witnesses will likely be located there.").

Finally, this dispute does not implicate any unique New York laws or public policies. However, since Defendants and two Plaintiffs hail from Wisconsin, Delaware, Florida, Spain, and Latvia, and the transaction was executed in New Jersey and is governed by Delaware law, those jurisdictions have an interest in the resolution of this dispute as well. *See, e.g., id.* (explaining that as to the fifth factor "Germany unquestionably has a strong interest in enforcing its own business competition laws with respect to tortious acts allegedly committed in its own country by its own residents.").

Accordingly, Plaintiffs have not satisfied their burden of establishing a *prima facie* case of personal jurisdiction over each of the Spanish Defendants and the action should be dismissed.[4]

### B. The Complaint Fails To State A Claim For Aiding And Abetting Fraud And Breach Of Fiduciary Duty

The Complaint fails to adequately plead the two claims asserted against the Spanish Defendants: aiding and abetting fraud and aiding and abetting breach of fiduciary duty. Accordingly, those claims should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

Under Rule 12(b)(6), "[a] complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is 'plausible on its face.'" *In re Agape Litig.*, 773 F. Supp. 2d 298, 306–07 (E.D.N.Y. 2011) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Although "'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* (quoting *Twombly,* 550 U.S. at 570).

A claim for aiding and abetting fraud is also "subject to the heightened pleading requirement of Federal Rule of Civil Procedure 9(b) . . . which provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *In re Agape.*, 773 F. Supp. 2d 298 at 307 (citing Fed. R. Civ. P. 9(b)). Accordingly, Rule 9(b) requires that the Complaint:

> (1) specify the statements that the plaintiffs contend were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the

---

[4] For this same reason, Plaintiffs are not entitled to jurisdictional discovery. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 715 (1982) (Powell, J., concurring in the judgment) ("A plaintiff is not entitled to discovery to establish essentially speculative allegations necessary to personal jurisdiction."); *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir.1998) (refusing to allow "conclusory non-fact-specific jurisdictional allegations" to permit the plaintiff to obtain jurisdictional discovery). *First City, Texas-Houston, N.A. v. Rafidain Bank,* 150 F.3d 172, 176 (2d Cir. 1998) ("generally a plaintiff may be allowed limited discovery with respect to the jurisdictional issue; but until [plaintiff] has shown a reasonable basis for assuming jurisdiction, she is not entitled to any other discovery.").

> statements were fraudulent. In addition, the complaint must allege facts from which a strong inference of fraudulent intent may be drawn. This is accomplished by alleging facts indicating that the defendants had both motive and opportunity to commit fraud or facts that amount to strong circumstantial evidence of conscious misbehavior or recklessness.

*Fraternity Fund*, 479 F. Supp. 2d at 360 (citing Fed. R. Civ. P. 9(b)) (other citations omitted).

### 1. The Complaint Fails To Adequately Plead Fraud

The first element of aiding and abetting fraud is the existence of fraud. *Winnick*, 406 F. Supp. 2d at 252. The elements of fraud in New York are: (1) a false representation of material fact; (2) knowledge by the party who made the representation that it was false when made; (3) justifiable reliance by the plaintiff; and (4) that the false representations were the proximate cause of the plaintiffs' injury. *In re Allou*, 395 B.R. 246. The Complaint alleges the following false representations made by Brooks' to Convergen:

> (a) the sale price of the Pellet Plant; (b) his relationship to Merle and the other defendants; (c) the appropriateness of the new Supply Agreement between the Power Plant and the Pellet Plant; and (d) the appropriateness of Convergen funding the purchase of a new shredder for the Pellet Plant on the eve of its sale to Niantic . . . [e] his interest in Niantic and longstanding relationship with Merle . . . .

D.E. 1 ¶¶ 62-63. Plaintiffs fail to adequately specify the content of these misrepresentations, and where, when, and to whom they were made. *See Fraternity Fund*, 479 F. Supp. 2d at 360. Accordingly, the Complaint fails to adequately plead a claim for fraud. *See Ben Hur Moving & Storage, Inc. v. Better Bus. Bureau,* No. 08 Civ. 6572(JGK), 2008 WL 4702458, at *4 (S.D.N.Y. Oct. 3, 2008) ("[The] complaint fails [the Rule 9(b)] standard because the allegations in the complaint do not specify the time, place, [or] speaker . . . of the misrepresentations that were allegedly made.").

### 2. The Complaint Does Not Allege Facts That Give Rise To A Strong Inference That Any Of The Spanish Defendants Had Actual Knowledge Of The Alleged Fraud

The second element of aiding and abetting fraud is that the defendant had actual knowledge of the fraud. *Mazzaro*, 525 F. Supp. 2d at 388 ("[a]iding and abetting fraud requires actual knowledge by the aider and abettor of the fraudulent scheme."); *Winnick*, 406 F. Supp. 2d at 252. To satisfy this element, Plaintiffs must allege "[f]acts that give rise to a 'strong inference' of actual knowledge." *Fraternity Fund*, 479 F.Supp.2d at 367. "The burden of demonstrating actual knowledge, although not insurmountable, is nevertheless a heavy one." *Fraternity Fund*, 479 F.Supp.2d at 367. Plaintiffs have not met their heavy burden.

The Complaint includes no factual allegations that create a "strong inference" that any of the Spanish Defendants had actual knowledge of the alleged fraud, *i.e.* that: (i) the Pellet Plant was undervalued; (ii) Brooks failed to disclose his relationship with Niantic and the other Defendants to Convergen; and (iii) the Supply Agreement and agreement to purchase a shredder were "inappropriate." D.E. 1 ¶ 62. Instead, the Complaint relies exclusively on conclusory nonspecific allegations concerning the Spanish Defendants' purported collective knowledge. *See e.g.,* D.E. 1 ¶¶ 52, 77 (alleging, without any factual support, that the Spanish Defendants "knew" that Brooks was a senior officer of the company, "knew" that he was overseeing the sale of the pellet plant, and "knew" that he was doubledealing.). These allegations are insufficiently specific under Rule 9(b) to demonstrate that any of the Spanish Defendants had actual knowledge of Brooks' allegedly fraudulent misrepresentations. *Krys v. Pigott*, 749 F.3d 117, 131 (2d Cir. 2014) (affirming dismissal of aiding and abetting fraud claim under Rule 9(b) because "the allegation that appellees knew[ ] the RTLs did not serve any legitimate business purpose . . . is . . . conclusory.").

Indeed, there are no specific allegations concerning the actual knowledge of each of the Spanish Defendants – a crucial failing given their varying levels of involvement in the Pellet Plant Acquisition investment. *Compare* Uriarte Decl. (detailing Mr. Uriarte's many discussions with

Andueza, but Urincha's complete lack of involvement), *with* Escandón Decl. (detailing Mr. Escandón's scant involvement in the negotiations); *Winnick*, 406 F. Supp 2d a 254 (explaining that allegations as to aiding and abetting fraud must "be pled with specificity as to each defendant.") . Moreover, neither Andueza nor Brooks disclosed Brooks' interest in Niantic or any of the other alleged misrepresentations to any of the Spanish Defendants during their negotiations, nor does the Complaint allege that they did so. Uriarte Decl. ¶ 31; Escandón Decl. ¶ 27. Courts in this circuit have not found a "strong inference" of actual knowledge in cases that had alleged *substantially* more facts supporting such an inference. *See, e.g. In re Agape*, 773 F. Supp. 2d at 313 (finding no strong inference of actual knowledge of Ponzi scheme despite allegations that defendant: frequently monitored account activity and had employees with fraudster because "at most the Plaintiffs allege that [defendant] was aware that [fraud perpetrator] was . . . acting improperly . . . [defendant's] knowledge that [perpetrator] was acting improperly in one capacity does not raise a strong inference that BOA had actual knowledge of the underlying fraudulent scheme."); *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 293 (2d Cir.2006) ("The plaintiffs allege in detail that the banks knew that Schick engaged in improper conduct that would warrant discipline by the Appellate Division, but those alleged facts do not give rise to the 'strong inference,' required by Federal Rule of Civil Procedure 9(b), of actual knowledge of his outright looting of client funds."); *MLSMK Investments Co. v. JP Morgan Chase & Co.*, 737 F.Supp.2d 137, 144 (S.D.N.Y.2010) ("While it may be true that Defendants could have connected the dots to determine that Madoff was committing fraud, Plaintiff offers no facts to support the claim that they actually reached such a conclusion.").

### 3. The Complaint Fails To Allege Facts Providing How Any Of The Spanish Defendants Rendered "Substantial Assistance" In Aid Of Fraud.

Finally, to satisfy the third element of aiding and abetting fraud, Plaintiffs must plead specific facts explaining how each of the Spanish Defendants provided "substantial assistance" to Brooks and the other Defendants in perpetrating the alleged fraud. *Winnick*, 406 F. Supp. 2d at 252 "A defendant provides substantial assistance only if [it] affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables [the fraud] to proceed." *Nigerian Nat'l Petroleum Corp. v. Citibank, N.A*., No. 98 Civ. 4960(MBM), 1999 WL 558141, at *8 (S.D.N.Y. July 30, 1999). In the Second Circuit, "whether the assistance is substantial or not is measured . . . by whether the action of the aider and abettor proximately caused the harm on which the primary liability is predicated." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 202 (S.D.N.Y. 2006).

The Complaint does not allege any "substantial assistance" whatsoever provided by any of the Spanish Defendants. There are no allegations that any of them encouraged Brooks to make misrepresentations, helped conceal any relevant matters, or failed to act when required to do so. *Fraternity Fund*, 479 F. Supp. 2d at 371 ("[i]f plaintiffs were to rely to their detriment on a misstatement, but the alleged aider and abettor did not assist in the making or dissemination of that statement, the plaintiffs, in most situations, could not say that their losses were proximately caused by the aider and abettor's actions."). Consequently, there are no specific allegations tying this nonexistent assistance to the myriad injuries Plaintiffs allegedly sustained from the fraud. *See* D.E. 1 ¶ 65. The only allegation in the Complaint concerning any of the Spanish Defendants' assistance is a conclusory allegation that "but-for" the Spanish Defendants' wire transfer (which was made only by Chipper), Brooks could not have perpetrated the alleged fraud. D.E. 1 ¶ 77. However, conclusory allegations of "'[b]ut-for' causation [are] insufficient; aider and abettor liability

requires the injury to be a direct or reasonably foreseeable result of the conduct." *Univ. of Montreal Pension Plan*, 446 F. Supp. 2d at 201-02; *see Casio*, 2000 WL 1877516, at *16 ("[The] Complaint is deficient in failing to allege . . . factual support to demonstrate how each wire transfer advanced the scheme to defraud. Conclusory allegations that defendants' conduct was fraudulent are inadequate to satisfy the particularity of fraud required by Rule 9(b).").

The extent of the Spanish Defendants' relevant activities was limited to discussions in Spain concerning the investment in the Pellet Plant Acquisition in Wisconsin, a visit to the Pellet Plant in Green Bay, Wisconsin, and the Power Plant in L'Anse Warden, Michigan, and Chipper's wire transfer to an attorney trust account in New Jersey. *See supra* at pp. 7-13. The Complaint alleges no connection between those activities, Brooks' misrepresentations, and Plaintiffs' injuries, let alone any specific allegation sufficient to show how any injury they allegedly sustained was a reasonably foreseeable result of this conduct. Finally, to the extent the Complaint alleges that Plaintiffs' injuries arise out of misrepresentations contained within the alleged agreements, none of the Spanish Defendants were a party to those contracts. *Fraternity Fund*, 479 F. Supp. 2d at 371 ("[I]n the context of an aiding and abetting claim, where the alleged primary violations consist of misrepresentations in a document, the defendant must be alleged to have given substantial assistance to the making and dissemination of that document.").

Accordingly, the Complaint fails to plead that each of the Spanish Defendants provided "substantial assistance" to Brooks and the other Defendants in perpetrating the alleged fraud, and, since it fails to adequately plead every element with specificity pursuant to Rule 9(b), this claim should be dismissed in its entirety.

### C. Plaintiffs Fail To State A Claim For Aiding And Abetting Breach Of Fiduciary Duty

Although a breach of fiduciary duty claim need not be pled with particularity under Rule 9, the Complaint must still allege sufficient facts to make out a plausible claim for aiding and abetting breach of fiduciary duty. *Twombly,* 550 U.S. at 570. It does not do so.

#### 1. The Complaint Fails To Allege A Breach Of Fiduciary Duty

The first element of aiding and abetting breach of fiduciary duty is the existence of an underlying breach of fiduciary duty. *In re Hydrogen*, 431 B.R. at 352. The elements of a claim for breach of fiduciary duty under New York law are: (1) breach by a fiduciary of a duty owed to plaintiff; (2) defendant's knowing participation in the breach; and (3) that the breach proximately led to the damages alleged. *Univ. of Montreal Pension Plan*, 446 F. Supp. 2d at 195.

Under Delaware law, only "Managers" and "Members" owe fiduciary duties to a corporation. Thus, as "officers" of Convergen (a Delaware company), Brooks, Hansen, and Mikkelson do not owe a fiduciary duty to Convergen. *See Feeley v. NHAOCG, LLC*, 62 A.3d 649, 661 (Del. Ch. 2012). In any event, the Complaint otherwise fails to adequately plead a breach of fiduciary duty. Instead, it merely states in a conclusory manner that Defendants breached their duty: "[b]y participating in the fraudulent scheme, Brooks, Hansen and Mikkelson violated their fiduciary obligations and contractual prohibitions . . . ." D.E. 1 ¶ 71 (emphasis added). Conclusory allegations that "engaging in" and "enabling" a fraudulent scheme violate some unspecified fiduciary duty does not plausibly allege a breach of fiduciary duty. *In re Hydrogen*, 431 B.R. at 348 (dismissing breach of fiduciary claim based on conclusory allegations). Moreover, the Complaint does not even specify which alleged breaches are contractual and which are breaches of fiduciary duty, asserting instead that the Defendants' participation in the alleged fraud violate "their fiduciary obligations and contractual prohibitions." *Id*. While related, breach of contract and

breach of fiduciary duty claims are not the same, and the Complaint alleges no claim for breach of contract. In these premises, the Complaint fails to allege a breach of fiduciary duty.

### 2. The Complaint Fails To Plead Facts Sufficient To Plausibly Allege That Any Of The Spanish Defendants Knowingly Induced Or Participated In The Alleged Breaches Of Fiduciary Duty.

The second element of an aiding and abetting breach of fiduciary duty claim is that the defendant "knowingly induced or participated in the breach." *Kottler v. Deutsche Bank AG*, 607 F.Supp.2d 447, 466 (S.D.N.Y.2009); *Kolbeck v. LIT Am., Inc.*, 939 F. Supp. 240, 246 (S.D.N.Y. 1996), *aff'd*, 152 F.3d 918 (2d Cir. 1998) ("[a]ctual knowledge is necessary to impose liability for participating in a breach of fiduciary duty."). For the same reasons discussed *supra* regarding aiding and abetting fraud, the Complaint likewise fails to plead sufficient facts to plausibly allege that any of the Spanish Defendants had actual knowledge of Brooks' and the other Defendants' alleged breaches of fiduciary duty.

First, the Complaint alleges that Brooks', Hansen's, and Mikkelson's fiduciary duties arise out of their status as officers of Convergen and their employment agreements, but fails to allege any facts showing a strong inference that any of the Spanish Defendants had actual knowledge of their status as officers, the content of their employment agreement, or their relevant fiduciary duties. Without actual knowledge of those alleged duties or the documents from which they arise, none of the Spanish Defendants could plausibly have actual knowledge of any alleged breaches. *In re Agape.*, 773 F. Supp. 2d at 325 (holding no actual knowledge of breach of fiduciary duty arising from investment agreement because "<u>Plaintiffs have not plausibly alleged that [defendant] had knowledge of the precise agreement between [defendant] and the Plaintiffs</u>, and the scope of [defendant's] authority to invest under that agreement.") (emphasis added).

As discussed *supra*, the Complaint does not adequately identify the alleged breaches of fiduciary duty that gave rise to Plaintiffs' alleged injuries, and as a result, the Complaint does not

plead facts demonstrating a strong inference that any of the Spanish Defendants' had actual knowledge of these unknown and unpled breaches. *See supra* p. 28-31, 52. The only relevant allegations in the Complaint merely assert that the Spanish Defendants collectively "knew" of Brooks' malfeasance without alleging any facts from which an inference as to their individual knowledge could be drawn. *See, e.g.,* D.E. 1 ¶ 83 ("All of the defendants other than Brooks knew of Brooks' role and responsibilities at the Company."); *Inspired Capital, LLC v. Conde Nast,* 803 F. App'x 436, 439 (2d Cir. 2020) ("Plaintiffs' allegations that defendants . . . 'knew that [corporate representative] . . . owed and was breaching his fiduciary duties," are conclusory and cannot save their aiding and abetting breach of a fiduciary duty claim.") (emphasis added).

Indeed, none of the Spanish Defendants' had any knowledge of Brook's or any other parties' duties or alleged violation of those duties. Their involvement in the underlying acquisition consisted of negotiation with Andueza in Spain, and the sum of their interactions with Brooks were email communications sent from Madrid, discussing the terms of the investment and a visit to Convergen's facilities in Wisconsin and Michigan. *See supra* pp. 5-8. None of those interactions give rise to a "strong inference" that any of the Spanish Defendants were aware of Brooks', Hansen's, and Mikkelson's fiduciary duties or that they allegedly breached any of those duties. *See Inspired Capital,* 803 F. App'x at 439 (holding no actual knowledge in aiding and abetting corporate representative's breach of fiduciary duty because defendants dealt exclusively with corporate representative and plaintiffs "have not identified any plausible reason why defendants would have had reason to know the specifics of [representative's] arrangement with [company].").

### 3. The Complaint Fails To Allege That Any Of The Spanish Defendants Knowingly Induced Or Participated In The Alleged Breach Of Fiduciary Duties.

The final element of an aiding and abetting breach of fiduciary claim is "knowing inducement or participation in the breach." *In re Hydrogen*, 431 B.R. at 352. As with aiding and

abetting fraud, "[a] person knowingly participates in a breach of fiduciary duty only when he or she provides 'substantial assistance' to the primary violator." *Kaufman*, 307 A.D.2d at 126 (2003). "Proof of proximate cause is necessary to a claim of aiding and abetting breach of fiduciary duty." *Kottler*, 2010 WL 1221809, at *4. The Complaint fails again to plausibly allege that any of the Spanish Defendants induced or participated in any alleged breach of fiduciary duty or that any alleged conduct foreseeably led to Plaintiffs' injuries.

First, the Complaint fails to plausibly allege any facts concerning "knowing participation" or "substantial assistance" to Brooks, Mikkelson, or Hansen's alleged breaches of fiduciary duty. The only relevant allegations are those reciting a "[t]hreadbare recital[] of the elements of [the] cause of action, supported by mere conclusory statements" *Iqbal*, 556 U.S. at 678; D.E. 1 ¶ 83 ("All of the defendants other than Brooks knew of Brooks' role and responsibilities at the Company . . . The defendants knew of, enabled and participated in Brooks' fraudulent scheme.") (emphasis added); *In re Ticketplanet.com*, 313 B.R. 46, 64 (Bankr. S.D.N.Y. 2004) ("A conclusory statement, in the absence of facts from which one can infer knowing participation in a breach of duty, will not suffice."). This allegation is not only conclusory, and improperly directed to the Spanish Defendants as a group, but it relates solely to Brooks' "fraudulent scheme;" not to a breach of fiduciary duty.

Given the absence of any plausible factual allegations regarding how each of the Spanish Defendants "substantially assisted" a breach of fiduciary duty, there are, of course, no plausible allegations in the Complaint concerning how the conduct of each of the Spanish Defendants proximately led to Plaintiffs' alleged injuries. *See* D.E. 1 ¶ 72. Instead, the only relevant allegation is a legal conclusion couched as a factual allegation: "Plaintiffs have been injured as a proximate result of Brook's breaches of his fiduciary duties." D.E. 1 ¶ 82. This is not sufficient. *See RSM*

*Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 410 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010) (holding allegations in the complaint "insufficient" because it "offers only bare conclusory assertions about causation. It states that 'each individual [is] a cause-in-fact and proximate cause of Plaintiffs' damages.'").

                    * * * * *

Accordingly, the Complaint fails to allege that any of the Spanish Defendants aided and abetted in any alleged breach of fiduciary duty and that claim should therefore be dismissed with prejudice pursuant to Rule 12(b)(6).[5]

## IV.        CONCLUSION

For the foregoing reasons, each of the Spanish Defendants respectfully request that the Court dismiss all of Plaintiffs' claims against them with prejudice.[6]

---

[5] Plaintiffs' eleventh-hour proposed amended complaint ("PAC") demonstrates that they are unable to cure the deficiencies identified in the Complaint and any proposed amendment would be futile. First, the PAC also does not allege a jurisdictional theory and fails to cure the lack of factual specificity as to the Spanish Defendants' contacts with New York identified *supra* and repeats the same the conclusory and improper group allegations against the Spanish Defendants. Compare D.E. 1 ¶¶ 25, 52, 77, *with* D.E. 117-1 ¶¶ 26, 62, 87. Second, the addition of Andueza as a co-conspirator with Brooks does not justify the exercise of personal jurisdiction over any of the Spanish Defendants. As attested to in the Declarations, Andueza unilaterally initiated contact with Messrs. Uriarte and Escandón to solicit their investment and neither Andueza nor any other party ever informed any of the Spanish Defendants as to their malfeasance; the PAC contains no plausible allegations to the contrary. Further, Andueza's interactions with any Spanish Defendant took place entirely in Spain. As a result, the PAC pleads no plausible nexus between any of the Spanish Defendants' alleged New York contacts and Plaintiffs' cause of action. Further, the center of gravity of this action remains overwhelmingly outside New York. Finally, the PAC fails to cure the deficiencies in the aiding and abetting claims. The same conclusory allegations are alleged with respect to actual knowledge of and substantial assistance in the alleged misrepresentations, fraud, breach of fiduciary duty and proximate cause. D.E. 117-1 ¶¶ 59, 62, 75, 87, 92-93 75, 82, 92. Indeed, the aiding and abetting claims remain unchanged. Compare D.E. 1 ¶¶ 74-85, *with* D.E. 117-1 ¶¶ 84-95. Accordingly, the Complaint should be dismissed with prejudice and without leave to amend. *Jones v. N.Y. State Div. of Military & Naval Affairs*, 166 F.3d 45, 50 (2d Cir.1999).

[6] Brooks and the other co-defendants have argued that Plaintiffs' underlying fraud and breach of fiduciary claims must be resolved via arbitration in Wisconsin. *See* D.E. 92. The Spanish Defendants are not parties to any of the agreements referenced in that motion and therefore are not similarly required to submit to arbitration. *See* D.E. 92-3,6,11,12,13; *Zurich Am. Ins. Co. v. Watts Indus., Inc*., 417 F.3d 682, 687 (7th Cir. 2005) ("[a]rbitration is contractual by nature— 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'") (quoting *Thomson–CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir.1995)). Moreover, there is no equitable basis to compel them, as non-signatories, to binding arbitration in Wisconsin. *See generally Pagan v. Integrity Sol. Servs., Inc.,* 42 F. Supp. 3d 932, 935 (E.D. Wis. 2014) (holding that nonsignatories could not be bound on principles of estoppel under Wisconsin law).

Dated: August 21, 2020
New York, NY

Respectfully submitted,

By: /s/ Vincent Filardo Jr.

Vincent Filardo, Jr.
Evan Zatorre

KING AND WOOD MALLESONS LLP
500 Fifth Avenue, 50th Floor
New York, NY 10110
Tel.: (347) 926-7570
vincent.filardo@us.kwm.com
evan.zatorre@us.kwm.com

*Attorneys for Defendants Daniel Escandón Garcia, Ramón Uriarte Inchausti, Chipper Investment SCR, S.A., and Urincha, SL*