IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONVERGEN ENERGY LLC, L'ANSE WARDEN ELECTRIC COMPANY, LLC, EUROENERGY BIOGAS LATVIA LIMITED, and LIBRA CAPITAL US, INC.<br><br>              Plaintiffs,<br><br>v.<br><br>STEVEN J. BROOKS, NIANTICVISTA ENERGY LLC, GREGORY MERLE, RIVERVIEW ENERGY CORPORATION, DANIEL ESCANDON GARCIA, RAMON URIARTE INCHAUSTI, CHIPPER INVESTMENT SCR, SA, URINCHA SL, THEODORE JOHN HANSEN, BRIAN R. MIKKELSON, and CONVERGEN ENERGY WI, LLC.,<br><br>              Defendants. | Case No. 1:20-cv-03746(LJL)<br><br>DECLARATION OF RAMON URIARTE INCHAUSTI IN SUPPORT OF THE SPANISH DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM |

I, **RAMÓN URIARTE INCHAUSTI**, the undersigned, hereby declare the following under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I respectfully submit this declaration in support of the Spanish Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) and (6) for Lack of Personal Jurisdiction and Failure to State a Claim, respectively.[i]

2. I am a citizen of Spain and reside in Madrid, Spain. I was named as a defendant in the above-captioned action. I have personal knowledge of the facts and circumstances set forth herein, except where stated to be upon information and belief, and with respect to those, I believe

1

them to be true.

3.	I am not, and have never been, a citizen of the State of New York or the United States, and I have never lived, worked, or resided in New York or the United States.

4.	I did not travel to New York in connection with the transaction that forms the subject of the above-captioned action, and I do not regularly travel to New York or the United States.

5.	I do not regularly conduct business in New York or the United States and I derive no revenue from New York.

6.	The last time I visited New York was approximately ten (10) years ago for tourism.

7.	I do not own, and have never owned, real estate or a bank account in New York or the United States.

**The Investment Opportunity**

8.	I have known Fidel Andueza, Chief Investment Officer of Libra, for approximately eleven (11) years. From time to time, Mr. Andueza has brought investment opportunities to me and my companies, and I have invested in certain of his and his companies' projects.

9.	Upon information and belief, Mr. Andueza is a Spanish citizen who, for the past two (2) years, has resided and worked in Madrid and elsewhere in Spain.

10.	On May 27, 2019, Mr. Andueza contacted me in Madrid and proposed that I meet him and Stephen J. Brooks in Madrid to discuss an investment opportunity. We scheduled the meeting for June 12, 2019, at a restaurant in Madrid, but Mr. Brooks was unable to, and did not, attend the meeting.

11.	At the June 12, 2019 meeting, Mr. Andueza summarized and explained an

investment opportunity related to the Pellet Plant Acquisition.

12. On July 12, 2019, while I was in Madrid, I emailed Daniel Escandón Garcia and summarized the investment opportunity that Mr. Andueza had described to me on June 12, 2019. Upon information and belief, Mr. Escandón was in Spain when I sent him that email message.

13. On August 21, 2019, Mr. Andueza asked me to meet him in Cádiz, Spain to further discuss the investment opportunity in the Pellet Plant Acquisition. We met the next day over breakfast to discuss the opportunity.

14. On September 11, 2019, I met with Messrs. Brooks and Andueza over lunch in Madrid, and they discussed the financial details of the Pellet Plant Acquisition and proposed investment.

15. On September 16, 2019, while I was in Madrid, Mr. Brooks sent me an email containing a link to electronic data concerning certain Convergen financial and operational information. I reviewed that information from my office in Madrid.

16. On October 2, 2019, Messrs. Andueza and Escandón, and I met for lunch in Madrid. During this meeting, Mr. Andueza discussed detailed financial information about the Pellet Plant Acquisition and provided handwritten notes to us. **Attached hereto as <u>Exhibit A</u>** is a true and correct copy of those notes. Additionally, upon Mr. Andueza's urging, we agreed to visit the Convergen facilities in Wisconsin and Michigan to better understand their operations. Mr Andueza coordinated our travel schedule and meetings with Convergen through Mr. Brooks. Upon information and belief, this lunch meeting was the first time Mr. Andueza and Mr. Escandón met.

17. On October 21, 2019, Mr. Escandón and I travelled from Madrid, Spain to Green Bay, Wisconsin via Chicago to visit the Pellet Plant. Mr. Brooks met us in Green Bay and gave us a tour of the Pellet Plant. The next day, on October 22, 2019, myself, Mr. Brooks, and Mr.

Escandón travelled from Green Bay, Wisconsin, to Michigan to visit L'Anse Warden. Mr. Escandón and I returned to Madrid via Chicago the next day on October 23, 2019.

18.     On November 14, 2019, I met with Mr. Andueza and Mr. Escandón at a restaurant near Mr. Andueza's office in Madrid to further discuss the terms of the investment in the Pellet Plant Acquisition. During this meeting, Mr. Andueza requested an increased investment in the Pellet Plant Acquisition.

19.     On November 19, 2019, I discussed the terms of the investment in the Pellet Plant Acquisition with Mr. Escandón in Madrid and we decided to reject the terms proposed to us by Mr. Andueza on November 14, 2019.

20.     On November 27, 2019, I called Mr. Andueza in Madrid and informed him that Mr. Escandón and I would not continue with the transaction on the terms as proposed on November 14, 2019. Mr. Andueza informed me that he would think of a solution, and, if not, he would find another more suitable investment opportunity for me in the future.

21.     On November 30, 2019, while I was in Madrid, Mr. Brooks sent me a message by email briefly proposing new terms for the investment in the Pellet Plant Acquisition.

22.     On December 16, 2019, Mr. Brooks followed up on his previous email with a more detailed proposal of the new terms for the investment in the Pellet Plant Acquisition.

23.     On December 19, 2019, upon information and belief, Mr. Brooks sent Mr. Escandón an email describing the terms of the investment in the Pellet Plant Acquisition that he had previously relayed to me on December 16, 2019.

24.     On December 27, 2019, I met with Mr. Andueza to further discuss the investment opportunity at a ski resort in Lleida, Spain where we were both spending our Christmas holiday.

25.     On December 28, 2019, Mr. Andueza asked me if Mr. Escandón and I agreed with

the new terms he and Mr. Brooks had proposed for the investment in the Pellet Plant Acquisition. That evening, I spoke with Mr. Escandón, and later informed Mr. Andueza that we decided that the terms were agreeable and that only Chipper Investment SCR S.A. ("Chipper") would move forward with the investment in the Pellet Plant Acquisition.

26. Upon information and belief, the Acquisition Agreement was executed on January 29, 2020. Upon information and belief, the Acquisition Agreement was drafted by Libra's general counsel, and agreed by its CEO.

27. Neither Mr. Escandón nor I participated in the negotiation of, and were not parties to, the Acquisition Agreement or the Supply Agreement.

28. Since Chipper was the only Spanish Defendant investing in the Pellet Plant Acquisition, only it wired funds for the investment.

29. I did not wire any funds, including into New York or the United States, for the investment in the Pellet Plant Acquisition, and other than the aforementioned negotiations, I was not involved in the investment in the Pellet Plant Acquisition.

30. Neither I nor Mr. Escandón directed Chipper or any other entity to route its wire transfer from BBVA in Madrid to an Attorney Trust Account in the name of Clemente Mueller P.A. in Morristown, NJ for the investment in the Pellet Plant Acquisition through a New York Citibank account. Upon information and belief, the wire transfer was routed through New York by BBVA at its sole discretion.

31. At no time during my meetings with Messrs. Andueza and/or Brooks did either mention to me, nor was I aware, that Mr. Brooks was an owner of Niantic. I was also unaware that: (a) the Pellet Plant was allegedly sold at a price below its market value; (b) that Mr. Brooks had allegedly purchased a shredder without consideration; (c) the Power Plant was allegedly

5

overcharged in the Supply Agreement with the Pellet Plant; (d) the Power Plant was allegedly overcharged for Mr. Hansen's employment post-acquisition; (e) $196,420.00 in cash had been sent to the Pellet Plant at closing; (f) any Office 365 accounts, company-owned devices, or confidential information had been allegedly stolen or not returned.

**Urincha SL**

32. I have been the CEO of Urincha SL ("Urincha") since May 2009.

33. Urincha was incorporated on August 6, 2003 in Madrid, Spain.

34. Urincha's headquarters and principal place of business are located in Madrid, Spain. It has no other offices or places of business, and no offices in New York or the United States.

35. Urincha has no bank accounts in the United States or New York.

36. Urincha has one (1) employee, who is a Spanish citizens and resident, who does not reside in the United States or New York or regularly conduct business there.

37. Urincha's primary business is the construction, acquisition, and investment on the share of capital of unlisted non-financial corporations in Spain. It does not regularly conduct any business outside of Spain, and it is not licensed to, nor does it conduct any business in, New York or the United States, and it derives no revenue from New York or the United States.

38. Urincha is not a party to the Pellet Plant Acquisition or Supply Agreement. Urincha did not transfer any funds into New York or the United States in connection with the investment in the Pellet Plant Acquisition, or above-captioned action.

39. Urincha was not involved in the investment in the Pellet Plant Acquisition or Supply

Agreement.

40. Urincha does not own, and has never owned, real estate in New York or the United States.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this  20  day of August 2020, in Madrid, Spain

　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　RAMÓN URIARTE INCHAUSTI

---

[i] Unless otherwise indicated, the capitalized terms in this declaration have the same meaning as those used in the Memorandum of Law in support of the Spanish Defendants' Motion to Dismiss.