UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONVERGEN ENERGY LLC, L'ANSE WARDEN ELECTRIC COMPANY, LLC, EUROENERGY BIOGAS LATVIA LIMITED, and LIBRA CAPITAL US, INC.<br><br>                        Plaintiffs,<br><br>-against-<br><br>STEVEN J. BROOKS, NIANTICVISTA ENERGY LLC, GREGORY MERLE, RIVERVIEW ENERGY CORPORATION, DANIEL ESCANDON GARCIA, RAMON URIARTE INCHAUSTI, CHIPPER INVESTMENT SCR, SA, URINCHA SL, THEODORE JOHN HANSEN, BRIAN R. MIKKELSON, and CONVERGEN ENERGY WI, LLC,<br><br>                        Defendants. | Civil Action No. **1:20-cv-03746 (LJL)** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR INJUNCTIVE AND OTHER INTERIM RELIEF**

SEIDEN LAW GROUP LLP
469 Seventh Avenue, Suite 502
New York, New York 10018
(212) 337-3502
Mstolper@seidenlegal.com

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................. 5

ARGUMENT ......................................................................................................................... 7

   I.   Brooks Has Violated the TRO ................................................................................. 7

   II.   Defendants Should be Enjoined from Possessing Proprietary Information..................... 11

      a.   The Relevant Injunction Standard ...................................................................... 11

      b.   Plaintiffs' Irreparable Harm Absent Injunctive Relief................................................ 12

      c.   Plaintiffs Are Likely to Succeed on The Merits of Their Claims ................................ 15

      d.   The Balance of the Equities Weighs Heavily in Favor of Plaintiffs ............................ 17

   III.   Brooks Should Incur Sanctions for Intentional Spoliation............................................. 18

   IV.   Defendants Should be Compelled to Produce Outstanding Discovery........................... 22

   V.   Defendant Insiders' Harassment and Interference Needs to be Restrained...................... 24

CONCLUSION...................................................................................................................... 26

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Antonmarchi v. Consol. Edison Co. of N.Y., Inc.,* No. 03 Civ. 7735, 2012 WL 3126004 (S.D.N.Y. July 31, 2012)..................................................................................................... 19

*Arista Records LLC v. Usenet.com, Inc.,* 608 F.Supp.2d ........................................................... 19

*Bancorp Servs., LLC v. Am. Gen. Life Ins. Co.*, No. 14-CV-9687 (VEC), 2016 WL 4916969 (S.D.N.Y. Feb. 11, 2016) ........................................................................................................ 12

*Burgos v. Satiety,* Inc., No. 10 Civ. 2680, 2013 WL 801729 (E.D.N.Y. Mar. 5, 2013).............. 18

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)......................................................................... 25

*Chin v. Port Auth. of N.Y. & N.J.,* 685 F.3d 135 (2d Cir.2012).................................................. 17

*Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd*, 598 F.3d 30 (2d Cir. 2010) ...................................................................................................................................... 10

*Co. v. Glob. Bio-Fuels Tech., LLC*, 2016 WL 6605070 (N.D.N.Y. May 20, 2016).................... 22

*Cone Mills, Inc. v. Levine & Co., Inc.*, 286 F. Supp. 323 (S.D.N.Y. 1968) ................................ 10

*DLC Management Corp. v. Town of Hyde Park*, 163 F.3d 124 (2d Cir. 1998)........................... 23

*DVComm LLC v. Hotwire Commc'ns., LLC,* 2016 WL 6246824 (E.D. Pa. Feb. 3, 2016)..........24

*Energy Capital Co. v. Caribbean Trading and Fidelity Corp.*, 1994 WL 698210 (S.D.N.Y. Dec. 13, 1994) ............................................................................................................................... 8, 9

*Estee Lauder Cos. v. Batra*, 430 F. Supp. 2d 158 (S.D.N.Y. 2006) ........................................... 14

*Experience Hendrix, LLC v. Chalpin, PPX*, 2007 WL 541620 (S.D.N.Y. 2007)........................ 10

*ExpertConnect, L.L.C. v. Fowler*, 2019 WL 3004161 (S.D.N.Y. July 10, 2019)................. 15, 16

*Feist v. Paxfire, Inc.*, 2016 WL 4540830 (S.D.N.Y. Aug. 29, 2016)……………………………24

FMC Corp. v. Taiwan Tainan Giant Indus. Co., Ltd., 730 F.2d 61 (2d Cir. 1984) ..................... 13

*Fujitsu Ltd. v. Fed. Exp. Corp.,* 247 F.3d 423 (2d Cir.2001) ................................................ 17, 20

*Genworth Fin. Wealth Mgmt., Inc. v. McMullan*, 267 F.R.D. 443 (D. Conn. 2010)................... 22

*Gutman v. Klein,* 2008 WL 5084182 (E.D.N.Y. Dec. 2, 2008), *aff'd,* 515 F. App'x 8 (2d Cir.2013), ............................................................................................................................... 21

*In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179 (S.D.N.Y. 2007) ................................................... 21

*In re: MF Global Holdings Ltd.*, 562 B.R. 41 (S.D.N.Y. 2017)............................................... 8, 9

*Int'l Bus. Machs. Corp. v. Papermaster*, No. 08-cv-9078, 2008 WL 4974508 (S.D.N.Y. Nov. 21, 2008) ..................................................................................................................................... 13

*Juergensen Def Corp. v. Carleton Techs., Inc.*, No. 08-CV-959A, 2010 WL 2671339 (W.D.N.Y. June 21, 2010) .......................................................................................................... 17

*KCG Holdings, Inc. v. Khandekar*, 2020 WL 1189302 (S.D.N.Y. Mar. 12, 2020) ............... 12, 13

*Kronisch v. United States*, 150 F.3d 112 (2d Cir. 1998) ................................................................ 19

*Marsh USA Inc. v. Schuhriemen*, 183 F. Supp. 3d 529 (S.D.N.Y. 2016), amended, 2016 WL 2731588 (S.D.N.Y. May 3, 2016) .......................................................................................... 11

*Mastr Adjustable Rate Mortgs. Trust 2006–OA2 v. UBS Real Estate Sec. Inc.,* 295 F.R.D. 77 (S.D.N.Y.2013) ...................................................................................................................... 18

*Medtech Prod. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778 (S.D.N.Y. 2008).................................... 15

*Miller v. Time–Warner Commc'ns, Inc.,* No. 97 Civ. 7286, 1999 WL 739528 (S.D.N.Y. Sept. 22, 1999) ...................................................................................................................................... 19

*N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38 (2d Cir. 1999) .................................................... 13

*Paramedics Electromedicina Comercial, Ltda. v. GE Medical Systems Information Technologies, Inc.*, 369 F.3d 645 (2d Cir. 2004) ................................................................. 8, 9

*Payment All. Int'l Inc. v. Ferreira*, 530 F. Supp. 2d 477 (S.D.N.Y. 2007) .......................... 11, 14

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.,* 685 F.Supp.2d 456 (S.D.N.Y.2010) ................................................................................................................. 17, 20

*R.S. Raghavendra v. Trustees of Columbia University in the City of New York*, 2017 WL 6000553 (S.D.N.Y. Dec. 1, 2017).......................................................................................... 9

*Regulatory Fundamentals*, 2014 WL 3844796 ............................................................................ 20

*Residential Funding Corp. v. DeGeorges Fin. Corp.,* 306 F.3d 99 (2d Cir.2002) ........... 17, 18, 23

*Resnik v. Coulson*, 2019 WL 1434051 (E.D.N.Y. Mar. 30, 2019). ............................................. 19

*Rosehoff, Ltd. v. Truscott Terrace Holdings LLC*, 2016 WL 2640351 (W.D.N.Y. May 10, 2016) ................................................................................................................................................ 22

*S.E.C. v. Smith*, 798 F. Supp. 2d 412 (N.D.N.Y. 2011)................................................................ 25

*Schreiber v. Friedman*, 2017 WL 11508067 (E.D.N.Y. Aug. 15, 2017)...................................... 22

*Sekisui Am. Corp. v. Hart,* No. 12 Civ. 3479, 2013 WL 2951924 (S.D.N.Y. June 10, 2013)...... 18

*SimplexGrinnell LP v. Integrated Sys. & Power, Inc.,* 642 F. Supp. 2d 167 (S.D.N.Y. 2009) .... 11

*Skyline Steel, LLC v. Pilepro, LLC*, 2018 WL 6025863 (S.D.N.Y. Nov. 16, 2018)..................... 10

*Southern New England Telephone Co. v. Global NAPs Inc.*, 624 F.3d 123 (2d Cir. 2010) ......... 23

*Taylor v. City of New York,* 293 F.R.D. 601 (S.D.N.Y.2013) ...................................................... 18

*Treppel v. Biovail Corp.*, 249 F.R.D. 111 (S.D.N.Y. 2008) ........................................................ 22

*TVT Records v. Island Def Jam Music*, 225 F. Supp. 2d 398 (S.D.N.Y. 2002)............................ 25

*Usavage v. Port Auth. of N.Y. & N.J.,* 932 F.Supp.2d 575 (S.D.N.Y.2013)................................ 18

*VOOM HD Holdings LLC v. EchoStar Satellite L.L.C.*, 93 A.D.3d 33, N.Y.S.2d 321 (2012) .... 22

*West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776 (2d Cir.1999)............................................. 17

*Weston Capitol Advisors, Inc. v. PT Bank Mutiara*, 667 Fed. Appx. 15 (2d Cir. 2016) ............... 7

*Xelus, Inc. v. Servigistics, Inc.*, 371 F. Supp. 2d 387 (W.D.N.Y. 2005)...................................... 24

## Statutes

18 U.S.C § 1836................................................................................................................. 11, 14

18 U.S.C. § 1839................................................................................................................. 14, 15

*Fed. R. Civ. P. 37(e)* ............................................................................................................... 20

## PRELIMINARY STATEMENT

Since the filing of the initial preliminary injunction motion, Plaintiffs have been able to reduce the scope of injunctive relief needed from four categories to two: specifically, certain defendants continue to maintain unlawful and unauthorized access to Plaintiffs' emails and other electronic stored files; and Plaintiffs have yet to recover computers and cellphones in the possession of certain defendants that contain Plaintiffs' trade secrets and other proprietary information.[1]

Notwithstanding this progress, Court-ordered expedited discovery has revealed a total disregard for this Court's orders by Defendant Steve Brooks. Most egregiously, Plaintiffs' forensic examination disclosed that after the Court issued a temporary restraining order preventing the copying or deletion of Plaintiffs' files, Brooks made wholesale copies of Plaintiffs' proprietary files from a number of different businesses (not just the pellet plant), including strategy reports, financial projections and third party contracts. There is absolutely no legitimate basis for Brooks to have copied these files, particularly since most had nothing to do with the acquired pellet plant.

The forensic exam also uncovered the fact that Brooks deleted many files from his work laptop, including an electronic file entitled "Smoking Gun." Some of the deleted files are identifiable by name and others are not. The effort to scrub evidence from his work laptop started shortly after Plaintiffs confronted him and continued even beyond the Court's order not to delete anything. Brooks went so far as to lie to Plaintiffs about not having possession of the laptop just so he could copy and delete as he saw fit. Consistent with caselaw cited below, Plaintiffs seek sanctions for the blatant spoliation, including an adverse inference charge.

---

[1] Through the cooperation of counsel to defendant Convergen Energy Wisconsin, LLC ("**CEW**"), Plaintiffs have been able to eliminate the risk of further cyberattacks and obtain administrator access to certain Plaintiffs' own files, thus eliminating the need for Court intervention on these issues.

Continuing the pattern of lawlessness, Brooks and the other former employees of Plaintiffs –Theodore John Hansen ("**Hansen**") and Brian R. Mikkelson ("**Mikkelson**, collectively with Brooks and Hansen, the "**Defendant Insiders**") – have attempted to interfere with Plaintiffs' businesses and business relations. They have contacted lenders, vendors and joint venture partners of Plaintiffs post-suit with no legitimate purpose other than to disrupt those relationships. The purpose is obvious: without a meaningful defense to their fraudulent wrongdoing, the Defendant Insiders have opted to intimidate Plaintiffs into foregoing their lawsuit or risk further disruption to their business. Brooks' former position as a senior executive of Plaintiffs afforded him access to Plaintiffs' businesses and relationships. Absent immediate relief, Defendant Insiders will continue to cause irreparable harm to Plaintiffs.

The final issue is one of discovery. Brooks has been the most egregious in flaunting his discovery obligations, having produced only a single email in response to Plaintiffs' requests. Brooks is not alone in this regard, as the other Defendants have failed in one or more aspects of their discovery obligations, the details of which are set forth below. Plaintiffs seek to compel the production of all outstanding discovery.

For the foregoing reasons and as more fully explained below, Plaintiffs' application for a preliminary injunction and other interim relief should be granted.[2]

## **ARGUMENT**

### I.   **Brooks Has Violated the TRO**

The Court's May 19, 2020 Order (the "**Order**") enjoined Defendants from "[a]ccessing, disclosing, copying, or otherwise conveying Plaintiffs' electronic files during the pendency of

---

[2]      The facts in support of this application are set forth in the Declarations of Phaedra Chrousos, Camilo Patrignani, Aaron Weiss and Dov Gold.

this action" and "[d]estroying, deleting, or otherwise modifying" Plaintiffs' data. Plaintiffs

obtained a forensic image of Brooks' company-owned laptop (which was wrongfully in Brooks'

possession). To date we have uncovered that, in violation of the Order, on May 31, 2020, a

Western Digital My Passport external USB hard drive was connected to the laptop and

approximately 4,150 of Plaintiffs' proprietary files were copied. Patrignani Decl. at 14. These

include board of director presentations, financial projections, balance sheets and income

statements, internal documents of the power plant (L'Anse), strategy reports, valuations,

financials and business plans of various businesses unrelated to the pellet plant. Patrignani Decl.

at 14.

Many files were also simultaneously deleted from the laptop, both before and after the

Court issued the Order.  Plaintiffs' forensic examiner was able to determine that a large number

of files were deleted on May 31, 2020 in violation of the Order, the same day that Brooks

connected the external USB hard drive to his laptop. Deleted file names suggest that they

included Plaintiffs' information. Patrignani Decl. at 14. Because the deleted files are

unrecoverable, we do not know for certain the extent to which files with Plaintiffs' data were

deleted in violation of the Order.

Based on this contumacious conduct, Plaintiffs seek an order for contempt and sanctions

against Brooks. "[T]he power to punish parties for contempt is inherent in all courts." *Weston*

*Capitol Advisors, Inc. v. PT Bank Mutiara*, 667 Fed. Appx. 15, 16 (2d Cir. 2016). "Courts have

inherent power to enforce compliance with their lawful orders through civil contempt" and have

embraced this inherent power as "necessary to the exercise of all others."  *In re: MF Global*

*Holdings Ltd.*, 562 B.R. 41, 52 (S.D.N.Y. 2017) (citing several Supreme Court cases).  A court

may hold a party in civil contempt for failure to comply with a court order when the order is

clear and unambiguous, the proof of noncompliance is clear and convincing, and the party was not reasonably diligent in attempting to comply with what was ordered. *Paramedics Electromedicina Comercial, Ltda. v. GE Medical Systems Information Technologies, Inc.*, 369 F.3d 645, 655 (2d Cir. 2004).

The Order was clear and unambiguous. It enjoined Defendants from copying and deleting Plaintiffs' electronic files during the pendency of the action. The proof of Defendants' noncompliance is clear and convincing. *See Energy Capital Co. v. Caribbean Trading and Fidelity Corp.*, 1994 WL 698210, at *4 (S.D.N.Y. Dec. 13, 1994), at *4 (finding evidence was not only clear and convincing but was inescapable that defendant knew he was restrained from acting but took action anyway).

Furthermore, the Order required the parties to cooperate with "expedited discovery to address all issues relevant to the application for a preliminary injunction."  As set forth more fully below, Defendants failed to produce requested documents in violation of this provision of the Order as well. *See Energy Capital Co. v. Caribbean Trading and Fidelity Corp.*, 1994 WL 698210, at *5 (S.D.N.Y. Dec. 13, 1994) (finding defendant in civil contempt of court because he failed to produce requested documents in violation of the restraining order).

A court has broad discretion to fashion sanctions to coerce compliance and compensate Plaintiffs for Defendants' noncompliance. *See Paramedics Electromedicina Comercial,* , 369 F.3d at  657; *Energy Capital Co. v. Caribbean Trading and Fidelity Corp.*, 1994 WL 698210, at *5 (S.D.N.Y. Dec. 13, 1994) ("Civil contempt sanctions may be designed either to coerce compliance with the court order or to compensate the complainant for its actual losses."). Indeed, given the importance of maintaining the Court's authority and dignity and of the preservation of order in judicial proceedings, sanctions for contempt can include fines, the

striking of pleadings, even arrest and incarceration. *See, e.g., Paramedics Electromedicina Comercial, Ltda.*, 369 F.3d at  657(explaining that a party who violates a court order faces the threat of both civil and criminal contempt); *Energy Capital Co. v. Caribbean Trading and Fidelity Corp.*, 1994 WL 698210, at *4 (S.D.N.Y. Dec. 13, 1994) (ordering that, in the event defendant did not provide the ordered accounting within a week, defendant would be arrested and incarcerated until such time as he provided the accounting); *In re: MF Global Holdings Ltd.*, 562 B.R. 41, 54 (S.D.N.Y. 2017) (ordering that, if defendant continued to be noncompliant with the temporary restraining order, defendant's pleadings would be stricken and a default judgment would be entered for plaintiffs).

When a contempt sanction is coercive, the Court has "'broad discretion to design a remedy that will bring about compliance.'" *Paramedics Electromedicina Comercial,* , 369 F.3d at 657 (quoting *Perfect Fit Indus. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir. 1982)).  Courts often impose a per-diem fine, recognizing this to be an effective coercive tool. *R.S. Raghavendra v. Trustees of Columbia University in the City of New York*, 2017 WL 6000553 (S.D.N.Y. Dec. 1, 2017) (citing cases). "The district court is counseled to consider several factors in calculating a fine, including 'the character and magnitude of the harm threatened by continued contumacy,' the 'probable effectiveness of any suggested sanction in bringing about [compliance],' and the contemnor's ability to pay." *Paramedics Electromedicina Comercial, Ltda.*, 369 F.3d at 655(citations omitted in original).  If a party's noncompliance with an order is willful, the court will grant reasonable attorneys' fees and costs relating to the motion for contempt sanctions or to compel compliance.  *See Skyline Steel, LLC v. Pilepro, LLC*, 2018 WL 6025863, at *2 (S.D.N.Y. Nov. 16, 2018); *Experience Hendrix, LLC v. Chalpin, PPX*, 2007 WL 541620 (S.D.N.Y. 2007); *Cone Mills, Inc. v. Levine & Co., Inc.*, 286 F. Supp. 323, 324 (S.D.N.Y. 1968).

Plaintiffs defer to the Court to impose the appropriate sanction to hold the offending Defendants accountable for violating the Order. Given the severity and willfulness of Defendants' misconduct and violations, however, Plaintiffs respectfully suggest that any subsequent order require the Defendants at a minimum to: (i) immediately cease and desist from any and all activities that violate the Order; (ii) identify with sufficient detail the files that were copied and deleted in violation of the Order; (iii) return to Plaintiffs and destroy all remaining copies of Plaintiffs' files in Defendants' possession; (iv) comply with the discovery demands, as more fully set forth below; and (v) reimburse Plaintiffs for legal fees.

II.     **Defendants Should be Enjoined from Possessing Proprietary Information**

Overlapping the requested relief above regarding Defendants' violation of the Order is Plaintiffs' request to enjoin further unlawful conduct of the Defendants, specifically requiring Defendants to turn over files and hardware that contain (or most likely contain) Plaintiffs' trade secrets and other proprietary information.

   a.   **The Relevant Injunction Standard**

Injunctive relief under Rule 65 of the Federal Rules of Civil Procedure is appropriate where the party seeking the injunction shows "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd*, 598 F.3d 30, 35 (2d Cir. 2010) (*quoting Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)). Additionally, injunctions are typically warranted where the balance of equities tips in the moving party's favor and where an injunction is in the public interest. *See Marsh*

*USA Inc. v. Schuhriemen*, 183 F. Supp. 3d 529, 532 (S.D.N.Y. 2016), amended, 2016 WL 2731588 (S.D.N.Y. May 3, 2016).

Under the Defend Trade Secrets Act, an injunction may be obtained "to prevent any actual or threatened misappropriation . . . on such terms as the court deems reasonable . . . if determined appropriate by the court, requiring affirmative actions to be taken to protect the trade secret." 18 U.S.C § 1836(b)(3)(A)(i) - 18 U.S.C § 1836(b)(3)(A)(ii).

For the reasons set forth below, Plaintiffs have satisfied these requirements, plus those required for relief under the DTSA, and should be granted a preliminary injunction to prevent Defendants from continuing to remain in possession of the trade secrets.

### b. Plaintiffs' Irreparable Harm Absent Injunctive Relief

Plaintiffs will continue to suffer irreparable harm if this Court does not grant injunctive relief. Courts in this Circuit have long acknowledged that "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it were not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be granted." *Payment All. Int'l Inc. v. Ferreira*, 530 F. Supp. 2d 477, 480 (S.D.N.Y. 2007) (citation omitted). To satisfy this requirement, Plaintiffs must show that, in the absence of an injunction, they will suffer "'an injury that is neither remote nor speculative, but actual and imminent,' and one that cannot be redressed through a monetary award." *Id*. (*quoting Grand River Enter. Six Nations, Ltd v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)). Appropriately-tailored injunctions can be useful to protect plaintiffs from the effects of misappropriated trade secrets. *See generally SimplexGrinnell LP v. Integrated Sys. & Power, Inc.,* 642 F. Supp. 2d 167, 200 (S.D.N.Y. 2009), modified on reconsideration, 642 F. Supp. 2d 206 (S.D.N.Y. 2009) (granting injunction where the

remedy was "appropriately narrowly tailored to fit specific legal violations"; reconsideration granted on other grounds) (internal citations and quotations omitted).

Here, injunctive relief is necessary to obtain the return of and prevent the unlawful use of Plaintiffs' files containing trade secrets and other non-public information. Defendants have refused to turn over hardware or the files contained therein. Gold Decl. at 13-15. The hardware in question was used in connection with the Defendant Insiders' employ with Plaintiffs. Gold Decl. at 13-15.

Plaintiffs' data contain the confidential roadmap upon which their businesses operate. Chrousos Decl. at 22 and 25. These trade secrets not only include client contracts, market analysis, potential transactions, investor lists, and strategic discussions, but also unique methods of optimally operating an array of energy assets, a unique fuel mix, and sophisticated legal agreements and work product. Chrousos Decl. at 22; s*ee KCG Holdings, Inc. v. Khandekar*, 2020 WL 1189302, at *16 (S.D.N.Y. Mar. 12, 2020) (finding a presumption of irreparable harm with regard to a trade secret "is particularly appropriate when information at risk of disclosure is highly technical or can be used only by a few specialized businesses."). This information is the culmination of more than a decade's work and millions of dollars of investment. *Id*.; s*ee, e.g., Bancorp Servs., LLC v. Am. Gen. Life Ins. Co.*, No. 14-CV-9687 (VEC), 2016 WL 4916969, at *11 (S.D.N.Y. Feb. 11, 2016) (plaintiff demonstrated information was a trade secret upon showing that, among other things plaintiff "spent five years and $10 million to develop the information").

Plaintiffs required employees to sign a confidentiality agreement and abide by an employee handbook that took pains to describe the care that must be taken with confidential information. Chrousos Decl. at 23. Under the confidentiality agreements, the Defendant Insiders each agreed that unlawful disclosure would result in "substantial damage which will be difficult to compute" and that each "consents and agrees" to an injunction in the event of a breach. *Id.; see N. Atl.*

*Instruments, Inc. v. Haber*, 188 F.3d 38, 49 (2d Cir. 1999) (finding that defendant's acknowledgment in his employment agreement that a breach of confidentiality would cause "irreparable injury" weighs in favor of finding irreparable injury to plaintiff).

Since certain Defendants continue to be in possession of Plaintiffs' files on their computers and cellphones, it is not an exaggeration that they have information upon which Plaintiffs' businesses and their competitive edge are based. These trade secrets would be extremely valuable in the hands of competitors, but its cost of dissemination to Plaintiffs would be incalculable. *FMC Corp. v. Taiwan Tainan Giant Indus. Co., Ltd.*, 730 F.2d 61, 63 (2d Cir. 1984) ("[I]t is clear that the loss of trade secrets cannot be measured in money damages.... A trade secret once lost is, of course, lost forever."). Plaintiffs do not need to imagine scenarios where competitors would be privy to all internal deliberations concerning assets, proven business models could be adapted to competing energy facilities, and competitors could jump ahead of Plaintiffs in proposed transactions. This is largely what has already occurred in the fraudulent pellet plant transaction. The parade of horribles is endless and the damages would be incalculable. Thus, monetary damages are not an adequate remedy.

A "rebuttable presumption of irreparable harm might be warranted in cases where there is a danger that, unless enjoined, a misappropriator of trade secrets will disseminate those secrets to a wider audience or otherwise irreparably impair the value of those secrets." *KCG Holdings, Inc. v. Khandekar*, 17-CV-3533 (AJN), 2020 WL 1189302, at *16 (S.D.N.Y. Mar. 12, 2020) (internal citations omitted); *See Int'l Bus. Machs. Corp. v. Papermaster*, No. 08-cv-9078, 2008 WL 4974508, at * 7 (S.D.N.Y. Nov. 21, 2008) ("Courts routinely have noted that it is very difficult to calculate the monetary damages that would successfully redress the loss associated with trade secret misappropriation.").

### c.  \Plaintiffs Are Likely to Succeed on The Merits of Their Claims

To obtain the injunctive relief that it seeks, Plaintiffs need only demonstrate that they are likely to succeed on one of their claims. *See Payment All.*, 530 F. Supp. 2d at 483. Based on the facts set forth in the accompanying declarations and alleged in the complaint, Plaintiffs have far exceeded this burden.

The Defend Trade Secrets Act of 2016 ("**DTSA**") provides a private cause of action to the "owner of a trade secret that is misappropriated." 18 U.S.C. § 1836(b)(1).[3] Trade secrets are defined in the DTSA as "all forms and types" of information that "derive[] independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).

New York law defines trade secrets very similarly as any "compilation of information which is used in one's business, and which gives [the owner] the opportunity to obtain an advantage over competitors who do not know or use it." *Estee Lauder Cos. v. Batra*, 430 F. Supp. 2d 158, 175 (S.D.N.Y. 2006) (quoting RESTATEMENT (FIRST) OF TORTS § 757, cmt. b (1939)).  Various factors determine whether information is a trade secret including, "(1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." *Id*. "The most important consideration remains

---

[3]      Due to COVID-19, certain forms of relief under the DTSA currently are not available and will be revisited as soon as restrictions are lifted.

whether the information was secret." *Medtech Prod. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 787 (S.D.N.Y. 2008) (*quoting Payment Alliance Int'l, Inc. v. Ferreira*, 530 F. Supp. 2d 477, 481 (S.D.N.Y. 2007), *quoting Lehman v. Dow Jones & Co.*, 783 F.2d 285, 298 (2d Cir.1986)).

Under the DTSA, a defendant has misappropriated a trade secret by "(1) acquiring the trade secret by improper means, or (2) disclosing or using the trade secret without consent." *ExpertConnect, L.L.C. v. Fowler*, 2019 WL 3004161, at *6 (S.D.N.Y. July 10, 2019). "Improper means includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6)(a). Under New York law, to succeed on a claim for the misappropriation of trade secrets "a party must demonstrate: (1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *Medtech Prod. Inc.* at 787; *See ExpertConnect, L.L.C.,* 2019 WL 3004161, at *7 (noting the requirements for misappropriation under New York common law and the DTSA are similar).

As set forth in the Pratrignani and Chrousos Declarations, Defendants have misappropriated Plaintiffs' trade secrets and other proprietary information in two ways. First, Defendants took emails and electronic files of Convergen entities as part of the fraudulent transaction. As alleged in the complaint, it is believed that Defendants (at least the Defendant Insiders) have accessed those files since the January 31, 2020 closing. Second, the Defendant Insiders have failed to return their company-issued computers and cellphones, all believed to contain Plaintiffs' trade secrets and proprietary information. The information in Defendants' possession is password-protected, not accessible outside the business, covered by confidentiality agreements, and took over a decade and millions of dollars to develop. Chrousos Decl. 22-23; s*ee*

16

*ExpertConnect, L.L.C.*, 2019 WL 3004161, at *4 (finding that under the DTSA, a password and an NDA were reasonable steps to protect trade secrets and that storage on a secure server demonstrated their value as a trade secret). These trade secrets do not only include client contracts, market analysis, potential transactions, investor lists, and strategic discussions, but also unique methods of optimally operating an array of energy assets, a unique fuel mix, and sophisticated legal agreements and work product. Chrousos Decl. at 22- 23.  Disclosure of these unique methods would undercut Plaintiffs' competitive edge. *See e.g. ExpertConnect, L.L.C.*, 2019 WL 3004161, at *5. Other suspected misappropriated files include company financials and accounts, spreadsheets, presentations, closing documents for numerous transactions, monthly reports, investor lists, and other information normally afforded to senior executives of an international conglomerate. Chrousos Decl. at 25.

In the instant action, Plaintiffs are highly likely to succeed in showing that Defendants have misappropriated Plaintiffs' trade secrets in violation of their employment agreements and agreements to maintain confidentiality, engaged in outright theft of information, and accessed Plaintiffs' trade secrets without authorization. Complaint at ¶102-08; *See ExpertConnect, L.L.C.*, 2019 WL 3004161, at *6 (finding that defendants misappropriated trade secrets when defendants acquired the trade secrets through improper means, specifically by breaching employment agreements and taking the trade secrets "for purposes unrelated to their employment").

### d.  <u>The Balance of the Equities Weighs Heavily in Favor of Plaintiffs</u>

The balance of equities and the public interest favors entering an order that would mandate the immediate return of Plaintiffs' misappropriated material. Defendants have no legitimate or lawful interest in, or claim to, Plaintiffs' devices or their data. On the contrary, the Defendant Insiders have breached their employment agreements and duties of loyalty by misappropriating

Plaintiffs' files. Significantly, use of the stolen trade secrets will have a significant detrimental impact on Plaintiffs and likely damage their ability to compete effectively as they could by leveraging the trade secrets theyspent over a decade to develop. *See Juergensen Def Corp. v. Carleton Techs., Inc.*, No. 08-CV-959A, 2010 WL 2671339 (W.D.N.Y. June 21, 2010) (finding that balance of equities and public interest favored injunction where disclosure of trade secrets would ruin plaintiffs and threaten their "entire corporate mission"). In contrast, an injunction would have minimal if any impact on Defendants because it would simply require them to turn over what should not have been in their possession in the first place.

## III.     **Brooks Should Incur Sanctions for Intentional Spoliation**

"Spoliation is the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir.1999). "The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Fed. Exp. Corp.,* 247 F.3d 423, 436 (2d Cir.2001).

To support the imposition of sanctions, the innocent party must prove the following three elements: that the spoliating party (1) had control over the evidence and an obligation to preserve it at the time of destruction or loss; (2) acted with a culpable state of mind upon destroying or losing the evidence; and that (3) the missing evidence is relevant to the innocent party's claim or defense. *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.,* 685 F.Supp.2d 456, 467 (S.D.N.Y.2010), *abrogated on other grounds by Chin v. Port Auth. of N.Y. & N.J.,* 685 F.3d 135 (2d Cir.2012); *see also Residential Funding Corp. v. DeGeorges Fin. Corp.,* 306 F.3d 99, 107 (2d Cir.2002).

18

Brooks was on notice of the claims against him and the potential for litigation (absent resolution) as soon as he was confronted about his fraudulent scheme in the days immediately following the January 31, 2020 pellet plant closing. Patrignani Decl. at 17. This notice was followed up by the February/March 2020 settlement negotiations in which Brooks' wrongdoing was addressed. *Id.*

After learning of the potential for litigation in early February, Brooks should have returned his company laptop and ceased accessing Plaintiffs' files. Instead, Brooks gave Plaintiffs excuse after excuse about how he could not access his laptop due to COVID; the laptop was supposedly in his apartment in Manhattan while he quarantined in Connecticut. Chrousos Decl. at 26. As it turns out, Brooks had the laptop during this time and instead of returning it or otherwise preserving the evidence on it, he opted to copy and delete a large volume of files, including deleting one entitled "Smoking Gun." Weiss Decl. at 22. Indeed, forensic review reveals that Brooks was deleting files on the very days (February 28, 2020 and March 20, 2020) that he claimed not to have access to the laptop. *Id.* Among the files he deleted included some that most likely contained information relevant to Plaintiffs. Patrignani Decl. at 16.

These deletions were not by accident.[4] Plaintiffs' forensic consultant was able to identify among the deleted files a cache of programs relating to hacking, penetration testing, forensic data

---

[4]        "It makes little difference to the party victimized by the destruction of evidence whether that act was done willfully or negligently." *Residential Funding,* 306 F.3d at 108; *see also Mastr Adjustable Rate Mortgs. Trust 2006–OA2 v. UBS Real Estate Sec. Inc.,* 295 F.R.D. 77, 84 (S.D.N.Y.2013) (quotation marks and citation omitted); *Taylor v. City of New York,* 293 F.R.D. 601, 612 (S.D.N.Y.2013) ("A party is found to have acted with a sufficiently culpable state of mind [to warrant sanctions] when evidence was destroyed knowingly, even without intent to breach a duty to preserve it, or negligently.") (emphasis, internal quotation marks, and citation omitted); *Sekisui Am. Corp. v. Hart,* No. 12 Civ. 3479, 2013 WL 2951924, at *3 (S.D.N.Y. June 10, 2013) (citing *Residential Funding,* 306 F.3d at 108); *accord Usavage v. Port Auth. of N.Y. & N.J.,* 932 F.Supp.2d 575, 590 (S.D.N.Y.2013) ("[W]hen evidence is destroyed intentionally or willfully, that fact alone is sufficient to demonstrate relevance and favorability."); *Burgos v. Satiety,* Inc., No. 10 Civ. 2680, 2013 WL 801729, at *5 (E.D.N.Y. Mar. 5, 2013) ("Granting a dispositive motion based on an adverse inference ... can be appropriate when bad faith and willfulness is demonstrated and there is no other remedy available." (citations omitted)); *Antonmarchi v. Consol. Edison Co. of N.Y., Inc.,* No. 03

recovery and possibly data deletion. Weiss Decl. at 25-36, 41-50. The evidence of programs found on the laptop were inconsistent with a finance professional seeking to preserve evidence. *Id*. They were more in line with a forensic expert looking to hide, permanently delete and mask the contents of the laptop. *Id.* One such program is used to show the user what a forensic exam will recover. *Id.* Another program is used to copy files without leaving electronic fingerprints. *Id.* And yet another is used to gain unauthorized administrator access to the laptop. *Id.*

In terms of the contents of the deleted files, Plaintiffs are limited to the file names. By its very nature, a spoliation finding is an acknowledgment that the evidence no longer exists. *Resnik v. Coulson*, 2019 WL 1434051, at *9–10 (E.D.N.Y. Mar. 30, 2019). A party seeking spoliation sanctions is not necessarily required to produce direct evidence in order to prevail, particularly when it comes to electronically stored information that leaves few traces upon deletion. *Kronisch v. United States*, 150 F.3d 112, 129–30 (2d Cir. 1998). Where no direct evidence remains of spoliated ESI, substantial circumstantial evidence of the evidence's destruction may suffice to support spoliation sanctions. Thus, in *DVComm LLC v. Hotwire Commc'ns., LLC*, the Court credited a computer forensic expert's finding that the plaintiff, through its owner, used a "double deletion" technique to delete emails containing crucial information. 2016 WL 6246824, at *8 (E.D. Pa. Feb. 3, 2016). Similarly, in *Feist v. Paxfire, Inc.*, the plaintiff used software that cleared her internet browser history. 2016 WL 4540830, at *3–*5 (S.D.N.Y. Aug. 29, 2016). Though the browser history was unrecoverable and no direct evidence of its contents remained, the court found

---

Civ. 7735, 2012 WL 3126004, at *2 (S.D.N.Y. July 31, 2012) (sanction for spoliation appropriate where plaintiff "engaged in willful and repeated misconduct"); *Arista Records LLC v. Usenet.com, Inc.,* 608 F.Supp.2d at 439; *Miller v. Time–Warner Commc'ns, Inc.,* No. 97 Civ. 7286, 1999 WL 739528, at *2 (S.D.N.Y. Sept. 22, 1999).

the plaintiff's use of the cleaner software and failure to back up her files sufficient to support the imposition of sanctions. *See id.*

Federal Rule of Civil Procedure 37(e) was enacted in 2015 specifically for spoliation of electronically stored information ("**ESI**"). To address ESI that should have been preserved but was lost, where a party acted to deprive another party of the use of the information in litigation, the Court (a) may presume the lost information was unfavorable to the party, (b) instruct the jury that it may or must presume the information was unfavorable to the party or (c) dismiss the action. *Fed. R. Civ. P. 37(e).*

"The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge and is assessed on a case-by-case basis." *Fujitsu Ltd.,* 247 F.3d at 436. (citation omitted). "The choices include—from least harsh to most harsh—further discovery, cost-shifting, fines, special jury instructions, preclusion, and the entry of default judgment or dismissal (terminating sanctions)." *Pension,* 685 F.Supp.2d at 469.

It should be noted that a terminating sanction has been deemed justified where a party has engaged in perjury, tampering with evidence, or intentionally destroying evidence by burning, shredding, or **wiping out computer hard drives**. *Pension,* 685 F.Supp.2d at 469 (emphasis added). The court in *Regulatory Fundamentals,* 2014 WL 3844796, considered whether sanctions less severe than termination were warranted and concluded that neither monetary sanctions nor the imposition of an adverse inference would be sufficient under the circumstances. The lack of documents due to deletion prevented plaintiff from proving the full extent or scope of the defendant's conduct:

> The [defendant's] deletion of emails and his attempted cover-up put the [plaintiff] in an untenable litigation position—the evidence of the scope of [defendants'] alleged misconduct was gone forever. Any sanction short of a terminating sanction would fail to account for the prejudice or to

sufficiently penalize [defendant] or deter others from engaging in such misconduct. Accordingly, the Court grants [plaintiff's] request for a terminating sanction.

*Id.*

The court in *Gutman v. Klein,* 2008 WL 5084182 (E.D.N.Y. Dec. 2, 2008), *aff'd,* 515 F. App'x 8 (2d Cir.2013), also issued a terminating sanction where, like here, the defendant's laptop was found by forensic professionals to have been tampered with during discovery (*e.g.*, deleting hundreds of documents before the laptop was to be produced for forensic imaging). *Id.* at *4.

Plaintiffs again defer to the Court to administer an appropriate sanction; they also reserve the right to seek further sanctions for any additional instance of spoliation that is uncovered by the ongoing forensic review.

## IV.   Defendants Should be Compelled to Produce Outstanding Discovery

The Court granted Plaintiffs' request for expedited discovery. Plaintiffs served document demands and interrogatories designed to determine which of Plaintiffs' files were misappropriated and by whom. In response, defendants Brooks, Nianticvista Energy LLC, Gregory Merle, and Riverview Energy Corporation produced only a single email in this litigation. This is inexcusable. While the other Defendant Insiders produced more documents, the Gold Declaration points out that there are significant gaps in their production and a promise of a second production has not materialized. *Id*. The history of requests, meet and confer attempts and the baseless excuses for non-responses are set forth in detail in the declaration of Dov Gold.

One reason for the limited production is that Brooks objected to producing his cloud-based files. There is no basis for this objection. Plaintiffs' forensic review identified a number of cloud-based storage platforms that Brooks utilized with the company laptop. So long as the files are under Brooks' control, he is obligated to produce them. *See In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 195 (S.D.N.Y. 2007), ("Under Rule 34, 'control' does not require that the party have

22

legal ownership or actual physical possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action"); *Rosehoff, Ltd. v. Truscott Terrace Holdings LLC*, 2016 WL 2640351, at *5 (W.D.N.Y. May 10, 2016) (recognizing that ESI stored on a server owned or maintained by a provider remains owned by the account user and is subject to discovery). It is of no consequence that the files are stored in the cloud. *See VOOM HD Holdings LLC v. EchoStar Satellite L.L.C.*, 93 A.D.3d 33, 42, 939 N.Y.S.2d 321, 328 (2012) (recognizing that relevant evidence may exist on cloud infrastructure); *see also Treppel v. Biovail Corp.*, 249 F.R.D. 111, 118 (S.D.N.Y. 2008) (compelling party to search server in its control for relevant documents).

The Defendant Insiders have also refused to copy and turn over their hardware used in connection with their employment with Plaintiffs. Gold Decl. at 12-15. Under the circumstances, there was no basis for withholding such discovery. *See Treppel v. Biovail Corp.*, 249 F.R.D. 111, 124 (S.D.N.Y. 2008) (where there was evidence that discovery production was incomplete and relevant information was available on executive's laptop, court ordered forensic copying of laptop); *Co. v. Glob. Bio-Fuels Tech., LLC*, 2016 WL 6605070, at *2 (N.D.N.Y. May 20, 2016) (ordering  production and inspection of defendants' personal laptop because party seeking production established that relevant information could be found on laptop and defendant or defendant's counsel was in possession of laptop); *Genworth Fin. Wealth Mgmt., Inc. v. McMullan*, 267 F.R.D. 443, 447-48 (D. Conn. 2010) (holding that an investment firm was entitled to utilize a computer expert to conduct forensic imaging of former employee's computer where it was alleged that the computer was used to download the firm's proprietary information and trade secrets); *Schreiber v. Friedman*, 2017 WL 11508067, at *5 (E.D.N.Y. Aug. 15, 2017)

(ordering forensic imaging of personal computers where party seeking discovery demonstrated that relevant evidence could be found and the computers and there was evidence that party avoiding discovery had not fully complied with discovery requests).

Separately, the Defendants have not adequately described their financial relationship with CEW in their interrogatory responses. Gold Decl. at 7. In particular, the Defendant Insiders each provided deliberately vague answers in response to pointed questions about Brooks' interest in CEW. Gold Decl. at 7. Obviously an admission of Brooks' financial stake in an entity over which he was responsible for selling would be damning and dispositive.

If a party acts in "conscious disregard of their discovery obligations," that party has acted in bad faith and sanctions would be warranted under the court's inherent power to levy sanctions for abusive litigation practices. *DLC Management Corp. v. Town of Hyde Park*, 163 F.3d 124 (2d Cir. 1998); *Southern New England Telephone Co. v. Global NAPs Inc.*, 624 F.3d 123, 143-146 (2d Cir. 2010). "Where, as here, the nature of the alleged breach of a discovery obligation is the non-production of evidence, a district court has broad discretion in fashioning an appropriate sanction …." *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99 (2d Cir. 2002).

## V.      **Defendant Insiders' Harassment and Interference Needs to be Restrained**

Plaintiffs have recently learned that the Defendant Insiders orchestrated a series of communications to non-parties with whom Plaintiffs maintain business relationships with no legitimate purpose other than to defame Plaintiffs and interfere with Plaintiffs' relationships. These improper communications include, by way of example, the following:

- On June 2, 2020, Brooks called the manager of Powergen, a specialized vendor that operates CE's power plants in Manhattan, to "warn" Powergen about CE's creditworthiness. The Powergen manager subsequently explained to CE that he understood this communication to be a "warning" that Powergen should terminate its relationship with CE and shut the plant down

because CE would not be able to pay. Aside from being untrue, at the time of Brooks' statement, made several months after Brooks' termination from Plaintiffs' employ and with no legitimate purpose, Brooks had not spoken with the manager at Powergen for over six months. Patrignani Decl. at 5.

- On or about May 12, 2020 Defendant Mikkelson received a pro forma letter from a vendor of CE seeking payment on an overdue invoice for services provided to a Manhattan hotel client of CE. Mikkelson received the letter after his employment terminated presumably because he never notified this particular vendor that he no longer served as the contact person. The overdue payment was the result of COVID-19's impact on CE's hotel client and the vendor was subsequently paid off. Even though Plaintiffs' senior personnel was also copied on the letter, Mikkelson forwarded the letter to CE's auditors on June 11, 2020. There was absolutely no basis for doing so other than to manufacture problems for CE with its auditors. Indeed, because of the way in which the pro forma demand letter was sent to the auditors, it will now appear in CE's audited financials and may impair CE's ability to secure financing. Patrignani Decl. at 4.

- On July 7, 2020 one or more of the defendants sent an email to a business partner of Plaintiffs, Luminor Bank in Latvia (the "**Bank**"), claiming that Plaintiffs breached an agreement with the Bank by failing to disclose the sale of the pellet plant (CEW) to the Bank. It was Brooks' responsibility to notify the Bank of the sale of the pellet plant while he worked for Plaintiffs. He apparently decided months after-the-fact and after litigation ensued to report his own breach to the Bank. The intent is obvious: Brooks was trying to negatively impact Plaintiffs' relationship with the Bank. Patrignani Decl. at 8.

- Over the last few months Brooks spoke with a lender of an affiliate of Plaintiffs, again with no legitimate basis for doing so. After speaking with Brooks, the lender unexpectedly opted not to extend the loan to the affiliate. Plaintiffs uncovered Brooks' effort after-the-fact. Patrignani Decl. at 10.

- On or about July 29, 2020, Brooks' mother had a lawyer send a misleading demand letter to a joint venture partner of Plaintiffs with information about Plaintiffs in connection with the joint venture. Brooks' mother had no privity with that joint venture partner or any other reason to correspond except to negatively impact Plaintiffs' relationship with that partner. Patrignani Decl. at 11.

It is self-evident that Defendant Insiders' unauthorized contacts (which have already caused harm to Plaintiffs' business) are intended to intimidate Plaintiffs into withdrawing this action. Unquestionably, continuing this pattern of harassment and intimidation causes irreparable injury. *See Xelus, Inc. v. Servigistics, Inc.*, 371 F. Supp. 2d 387, 390 (W.D.N.Y. 2005) (explaining that the Second Circuit has recognized that disparagement and damage to one's business reputation

can constitute irreparable harm); *TVT Records v. Island Def Jam Music*, 225 F. Supp. 2d 398, 405 (S.D.N.Y. 2002) ("[T]he Second Circuit regards damage to business relationships significant.").

All courts have inherent powers to curtail misconduct and "control the conduct of those who appear before them." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 33 (1991). Courts possess the inherent authority to sanction parties for conduct undertaken in bad faith and with improper purpose, such as to harass. *S.E.C. v. Smith*, 798 F. Supp. 2d 412, 421 (N.D.N.Y. 2011). Whether the Court applies an injunction standard or taps into its inherent powers, the Defendant Insiders should be enjoined from further harassment and interference with Plaintiffs' business and relationships.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their application for a preliminary injunction, spoliation, sanctions and to compel discovery.

Dated: New York, New York
        August 25, 2020

                                       Respectfully Submitted,

                                       SEIDEN LAW GROUP LLP

                                 By:  */s/ Michael Stolper*

                                   Michael Stolper
                                   Dov Byron Gold
                                   469 7th Avenue, Suite 502
                                   New York, New York 10018
                                   (212) 337-3502
                                   Mstolper@seidenlegal.com
                                   *Attorneys for Plaintiffs*