UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONVERGEN ENERGY LLC, L'ANSE WARDEN ELECTRIC COMPANY, LLC, EUROENERGY BIOGAS LATVIA LIMITED, and LIBRA CAPITAL US, INC. <br><br>         Plaintiffs,<br><br>-against-<br><br>STEVEN J. BROOKS, NIANTICVISTA ENERGY LLC, GREGORY MERLE, RIVERVIEW ENERGY CORPORATION, DANIEL ESCANDON GARCIA, RAMON URIARTE INCHAUSTI, CHIPPER INVESTMENT SCR, SA, URINCHA SL, THEODORE JOHN HANSEN, BRIAN R. MIKKELSON, and CONVERGEN ENERGY WI, LLC,<br><br>         Defendants. | Index No. 1:20-cv-03746 (LJL)<br><br>**DECLARATION OF CAMILO PATRIGNANI IN SUPPORT OF INTERIM RELIEF** |

I, Camilo Patrignani, declare as follows:

  1.  My name is Camilo Patrignani. If I were asked to testify, I would testify consistent with this declaration, and I have personal knowledge of all facts set forth herein.

  2.  I joined Libra Group in 2008 and led the acquisition of Convergen Energy WI, LLC ("**CEW**") in 2010 when it was a pilot facility, which I managed as Deputy Chief Executive Officer until I transitioned to a different energy related role at Libra Group in 2015. After leaving Libra Group in 2018, I re-joined in March 2020 and took the role of Senior Energy Advisor overseeing a portfolio of companies. I am also the President of Convergen Energy, LLC ("**CE**") and its power plant subsidiary L'Anse Warden Electric Company, LLC ("**L'Anse**").

### Intimidation and Interference by Defendants

  3.  Since this lawsuit has been filed, Defendant Steven Brooks ("**Brooks**") and the other former employee defendants Steven Hansen ("**Hansen**") and Brian Mikkelson

1

("**Mikkelson**," collectively with Hansen and Brooks, the "**Defendant Insiders**") orchestrated a series of communications to non-parties with whom Plaintiffs maintain business relationships with no legitimate purpose other than to interfere with Plaintiffs' relationships.

4. On or around May 12, 2020 Mikkelson received a pro forma letter from a vendor of CE seeking payment on an overdue invoice for services provided to a Manhattan hotel client of CE. I was copied on the email attaching the letter. Mikkelson received the letter after his employment terminated presumably because he never notified this particular vendor that he no longer served as the contact person. The overdue payment was the result of COVID-19's impact on CE's hotel client and the vendor was subsequently paid off.

5. On June 2, 2020, Brooks called Kaylas Bhiro, the manager of Powergen, a specialized vendor that operates CE's power plants in Manhattan, to "warn" Powergen about CE's creditworthiness and that the invoice described above was overdue. The same day, the Powergen Manager sent me a Whastapp message to make me aware of the phone call. The following are quotes of Brooks that Kaylas sent to me the same day via Whatsapp:

> [8:23 PM, 6/2/2020] "....hey buddy!? How's it going....you've always been straight with me"
> [8:24 PM, 6/2/2020] "so I want to "warn" you, that Nycee has not been paid".
> [8:24 PM, 6/2/2020] "...and I know you are owed a lot of money."
> [8:26 PM, 6/2/2020] "....so, just want you be careful.  Brian [Mikkelson] has more information...if you want you can call him for the details".

6. The Powergen manager understood this communication to be a "warning" that Powergen should terminate its relationship with CE and shut the plant down because CE would not be able to pay. Aside from being untrue, at the time of Brooks' statement, made several months after Brooks' termination from Plaintiffs' employ and with no legitimate purpose, Brooks had not spoken with the manager at Powergen for what the manager estimates to be over six months.

7. Despite Mikkelson knowing that CE had received the letter because I was copied on it, on June 11, 2020 he forwarded it to CE's auditors. The email thread is attached as **Exhibit A**. There was absolutely no basis for doing so other than to manufacture problems for CE with its auditors. Indeed, because of the way in which the pro forma letter was sent to the auditors, the the letter will now appear in CE's audited financials and may impair CE's ability to secure financing.

8. On July 7, 2020 one or more of the defendants sent an email to a business partner of CE, Luminor Bank in Latvia (the "**Bank**"), claiming that Plaintiffs breached an agreement with the Bank by failing to disclose the sale of the pellet plant (CEW) to the Bank. The email was sent from convergen@convergenenergy.com, a domain controlled by the Defendant Insiders; it was not signed by any particular CEW employee or officer or copied to anyone from Plaintiffs. That email and Luminor's response is attached as **Exhibit B**.

9. It was Brooks' responsibility to notify the Bank of the sale of the pellet plant while he worked for Plaintiffs. He apparently decided months after-the-fact and after litigation ensued to report his own breach to the Bank. The intent was obvious: Brooks was trying to negatively impact Plaintiffs' relationship with the Bank.

10. Over the last few months Brooks spoke with a lender of an affiliate of Plaintiffs, again with no legitimate basis for doing so. After speaking with Brooks, the lender unexpectedly opted not to extend the loan to the affiliate. Plaintiffs uncovered Brooks' effort after-the-fact. I was informed about this conversation by one of my colleagues at Libra Group who spoke with the lender.

11. On or about July 29, 2020, Brooks' mother had a lawyer send a misleading demand letter to a joint venture partner of Plaintiffs with information about Plaintiffs in

connection with the joint venture. Brooks' mother had no privity with that joint venture partner or any other reason to correspond except to negatively impact Plaintiffs' relationship with that partner. I was informed about this letter by one of my colleagues at Libra Group.

12.     Since Brooks' recorded confession on February 3, 2020, Brooks has had no express or implied authority to contact Plaintiffs' counterparties, vendors, or business partners. It is self-evident that Brooks' unauthorized contacts (which have already caused harm to Plaintiffs' business) are intended to intimidate Plaintiffs into withdrawing this action. Such intimidation extends to me and other employees of Plaintiffs who are potential witnesses in this case.

### Forensic Review of Brooks' Company Laptop

13.     As part of this case, Forensic Recovery, LLC, a digital forensics company, imaged and reviewed the company-owned laptop wrongfully in Brooks' possession after he was terminated.

14.     The forensic investigation identified approximately 4,150 documents that Brooks copied from the laptop onto an external hard drive on May 31, 2020, after the Court issued a temporary restraining order. My review in consultation with Phaedra Chrousos, Libra Group's Chief Strategy Officer, revealed that a significant amount of the documents contained highly sensitive information belonging to Plaintiffs. For example, Brooks copied:

   a. Libra Group Board of Director presentations;

   b. Proposed partnership negotiations;

   c. Financial projections of Principle Media Group, Libra Group's global media company;

   d. Financial projections and board reports of Elandis, Libra Group's U.S. based real estate group;

e. At least twenty balance sheets and income statements of NE Hotels, a portfolio of hotels that are managed by Elandis;

f. Information related to our business relationship with Auberge, Libra Group's hospitality business partner in U.S. and Europe;[1]

g. Hundreds of internal documents of Plaintiff L'Anse, including L'Anse's primary customer agreement and internal financials;[2]

h. At least 70 balance sheets, projections, strategy reports and board reports of CE;[3] and

i. At least 80 valuations, consolidated financials, business plans and organizational structure documents of Plaintiff Euroenergy Biogas Latvia Limited;[4]

15. The forensic expert also discovered that Brooks had synced a Microsoft OneDrive cloud storage platform to the laptop. The forensic review identified a list of files on the OneDrive that had been synced to the laptop. Many of these files contain highly confidential information of Plaintiffs in my estimation.[5] For example, Brooks synced:

a. Principle Media Group's strategy, financial, and board documents;[6]

---

[1] File names include Auberge Allocation_062018.xlsx and Auberge_ Investment opportunity properties.docx.

[2] File names include L'Anse - DTE PPA.docx, 2018 FP8 LWEC Internal Financials August 2018 v2.xlsx and L'Anse Projections.xlsx.

[3] File names include CE - Debt Overview_082019.xlsx, CE Asset Overview_022019.pdf, CE BOD - Latvia_092017.pptx, CE BOD_Latvia_07112019.pptx, CE Capital Projects.pptx, CE CHP Portolio Exec Summary_2019.docx, CE Company Projections_122019.pdf, CE Corporate Structure_Update_112018.pptx and CE Debt Facilities_092019.pptx.

[4] File names include EE Business Plan 2018-2020 (P50)_Consolidated.pdf and EE - Asset Valuation.xlsx.

[5] My belief is based on the file names and respective folder names, my own personal knowledge and consultation with Libra Group's Chief Strategy Officer, Phaedra Chrousos.

[6] File names include Libra - PMG - Project North Pole.pptx, Principal Media - Organic Growth Initiatives.docx, Principal Media BOD 2014.pptx, Principal Media Financials 2014.xlsx and Principal Media Strategy_1.pptx.

      b. The debt restructuring, debt valuation, and business strategy of CE and Euroenergy Biogas Latvia Limited;

      c. Presentations for Libra Group's shipping business; and

      d. Loan documents of Plaintiffs' shipping business;

16.    The forensic review also revealed certain files were deleted on March 24, 2020 and May 31, 2020. At least four of those files contain Plaintiffs' data or are relevant to claims:[7]

      a. L'Anse - DTE PPA.lnk was deleted on March 24, 2020;

      b. CEL - Luminor_102019.lnk was deleted on March 24, 2020;

      c. CE Latvia Group 2014-Q3 2019 Revenue.lnk was deleted on March 24, 2020; and

      d. LWEC-Convergen Energy WI Pellet Supply Agreement 30Nov2019 dpc.lnk was deleted on May 31, 2020.

17.    Brooks was put on notice of a potential claim on February 3, 2020, the day of his confession to Plaintiffs. The Defendant Insiders were all on notice after that point as Plaintiffs tried to negotiate a resolution with them and with Brooks individually in a termination agreement. The Defendant Insiders were again put on notice when a draft complaint was sent to them on May 11, 2020, and again when the Complaint was filed on May 14, 2020.

I declare under the penalty of perjury that the foregoing is, to the best of my knowledge and belief, true and correct.

Dated: New York, New York
         August 25, 2020

                                        */s/ Camilo Patrignani*
                                        Camilo Patrignani

---

[7] My belief is based on the file names and respective folder names, my own personal knowledge and consultation with Phaedra Chrousos.