## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

---

CONVERGEN ENERGY LLC, et al.,

                Plaintiffs,

v.                                   CASE NO.: 1:20-CV-03746 (LJL)

STEVEN J. BROOKS, et al.,

                Defendants.

---

## SPECIALLY APPEARING DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT

---

Ryan. M. Billings
S.D.N.Y. Bar No. RB0378
Kohner, Mann & Kailas, S.C.
4650 N. Port Washington Road
Milwaukee, WI 53212

*Attorneys for Steven J. Brooks,*
*Gregory Merle, NianticVista Energy, LLC,*
*and Riverview Energy Corporation*

Benjamin LaFrombois, P.H.V.
William E. Fischer, P.H.V.
Von Briesen & Roper, s.c.
2905 Universal Street, Suite 2
Oshkosh, WI 54094

*Attorneys for Convergen Energy WI,*
*LLC, Theodore J. Hansen and*
*Brian R. Mikkelson*

**TABLE OF CONTENTS**

INTRODUCTION……………………………………………………...……… …....1

FACTS AND RELEVANT ALLEGATIONS……………………………………………….3

    A.    Libra's Motion for Leave to Amend is Untimely And Prejudicial…………………3

        1.    Libra's Amended Complaint is based on information known to Libra since 2019………………...……………………………………………..3

        2.    Libra has prejudiced Defendants by forcing them to spend many thousands of dollars responding to emergency motions and expedited discovery before attempting to amend its allegations…………………………….5

    B.    Libra's Proposed Amended Complaint Does Not Change The Fact That This Dispute Must be Arbitrated……………………………………………………..6

        1.    Diaz reaffirmed the arbitration clauses of both the Acquisition Agreement and Supply Agreement in the Amended Closing Statement...…………….6

        2.    Libra separately entered into employment contracts with Brooks, Hansen and Mikkelson that independently require arbitration of this dispute……………………………………………………...…...8

    C.    Libra's Motion Is Yet Another Tactic to Delay the Supply Agreement Arbitration..8

        1.    The parties agreed in the Supply Agreement to a four-month dispute-resolution process……………………………………………...8

        2.    Libra has engaged in a deliberate series of steps to delay the Supply Agreement Arbitration……………...………………………..10

ARGUMENT……………………………………………………………………………11

    I.    Libra's Motion is Untimely, Based on Facts Libra Knew at the Time it Filed Its Original Complaint…...……………………………………………12

    II.    The Proposed Amended Complaint Does Not Cure the Fatal Flaws in Libra's Original Complaint, and Granting Libra's Motion Would Be Futile……………..13

    III.    Libra's Motion is Brought in Bad Faith To Delay Further the Supply Agreement Arbitration And Prejudice Defendants…………………………………...15

        A.    Libra's motion is brought for the bad-faith purposes of delaying the Supply Agreement arbitration and bringing new allegations to support inappropriate new arguments in Libra's reconsideration motion…………15

i

B.      Libra's motion seeks to prejudice Defendants further…………………… 16

CONCLUSION……………………………………………………………………………..18

## **TABLE OF AUTHORITIES**

### **Cases**

*Abessinio v. Ernst & Young, LLP,*
    No. 06CIV2777LTSFM, 2007 WL 9812740 (S.D.N.Y. May 21, 2007)......................14

*Alaska Elec. Pension Fund v. Bank of Am. Corp.,*
    No. 14-CV-7126 (JMF), 2017 WL 466468 (S.D.N.Y. Feb. 1, 2017)........................12

*Apotex Corp. v. Hospira Healthcare India Private Ltd.,*
    No. 18-CV-4903 (JMF), 2019 WL 3066328 (S.D.N.Y. July 12, 2019).....................17

*Artec Constr. & Dev. Corp. v. New York City Dep't of Hous. Pres. & Dev.,*
    No. 15 CIV. 9494 (KPF), 2017 WL 782911 (S.D.N.Y. Feb. 27, 2017)......................12

*BankUnited, N.A. v. Merritt Envtl. Consulting Corp.,*
    360 F. Supp. 3d 172 (S.D.N.Y. 2018)..............................................................13

*Barrows v. Forest Laboratories,*
    742 F.2d 54 (2d Cir. 1984)............................................................................16

*Burch v. Pioneer Credit Recovery, Inc.,*
    551 F.3d 122 (2d Cir. 2008)..........................................................................13

*Cresswell v. Sullivan & Cromwell,*
    922 F.2d 60 (2d Cir. 1990)......................................................................12, 18

*Dougherty v. Town of North Hempstead Bd. of Zoning Appeals,*
    282 F.3d 83 (2d Cir. 2002)............................................................................13

*Evans v. Syracuse City Sch. Dist.,*
    704 F.2d 44 (2d Cir. 1983)............................................................................12

*Fullwood v. Wolfgang's Steakhouse, Inc.,*
    No. 13 CIV. 7174 KPF, 2014 WL 6076733 (S.D.N.Y. Nov. 14, 2014).....................13

*Foman v. Davis,*
    371 U.S. 178 (1962).....................................................................................13

*Grace v. Rosenstock,*
    228 F.3d 40 (2d Cir. 2000)..........................................................11, 12, 13, 16

*Health–Chem Corp. v. Baker,*
    915 F.2d 805 (2d Cir. 1990)..........................................................................13

iii

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.,*
    No. 07 CIV. 10453, 2011 WL 4357166 (S.D.N.Y. Sept. 13, 2011)...........................14

*John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.,*
    22 F.3d 458 (2d Cir. 1994)..................................................................................12

*Joseph v. Buffalo News, Inc.,*
    792 F. App'x 60 (2d Cir. 2019)......................................................................17, 18

*Krumme v. WestPoint Stevens Inc.,*
    143 F.3d 71 (2d Cir. 1998)..................................................................................16

*Lee v. Regal Cruises, Ltd.,*
    116 F.3d 465 (2d Cir. 1997)...............................................................................16

*Long Island Neuroscience Specialists v. Fringe Benefit Funds Local 14-14b Int'l*
*Union of Operating Engineers,*
    No. 17-3341 (JMA) (ARL), 2018 WL 3912283 (E.D.N.Y. July 31, 2018)..................14

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,*
    797 F.3d 160 (2d Cir. 2015)..........................................................................12, 13

*Lucente v. Int'l Bus. Machs. Corp.,*
    310 F.3d 243 (2d Cir. 2002)...............................................................................13

*Phaneuf v. Tenneco, Inc.,*
    938 F. Supp. 112 (N.D.N.Y. 1996).......................................................................13

*Range Rd. Music, Inc. v. Music Sales Corp.,*
    90 F. Supp. 2d 390 (S.D.N.Y. 2000)....................................................................15

*Ruotolo v. City of New York,*
    514 F.3d 184 (2d Cir. 2008)..........................................................................15, 16

*TechnoMarine SA v. Giftports, Inc.,*
    758 F.3d 493 (2d Cir. 2014)...............................................................................18

*Zahra v. Town of Southold,*
    48 F.3d 674 (2d Cir. 1995)................................................................................12

## Statutes & Rules

Fed. R. Civ. P. 12.........................................................................................................13

Fed. R. Civ. P. 15.....................................................................................................3, 11

Specially Appearing Defendants Steven J. Brooks, NianticVista Energy, LLC, Convergen Energy WI, LLC, Gregory Merle, Theodore J. Hansen, Brian R. Mikkelson, and Riverview Energy Corporation (collectively, "Defendants") respectfully submit this brief in opposition to Plaintiffs' ("Libra"[1]) motion for leave to amend their Complaint (ECF[2] No. 116).

## <u>INTRODUCTION</u>

Libra knowingly brought suit in the wrong forum, and then immediately brought an emergency *ex parte* TRO motion, claiming that the threat of irreparable harm was so dire that the Court could not wait to hear from Defendants before granting Libra instant relief. When CEW initiated arbitration to address the real emergency here (Libra's continuing theft of more than $500,000 in product) and sought related injunctive relief in the forums the parties chose in the contracts they executed, Libra engaged in a stall campaign to delay resolution of the arbitration as long as possible. This motion for leave to amend, and Libra's accompanying motion for reconsideration of the Court's August 5 Order denying Libra's motion to stay the arbitration, is just the latest of Libra's tactics to impede the arbitration. It is brought in bad faith, for the purpose of delay, and should be denied.

Libra claims it needs to amend its Complaint to "correct the record with respect to Andueza," and to make new allegations to suggest that Andueza lacked authority to bind Libra to

---

[1] As with Defendants' prior briefing, "CE" means Plaintiff Convergen Energy LLC, "L'Anse" means Plaintiff L'Anse Warden Electric Company, LLC, "Libra Capital" means Plaintiff Libra Capital US, Inc., "CEW" means Defendant Convergen Energy WI, LLC, "Niantic" means Defendant NianticVista Energy, LLC, "Riverview" means Defendant Riverview Energy Corporation, "Brooks" means Defendant Steven J. Brooks, "Merle" means Defendant Gregory Merle, "Hansen" means Defendant Theodore J. Hansen, "Mikkelson" means Defendant Brian R. Mikkelson, "Andueza" means Fidel Andueza, Libra's Chief Investment Officer and CE's, L'Anse's and CEW's President and Manager and Brooks' former supervisor, "Diaz" means Ydalberto (Bert) Diaz, Libra's General Counsel and CE's, L'Anse's and CEW's other Manager (with Andueza), and "BMO" means non-party BMO Harris Bank N.A., secured lender to L'Anse and CEW. "Opening Br." means Libra's brief in support of its motion (ECF No. 117), and "Billings Decl." refers to the Declaration of Ryan M. Billings accompanying this brief.

[2] References to "ECF" refer to the documents filed in this action. References to "SA ECF" refer to the documents filed in the related Supply Agreement action before this Court, Case No. 1:20-CV-05240-LJL.

the Acquisition Agreement under which CEW was sold, or the Supply Agreement under which
L'Anse agreed to buy product from CEW. This argument is frivolous, as (among other reasons):

    (1)    On February 21, 2020, *after* Libra's investigation of the purported fraud at issue, Diaz executed the Amended Closing Statement, which reaffirmed the terms of the Acquisition and Supply Agreements, including their arbitration clauses; and

    (2)    Libra also entered into separate employment agreements with Brooks, Hansen, and Mikkelson that independently require arbitration of this dispute.

Libra's new allegations change nothing, and would serve only to delay dismissal of this lawsuit.

Libra suggests that its motion for leave is timely based on new information it recently discovered. But Libra alleges in its Amended Complaint that Andueza confessed to his role in the fraud in early February 2020, and has been a cooperative witness since then (which apparently is why Libra has not fired him, despite his role as the mastermind of an alleged eight-figure fraud, among other misdeeds). The "key" piece of "new" evidence to which Libra points is a December 15, 2019 email that Andueza received on that date, discussing plans that Andueza had known since the fall of 2019. None of this is new, and there is no cause to delay timely resolution of this dispute in arbitration.

Libra also contends that its tardy motion is no big deal because this case has not progressed very far, and in particular discovery has not begun. But Libra forced this case onto an accelerated track, demanding onerous expedited discovery from Defendants and third parties, and has separately moved to sanction Defendants for their purported failure to meet discovery obligations during the fast-tracked discovery period. Libra cannot simultaneously demand lightning speed (for expedited discovery) and delay (for extra time to amend its complaint and reargue its motion to stay arbitration), particularly when that delay allows Libra to avoid its more than $500,000 debt to CEW and continue its ongoing breach of the Supply Agreement, a material element of the sale of

CEW. Libra's motion is futile, late, brought in bad faith, and prejudicial. It should be denied, and the Court should dismiss this action in favor of arbitration.

## FACTS AND RELEVANT ALLEGATIONS

**A.      Libra's Motion for Leave to Amend is Untimely And Prejudicial.**

**1.      Libra's Amended Complaint is based on information known to Libra since 2019.**

Libra initiated this action on May 14, 2020. (ECF No. 1.) Under Federal Rule of Civil Procedure 15(a)(1)(A), Libra had until June 4, 2020, to amend its Complaint as of right. It failed to do so. The first pleading filed in response to Libra's Complaint was Defendants' July 17, 2020 motion to dismiss (ECF No. 91), which contained all the facts and argument that Libra points to as precipitating its Amended Complaint (ECF No. 92). Under Rule 15(a)(1)(B), Libra had until August 7, 2020, to amend its Complaint as of right in response to Defendants' motion. Libra failed to do so.

On August 7, the Court noted that Libra had not submitted a brief in support of its motion for a preliminary injunction by the required deadline of August 6, and directed Libra to confer with Defense counsel and advise the Court as to Libra's intentions. (ECF No. 110.) In its August 12 scheduling conference with Defense Counsel and its August 13 letter to the Court asking the Court to reset the preliminary injunction hearing and briefing schedule, Libra made no mention of any intent to amend its Complaint. (ECF No. 113.) When the Court on August 14 set a new briefing schedule and hearing for September 10 on Libra's preliminary injunction motion and Defendants' motion to dismiss, again Libra did not advise the Court or Defendants that it intended to seek the Court's permission to amend its Complaint. Instead, Libra waited until August 19 (well past the deadline for amendment as of right) to file a motion for leave to amend its Complaint. The motion is untimely.

To rationalize its dilatory conduct, Libra suggests that its proposed Amended Complaint is based on new evidence. (Opening Br., at 8-9.) It is not. Libra pleads in its proposed Amended Complaint that Andueza confessed to his role in the events in dispute contemporaneously with Brooks' alleged February 3, 2020 confession. (ECF No. 117-1, at ¶¶ 7, 46.) Libra contends that, since that time, Andueza has been cooperating with Libra. (Opening Br., at 3.) Thus, Libra became aware at latest in early February 2020 that Andueza was "compromised," and has had Andueza as an available and cooperating resource since that time to explain any and all facts related to the events in dispute. Libra knew and could have plead any pertinent facts related to Andueza in its May 14 Complaint, and certainly cannot claim that facts it discovered no later than February 2020 constitute newly-discovered evidence that would warrant an attempt to amend its Complaint in August 2020, six months later.

Indeed, Libra concedes that the key piece of evidence on which it bases its Amended Complaint was a December 15, 2019 email that Brooks sent to Andueza. (Opening Br., at 6 & n.3.) That was an email Andueza has had since he received it on December 15, 2019, and discussed plans of which Andueza has been fully aware since fall 2019. (ECF No. 120-2.) Moreover, the December 15 email was attached as an exhibit to CEW's and Hansen's May 14 Declaratory Judgment Action in Brown County, Wisconsin, brought *before* Libra filed its Complaint with this Court. (*See* Opening Br., at 6 n.3.) By Libra's own admission, it sat on its hands for at least three months (letting both of its deadlines to amend as of right lapse) before seeking leave to amend its Complaint.

Further, Libra tacitly acknowledged it had an issue with Andueza when it attempted preemptively to sideline Andueza (without actually referring to him by name) in its original Complaint, alleging that Brooks' "direct manager suffered a near fatal accident that required him

4

to go on disability for a good part of the year [2019]." (ECF No. 1, at ¶ 32.) The reason Libra did so is obvious—Andueza's knowledge as Manager of the companies involved in this dispute is imputed to Libra and kills Libra's fraud case. It was only when Libra's "Andueza did not know because he was injured" story became untenable that Libra tried to change course and embrace the fact that Andueza was part of the alleged fraud. It is not new evidence that made Libra change tacks—it is merely gamesmanship, based on the fact that Libra's original (false) narrative was not working.

**2.      Libra has prejudiced Defendants by forcing them to spend many thousands of dollars responding to emergency motions and expedited discovery before attempting to amend its allegations.**

Libra has also dragged Defendants through expensive expedited litigation, rushing into Court with the claim that its injury was so dire that the Court should rule on an *ex parte* basis, and then badgering Defendants continuously to comply with Libra's never-ending demands, which have already cost Defendants tens of thousands of dollars in hard-costs to their IT consultants and the countless hours by CEW's executives sorting through 264,000 emails that Libra somehow forgot to remove from its server before selling CEW. (ECF No. 114-1, at 2.)

Libra has also harassed Brooks' mother, requiring her to retain counsel and file a motion to quash (ECF No. 78) in response to Libra's order that Ms. Brooks travel to Manhattan and sit for a merits deposition, and has subpoenaed BMO to produce nearly 10,000 pages of documents and demanded more (Billings Decl. ¶ 3). All the while, Libra has complained that Defendants' efforts are inadequate and that conciliating with Defense counsel is a "total waste of time." (ECF No. 114-1, at 1.) Now, Libra has turned around and argued that the Court should grant its untimely motion for leave to amend its Complaint because a three-month delay is no big deal, as "discovery has not begun." (Opening Br., at 8.) At the same time, Libra has asked the Court to sanction Defendants for a purported failure to meet their discovery obligations. (ECF No. 128, at 24.)

**B.      Libra's Proposed Amended Complaint Does Not Change The Fact That This Dispute Must be Arbitrated.**

**1.      Diaz reaffirmed the arbitration clauses in the Acquisition Agreement and Supply Agreement in the Amended Closing Statement.**

Libra seeks to amend its Complaint to "correct the record with respect to Andueza," and to suggest that Andueza, because of a purported conflict of interest, lacked authority to bind Libra to the CEW sales documents at issue in this dispute. (Opening Br., at 2.) However, Andueza had actual authority[3] as the Manager of CE, L'Anse and CEW to enter into all the contracts he signed.[4] Regardless, Diaz expressly reaffirmed the arbitration agreements in both the Acquisition Agreement and Supply Agreement in the February 21 Amended Closing Statement, after Libra had investigated Brooks' relationship to Niantic.

Libra alleges in both its original and proposed Amended Complaints that on February 3, 2020, it confronted Brooks, and that Brooks confessed to his relationship with Niantic and expressed remorse. (ECF No. 1, ¶ 43; ECF No. 117-1, ¶¶ 44-46.) Libra also alleges that it immediately began investigating Brooks' involvement in events. (ECF No. 1, ¶ 44; ECF No. 117-1, ¶ 48.) Several weeks later, CE, L'Anse, Niantic and CEW entered into an Amended and Restated Closing Statement, dated February 21, 2020 ("Amended Closing Statement"). (ECF No. 92-8.)

---

[3] As explained in Defendants' motion to dismiss briefing, Libra decided in the operating agreement of CE (a Delaware LLC) that CE's Managers and officers would not owe fiduciary duties, and expressly waived Managers' duties of loyalty. (ECF No. 92, at 32 & n.23 (citing CE's operating agreement (ECF No. 92-19), §§ 4.5, 4.6); *see also id.* § 4.3 ("Each contract… executed by a Manager with respect to any business or property of the Company shall be conclusive evidence in favor of any and every Person relying thereon or claiming thereunder that …. (b) such instrument or document was duly executed in accordance with the terms and provisions of this Agreement and is binding upon the Company, and (c) such Manager was duly authorized and empowered to execute and deliver, and to cause the Company to perform any and every such instrument or document for or on behalf of the Company.").)

[4] In the first closing, Diaz also executed the Waiver Notice—Conditions Precedent in which the parties agreed: "Buyer and Seller herby [*sic*] acknowledge and agree that the Closing Date under the Acquisition Agreement has taken place on January 31, 2020…." (ECF No. 92-4, at 1.)

Diaz executed the Amended Closing Statement on behalf of CE and L'Anse. (*Id.* at 3.) Among other things, the Amended Closing Statement increased the price Niantic paid for CEW by $618,359.91. (*Id.* at 1-2.) The parties also agreed in the Amended Closing Statement that:

> By signing this Amended and Restated Closing Statement each Party confirms and ratifies that the Closing was completed on the Closing Date.
>
> The Buyer and Seller agree that there will be no further adjustments or changes to this Amended and Restated Closing Statement after the date hereof, as both Parties have confirmed that this document is now complete and accurate in all regards.

(*Id.* at 2.)

In the February 21 Amended Closing Statement, Diaz on behalf of Libra further agreed: "Other than as expressly modified pursuant to this Amended and Restated Closing Statement all of the terms, conditions and other provisions of the Acquisition Agreement…are hereby ratified and confirmed and shall continue in full force and effect in accordance with their respective terms." (*Id.* at 2.) The terms that Diaz affirmed on behalf of Libra in the Amended Closing Statement include the arbitration clause of the Acquisition Agreement. (Acquisition Agreement, ECF No. 92-2, § 9.7.)

Thus, after admitting it knew and had investigated the alleged fraud that is the subject of this dispute, Libra voluntarily entered into a second closing that reaffirmed the terms of the original Acquisition Agreement, including the parties' agreement to arbitrate disputes. By executing the Amended Closing Statement on behalf of Libra, Diaz also reaffirmed Libra's representation in the Acquisition Agreement that: "The Parties acknowledge and agree that the Contemplated Transactions and the execution of this Agreement have been approved by the Managers of CE and NVE [Niantic]." (*Id.*, § 4.4.) Libra's argument that Andueza lacked authority is both baseless and moot, as Diaz reaffirmed Libra's commitment to arbitrate in the Amended Closing Statement.

**2.      Libra separately entered into employment contracts with Brooks, Hansen and Mikkelson that independently require arbitration of this dispute.**

Moreover, Libra alleges that Brooks, Hansen and Mikkelson acted inappropriately in connection with their employment with Libra entities. (ECF No. 92, at 17-18, 23-24.) Libra entered into employment contracts with all three individuals that require arbitration of this dispute. (*Id.*) Any (belatedly admitted) wrongdoing on Andueza's part has no impact on these agreements. Libra has been silent as to Brooks', Hansen's and Mikkelson's employment agreements in its brief in opposition to Defendants' motion to dismiss, in its proposed Amended Complaint, and in its brief in support of this motion, because Libra has nothing to say about the arbitration contracts in these agreements. They independently require arbitration of this dispute.

**C.      Libra's Motion Is Yet Another Tactic to Delay the Supply Agreement Arbitration.**

**1.      The parties agreed in the Supply Agreement to a four-month dispute-resolution process.**

Contemporaneous with the (first) sale of CEW, L'Anse and CEW entered into the Supply Agreement. (ECF No. 92-6.) The Supply Agreement was an exhibit to the Acquisition Agreement, and the parties' execution of the Supply Agreement was an express condition of the closing of the sale of CEW. (Acquisition Agreement, § 5.9 (providing, as a condition of closing, that "CE shall have executed and delivered the Supply Contract…").) Thus: (1) in the first closing when Andueza signed the Supply Agreement; and (2) when Diaz executed the Amended Closing Statement, Libra affirmed the Supply Agreement.

In executing the Supply Agreement, both CEW and L'Anse recognized that any failure to perform by either side would irreparably damage the other party. Accordingly, the parties agreed to an accelerated arbitration schedule, under which:

•      The American Arbitration Association ("AAA") was required to propose five potential arbitrators within 30 days of the filing of the arbitration;

- Each party had only 15 business days to respond to the AAA's list of arbitrators;

- The arbitrator must be appointed no later than 60 days after service of the demand for arbitration;

- The final merits hearing must be held no later than 90 days after service of the demand for arbitration; and

- A written decision must be issued no later than 30 days after the hearing (no more than 120 days after service of the demand for arbitration).

(ECF No. 92-6, at 6-7.) To further protect themselves from irreparable harm, the parties stipulated that both parties must continue fully to perform even in the event of a dispute, and that either party could seek injunctive relief while the four-month arbitration process was pending, recognizing that neither party could last even four months of non-performance by the other without irreparable damage. (*Id.* at 7.)

In April 2020, L'Anse stopped paying for the fuel pellets it continued to take from CEW, in breach of the Supply Agreement. (ECF No. 121, at ¶¶ 5-6; *see also* SA ECF No. 47, at 1.) Accordingly, CEW filed a demand for arbitration with the AAA on June 4, and served the demand on L'Anse on June 9, 2020. (SA ECF No. 47, at 1.) Following the accelerated procedure to which the parties agreed in the Supply Agreement, the schedule should have been:

- July 24, 2020—Deadline for parties to provide their preferences on the arbitrators proposed by AAA;

- August 8, 2020—Deadline to appoint arbitrator;

- September 7, 2020—Deadline for final hearing on the merits of the dispute; and

- October 7, 2020—Deadline for issuance of final arbitration award.

(ECF No. 92-6, at 6-7.)

Further, L'Anse stipulated that CEW should have been able to obtain immediate injunctive relief requiring L'Anse to perform during the pendency of the arbitration. (*Id.*) However, because

of Libra's continuous interference and delays, no injunction has been issued, and no hearing date has been set.

### 2.     Libra has engaged in a deliberate series of steps to delay the Supply Agreement Arbitration.

Following its June 4 initiation of arbitration, CEW brought an action on June 10 in the Circuit Court of Dane County, Wisconsin, and on June 12 brought a motion for a temporary injunction.[5] A hearing was set for June 16, 2020. (*See, e.g.*, SA ECF Nos. 4, 36 at 4.) The day before the June 16 hearing, Libra removed the action to the United States District Court for the Western District of Wisconsin. (SA ECF No. 1.) CEW promptly renewed its injunction motion in the Western District, and requested expedited consideration. (SA ECF Nos. 6, 9, 11.) Libra responded by moving to transfer the action to this Court, and shortly thereafter filed a motion with this Court to stay the arbitration. (ECF No. 63.)

On July 8, the Western District transferred the Supply Agreement action to this Court, in part because of this Court's familiarity with the dispute. (July 8 Transfer Order, SA ECF No. 36, at 9-11.) The Western District noted in the transfer order that: "[O]nce transferred, plaintiff's pending preliminary injunction motion will be in exactly the same position with the New York court as it is before this one—fully briefed and ready for adjudication." (*Id.* at 10-11.) Of course, by the time the Supply Agreement action was transferred to this Court, Libra had already moved to stay the arbitration.

Meanwhile, in the arbitration, the AAA asked the parties on June 18 to let the AAA know their availability to participate in a scheduling conference the week of June 22. (SA ECF No. 47-1, at 2.) Libra ignored this request. (SA ECF No. 47, at 2.) The AAA gave Libra until July 1 to answer the demand for arbitration. (SA ECF No. 47-1, at 1.) Libra filed no answer. (SA ECF No.

---

[5] A temporary injunction is the Wisconsin state-court equivalent of a preliminary injunction in federal court.

47, at 2.) On July 9, the AAA circulated a list of potential arbitrators and asked the parties to rank them by July 23. Libra ignored this request, and asked the AAA to stay the arbitration because Libra had a filed a motion to stay with this Court. (SA ECF No. 47, at 2.)

When this Court denied Libra's motion to stay on August 5, Libra asked the AAA for more time to rank arbitrators, and secured an extension to August 26 of its time to do so. (SA ECF No. 47-4.) On August 19, CEW wrote a letter to this Court updating the Court on progress (or lack thereof) in the arbitration, and noting that CEW's motion for a preliminary injunction is fully briefed and ready for decision. (SA ECF No. 47.)  Libra responded by moving for reconsideration of the Court's August 5 Order denying Libra's motion to stay the arbitration, and simultaneously filed this motion for leave to amend its Complaint, to establish the predicate allegations to backfill its argument in support of Libra's motion for reconsideration. (ECF Nos. 117, 119.)

Libra then turned back to the AAA and asked the AAA to stay the arbitration in light of its motion for reconsideration. (Billings Decl. ¶ 2.) This time, the AAA refused, but because of Libra's coordinated stall tactics, the final merits hearing that should have taken place no later than September 7 has not even been scheduled, and no injunction has been issued. (*Id.*) By this motion, Libra is attempting to continue to delay the Supply Agreement arbitration despite L'Anse's contractual commitment to a swift resolution of any Supply Agreement dispute, and the admission of Camilo Patrignani (L'Anse's current co-Manager with Diaz) that he expressly instructed L'Anse in mid-April 2020 not to pay anything for the pellets L'Anse continued to take from CEW, amassing over $526,000 in unpaid invoices. (ECF No. 121, at ¶ 5; SA ECF No. 47, at 1.)

## ARGUMENT

While leave to amend should be granted freely "when justice so requires," a district court has broad discretion to grant or deny a motion for leave to amend a complaint after the time to do so as of right has expired. Fed. R. Civ. P. 15(a)(2); *Grace v. Rosenstock*, 228 F.3d 40, 53–54 (2d

Cir. 2000); *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995); *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994). Courts regularly deny such motions when: (1) they are untimely; (2) amendment is futile; or (3) the motion for leave is brought in bad faith and would prejudice the nonmoving party. *Id.*

Here, Libra's motion is untimely, based on information Libra has known since 2019. The motion is also futile, as the proposed Amended Complaint does not change the fact that this case should be dismissed in favor of arbitration. Finally, the motion is brought in bad faith, to prejudice Defendants by delaying resolution of the Supply Agreement Arbitration. For all these reasons, Libra's motion for leave to amend should be denied.

## I.    Libra's Motion is Untimely, Based on Facts Libra Knew at the Time it Filed its Original Complaint.

Libra's motion is based entirely on facts Libra knew and could have pled both in its original Complaint and during any period in which it could have amended its Complaint as of right. (*See supra* Facts A(1).) Because Libra could have but failed to amend its Complaint within the time to do so, and offers no valid excuse for its untimeliness,[6] the motion should be denied. *See John Hancock*, 22 F.3d at 462 (noting that undue delay is a reason to deny a motion for leave to amend); *Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 72 (2d Cir. 1990) (explaining that delay without a satisfactory explanation warrants denying a motion to amend); *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983) (unexplained delay reduces the need to show prejudice).[7]

---

[6] The facts here are very different from *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, on which Libra relies. In that case, the court expressly found that the plaintiff did not originally have access to the information on which it based the amended complaint. No. 14-CV-7126 (JMF), 2017 WL 466468, at *1 (S.D.N.Y. Feb. 1, 2017). In *Artec Constr. & Dev. Corp. v. New York City Dep't of Hous. Pres. & Dev.*, the court permitted amendment in part because plaintiff dropped claims against two parties, and permitting amendment would thus promote speedy resolution of the action. No. 15 CIV. 9494 (KPF), 2017 WL 782911, at *6 (S.D.N.Y. Feb. 27, 2017). Here, Libra refuses to abandon its frivolous claims (among others) against Riverview, CEW, Mikkelson, Hansen, and the Spanish Investors.

[7] Libra argues that Defendants (as the nonmoving parties) bear a "heavy burden" to show grounds exist to deny Libra's motion. (Opening Br., at 8.) Of course, as the moving party, *Libra* bears the burden of proof, and the case Libra cites says nothing about any "heavy burden" borne by the non-moving party. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells*

## II.    The Proposed Amended Complaint Does Not Cure the Fatal Flaws in Libra's Original Complaint, and Granting Libra's Motion Would Be Futile.

In addition, because the proposed Amended Complaint does not cure any of the fundamental defects addressed in Defendants' motion to dismiss, any amendment would be futile, and the Court should deny Libra's motion. *See BankUnited, N.A. v. Merritt Envtl. Consulting Corp.*, 360 F. Supp. 3d 172, 191–92 (S.D.N.Y. 2018) (courts should deny leave to amend when the defects in the claim against a defendant are substantive, or the plaintiff cannot explain how it would cure those defects with amended claims); *see also Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (denying leave because amendment was futile as it did not address a fundamental deficiency in plaintiff's claim); *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (noting leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).").[8]

Libra argues that its amended allegations show that there is a genuine issue as to whether Libra entered into the CEW sales documents. (Opening Br., at 2.) They do not, as:

- Diaz reaffirmed, in the Amended Closing Statement, the arbitration clauses in the Acquisition Agreement and Supply Agreement, well after Libra admits it discovered and investigated the "fraud" on which it bases its Complaint and proposed Amended Complaint (*see supra* Facts B(1)); and

---

*Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (reversing because the original complaint stated a claim, and noting in dicta that the court below did not rely on the traditional grounds for denying leave to amend, such as futility, untimeliness, or bad faith); *see also Fullwood v. Wolfgang's Steakhouse, Inc.*, No. 13 CIV. 7174 KPF, 2014 WL 6076733, at *7 (S.D.N.Y. Nov. 14, 2014) (allowing leave to amend because plaintiff inadvertently left out an element, not because (as here) plaintiff decided to change strategies based on information already known).

[8] *See also Grace*, 228 F.3d at 53–54 (leave to amend should be denied when amendment would be futile (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *John Hancock*, 22 F.3d at 462 ("[u]ndue delay and futility of the amendment, among other factors, are reasons to deny leave"); *Health–Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990) ("where ... there is no merit in the proposed amendments, leave to amend should be denied"); *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (an amendment is considered futile if the amended pleading fails to state a claim); *Phaneuf v. Tenneco, Inc.*, 938 F. Supp. 112, 119 (N.D.N.Y. 1996) (motion to amend claim denied for being "both inexcusably delayed and futile").

- The scope of Andueza's authority has no bearing on the separate employment contracts Libra entered into with Brooks, Mikkelson and Hansen, independently requiring arbitration of this dispute (*see supra* Facts B(2)).

Ultimately, Libra's proposed Amended Complaint proves Defendants' point, that Libra cannot plead around the fundamental defects explained in Defendants' motion to dismiss. Libra's belated admission to Andueza's central role in this dispute has no impact on the facts that: (1) this dispute must be arbitrated;[9] (2) any litigable part of this dispute must be adjudicated in Wisconsin; (3) Libra fails to plead fraud with particularity; (4) Libra fails to establish that Brooks, Hansen or Mikkelson owed fiduciary duties; (5) Libra fails to establish an ownership interest in the alleged trade secrets or stored communications at issue; and (6) Libra fails to make non-conclusory allegations of wrongdoing by Riverview, Mikkelson, Hansen, or CEW. (*See generally* ECF No. 92.) Whether viewed under the original Complaint or proposed Amended Complaint, this action must be dismissed, and the fact that Libra tried and failed to get around these problems through an amended pleading confirms that amendment of the Complaint is futile. (*Id.* at 34 ("None of these problems can be fixed through repleading…"); ECF No. 111 at 15 n.18 ("Because Libra does not

---

[9] Libra argues that amendment of its complaint must be allowed before dismissal in favor of arbitration, but the cases it cites do not support Libra's argument. *See In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, No. 07 CIV. 10453, 2011 WL 4357166 (S.D.N.Y. Sept. 13, 2011) (no arbitration clause involved); *Long Island Neuroscience Specialists v. Fringe Benefit Funds Local 14-14b Int'l Union of Operating Engineers*, No. 17-3341 (JMA) (ARL), 2018 WL 3912283, at *1 (E.D.N.Y. July 31, 2018) (no arbitration clause), *report and recommendation adopted sub nom. Long Island Neuroscience Specialists v. Fringe Benefit Funds Local 14-14B Int'l Union of Operating Engineers*, No. 17CV3341JMAARL, 2018 WL 3898168 (E.D.N.Y. Aug. 15, 2018); *Abessinio v. Ernst & Young, LLP*, No. 06CIV2777LTSFM, 2007 WL 9812740, at *1 (S.D.N.Y. May 21, 2007) (amendment added new parties who had not been heard, all but one defendant consented to the amended complaint, and the remaining defendant wanted subject-matter jurisdiction (not its alternative request for arbitration) decided first). None of these cases involved a futile amendment brought on the basis of information known to the plaintiff at the time of filing.

demonstrate how it could cure the terminal problems with its claims through artful repleading, amendment is futile…"). Accordingly, Libra's motion for leave should be denied.

## III.   Libra's Motion is Brought in Bad Faith To Delay Further the Supply Agreement Arbitration And Prejudice Defendants.

### A.   Libra's motion is brought for the bad-faith purposes of delaying the Supply Agreement arbitration and bringing new allegations to support inappropriate new arguments in Libra's reconsideration motion.

In addition to being futile and untimely, Libra's motion for leave to amend its Complaint is brought in a bad-faith effort to delay the Supply Agreement arbitration even further and improperly buttress its motion for reconsideration of the Court's August 5 Order by alleging new facts that Libra could have (but did not) argue in its original motion to stay. (*See supra* Facts A(1).) As courts in this district have explained:

> [A] motion for reconsideration is appropriate only where the movant demonstrates that the Court has overlooked controlling decisions or factual matters that were *put before it on the underlying motion* ... and which, had they been considered, might have reasonably altered the result before the court. The aforementioned limitation on motions for reconsideration is to ensure finality and to prevent the practice of a losing party examining a decision and then plugging the gaps of the lost motion with additional matters.

*See Range Rd. Music, Inc. v. Music Sales Corp.*, 90 F. Supp. 2d 390, 392 (S.D.N.Y. 2000) (internal quotations and citations omitted) (alteration in original). Here, Libra is not merely plugging gaps— it is trying to *change* the facts. After having failed the test, Libra wants to go back and alter its wrong answers to improve its grade. This is not a proper reason to amend a complaint, and Libra's motion should be denied.

Indeed, Libra's motion is part of a deliberate strategy to take more than $500,000 in product from CEW and starve CEW out for as long as possible by refusing to perform under the Supply Agreement and resisting arbitration of the dispute. (*See supra* Facts C(2).) Libra's motion to amend is brought in bad faith, and it should be denied.  *See Ruotolo v. City of New York*, 514 F.3d 184,

192 (2d Cir. 2008) (denying motion to amend where amendment would add a new scenario that would delay ultimate disposition of the case); *Grace,* 228 F.3d at 53–54 (leave to amend should be denied "where the belated motion would unduly delay the course of proceedings"); *Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71, 88 (2d Cir. 1998) ("We have stated that 'considerations of undue delay, bad faith, and prejudice to the opposing party [are] touchstones of a district court's discretionary authority to deny leave to amend.'" (quoting *Barrows v. Forest Laboratories,* 742 F.2d 54, 58 (2d Cir. 1984) (footnote omitted))); *Lee v. Regal Cruises, Ltd.*, 116 F.3d 465 (2d Cir. 1997) (unpublished) ("We have ruled that [u]ndue delay and futility of the amendment, along with bad faith, are reasons to deny leave." (internal citation omitted)).

### B.    Libra's motion seeks to prejudice Defendants further.

Libra's attempt to delay the Supply Agreement arbitration indefinitely through its continuous stall tactics (of which this motion is just one of many) is obviously prejudicial to CEW. L'Anse has already taken more than $500,000 of product from CEW and paid nothing for it (a $1 million swing, considering the $500,000 loss to CEW and the $500,000 gain to L'Anse), and accumulated a half-million-dollar war chest to fund extended litigation against Defendants and impair CEW's ability to defend itself against the litigation Libra brought. (*See supra* Facts C(2).) Those losses continue to grow every day, as L'Anse now admits it has no intention of honoring the ten-year Supply Agreement at any point in the future. (ECF No. 121, at ¶ 7.)

Following the procedure to which the parties agreed, the Supply Agreement dispute should have been tried at a final arbitration hearing no later than September 7, 2020. (*See supra* Facts C(1).) By this motion, Libra is attempting to keep the Supply Agreement arbitration on perpetual hold, despite its contractual commitment to a swift resolution of any Supply Agreement dispute, and the admission of Patrignani that, well before this litigation in mid-April 2020, he secretly

instructed L'Anse not to pay anything for the pellets L'Anse continued to take from CEW. (*See id.*)

Libra has also dragged Defendants through expensive expedited litigation, rushing into Court with the claim that its injury was so dire that the Court should rule on an *ex parte* basis, and then badgering Defendants to comply without question with Libra's never-ending demands, which have already cost Defendants tens of thousands of dollars in hard-costs to their IT consultants, and the expense of the countless hours spent by CEW's executives sorting through 264,000 emails that Libra somehow forgot to remove from its server before selling CEW. (*See supra* Facts A(2).) All the while, Libra has complained that Defendants' efforts are inadequate and sanctionable. (*Id.*) Yet in this motion, Libra argues that this Court should grant its untimely request because a three-month delay is no big deal, as "discovery has not begun" (which is true only in the sense that *Libra* has not provided any discovery in this case[10]). (Opening Br., at 8.[11])

This motion, in the context of an array of delay tactics, is directly delaying CEW's ability to prosecute its claims in the Supply Agreement arbitration. (*See supra* Facts C(2).) Libra's efforts in four different courts and one arbitration to ignore its many contracts and change venue has caused Defendants to incur substantial legal fees and delayed Defendants' ability to bring their claims against Libra and its executives. The prejudice is palpable, and it seems Libra will not hesitate to make an endless stream of frivolous filings that are destined to fail but will cripple a fledgling company and deny Defendants due process. Libra's motion should be denied. *See Joseph*

---

[10] Defendants served discovery requests demanding production among other things of the infamous "recorded confession," but Libra has not provided it or any other discovery. (ECF No. 112, at ¶¶ 3-4.)

[11] In support, Libra cites *Apotex Corp. v. Hospira Healthcare India Private Ltd.*, but in that case the court noted that it was a month before the close of discovery, and the non-moving party had not bothered to take any discovery, so it was not prejudiced. No. 18-CV-4903 (JMF), 2019 WL 3066328, at *10 (S.D.N.Y. July 12, 2019), *reconsideration denied,* No. 18-CV-4903 (JMF), 2019 WL 3802096 (S.D.N.Y. Aug. 13, 2019). Here, the burden manifested among other things when Defendants were forced to sort through hundreds of thousands of emails, and are not yet in the right forum.

*v. Buffalo News, Inc.*, 792 F. App'x 60, 63 (2d Cir. 2019) (unpublished) ("District courts may deny leave to amend 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" (citing *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (internal quotation marks omitted)); *Cresswell*, 922 F.2d at 72 (prejudice to defendants is factor to consider in evaluating leave to amend).

## <u>CONCLUSION</u>

For the foregoing reasons and in the interests of justice, Defendants respectfully ask the Court to deny Plaintiffs' motion for leave to amend, and dismiss Plaintiffs' Complaint. In any event, Defendants ask the Court not to allow Libra to use the vehicle of this motion to prejudice Defendants further by delaying the timely resolution of this dispute in arbitration.

Dated: September 2, 2020

By:    <u>s/ Ryan M. Billings</u>
Ryan M. Billings
S.D.N.Y. Bar No. RB0378
**KOHNER, MANN & KAILAS, S.C.**
4650 N. Port Washington Road
Milwaukee, WI 53212-1059
Telephone:    (414) 962-5110
Facsimile:    (414) 962-8725
Email:    rbillings@kmksc.com

*Attorneys for Defendants Steven J. Brooks, NianticVista Energy, LLC, Gregory Merle, and Riverview Energy Corporation*

-AND-

Benjamin LaFrombois, *pro hac vice*
William E. Fischer, *pro hac vice*
**VON BRIESEN & ROPER, S.C.**
2905 Universal Street, Suite 2
Oshkosh, WI 54904
Telephone:    (920) 233-4704
Facsimile:    (920) 233-6055
Email:    blafrombois@vonbriesen.com
        wfischer@vonbriesen.com

18

*Attorneys for Convergen Energy WI, LLC,
Theodore J. Hansen, and Brian R. Mikkelson*