UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------

CONVERGEN ENERGY LLC, et al.,

                    Plaintiffs,

       -v-

STEVEN J. BROOKS, et al.,

                 Defendants.

------------------------------------------------------

Civil Action No. 20-cv-3746 (LJL)

## SPECIALLY APPEARING DEFENDANTS CONVERGEN ENERGY WISCONSIN, LLC'S, BRIAN MIKKELSON'S AND THEODORE HANSEN'S OPPOSITION TO PLAINTIFFS' MOTION FOR INJUNCTION AND OTHER INTERIM RELIEF

Convergen Energy Wisconsin, LLC, Brian Mikkelson and Theodore Hansen respectfully submit this brief in response to Plaintiffs' Motion for Injunction and Other Interim Relief.  This brief is supported by the Declarations of Theodore Hansen, Andreas Mueller, Brian Mikkelson, and Benjamin LaFrombois, filed herewith.

## INTRODUCTION

As to defendants CEW, Mikkelson and Hansen, Plaintiffs' arguments in their Motion for injunctive and other scattershot relief suffers from the same failings as their complaint.[1] Specifically, Plaintiffs' by and large fail to provide **any** evidence beyond conspiracy theories, supposition and conclusory statements.  Where Plaintiffs do assert facts, they are either incorrect, or are innocuous and easily explained.  Plaintiffs cannot demonstrate a likelihood of success— much less irreparable harm—as to CEW, Hansen and Mikkelson, and therefore fail to meet the standards required for a preliminary injunction to issue.  Plaintiffs' motion should be denied.

Plaintiffs also assert that CEW, Hansen and Mikkelson have not cooperated in discovery in this case.  That is preposterous.  CEW, Hansen, and Mikkelson, through their representatives,

---

[1] Defendants Brooks, Merle, Niantic, and Riverview are responding separately to Plaintiffs' motion.  Defendants CEW Hansen and Mikkelson join in the arguments set forth in Brooks' response and incorporate those arguments as if set forth herein.

have spent countless hours and tens of thousands of dollars on the meet and confer process throughout the summer.  All information has been forensically safeguarded, and huge swaths of emails and other material have been identified, categorized, and forwarded to Plaintiffs.  Plaintiffs do not demonstrate that any of their "trade secrets" have actually been disseminated, or even **used** by the Defendants.  There is no basis for an order compelling discovery.

Plaintiffs close their arguments with the bizarre assertion that Defendants are attempting to "bully" the Plaintiffs.  The irony of that statement cannot be over-emphasized.  Since February, Plaintiffs have engaged in a baseless witch hunt, designed to harass, intimidate and, ultimately, bankrupt the Defendants, and the instant motion is simply the next iteration in that effort. Defendants respectfully ask the Court to deny Plaintiffs the relief sought, and promptly move forward with a decision on the dispositive issues raised in Defendants' motion to dismiss.

## BACKGROUND

As to their request for injunctive relief, the sum total of Plaintiffs' factual assertions in relation to CEW, Hansen and Mikkelson boil down to the following:

- Plaintiffs generally assert that Hansen and Mikkelson took emails and electronic files of Convergen as part of a "fraudulent transaction" (Doc. 128, p. 16);

- Plaintiffs complain that Hansen and Mikkelson have not returned "company issued computers and cellphones," which Plaintiffs "believe" contain Plaintiffs' trade secret and proprietary information. (Doc. 128, p. 16); and

- The only specific factual allegation raised by Plaintiffs is that Mikkelson maliciously forwarded a letter to Libra's auditors from a vendor of CE's regarding an overdue invoice. (Doc. 128, p. 25).

As to their request for an order compelling discovery, Plaintiffs assert that Hansen and Mikkelson have not cooperated with the limited discovery ordered by the Court:

- Plaintiffs complain that Hansen and Mikkelson have "refused to turn over their hardware used in connection with their employment with plaintiffs," (Doc. 128, p. 23); and

- Plaintiffs claim that Hansen's and Mikkelson's responses to an interrogatory about financial relationships with CEW are vague.  (Doc. 128, p.24)

Plaintiffs' descriptions of CEW, Hansen and Mikkelson's actions are vague and conclusory, or simply untrue.  Moreover, Plaintiffs unabashedly pepper their arguments with wild and unfounded attributions of nefarious motives and conspiracy theories, without factual basis.

## <u>ARGUMENT</u>

### I.     THE MOTION FOR INJUNCTIVE RELIEF SHOULD BE DENIED.

As demonstrated in Brooks' response to this motion, filed concurrently herewith, Second Circuit precedent clearly requires the Court to take up and decide Defendants' motion to dismiss this case first, before addressing Plaintiffs' renewed request for injunctive relief.

Regardless, Plaintiffs have not met their burden.  A preliminary injunction motion must be denied unless the moving party demonstrates "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 215 (2d Cir. 2012) (internal quotation omitted). Plaintiffs cannot demonstrate irreparable harm, much less a likelihood of success, and their motion should therefore be dismissed.

### A.  Plaintiffs Cannot Demonstrate Irreparable Harm, Much Less that the Balance of Harms Tilts in Their Favor.

Plaintiffs' request for injunctive relief stems from their claims for misappropriation of trade secrets (Compl., Doc. 1, ¶¶ 86-94), violation of the Defend Trade Secrets Act, ("DTSA") (*Id.*, ¶¶ 100-112), and violation of the Stored Communications Act ("SCA") (*Id.*, ¶¶ 113-124).  The gravamen for each claim is the safeguarding and retrieval of Libra's alleged trade secrets and other confidential information in CEW's hands.

Any concerns Libra may have had regarding the safeguarding of its alleged trade secrets have been dispelled.  All categories of documents in contention have been addressed: CEW has (1) provided all of the EuroEnergy and Office 365 accounts; (2) sorted through 264,000 emails and turned over 48,000 emails to Plaintiffs; (3) separately produced 1014 pages of documents in response to Plaintiffs' discovery requests; (4) turned over Hansen and Mikkelson's hard drives to their third-party IT consultant for forensic copying, and those drives are ready for production; (5) instituted a rigorous litigation hold; and (6) segregated Libra-related materials from CEW's server. (Hansen Decl., ¶¶ 2, 4-8; Mueller Decl., ¶¶ 3-5; LaFrombois Decl., ¶¶ 2-7.)

On this record, Plaintiffs cannot assert that Defendants have violated the Court's temporary restraining order with respect to the alleged trade secrets.  Rather, CEW has followed through on its obligations pursuant to that order, and there is no "danger that, unless enjoined, [CEW] will disseminate those secrets to a wider audience or otherwise irreparably impair the value of those secrets." *KCG Holdings, Inc. v. Khandekar*, 2020 WL 1189302, *16 (S.D.N.Y., March 12, 2020).[2]

Because there is no chance that Plaintiffs can be harmed as a result of any access or retention of any trade secret or confidential information, there is no need for the Court to grant any further injunctive relief.  Further, should the Court enter the overly broad relief requested by the Plaintiffs to "enjoin Defendants from possessing confidential information," it will be CEW's business that will be irreparably harmed.  The order sought by Plaintiffs would effectively cut off CEW's ability to access core information that it needs to operate.  The balance of harms clearly weighs in favor of CEW, and Plaintiffs' motion for injunctive relief should be denied.

---

[2] Plaintiffs' argument further defies logic; even if CEW did misappropriate Plaintiffs' trade secrets, it would have been for its own benefit.  In such instances, there is no irreparable harm, as the likelihood of CEW disseminating the information to anyone else would be correspondingly low. *See Golden Krust Patties, Inc. v. Bullock*, 957 F. Supp. 2d 186, 197 (E.D.N.Y. 2013) (finding a lack of irreparable harm, where "defendants have no incentive to disseminate any trade secrets they may have misappropriated from plaintiffs, as defendants would want to use that information and maintain its confidentiality for their own pecuniary benefit.")

### B.  Plaintiffs Cannot Demonstrate Likelihood of Success.

In addition, Plaintiffs cannot demonstrate likelihood of success on its misappropriation, DTSA and SCA claims.  All of those claims arise from Plaintiffs' assertion that the Acquisition Agreement—pursuant to which CEW purchased the trade secret and confidential information—was a result of fraud, which is the ultimate issue in this case.  To date, Plaintiffs still have not provided evidence to prove such fraud, instead relying on conclusory statements and inflammatory rhetoric to mask their lack of proof.  If anything, the record to date undercuts Plaintiffs' allegations; As the Court previously observed, the Acquisition Agreement was signed by Fidel Andueza, who had the apparent and actual authority to sign as the President of Convergen.  (Doc. 109, p.10.)  In addition, the record demonstrates that Libra's general counsel, Bert Diaz, was fully aware of the terms of the agreement. (*See, e.g.* 20-cv-5240, Doc. 30, ¶¶ 4-6.)  On this record, Plaintiffs cannot demonstrate likelihood of success.[3]

### C.  Mikkelson Did Nothing to Harm Plaintiffs' Business.

Plaintiffs extensively argue that Defendants have been engaging in a smear campaign to harm Plaintiffs' business.  While the majority of Plaintiffs' assertions are directed at Steven Brooks, they assert that Defendant Mikkelson also took part in the "campaign," by forwarding a letter from a NYCEEC regarding a debt owed by Libra to Libra's auditors.  Mikkelson had previously been responsible in part for Convergen Energy's audits (Mikkelson Decl., ¶2), and so it made sense for Mikkelson to have received that letter, and also to have forwarded it to the auditor, as that is the type of information an auditor would typically need.[4]  Furthermore,

---

[3] Further, as extensively discussed in Defendant Brooks' brief filed today, any ruling by the Court with regard to Plaintiffs' likelihood of success on allegations sounding in fraud is premature—such claims arise directly out of the agreements that are the subject of this dispute, each of which is subject to binding arbitration and not properly before this Court.

[4] Plaintiffs' argument in this regard is an improbable exercise in spin—Libra defaults on an obligation and fails to disclose that default to its auditors, and then attempts to blame Mikkelson for doing what Libra should have done in the first place.

Mikkelson is a Certified Public Accountant and has a duty to assure an audit with which his named is attached has been supplemented with information to assure the audit's accuracy.  (*Id.*, ¶ 2.) Mikkelson also provided post-closing services to Convergen Energy LLC as instructed by Bert Diaz, and continuing the audit was part of those services. (*Id.*, ¶ 3.)  There was nothing nefarious involved (*id.*, ¶ 5), and certainly nothing to merit the entry of any further restraining order.

## II.    PLAINTIFFS' MOTION TO COMPEL DISCOVERY SHOULD BE DENIED.

Plaintiffs emphasize in their brief two bases for their motion to compel discovery specific to CEW:  (1) CEW has refused to turn over Hansen and Mikkelson's original hard drives; and (2) the response to Plaintiffs' interrogatory 4A, relating to Hansen and Mikkelson's financial connection to CEW and Niantic, was vague.  Neither assertion is grounds for an order compelling discovery.  As noted, Hansen and Mikkelson's hard drives are in the possession of their third-party forensic consultant.  The hard drives have been forensically imaged, and those images are ready to be turned over to Plaintiffs' consultant, once instructions for doing so are received. (LaFrombois Decl., ¶ 4.)[5]  It is difficult to understand what more Plaintiffs think needs to be done.

With regard to the interrogatory response that Plaintiffs complain of as being "vague," CEW's answer was explicit: "Neither Ted Hansen nor Brian Mikkelson have a financial interest, other than their employment, in CEW.  Neither Ted Hansen nor Brian Mikkelson have a financial interest in Nianticvista Energy LLC, 4406 Cypress Lane LLC, or in any of the parties with a financial interest [in those entities]."   (Gold Decl., Exh. 1, Doc. 129-1, p. 6.)  Once again, it is difficult to understand the source of Plaintiffs' confusion.  Plaintiffs have not explicated any

---

[5]Also undercutting the "urgency" of plaintiffs' motion is the fact that the hard drives are to be delivered to plaintiffs encrypted, which would be of no use to them without the Court ordering production of the encryption key, which Plaintiffs did not request. (LaFrombois Decl., ¶ 4.)

sufficient grounds on which to base an order compelling further disclosures from CEW, Hansen or Mikkelson.[6]

## <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiffs' Motion should be denied.

Dated this 4th day of September, 2020.

<u>*s/Benjamin LaFrombois, Esq.*</u>
Benjamin D. LaFrombois, Esq.
WI State Bar No. 1027910

William E. Fischer
WI State Bar No. 1045725

von BRIESEN & ROPER, s.c.,
*Attorneys for Defendants, Theodore John Hansen,*
*Brian R. Mikkelson and Convergen Energy WI, LLC*

Direct contact information:
Benjamin D. LaFrombois, Esq.
55 Jewelers Park Drive, Suite 400
Neenah, WI 54956
920.233.4704 direct dial
blafrombois@vonbriesen.com

William E. Fischer
920.232.4843 direct dial
wfischer@vonbriesen.com

---

[6] The Gold Declaration filed with Plaintiffs' motion loosely describes several other complaints with regard to the Defendants' production. (Doc. 129.)  However, those other complaints are not addressed in their brief, and so it is unclear whether Plaintiffs contend that those further complaints are a basis for the relief requested.  Regardless, a cursory examination of the discovery responses appended to the Gold Declaration demonstrates that Plaintiffs' complaints are groundless, and that Plaintiffs did not sufficiently follow through with conciliation efforts prior to bringing the matter before the Court.  In fact, after CEW requested clarification of Plaintiffs' objections in early July, CEW has heard nothing further from Plaintiffs regarding expedited discovery.  (LaFrombois Decl., ¶8.)