UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CONVERGEN ENERGY LLC, L'ANSE WARDEN
ELECTRIC COMPANY, LLC, EUROENERGY
BIOGAS LATVIA LIMITED, and LIBRA CAPITAL
US, INC.

                              Plaintiffs,

-against-

STEVEN J. BROOKS, NIANTICVISTA ENERGY
LLC, GREGORY MERLE, RIVERVIEW ENERGY
CORPORATION, DANIEL ESCANDON GARCIA,
RAMON URIARTE INCHAUSTI, CHIPPER
INVESTMENT SCR, SA, URINCHA SL, THEODORE
JOHN HANSEN, BRIAN R. MIKKELSON, and
CONVERGEN ENERGY WI, LLC,

                              Defendants.

Index No. 1:20-cv-03746 (LJL)

## PLAINTIFFS' MEMORANDUM OF LAW OPPOSING
## THE SPANISH DEFENDANTS' MOTION TO DISMISS

Dated: September 4, 2020
New York, New York

                    SEIDEN LAW GROUP LLP

                    Michael Stolper
                    Jake Nachmani
                    Dov B. Gold
                    469 Seventh Avenue, Fifth Fl.
                    New York, NY 10018
                    (646) 766-1703

                    *Counsel for Plaintiffs*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 3

ARGUMENT ........................................................................................................................ 8

I.       THE COURT HAS PERSONAL JURISDICTION ...................................................... 9

    A.   New York's Long Arm Statute Provides Jurisdiction ...................................................... 9

        1.     The Claims Arise from Tortious Acts Committed Outside New York .................. 10

        2.     The Spanish Defendants' Tortious Acts Injured Plaintiffs In New York .............. 12

        3.     The Spanish Defendants Should Have Expected Consequences In New York ...... 13

        4.     Defendants Derive Substantial Revenue from International Commerce ............... 17

    B.   Personal Jurisdiction Over the Spanish Defendants Comports with Due Process ........... 19

        1.     The Spanish Defendants Have Minimum Contacts With New York .................... 19

        2.     The Exercise of Jurisdiction Is Reasonable ......................................................... 22

II.      PLAINTIFFS' AIDING AND ABETTING CLAIMS ARE PROPERLY PLED ........... 25

    A.   Aiding And Abetting Fraud Is Adequately Pled ............................................................ 26

    B.   Aiding And Abetting Breach Of Fiduciary Duty Is Adequately Pled ............................ 28

CONCLUSION .................................................................................................................... 31

## TABLE OF AUTHORITIES

### Cases

*Allojet PLC v. Vantgage Assocs.*,
  2005 WL 612848 (S.D.N.Y. Mar. 15, 2005) ............................................................. 9

*AmTrust Fin. Servs., Inc. v. Lacchini*,
  260 F. Supp. 3d 316 (S.D.N.Y. 2017)...................................................................... 21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). .................................................................... 25

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
  171 F.3d 779 (2d Cir. 1999)............................................................................. 12, 22

*Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank*,
  57 F.3d 146 (2d Cir. 1995)...................................................................................... 27

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). .............................................. 25

*Bensmiller v. E.I. Dupont de Nemours & Co., State of La.*,
  47 F.3d 79 (2d Cir. 1995)........................................................................................ 21

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)....................................... 16

*Calder v. Jones*, 465 U.S. 783 (1984)......................................................................... 20

*Chloé v. Queen Bee of Beverly Hills, LLC*,
  616 F.3d 158 (2d Cir.2010)........................................................................... 8, 16, 22

*CMS Inv. Holdings, LLC v. Castle*,
  2015 WL 3894021 (Del. Ch. June 23, 2015)...................................................... 29, 30

*Contant v. Bank of Am. Corp.*, 385 F. Supp. 3d 284 (S.D.N.Y. 2019)......................... 24

*Dejana v. Marine Tech., Inc.*, 2011 WL 4530012 (E.D.N.Y. Sept. 26, 2011) .............. 22

*Del Monte Fresh Produce N.A., Inc. v. M/V AFRICA REEFER*,
  2013 WL 1129998 (S.D.N.Y. Mar. 19, 2013) ........................................................ 25

*Digital Lab Sols., LLC v. Stickler*, 2007 WL 700821 (S.D.N.Y. Mar. 7, 2007).......... 17

*Dix v. Peters*, 374 F. Supp. 3d 213 (N.D.N.Y. 2019) ................................................. 23

*Doe v. Bausch & Lomb, Inc.*, 443 F. Supp. 3d 259 (D. Conn. 2020) .......................... 17

*Eades v. Kennedy, PC Law Offices*, 799 F.3d 161 (2d Cir. 2015)...................... passim

*Energy Brands Inc. v. Spiritual Brands, Inc.*,
   571 F. Supp. 2d 458 (S.D.N.Y. 2008)...................................................................... 18

*Fantastic Graphics Inc. v. Hutchinson*,
   2010 WL 652987 (E.D.N.Y. Feb. 22, 2010)............................................................ 11

*Fica Frio, Ltd. v. Seinfeld*, 434 F. Supp. 3d 80 (S.D.N.Y. 2020). ............................ 8, 12

*Foot Locker Retail, Inc. v. SBH*, Inc., 2005 WL 91306 (S.D.N.Y. Jan. 18, 2005). ..................... 23

*Gantler v Stephens*, 965 A2d 695 (Del. 2009) ......................................................... 29

*Gerffert Co., Inc., Stephen Panigel v. Fratelli Bonella, SRL*,
   49 Misc. 3d 1208(A), 26 N.Y.S.3d 724 (N.Y. Sup. Ct. 2015).................................. 17

*Gerstle v. Nat'l Credit Adjusters, LLC*,
   76 F. Supp. 3d 503 (S.D.N.Y. 2015)........................................................................ 17

*Global Intellicom, Inc. v. Thomson Kernaghan & Co.*,
   1999 WL 544708 (S.D.N.Y. July 27, 1999) ............................................................ 21

*Gucci Am., Inc. v. Frontline Processing Corp.*,
   721 F. Supp. 2d 228 (S.D.N.Y. 2010)................................................................ 10, 19

*Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87 (S.D.N.Y. 2015) ................... 23, 25

*Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897 (2d Cir. 1980) ...................................... 12

*Hau Yin To v. HSBC Holdings PLC*,
   2017 WL 816136 (S.D.N.Y. Mar. 1, 2017) ............................................................. 21

*Hill v. HSBC Bank* 207 F. Supp. 3d 333 (S.D.N.Y. 2016) ........................................ 16

*Holbrook Plastic Pipe Supply, Inc. v. Jackson*,
   2006 WL 8441408  (E.D.N.Y. Jan. 3, 2006) ........................................................... 18

*Hollenbeck v. Comeq, Inc.*, 2007 WL 2484299
   (N.D.N.Y. Aug. 28, 2007) ....................................................................................... 17

*Holmes v. City of New York*, 2020 WL 918611 (S.D.N.Y. Feb. 26, 2020) ................. 10

*Hypnotic Hats, Ltd. v. Wintermantel Enterprises, LLC*,
   2016 WL 7451306 (S.D.N.Y. Dec. 27, 2016) ......................................................... 24

*In re Amaranth Nat. Gas Commodities Litig.*,
   587 F. Supp. 2d 513 (S.D.N.Y. 2008)...................................................................... 21

*In re Lehman Bros. Holdings Inc.*, 535 B.R. 608 (Bankr. S.D.N.Y. 2015) .................................. 22

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
   998 F. Supp. 2d 157 (S.D.N.Y. 2014)..................................................................... 29

*In re Our Alchemy, LLC*, 2019 WL 4447519 (Bankr. D. Del. Sept. 16, 2019) ..................... 30, 31

*In re Sledziejowski*, 2016 WL 6155929 (Bankr. S.D.N.Y. Oct. 21, 2016) ............................ 10, 21

*In re Sumitomo Copper Litig.*, 120 F. Supp. 2d 328 (S.D.N.Y. 2000) ................................... 14, 20

*Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236 (2d Cir. 1999) .......................................... 13, 24, 25

*Krys v. Pigott*, 749 F.3d 117 (2d Cir. 2014) ................................................................. 26

*LaFaro v. New York Cardiothoracic Group, PLLC*,
   570 F.3d 471 (2d Cir. 2009)....................................................................................... 8

*Lederer v. Newmatic Sound Sys., Inc.*, 2013 WL 6835171
   (E.D.N.Y. Dec. 20, 2013) ........................................................................................ 15

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 1993) ............................................... 29

*Lewis v. Madej*, 2015 WL 6442255 (S.D.N.Y. Oct. 23, 2015)........................................ 13, 19, 23

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
   732 F.3d 161 (2d Cir. 2013)...................................................................................... 20

*Maersk, Inc. v. Neewra, Inc.*, 554 F. Supp. 2d 424 (S.D.N.Y. 2008) .............................. 20

*Mago Int'l LLC v. LHB AG*, 2014 WL 2800751 (S.D.N.Y. June 18, 2014) ..................... 23

*McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011) ................................................ 21

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996) ................... 23

*Millennium Access Control Tech., Inc. v. On the Gate, LLC*,
   2017 WL 10445800 (E.D.N.Y. Feb. 14, 2017)........................................................ 21

*Nat'l Westminster Bank PLC v. Ret. Care Assocs., Inc.*,
   1999 WL 239677 (S.D.N.Y. Apr. 23, 1999)............................................................ 14

*Palace Exploration. Company v. Petroleum Development Company*,
   41 F. Supp. 2d 427 (S.D.N.Y. 1998 ..................................................................... 17, 19

*Pearson Educ., Inc. v. ABC Books LLC*,
    2020 WL 3547217 (S.D.N.Y. June 30, 2020) ........................................................ 24

*Porina v. Marward Shipping Co.*,
    2006 WL 2465819 (S.D.N.Y. Aug. 24, 2006) ........................................................ 21

*Ramiro Aviles v. S & P Glob., Inc.*,
    380 F. Supp. 3d 221 (S.D.N.Y. 2019)...................................................................... 11

*Related Companies, L.P. v. Ruthling*,
    2017 WL 6507759 (S.D.N.Y. Dec. 18, 2017) ............................................ 11, 13, 18

*Silvercreek Mgmt., Inc. v. Citigroup, Inc.*,
    248 F. Supp. 3d 428 (S.D.N.Y. 2017)...................................................................... 26

*Smit v. Isiklar Holding A.S.*,
    354 F. Supp. 2d 260 (S.D.N.Y. 2005)...................................................................... 10

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*,
    450 F.3d 100 (2d Cir. 2006) ........................................................................ 9, 10, 11

*SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161 (S.D.N.Y. 2015) ...................... 21, 31

*Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720  (S.D.N.Y. 2010) ............................ 25

*Travel Leaders Grp., LLC v. Corley*,
    2019 WL 6647319 (S.D.N.Y. Dec. 5, 2019) .......................................................... 10

*Triple H Family Ltd. Partnership v Neal*,
    2018 WL 3650242 (Del. Ch. July 31, 2018)........................................................... 30

*Tymoshenko v. Firtash*, 2013 WL 1234943 (S.D.N.Y. Mar. 27, 2013)...................... 25

*Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd.*,
    2020 WL 4586729  (S.D.N.Y. Aug. 10, 2020) ...................................................... 22

*Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196 (2d Cir. 2001) ................................ 12

*Williams v. Beemiller, Inc.*, 100 A.D.3d 143, 153, 952 N.Y.S.2d 333 (2012) ............. 10

*Wilson v. Merrill Lynch & Co., Inc.,* 671 F.3d 120 (2d Cir. 2011) ............................ 25

**Statutes**
C.P.L.R. § 302,................................................................................................... 9, 17

Plaintiffs Convergen Energy LLC ("**CE**"), L'Anse Warden Electric Company, LLC ("**L'Anse**"), Euroenergy Biogas Latvia Limited and Libra Capital US, Inc. (collectively, the "**Company**") respectfully submit this memorandum of law, together with the Declarations of Fidel Andueza ("**Andueza**") and Dov Gold ("**Gold**") and the exhibits annexed thereto, in opposition to the motion to dismiss of Daniel Escandón  Garcia ("**Escandón** "), Ramon Uriarte Inchausti ("**Uriarte**"), Chipper Investments SCR, SA ("**Chipper**") and Urincha SL ("**Urincha**" and collectively with Escandón , Uriarte and Chipper, the "**Spanish Defendants**").[1]

## PRELIMINARY STATEMENT

The Spanish Defendants are subject to the jurisdiction of this Court, as foreign tortfeasors who conspired with a New York based fraudster and caused injury to Plaintiffs in New York. Nevertheless, the Spanish Defendants take 52 pages to raise a host of meritless arguments in favor of dismissal.

First, they misrepresent the case: "The sale of the Pellet Plant and any of the Spanish Defendants' connections therewith are not the basis for Plaintiffs' claims." Def. Br. at 22.  But all of Plaintiffs' claims are based on the fraudulent sale of the pellet plant, and the Complaint expressly states that "Brooks could not have perpetrated the fraud without funding from the Spanish Investors." Complaint ¶ 77.  The Spanish Defendants' intentional mischaracterization of the Complaint's allegations is improper and baseless.

Second, the Spanish Defendants focus on the geographies of the pellet plant (Wisconsin) and the power plant (Michigan) and the states of incorporation of certain entities (Delaware) to

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Complaint ECF 1.  References to "Def Br." are to the Spanish Defendants' memorandum of law in support of their motion to dismiss.  ECF 122.  References to "Gold Decl." are to the Declaration of Dov B. Gold and "Ex. __" are to exhibits attached to the Gold Declaration, submitted herewith.  References to "Andueza Decl." are to the Declaration of Fidel Andueza, submitted herewith.

suggest that this fraud suit is not centered in New York.  The moving papers conclusorily state ten times that "the center of gravity of the transaction was not New York." *See, e.g.*, Def. Br. at 17. Instead, the Spanish Defendants contend that the center of gravity is "in Wisconsin and perhaps Michigan, but not New York."  Def Br. at 17. This "geographical" sleight of hand distorts the relevant jurisdictional facts that: (i) the fraudulent sale at issue in this lawsuit took place in New York; (ii) the primary perpetrator of the fraud (Brooks) lived and worked and carried out his fraud in New York; (iii) Plaintiffs CE and Libra Capital, victims of the fraud, are based in New York; and (iv) by communicating and negotiating the terms of the pellet plant sale with Brooks, the Spanish Directors intentionally directed conduct towards Plaintiffs in New York in furtherance of Defendant Brooks' fraud.

The Spanish Defendants also disregard the following extensive ties to New York:

- The agreement that the Spanish Defendants entered into, if comparable to the two agreements of the other investors of the pellet plant acquisition, calls for New York as the forum for all disputes (their papers ignore the agreement and they refused to produce it);

- The monies the Spanish Defendants admit were used to purchase the pellet plant were paid to Plaintiff CE in New York (the fact that the monies were "intended" to be temporarily held in New Jersey in escrow is a red herring);

- The very lawyers that the Spanish Defendants utilized for the investment in the pellet plant are based and licensed in New York, not Wisconsin, Michigan, or Delaware;

- The person the Spanish Defendants say solicited them to invest and was involved in the negotiation over terms (Fidel Andueza) was based in New York, not Spain;

- Both individual Spanish Defendants, Uriarte and Escandón, either directly or through an affiliated corporate entity, have an interest in Chipper, the one Spanish Defendant they admit invested in the pellet plant; and

- In connection with the Spanish Defendants' communicating and negotiating the terms of the pellet plant acquisition, the Spanish Defendants emailed and called Brooks while he was in New York (the moving papers conspicuously fail to mention any inbound communications to New York).

For these reasons and as more fully explained below, the Spanish Defendants' motion should be denied in its entirety.

## STATEMENT OF FACTS

### A.  Nature of The Case

The Complaint describes a conspiracy among the Defendants, led by Brooks, to acquire the pellet plant for at least $10 million less than what it was worth and loot Plaintiffs of additional monies for the benefit of the Defendants' new acquisition, including $196,420.00 in cash that went missing. To accomplish this, Brooks made materially false and misleading representations to the Company about: (i) the sale price of the pellet plant; (ii) his relationship to the figurehead buyer (Defendant Merle) and the other Defendants; (iii) the appropriateness of the new Supply Agreement between the power plant and the pellet plant; and (iv) the appropriateness of CE's funding the purchase of a new shredder for the pellet plant on the eve of its sale to Niantic. Complaint ¶ 4, 62. Brooks also intentionally hid from his employer material facts connected to the fraudulent scheme, notably his interest in the buyer (Niantic) and his longstanding relationship with the figurehead of the buyer (Defendant Merle). Complaint ¶ 63.

The Complaint states that "Brooks, after repeated denials, confessed to his fraudulent conduct, saying 'I am very much responsible'" and acknowledged the knowing participation of the other Defendants, including the Spanish Defendants. Complaint ¶ 5.

### B.  The Spanish Defendants' Role in The Fraud

The Complaint alleges that the Spanish Defendants knew that Brooks was a senior officer of the Company and that he was overseeing the sale of the pellet plant while also being a financial stakeholder in the buyer (Niantic): "Brooks solicited the Spanish Investors on the basis that his double-dealing was expected to yield the Pellet Plant at a purchase price several million dollars

below its fair market value. Complaint ¶ 52.  The Spanish Defendants knew that Brooks was using his unique position at the Company to double deal and close a fraudulent transaction to their benefit and to Plaintiffs' detriment.   Complaint ¶ 77. Andueza, a senior employee of Plaintiffs who contacted the Spanish Defendants on Brooks' behest to inquire into whether they would be interested in purchasing the pellet plant, reiterates this point (Andueza Decl. ¶ 16); while in his declaration Uriarte stated that he did not know that "Mr. Brooks was an owner of Niantic," Uriarte does not deny that he knew of Brooks' undisclosed conflicting role as both buyer and seller of the pellet plant.

Consequently, the Spanish Defendants knew of, enabled, and participated in Brooks' fraudulent scheme.  Complaint ¶ 83. Here, participation included funding. Brooks explained that he had raised the funds to buy the pellet plant from Merle and the Spanish Investors. Complaint ¶ 43. Each Spanish Defendant is separately identified in the Complaint as a "co-investor of Niantic in the fraudulent acquisition of the Pellet Plant." Complaint ¶¶ 17-20.

The Spanish Defendants admit that Chipper and Urincha are the "respective corporations" of Escandón and Uriarte, *i.e.*, their personal investment vehicles.  Def. Br. at 1. The Spanish Defendants admit that Chipper funded a portion of the pellet plant purchase price.  Def. Br. at 4, 8.  Two of the Spanish Defendants have an interest in Chipper; Urincha and an entity controlled by Escandón are directors.  Andueza Decl. ¶ 21. Their status as directors suggests that they each have a financial stake in Chipper, all of which is subject to discovery.   Moreover, Brooks acknowledged that "Chipper is an entity through which Mr. Uriarte and Mr. Escandón have lent money" for the purchase of the pellet plant. Gold Decl. ¶ 7. The Complaint alleges the same.

Complaint ¶¶ 19, 20. The suggestion is reaffirmed by Brooks' admission that Uriarte and Escandón invested in the pellet plant.[2]

The fact that the Spanish Defendants invested jointly (through Chipper) is consistent in many respects with the declarations of Uriarte and Escandón. Both vetted, negotiated, rejected and then subsequently accepted the terms proposed by Brooks jointly, not individually.  Declaration of Ramon Uriarte Inchausti (ECF 125) ("Uriarte Decl.") and Declaration of Daniel Escandón Garcia (ECF 124) ("Escandón Decl.").   For example, the Spanish Defendants report that in November 2019, "Uriarte and Escandón *jointly* discussed the terms" proposed by Brooks and "they *jointly* decided that the new terms were unacceptable." Def. Br. at 7 (emphasis added). Whether the Spanish Defendants invested separately or jointly, the point is, "Brooks could not have perpetuated the fraud without funding from the Spanish Investors." Complaint ¶ 77.

The Spanish Defendants also knew that their funding alone was insufficient to purchase the pellet plant. The Complaint states that each Defendant had to know of Brooks' personal guaranty of a more than $2 million loan used to purchase the pellet plant. Complaint ¶ 54. And each had to know that Brooks signed that guaranty while employed at the Company but without telling the Company:

> The conflict of interest could not have been more pronounced and yet not one of the defendants raised the issue with the Company - presumably because to do so would have revealed and undone the fraudulent scheme and the opportunity to "buy" an asset for many million dollars less than what it was worth.

*Id*.  When asked by the Company who benefitted from the below market transaction, Brooks stated, "at this point myself, Greg [Merle], and [the Spanish Investors]."  Complaint ¶ 43.

---

[2] *See* Gold Decl. ¶ 7, citing to Brooks' answer to interrogatory no. 4: "Ramon Uriarte Inchausti, Daniel Escandón Garcia, and Chipper Investment SCR, SA are direct or indirect lenders to Cypress Lane, L.L.C. ("Cypress"), the indirect owner of [Defendant Convergen Energy WI, LLC]."

### C. Personal Jurisdiction Over the Spanish Defendants

The Complaint sets forth the following basis for jurisdiction over Defendants, including the Spanish Defendants:

> This Court has personal jurisdiction over defendants because each participated in and benefitted from the fraudulent scheme orchestrated and consummated in New York where Brooks was employed, and where victims of the fraudulent scheme – the Company – is headquartered. Upon information and belief, each defendant wired money to New York, directly or indirectly through Niantic, to consummate the fraudulent transaction. Further upon information and belief, each of the defendants had extensive contacts with Brooks while he was in New York and employed by the Company in New York as part of the fraudulent scheme set forth in this complaint.

Complaint ¶ 25; *see also* Complaint ¶ 52.

The Spanish Defendants acknowledge using the law firm Clemente Mueller, P.A., in connection with the investment in the pellet plant. Uriarte Decl. ¶ 30.  That law firm represented the buyer, Niantic, in the sale.  Complaint ¶ 40.  Clemente Mueller has offices in Manhattan and the lawyers involved are licensed in New York.  Gold Decl. ¶ 10.  The closing of the pellet plant sale took place at the Company's Manhattan headquarters. Andueza Decl. ¶ 20.

One of the things the Clemente Mueller law firm may have done in connection with the sale is prepare all of the agreements for those funding the purchase of the pellet plant, including the Spanish Defendants.  Gold Decl. ¶¶ 3-6, 8, 10.  Plaintiffs received in discovery the agreements of two other identically situated investors in the pellet plant – Brooks' mother, Elmerina Brooks, and a Spaniard not named in this lawsuit – and both of those agreements are identical except for the names of the investors and the amounts invested.  Gold Decl. ¶ 3-6. Clemente Mueller is identified in both of those agreements as counsel for purposes of notice.  *Id.*  More importantly, both of those agreements establish New York as the forum for any disputes and are subject to New York law. *Id.* The Spanish Defendants' declarations did not mention the agreement or agreements

that Chipper entered into in connection with the pellet plant acquisition and they expressly refused to produce any such agreements when Plaintiffs asked. Gold Decl. ¶ 8. Production of Chipper's agreement(s) would have indicated whether the Spanish Defendants (through Chipper) also agreed to jurisdiction in New York like the other Spanish investor and Brooks' own mother.

Instead of referencing Chipper's investment agreement, the Spanish Defendants' motion papers point to the forum selection clauses of the Acquisition Agreement and Supply Agreement. Plaintiffs have challenged the validity and formation of those documents in this litigation. The only agreement that Plaintiffs entered into in connection with the pellet plant sale, outside the influence of the tainted and compromised individual defendants (Brooks, Mikkelson and Hansen) and after Brooks' fraudulent scheme was uncovered, is the Amended Closing Statement dated February 21, 2020. That document calls for New York as the forum for any disputes arising out of the Closing Statement.

### D. Areas of Needed Discovery

The Spanish Defendants claim that they do not engage in business in New York and the United States. They did not indicate whether they engage in international business outside of the United States and the extent of that business. This is an area ripe for discovery.

The Spanish Defendants did not mention the actual agreement that Chipper entered into as an investor in the pellet plant. As stated above, there is a likelihood that Chipper entered into an agreement identical to other investors in the pellet plant. Those agreements selected New York as the forum. This is critical discovery that the Spanish Defendants have already rebuffed.

The Spanish Defendants contend that they did not know of Brooks' interest in the pellet plant or that the purchase price for the pellet plant was depressed. Def. Br. at 8. While they acknowledge receiving solicitations and entering into negotiations for the pellet plant, the Spanish

Defendants never disclosed the terms of the investment opportunity presented or the areas of negotiation in which they engaged. Discovering how the investment was pitched and what was said about Brooks' role and the price of the pellet plant – as well as the scope of the Spanish Defendants' communications with Brooks about the acquisition – is also critical. Among other things, it speaks to the Spanish Defendants' intentional conduct directed at Plaintiffs in New York.

The Spanish Defendants other than Chipper deny having an interest in the pellet plant. Def. Br. at 8. This is contested and should be subject to discovery. Areas to be explored include the relationship between each Spanish Defendant and Chipper, the source of Chipper's funds, how Chipper's funds were used to "pay" Plaintiffs for the pellet plant, and who represented Chipper in the transaction.

## <u>ARGUMENT</u>

When deciding a motion to dismiss under Federal Rule of Procedure Rule 12(b), a court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LaFaro v. New York Cardiothoracic Group, PLLC,* 570 F.3d 471, 475 (2d Cir. 2009). The showing the plaintiff must make to survive a motion to dismiss depends on the procedural stage of the litigation. *Fica Frio, Ltd. v. Seinfeld*, 434 F. Supp. 3d 80, 86 (S.D.N.Y. 2020). Where, as here, discovery has not yet begun, the plaintiff must allege facts constituting only a *prima facie* showing of personal jurisdiction. *Dorchester Fin. Secs., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013). In evaluating whether the requisite showing has been made, a district court construes the pleadings and any supporting materials in the light most favorable to the plaintiff. *Chloé v. Queen Bee of Beverly Hills, LLC,* 616 F.3d 158, 163 (2d Cir. 2010).

If the Court concludes that discovery is necessary in order to resolve any factual questions that bear on jurisdiction, the proper course is for the Court to deny the motion to dismiss without

prejudice and order jurisdictional discovery.  *See, e.g.*, *Regenlab USA LLC v. Estar Techs. Ltd.*, 2017 WL 3601304, at *6 (S.D.N.Y. Aug. 17, 2017) (ordering jurisdictional discovery, denying motion to dismiss without prejudice); *Biro v. Nast*, 2012 WL 3262770, at *16 (S.D.N.Y. Aug. 10, 2012) (same); *Allojet PLC v. Vantgage Assocs.*, 2005 WL 612848, at *10 (S.D.N.Y. Mar. 15, 2005) (same).

## I.     THE COURT HAS PERSONAL JURISDICTION

A court will deny a 12(b)(2) motion to dismiss where the plaintiff makes a showing that: (i) the forum's long-arm statute permits personal jurisdiction, and (ii) personal jurisdiction comports with due process protections under the Constitution.  *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015).  Here, the Complaint properly alleges CPLR § 302(a)(3)(ii) as a basis for personal jurisdiction over the Spanish Defendants.

### A.  New York's Long Arm Statute Provides Jurisdiction

Under C.P.L.R. § 302(a)(3), "a court may exercise personal jurisdiction over any non-domiciliary who, either in person or through an agent . . . commits a tortious act without the state causing injury to person or property within the state . . . if he expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."  C.P.L.R. § 302(a)(3)(ii).  A district court looks to five factors when determining whether it has personal jurisdiction under CPLR 302(a)(3)(ii): (i) that the defendant committed a tortious act outside the state; (ii) that the cause of action arises from that act; (iii) that the act caused injury to a person or property within the state; (iv) that the defendant expected or should reasonably have expected the act to have consequences in the state; and (v) that the defendant derived substantial revenue from interstate or international commerce.  *Sole Resort, S.A.*

*de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 106 (2d Cir. 2006).  Each of these five factors

are met here.[3]

### 1.  The Claims Arise from the Spanish Defendants' Tortious Acts Committed Outside New York

"The first two elements are straightforward."  *Travel Leaders Grp., LLC v. Corley*, 2019

WL 6647319, at *3 (S.D.N.Y. Dec. 5, 2019).  To satisfy the first two elements, a plaintiff need

only state a colorable cause of action in tort.  *See Sole Resort, S.A. de C.V.*, 450 F.3d at 106.  To

be colorable, allegations must merely be not "inherently implausible."  *Holmes v. City of New*

*York*, 2020 WL 918611, at *9 (S.D.N.Y. Feb. 26, 2020) (quoting *Bank Brussels Lambert v. Fiddler*

*Gonzalez & Rodriguez*, 305 F.3d 120, 126, n. 2 (2d Cir. 2002)); *see also Gucci Am., Inc. v.*

*Frontline Processing Corp.*, 721 F. Supp. 2d 228, 241 (S.D.N.Y. 2010) (noting the "limited

burden" for establishing a cause of action for personal jurisdiction purposes).

Here, the Complaint alleges that the Spanish Defendants, while in Spain, aided and abetted

Brooks' fraud and breaches of fiduciary duty.  The Spanish Defendants conspired with and hatched

a scheme directed by Brooks to execute the sale of the pellet plant at below-market value – to their

benefit and the secret detriment of Plaintiffs.  Complaint ¶¶ 74-75, 77, 80-85.  Specifically, the

---

[3] To the extent the Court finds that factual questions bearing on jurisdiction cannot be resolved based upon the record on this motion, Plaintiffs ask the Court to order jurisdictional discovery.  *See Regenlab USA LLC*, 2017 WL 3601304, at *4 (noting that ordering  jurisdictional discovery was appropriate where "plaintiff may be able to establish jurisdiction if given the opportunity to develop a full factual record."); *Williams v. Beemiller, Inc.*, 100 A.D.3d 143, 153, 952 N.Y.S.2d 333, 340 (2012) (noting that for a court to order jurisdictional discovery a plaintiff "must only set forth[ ] a sufficient start, and show [ ] their position not to be frivolous"; citing authorities); *see also In re Sledziejowski*, 2016 WL 6155929, at *10 (Bankr. S.D.N.Y. Oct. 21, 2016) (jurisdictional discovery "is typically permitted where the facts necessary to establish personal jurisdiction ... lie exclusively within the defendant's knowledge."); *Smit v. Isiklar Holding A.S.*, 354 F. Supp. 2d 260, 263 (S.D.N.Y. 2005) ("[A] court may order limited discovery targeted at the missing jurisdictional elements, if plaintiff has shown that such an exercise would serve to *fill any holes* in its showing."); *Allojet PLC v. Vantgage Assocs.*, 2005 WL 612848, at *7 (S.D.N.Y. Mar. 15, 2005) (ordering jurisdictional discovery where plaintiff did not make out a prima facie case for jurisdiction because plaintiff made a "sufficient start" to establishing jurisdiction; citing authorities).

As set forth below, Plaintiffs have, at minimum, made such a "sufficient start" and, given that the jurisdictional facts at issues here lie predominately within the Spanish Defendants' knowledge, Plaintiffs should be entitled to jurisdictional discovery to fill in any holes in their showing.

Complaint alleges that the Spanish Defendants, while in Spain, communicated with Brooks and Andueza (at Brooks' behest and direction) about the purchase of the Pellet Plan and agreed to finance the acquisition, having full knowledge that Brooks was Plaintiffs' employee and was himself investing in the deal – and thus was secretly and fraudulently on both sides of the acquisition.   Complaint ¶ 52; Andueza Decl. ¶19. Then, from overseas and in furtherance of Brooks' fraudulent scheme, Chipper, and through Chipper, defendants Escandón, Uriarte, and Urincha, wired money for the purchase of the pellet plant, consummating the sale. Complaint ¶ 52; Andueza Decl. ¶ 21.[4]

Nothing more is required in order to make a *prima facie* showing of the Spanish Defendants' commission of a tortious act outside of New York.  *See Sole Resort, S.A. de C.V.*, 450 F.3d at 106 (tort of fraudulent inducement conferred specific jurisdiction on defendant where defendant sent plaintiff fraudulent business plan from outside New York); *Related Companies, L.P. v. Ruthling*, 2017 WL 6507759, at *4 (S.D.N.Y. Dec. 18, 2017) (allegations concerning financial misconduct gave rise to colorable tort of aiding and abetting fraud); *Fantastic Graphics Inc. v. Hutchinson*, 2010 WL 652987, at *3 (E.D.N.Y. Feb. 22, 2010) (for jurisdictional purposes, even "thin" allegations consisting of merely "four paragraphs of the complaint's eighty-four factual paragraphs" were sufficient to make a *prima facie* showing of the commission of a tortious act outside of New York).

---

[4] For jurisdictional purposes, the conduct of Chipper can be imputed to Uriarte and Escandón by their having control of Chipper.  *See Chloe*, 616 F.3d at 169 (imputing corporate conduct and contacts to corporate employee for jurisdictional purposes); *Ramiro Aviles v. S & P Glob., Inc.*, 380 F. Supp. 3d 221, 261 (S.D.N.Y. 2019) (corporation's jurisdictional acts will be imputed to corporate officer where officer "played a part in the [corporate] activities that gave rise to the action").

### 2.   The Spanish Defendants' Tortious Acts Injured Plaintiffs In New York

In a case involving fraud, "the critical question is . . . where the *first effect* of the tort was located that ultimately produced the final economic injury." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 792 (2d Cir. 1999) (emphasis added); *id.* ("the situs of injury is New York when the original reliance or other first event causing the injury occurs in New York"). In *Bank Brussels*, a Belgian bank sued a Puerto Rican law firm for omissions of key information in an opinion letter. The Second Circuit held that the situs of the injury was in New York, where the bank disbursed funds in reliance on that opinion letter. *See id.* at 795; *see also Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897, 900 (2d Cir. 1980) (plaintiff's injury occurred in New York because that is where Plaintiffs were located when they received and relied upon defendants' misrepresentations); *Fica Frio, Ltd.*, 434 F. Supp. 3d at 92 (location of injury was New York because plaintiff acted in reliance on defendants' misrepresentations while in New York).

Here, the situs of the fraud is New York – which the Spanish Defendants do not challenge. Plaintiffs (other than Euroenergy Biogas Latvia Limited and L'Anse) are New York-based entities that received and relied on Brooks' misrepresentations in New York.  In reliance on Brooks' misrepresentations, Plaintiffs  were duped into signing agreements in New York which led to the sale of the pellet plant at below market value as a result of Brooks' secret, self-dealing scheme, furthered by the Spanish Defendants' fraudulent concealment of his scheme and consummated by the Spanish Defendants' investment. Complaint ¶¶ 8, 11, 52; Andueza Decl. ¶¶ 19-21.[5]

---

[5] Defendants reliance on *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196 (2d Cir. 2001) for the proposition that Plaintiffs were not injured in New York is unavailing. There, unlike here, the alleged injury was not the result of fraud but of a failure to pay for services, and thus, unlike here, the first effect of the defendant's tortious conduct was not plaintiffs' New York-based reliance or inducement.  *See id.* at 209.

### 3.   The Spanish Defendants Should Have Expected Consequences In New York

The Spanish Defendants maintain that they could not have reasonably expected their tortious conduct would have consequences in New York because the pellet plant was located in Wisconsin and owned by a company incorporated in Delaware with payment purportedly incidentally wired to New York.  *See* Def. Br. at 28-29.  Not so.

A defendant should reasonably expect that their actions will have consequences in New York where there is a "purposeful availment of the benefits of the laws of New York such that the defendant may reasonably anticipate being hailed into New York court[.]"  *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 241 (2d Cir. 1999).  A defendant engaging in intentionally tortious conduct towards a New York-based party should reasonably expect that their conduct will have consequences in New York.  *See Related Companies, L.P.*, 2017 WL 6507759, at *5 (by directing misrepresentations to New York, defendants should have expected their conduct to have consequences in New York); *Lewis v. Madej*, 2015 WL 6442255, at *4 (S.D.N.Y. Oct. 23, 2015) (by specifically targeting plaintiffs who were domiciled in New York, defendant should have expected its acts to have consequences in New York).  Whether an expectation is reasonable "is objective, rather than subjective," *i.e.*, the test is whether a reasonable person in the position of the Spanish Defendants would have expected consequences in New York.  *Related Companies, L.P.*, 2017 WL 6507759, at *5.

Here, the facts show that the Spanish Defendants should reasonably have expected that their investment in the pellet plant would have consequences in New York.  For example:

- Brooks' initial solicitation of the Spanish Defendants through Andueza occurred when Brooks was in New York.  Andueza Decl. ¶ 8.

- Uriarte knew that Brooks and Andueza were New York-based employees operating out of New York.  Andueza Decl. ¶11.

- Between May and December 2019, Uriarte and Escandón communicated directly with Brooks in New York.  Andueza Decl. ¶ 14.

- When Uriarte and Escandón communicated with Andueza in connection with the purchase of the pellet plant, they knew that Andueza was functioning as a go-between for his New York-based colleague, Brooks, and was working at Brooks' behest.  Andueza Decl. ¶ 14.

- Uriarte and Escandón knew that Brooks was secretly on both sides of the deal and that Brooks was seeking to sell the pellet plant to himself for below-market value.  Complaint ¶¶ 51-52; Andueza Decl. ¶ 19.

- Defendant Chipper's January 27, 2020 wire transfer in connection with the purchase of the pellet plant was sent to New York.  Escandón Decl. ¶ 21.

- The closing of the pellet plant sale occurred in Plaintiffs' New York office and the relevant agreements were signed by Andueza, Plaintiffs' New York-based executive.  Andueza Decl. ¶ 20.

- The Spanish Defendants agreed to invest in connection with the purchase of the pellet plant based on guarantees by Brooks, which called for New York jurisdiction. Gold Decl. ¶¶ 3-6, 8.

The Spanish Defendants' moving papers conspicuously omit reference to the agreements reflecting their investment and fail to attach these agreements. While they reference the solicitation and negotiation process regarding their investment, they fail to disclose how the investment was documented or the terms of their investment, particularly the forum selection provision.  Indeed, an unnamed Spanish investor's agreement calls for New York jurisdiction.  Presumably, the other Spanish Defendants entered into comparable if not identical agreements.  Plaintiffs have asked for these documents but were rebuffed by the Spanish Defendants. Gold Decl. ¶¶ 6, 8.

In any event, the facts already in the record demonstrate intentional conduct directed towards New York and made in furtherance of Brooks' fraudulent scheme, which should have caused the Spanish Defendants to reasonably expect that they would be subject to jurisdiction in New York.  *See In re Sumitomo Copper Litig.*, 120 F. Supp. 2d 328, 341 (S.D.N.Y. 2000) (intentionally engaging in fraudulent conduct directed toward New York entity made it reasonable

for defendants to expect to be subject to jurisdiction in New York); *Nat'l Westminster Bank PLC v. Ret. Care Assocs., Inc*., 1999 WL 239677, at \*3 (S.D.N.Y. Apr. 23, 1999) (defendant should have expected its conduct to have consequences in New York when defendant tortuously interfered with a contract involving a New York-based entity).

Moreover, New York was at the center of the fraudulent transaction, such that the Spanish Defendants should have known that their conduct would have had consequences in New York. Plaintiffs (other than Euroenergy Biogas Latvia Limited and L'Anse) have their principal places of business in New York. Complaint ¶¶ 8, 11; Andueza Decl. ¶ 3-4. Brooks was a resident of New York, and Brooks and Andueza both worked out of the Company's New York office. Complaint ¶¶ 12, 25, 29; Andueza Decl. ¶¶ 1-2,4-5,8, 11. Plaintiffs' most senior management is based in New York. The communications the Spanish Defendants had with Brooks occurred when Brooks was in New York. Complaint ¶ 52; Andueza Decl. ¶¶ 8, 14. Brooks initiated the scheme to sell the pellet plant while in New York. Complaint ¶¶ 33-36; Andueza Decl. ¶ 8. The sham meeting set up by Brooks with Merle and Plaintiffs in November 2019 purportedly to discuss the sale of the Pellet was in New York. And the Acquisition Agreement was fraudulently entered into, with Brooks steering the deal and Andueza signing it, while they were both in New York. Complaint ¶¶ 33-37; Andueza Decl. ¶¶ 14, 20. In other words, the Spanish Defendants knew they were furthering the perpetration of a fraud against New York-based companies hatched by a New York-based employee of those companies.

While the bulk of the Spanish Defendants' jurisdictional arguments are inapplicable here, as they concern bases for personal jurisdiction not set forth in the Complaint (*see* Def. Br at 10-21), the Spanish Defendants raise a number meritless arguments that seek to minimize their purposeful conduct directed to New York. For example, the Spanish Defendants attempt to

separate themselves from Chipper, maintaining that Uriarte, Escandón and Urincha lacked any involvement in the pellet plant acquisition because purportedly only Chipper invested in the sale. Def. Br. at 15, 21.  This is disingenuous.  Uriarte, Escandón and Urincha are intimately related to and in fact control Chipper.  According to Spanish public records, Chipper is managed by a board of directors consisting of three directors, two of which are directly affiliated with the Spanish Defendants: Uriarte's entity Urincha and an entity of Escandón's.  Andueza Decl. ¶ 21.

Further, it is of no matter that the Spanish Defendants were not physically in New York. It is black letter law that personal jurisdiction cannot be avoided just because a defendant did not physically enter the forum state, particularly where, as here, the Spanish Defendants purposefully directed their activities to New York.  *See, e.g.*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *Chloé*, 616 F.3d at 169 ("a defendant need not be physically present in New York to transact business there" for purposes of New York jurisdiction).

The cited authorities the Spanish Defendants rely on for the proposition that they purportedly did not avail themselves of the benefits of New York or directed their conduct towards New York (albeit under the CPLR's "transacts business" test for jurisdiction, which is not at issue here) are inapposite here.  For example, in *Hill v. HSBC Bank* 207 F. Supp. 3d 333 (S.D.N.Y. 2016), although the court recognized that communications to New York or sending money to New York by themselves may be insufficient to confer jurisdiction, the court distinguished such "incidental" contacts from communications concerning the negotiation or execution of a contract in New York – acts which would in fact confer jurisdiction and which are conceded here.  *See id.* at 339.

Contrary to what the Spanish Defendants' set forth, *Palace Exploration. Company v. Petroleum Development Company*, 41 F. Supp. 2d 427 (S.D.N.Y. 1998) supports the exercise of

jurisdiction where the situs of injury was New York; there, the plaintiffs in New York acted in reliance on defendants' fraudulent conduct directed to New York. *See id.* at 436. Moreover, defendants there, like the Spanish Defendants here, should have reasonably expected their tortious conduct to have consequences in New York because they directed their fraudulent conduct to plaintiffs they knew were in New York. *See id.* ("this is a case where the defendant made a specific representation to the plaintiff in New York in order to induce the plaintiff to enter into a contract"). Likewise as to the Spanish Defendants' reliance on *Digital Lab Sols., LLC v. Stickler*, 2007 WL 700821 (S.D.N.Y. Mar. 7, 2007), which found that, based on similar facts, the exercise of jurisdiction was proper under CPLR 302(a)(3)(ii) on all but the "substantial revenue" factor. *See id.* at *4 (by email and telephone, California defendant fraudulently induced New York plaintiff to enter into agreement; substantial revenue not found because defendant showed he made just a few thousand dollars over multiple months).[6]

### 4.   Defendants Derive Substantial Revenue from International Commerce

There is no bright-line rule regarding when a specific level of revenue becomes substantial for purposes of 302(a)(3)(ii). *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 468 (S.D.N.Y. 2008). This prong represents a "bigness requirement," designed to protect local businesses by assuring that the defendant is economically big enough to defend suit in New York. *Related Companies, L.P.*, at *7. Indeed, a defendant's representation that it conducts business on

---

[6] The Spanish Defendants' other cited authorities are unavailing. *See, e.g.*, *Doe v. Bausch & Lomb, Inc.*, 443 F. Supp. 3d 259, 268 (D. Conn. 2020) (rather than allege facts setting forth basis for jurisdiction, plaintiff conclusorily maintained that jurisdiction should be exercised); *Hollenbeck v. Comeq, Inc.*, 2007 WL 2484299, at *7 (N.D.N.Y. Aug. 28, 2007) (Spanish Defendants misread this case, as jurisdiction was not denied and jurisdictional discovery was ordered as plaintiffs presented a colorable claim for jurisdiction); *Gerstle v. Nat'l Credit Adjusters, LLC*, 76 F. Supp. 3d 503, 510 (S.D.N.Y. 2015) (no specific jurisdiction because plaintiffs did not allege that defendants took "any actions" as to New York, unlike here); *Gerffert Co., Inc., Stephen Panigel v. Fratelli Bonella, SRL*, 49 Misc. 3d 1208(A), 26 N.Y.S.3d 724 (N.Y. Sup. Ct. 2015) (plaintiffs there failed to describe the conduct that would otherwise subject defendants to jurisdiction, for example that defendant "orchestrated in some unstated fashion, an undescribed 'series of concerted acts").

an international scale is enough to satisfy this element. *See Holbrook Plastic Pipe Supply, Inc. v. Jackson*, 2006 WL 8441408, at *6 (E.D.N.Y. Jan. 3, 2006) (that defendant's website referenced that it did business in numerous countries demonstrated that it generated substantial revenue from international commerce). Critically, "dismissal for lack of personal jurisdiction is inappropriate under 302(a)(3)(ii), even where there is no proof that a defendant derives substantial revenue from interstate or international commerce, where that knowledge is peculiarly under the control of [the defendant], and may come to light in the course of [s]ubsequent discovery." *Related Companies, L.P.*, 2017 WL 6507759, at *5.

There is nothing local or small about the Spanish Defendants such that they cannot defend themselves in New York. Indeed, that the Spanish Defendants invested hundreds of thousands of dollars in the purchase of the pellet plant demonstrates their financial capacity. Andueza Decl. ¶ 21. Uriarte is a sophisticated international businessman. Andueza Decl. ¶ 9-10. Indeed, in 2016, Uriarte, through Urincha, invested over $2 million in a shipping investment. Andueza Decl. ¶ 10. The Spanish Defendants so much as admit this when they state that Escandón and Uriarte "have collaborated on multiple business opportunities over the years" (Def. Br. at 4) and that "Andueza would propose investment opportunities in Spain and Europe for Mr. Uriarte." Def. Br. at 5. Likewise as to Chipper and Urincha. *See* Def. Br. at 4 ("Chipper's primary business is investment in the share capital of unlisted non-financial corporations, which it conducts in Spain.").

Such allegations are sufficient to establish a *prima facie* showing that the Spanish Defendants derive substantial revenue from international commerce. *See Palace Expl. Co*, 41 F. Supp. 2d at 436 (that party paid under $400,000 pursuant to a commercial agreement demonstrated that it derived substantial revenue from interstate or international commerce); *see also Lewis*, 2015 WL 6442255, at *5 (even in the absence of a showing that corporate defendant was legitimate

business, that the company held itself out to conduct international or interstate revenue, including by soliciting business through its website, satisfied substantial revenue test); *Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228, 242 (S.D.N.Y. 2010) (substantial revenue demonstrated because plaintiff "allege[d] that [corporate defendants] h[e]ld themselves out as national, if not international, companies").[7]

### B.  Personal Jurisdiction Over the Spanish Defendants Comports with Due Process

Exercising jurisdiction over a defendant comports with due process when there is a two-part showing: (i) that a defendant has "certain minimum contacts" with the relevant forum, and (ii) that the exercise of jurisdiction is reasonable in the circumstances. *Eades*, 799 F.3d at 168-69. Both due process prongs are met here.

#### 1.  The Spanish Defendants Have Minimum Contacts With New York

The Spanish Defendants maintain that they do not have the purported required minimum contacts with New York because they do not reside in, own property, or otherwise spend time in New York; nor have they  "commenced any suit, registered an office, been qualified or licensed to do business, paid  or been required to pay taxes, employed any officers or agents, leased or purchased any property, acquired a telephone number, or engaged in any other activity reasonably expected of a business venture under the protection and permission of domestic laws."  Def. Br. 31.

The Spanish Defendants ignore the contacts that are relevant to the causes of action alleged here.  The basis for the claims against the Spanish Defendants here is the intentional tortious activity they directed at Plaintiffs, which they reasonably should have expected to have

---

[7] The Spanish Defendants' reliance on *Ronar, Inc. v. Wallace*, 649 F. Supp. 310 (S.D.N.Y. 1986) is untethered to the facts of this case. There, the court rightfully found that a Florida-based retiree's income of $6500 a year was not substantial for the purpose of subjecting him to jurisdiction.  This is a far cry from the Spanish Defendants who, for example, are accustomed to making multi-million international investments.

consequences in New York, and which readily demonstrate their "minimum contacts" with New York. *See Calder v. Jones*, 465 U.S. 783, 791 (1984) (exercise of jurisdiction comports with due process where a defendant's out-of-forum intentional conduct can foreseeably cause injury to a plaintiff in the forum; "An individual injured in [forum] need not go to [outside forum] to seek redress from persons who, though remaining in [outside forum], knowingly cause the injury in [the forum]."); *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 173 (2d Cir. 2013) (due process is satisfied if the defendant "expressly aimed its conduct at the forum"; tortious use of banking system constituted intentional conduct aimed at forum).

Moreover, the actions of the Spanish Defendants' co-conspirators in New York – Brooks, Merle, and Niantic for example – are attributable to the Spanish Defendants such that the Spanish Defendants "purposefully availed" themselves of New York's laws through them. *See Maersk, Inc. v. Neewra, Inc.*, 554 F. Supp. 2d 424, 445 (S.D.N.Y. 2008) (the actions of a defendant's co-conspirators in the forum state were attributable to the defendant and formed sufficient contacts giving rise to jurisdiction); *In re Sumitomo Copper Litig.*, 120 F. Supp. 2d at 342 (defendants' participation in a conspiracy to impact prices on the New York copper market were "intentional, and allegedly tortious, actions" that were "expressly aimed at" New York and thus consistent with Due Process); *Global Intellicom, Inc. v. Thomson Kernaghan & Co.*, 1999 WL 544708, at *19 (S.D.N.Y. July 27, 1999) (Canadian defendant who participated in conspiracy to depress stock value of a business in New York had sufficient contacts with New York for the purpose of Due Process).[8]

---

[8] The Spanish Defendants' cited authorities relied on for the proposition that the test for minimum contacts are purportedly not met here are strikingly inapplicable. *See In re Amaranth Nat. Gas Commodities Litig.*, 587 F. Supp. 2d 513, 537 (S.D.N.Y. 2008) (defendants did not engage in purposeful conduct directed to New York and consequences of tortious conduct were not foreseeable in New York, as the injured plaintiffs were a putative class of investors and not, like here, specific corporate entities located in New York whom the Spanish Defendants sought to defraud); *In re Sledziejowski*, 2016 WL 6155929, at *10 (jurisdictional discovery ordered because "[plaintiff] lacks knowledge about the relevant facts (as compared with the counterparties to these transactions), and that the facts about

Defendants' cited authorities for the proposition that the Spanish Defendants' contacts with New York were not purportedly related to Plaintiffs' claims or that, by their contacts with New York, the Spanish Defendants could not have expected to be subject to jurisdiction fare no better. *See, e.g.*, *Bensmiller v. E.I. Dupont de Nemours & Co., State of La.*, 47 F.3d 79, 84 (2d Cir. 1995) (not foreseeable that defendants would be subject to jurisdiction where plaintiffs injuries arose not out of intentional acts but out of unintentional conduct based on defective medical device, and defendants had no other contacts with the forum); *AmTrust Fin. Servs., Inc. v. Lacchini*, 260 F. Supp. 3d 316, 333 (S.D.N.Y. 2017) (unlike here, defendant's tortious conduct was directed at Italy, not New York, by defendant's attempt to "corrupt two arbitrations in Milan that applied Italian law to facts relating to the Italian medical malpractice insurance market."); *Millennium Access Control Tech., Inc. v. On the Gate, LLC*, 2017 WL 10445800, at *11 (E.D.N.Y. Feb. 14, 2017) (no connection between defendants' alleged conduct and plaintiff's injury); *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 170 (S.D.N.Y. 2015) (unlike here, defendants' alleged conduct was not related to plaintiffs' claims); *Porina v. Marward Shipping Co.*, 2006 WL 2465819, at *7 (S.D.N.Y. Aug. 24, 2006) (no minimum contacts because no conduct intentionally directed to New York; action arose out of accidental boating accident and defendants' contacts had no connection to claims asserted).[9]

---

[defendants'] contacts relevant to personal jurisdiction lie within [defendants'] knowledge."); *McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 886 (2011) (defendant company did not have minimum contacts with forum because case was a products liability action arising out of workplace injury, and defendant's contact with plaintiff in forum was therefore unintentional); *Hau Yin To v. HSBC Holdings PLC*, 2017 WL 816136, at *6 (S.D.N.Y. Mar. 1, 2017) (unlike here, "[n]one of the business activities allegedly conducted by the Foreign Defendants occurred in New York. Plaintiffs do not allege that any contracts … were negotiated or executed in New York.").

[9] *See also Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd.*, 2020 WL 4586729, at *1, *15 (S.D.N.Y. Aug. 10, 2020) (previously ordering "jurisdictional discovery as to the issue of personal jurisdiction, so as to enable the Court to resolve that motion"; use of New York-based bank account was only contact with forum and all other tortious conduct directed at plaintiffs occurred outside New York); *In re Lehman Bros. Holdings Inc.*, 535 B.R. 608, 622 (Bankr. S.D.N.Y. 2015) (no conduct directed to forum and defendant's only connection to forum was incidental location of plaintiff); *Dejana v. Marine Tech., Inc.*, 2011 WL 4530012, at *6 (E.D.N.Y. Sept. 26, 2011) (products

### 2.   The Exercise of Jurisdiction Is Reasonable

Where a plaintiff makes the threshold showing of the minimum contacts required for the first due process prong, a defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. *Bank Brussels Lambert*, 305 F.3d at 129. It is the exceptional situation where minimum contacts are met, but the exercise of jurisdiction is unreasonable. *Id.*

The Spanish Defendants have failed to meet this burden, raising a host of meritless arguments. <u>First</u>, the Spanish Defendants cite the burden of having to travel from Spain to New York to defend themselves here. Def. Br. at 38-39. However, where the Spanish Defendants are executives and international businesses, the burden of litigating in a foreign forum is of no matter, especially in light of the conveniences of modern communication and travel. *See Chloé*, 616 F.3d at 173 (generalized complaints of inconvenience arising from having defendant defend himself from suit in New York do not add up to "a compelling case that the presence of some other considerations would render jurisdiction unreasonable"); *Bank Brussels Lambert*, 305 F.3d at 129–30 ("Even if forcing the defendant to litigate in a forum relatively distant from its home base were found to be a burden, the argument would provide defendant only weak support, if any, because the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago."). Moreover, the Spanish Defendants' purported burden of litigating here is outweighed by Plaintiffs' burden of having to travel to an inconvenient forum to obtain relief. *See Lewis v. Madej*, 2015 WL 6442255, at *7 (noting that plaintiffs, "as victims

---

liability action arising out of a boating accident was not based on intentional conduct by defendant directed at plaintiff in forum).

of intentionally tortious conduct, should not have to travel to an inconvenient forum to obtain relief.").

Second, the Spanish Defendants incorrectly maintain that it would be unreasonable for the Court to exercise jurisdiction because New York does not have a sufficient interest in the adjudication of this matter. Def. Br. at 39-40.  As an initial matter, the issue is not whether New York has a sufficient interest in this case but whether it has any interest in it. *See Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 100 (S.D.N.Y. 2015) ("courts do not compare the interests of the sovereigns but rather determine whether the forum state *has* an interest.").  And significantly, the Complaint alleges that corporate residents of New York were defrauded and "New York has a manifest interest in providing effective means of redress for its residents." *Eades*, 799 F.3d at 169. And furthermore, Plaintiffs claims against the Spanish Defendants arise out of New York common law, and New York's interest in resolving questions pertaining to its own law "weighs in favor of the reasonableness of the [C]ourt's exercise of jurisdiction over" the Spanish Defendants. *Foot Locker Retail, Inc. v. SBH*, Inc., 2005 WL 91306, at *7 (S.D.N.Y. Jan. 18, 2005).[10]

Third, the Spanish Defendants' claim that Plaintiffs do "not have a uniform interest in obtaining convenient and effective relief in New York" is baseless. Def. Br. at 40.  Plaintiffs chose to bring this matter in New York. *See Mago Int'l LLC v. LHB AG*, 2014 WL 2800751, at *7 (S.D.N.Y. June 18, 2014) ("presumably [plaintiff] sued here because it feels this forum will give more effective relief.").  Moreover, if Plaintiffs were forced to bring a separate action against the Spanish Defendants, they would be forced to relitigate substantively identical issues in a second

---

[10] The Spanish Defendants' citation to *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996) is unavailing.  There, Vermont, the forum state, had no connection to the case, as defendants did not conduct any tortious activity within the state and the corporate plaintiff did not reside or conduct business within the state.  *See id.* at 574; *see also Dix v. Peters*, 374 F. Supp. 3d 213, 227 (N.D.N.Y. 2019) (unlike here, New York had no interest in the matter because plaintiff motorist was Virginia resident, defendants had no contacts with New York, and underlying insurance contract was formed in Virginia).

forum, subjecting Plaintiffs to substantial prejudice, cost, delay, and the risk of inconsistent rulings. *See Kernan*, 175 F.3d at 245. Additionally, that the Plaintiffs Libra Capital and CE maintain their principal places of business in New York demonstrates that this factor weighs in Plaintiffs' favor. *See* <u>Eades</u>, 799 F.3d at 169 (noting that plaintiff "ha[s] an interest in adjudicating [his] case in the state where [he] reside[s]."); *Hypnotic Hats, Ltd. v. Wintermantel Enterprises, LLC*, 2016 WL 7451306, at *5 (S.D.N.Y. Dec. 27, 2016).[11]

<u>Fourth</u>, Defendants incorrectly maintain that it would be unreasonable for the Court to exercise jurisdiction because, purportedly, discovery will be located outside of New York. Def. Br. at 41. Because Plaintiffs conduct business in New York, many of its witnesses are located here, including Brooks. *See Pearson Educ., Inc. v. ABC Books LLC*, 2020 WL 3547217, at *9 (S.D.N.Y. June 30, 2020). Moreover, a related action originally filed in United States District Court for the Western District of Wisconsin, *Convergen Energy WI LLC v. L'Anse Warden Electric Company LLC*, 20-cv-05240-LJL (S.D.N.Y) was transferred to this Court, supporting the reasonableness of jurisdiction, as coordination of discovery between the actions can be easily managed. *See Contant v. Bank of Am. Corp.*, 385 F. Supp. 3d 284, 296 (S.D.N.Y. 2019) (exercising jurisdiction was reasonable because it allowed for the efficient coordination of discovery with related cases pending in this district, thus providing the most efficient path to resolution of plaintiffs' claim); *Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 100 (S.D.N.Y. 2015) (that court was already familiar with the parties, facts, and legal issues warranted exercise of jurisdiction).

And finally, the Spanish Defendants' contention that other jurisdictions may purportedly have an interest in this matter (Def. Br.at 41) does not present a compelling case why interstate

---

[11] The Spanish Defendants raise contradictory arguments in suggesting that Wisconsin is the more convenient forum for this dispute (*see* Def. Br. at 40) and the same time recognizing that they "are not … required to submit to arbitration." Def. Br. at 52 n. 6. By the Spanish Defendants' not being obligated to participate in the arbitration, Wisconsin as a forum provides no efficiency or convenience to the parties.

comity concerns would render the exercise of jurisdiction unreasonable. *See Eades*, 799 F.3d at 169. No other state's social policies would be undermined by permitting jurisdiction here. *See Kernan*, 175 F.3d at 245.[12]

## II.    PLAINTIFFS' AIDING AND ABETTING CLAIMS ARE PROPERLY PLED

In evaluating a motion to dismiss a complaint brought pursuant to Fed. R. Civ. P. 12(b)(6), a court accepts the truth of the facts alleged in the complaint and draws all reasonable inferences in the plaintiff's favor. *Wilson v. Merrill Lynch & Co., Inc.,* 671 F.3d 120, 128 (2d Cir. 2011). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). To avoid dismissal a plaintiff need only set forth allegations such that its claims get "nudged...across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570.

Under Federal Rule of Civil Procedure 9(b), claims sounding in fraud must be alleged "with particularity." Fed. R. Civ. P. 9(b). The Second Circuit has held that Rule 9(b) requires that to plead particularity a complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 248 F. Supp. 3d 428, 437 (S.D.N.Y. 2017).

---

[12] The Spanish Defendants' other cited authorities do not suggest that the exercise of jurisdiction here would be unreasonable. *See Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 732 (S.D.N.Y. 2010) (unlike here, exercise of jurisdiction was unreasonable because all of the parties were foreign – none of the plaintiffs resided in New York); *Tymoshenko v. Firtash*, 2013 WL 1234943, at *5 (S.D.N.Y. Mar. 27, 2013) (no parties resided in the United States, defendants' conduct occurred entirely abroad, and the court there determined that a foreign forum would be better equipped to interpret Ukrainian law, a concern not applicable here); *Del Monte Fresh Produce N.A., Inc. v. M/V AFRICA REEFER*, 2013 WL 1129998, at *5 (S.D.N.Y. Mar. 19, 2013) (maritime action involving damage to cargo which involved no directed conduct with forum and no contacts at all with the United States).

Plaintiffs' claims against the Spanish Defendants for aiding and abetting fraud and aiding and abetting breach of fiduciary duty readily meet this standard.

### A.  Aiding and Abetting Fraud Is Adequately Pled

A complaint states a claim for aiding and abetting fraud by alleging: (1) a fraud; (2) the defendant's actual knowledge of the fraud; and (3) the defendant's substantial assistance to the fraud. *Krys v. Pigott*, 749 F.3d 117, 127 (2d Cir. 2014). To plead substantial assistance, the complaint must allege that the aider "made a substantial contribution to the perpetration of the fraud." *Silvercreek Mgmt.*, 248 F. Supp. 3d at 442–43 (S.D.N.Y. 2017).  Substantial assistance exists "where a defendant affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed."  *Id.* at 243.

Here, every element of Plaintiffs' claim is adequately pled.

<u>First</u>, Plaintiffs plead the underlying fraud with particularity.  The Complaint alleges that Brooks falsely represented to the Company that a buyer had made an "*unsolicited*" offer for the Group's renewable pellet manufacturing plant. Complaint ¶ 33. Brooks falsely represented the buyer to be a third party, while concealing the material fact that he actually had an interest in the purchase of the pellet plant.  *Id.*

Plaintiffs have also alleged the underlying fraud by omission because Brooks had a duty to disclose to Plaintiffs his relationship with Merle and interest in the transaction.  *See Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank*, 57 F.3d 146, 155 (2d Cir. 1995) (a duty to disclose may arise from: (a) a confidential or fiduciary relationship; (b) the need to complete a partial statement; or (c) where "(1) one party has superior knowledge of certain information; (2) that information is not readily available to the other party; and (3) the first party knows that the second party is acting on the basis of mistaken knowledge.").  Brooks was charged with negotiating

the entire transaction, was in a fiduciary relationship with Plaintiffs, made incomplete disclosures with regards to Merle and Niantic, and knew that Plaintiffs were not aware of his relationship and were operating with the understanding that Niantic was an unrelated party to Brooks.  Complaint ¶¶ 37, 63. Plaintiffs' allegations that Brooks breached his duty and defrauded Plaintiffs by not disclosing that he was the buyer and that his close friend represented Niantic alleges a duty to disclose.  Moreover, that Brooks' confession concerned his failure to disclose the real nature of his relationships with the transaction, Niantic, and Merle demonstrates his fraud by omission.  *Id.*

Second, the Complaint adequately pleads knowledge.  The Complaint sets forth the Spanish Defendants' motivation for concealing Brooks' double-dealing; "to do so would have revealed and undone the fraudulent scheme and the opportunity to "buy" an asset for many million dollars less than what it was worth." Complaint ¶ 54. The Complaint explains how they knew of the fraud (they were investors buying on the cheap) and why they were motivated not to undo the scheme.  The Complaint asserts that the Spanish Investors knew that Brooks was a senior officer of the Company, that he was overseeing the pellet plant, and that he was a financial stakeholder in the buyer.  Complaint ¶ 52.  The Complaint also alleges that Brooks could not have achieved the fraudulent sale without the funding from the Spanish Defendants. Complaint ⁋ 77.

In addition, the declaration of Fidel Andueza sets forth what the Spanish Defendants knew of the fraud.  Andueza Decl. ⁋ 19. Andueza provides further support for the fact that the Spanish Defendants knew of Brooks' scheme (Andueza Decl. ¶ 16).  Indeed, Uriarte does not deny this; while in his declaration Uriarte stated that he did not know that "Mr. Brooks was an owner of Niantic," Uriarte does not deny that he knew that Brooks had an undisclosed conflicting role in the transaction, serving as both buyer and seller of the pellet plant.

Finally, the Spanish Defendants ignore Brooks' recorded confession where he "acknowledged the knowing participation of the other defendants." Complaint ¶ 5.

These allegations demonstrate the Spanish Defendants' knowledge. *See Dandong v. Pinnacle Performance Ltd.*, 2011 WL 5170293, at \*12 (S.D.N.Y. Oct. 31, 2011) (allegations concerning defendant's engaging in self-dealing transaction demonstrated motive and opportunity); *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 651 F. Supp. 2d 155, 179 (S.D.N.Y. 2009) (motive and opportunity pled where complaint alleged that by partaking in the fraud defendants would earn fees in excess of their normal ones).

Third, the Complaint adequately pleads substantial assistance. The Complaint repeatedly states that the Spanish Defendants assisted the fraud by providing the funds necessary to acquire the pellet plant and maintaining the secrecy of the fraud from Plaintiffs. Complaint ¶ 17-20. The fraud could not have been achieved without their assistance. Complaint ¶ 77; *see Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 346 F. Supp. 3d 473, 491 (S.D.N.Y. 2018) (funding transaction known to be a sham was substantial assistance).

## B. Aiding and Abetting Breach Of Fiduciary Duty Is Adequately Pled

To state a claim for aiding and abetting a breach of fiduciary duty, a plaintiff must show: "(1) breach of fiduciary obligations to another of which the aider and abettor had actual knowledge; (2) the defendant knowingly induced or participated in the breach; and (3) plaintiff suffered actual damages as a result of the breach*." In re MF Glob. Holdings Ltd. Inv. Litig.*, 998 F. Supp. 2d 157, 182 (S.D.N.Y. 2014); *see also Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294 (2d Cir. 1993) ("Anyone who knowingly participates with a fiduciary in a breach of trust is liable for the full amount of the damage caused thereby to the cestius que trust."). "Substantial assistance occurs

when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the [breach of fiduciary duty] to occur." *Lerner*, 459 F.3d at 295.

The Spanish Defendants mimic the attack of the other Defendants on the fiduciary duty claims by, namely, claiming that under Delaware law only managers and members owe fiduciary duties to limited liability companies and since none of the individual Defendants were members or managers (in title), they owed no duty to the Plaintiff entities. This is wrong legally and factually.

Legally, Delaware does not limit fiduciary duties to just members and managers; officers also have fiduciary duties. *See Gantler v. Stephens*, 965 A2d 695, 708-09 (Del. 2009) ("In the past, we have implied that officers of Delaware corporations, like directors, owe fiduciary duties of care and loyalty, and that the fiduciary duties of officers are the same as those of other directors. We now explicitly hold so."). Delaware imposes fiduciary duties on LLC managers because they have "more than an arms-length, contractual relationship with the members of the LLC, and [are] vested with discretionary power to manage the business of the LLC." *CMS Inv. Holdings, LLC v. Castle*, 2015 WL 3894021, at *18 (Del. Ch. June 23, 2015). Applying the same principles, Delaware courts have held that officers also owe fiduciary duties. *See CMS Inv. Holdings, LLC,* 2015 WL 3894021, at *18 (holding that the CEO and a high-level officer of an LLC both stood in the position of a fiduciary where "the agreement [did] not diminish the default standards of care and loyalty under Delaware law."); *In re Our Alchemy, LLC,* 2019 WL 4447519, at * 6 (Bankr. D. Del. Sept. 16, 2019) ("Generally, only managers and officers of an LLC will have fiduciary duties to the LLC and those that hold a controlling interest in the entity.").

Factually, it is uncontested that Defendants Brooks, Hansen, and Mikkelson were the relevant officers who managed the pellet plant and the Plaintiff entities. The Complaint alleges

that "[Brooks] was afforded and empowered with considerable discretionary authority to manage Convergen and its subsidiaries, including the pellet plant. As a senior employee of the Company, Brooks was required to manage and invest assets of Convergen and the pellet plant in good faith and for the benefit of his employer." Complaint ¶ 68. It is also alleged that Hansen and Mikkelson were employees of CE, managed CEW and L'Anse, and reported directly to Brooks. Complaint ¶¶ 22, 23, 30, and 51. In these capacities, the individual Defendants have fiduciary duties to their respective Plaintiff entities.

Further, Brooks, Hansen, and Mikkelson are also fiduciaries of CE and L'Anse because they are de facto managers. *See Triple H Family Ltd. Partnership v Neal*, 2018 WL 3650242, at *14 (Del. Ch. July 31, 2018).  A de facto manager is defined as: "An individual who has "unfettered access" to the LLC's confidential information, helps to plan the LLC's business dealings with various outside parties on important issues, and assists in updating the LLC's lenders in conjunction with management can be a *de facto* manager owing fiduciary duties to the LLC. *Id.* A plaintiff must demonstrate that a defendant had access to the LLC's confidential information and engaged in acts on behalf of the LLC to establish the defendant's status as a *de facto* manager. *Id.* Delaware courts consistently look "to who wields control in substance and have imposed the risk of fiduciary liability on the actual controllers." *In re* Our *Alchemy, LLC*, 2019 WL 4447519, at *6.

The remaining arguments under this heading merely mimic the same arguments for aiding and abetting fraud about how the Spanish Defendants lacked knowledge of the breach of duty and failed to participate in the breach. As stated above, knowing about Brooks' scheme and enabling it with funding is more than sufficient to expose the Spanish Defendants to liability.  *See SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 345 (2d Cir. 2018) ("Substantial assistance occurs when a defendant

affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur.").

Further, the Spanish Defendants completely ignore Brooks' recorded confession where he "acknowledged the knowing participation of the other defendants." Complaint ¶ 5. An admission by the primary actor to the fraud in which he calls out his co-conspirators cannot be ignored or argued as not sufficiently particular. Ultimately, the Spanish Defendants raise fact issues not ripe for resolution on a motion to dismiss.

## <u>CONCLUSION</u>

For all the foregoing reasons, the Spanish Defendants' motion to dismiss should be denied in its entirety.  If the Court concludes that factual questions relevant to determining the Court's jurisdiction exist, Plaintiffs request the opportunity to seek jurisdictional discovery and to replead pursuant to Federal Rule of Civil Procedure 15(a).


Dated: September 4, 2020
New York, New York

                                          SEIDEN LAW GROUP LLP


                                          By: /s/ Michael Stolper        
                                          Michael Stolper
                                          Jake Nachmani
                                          Dov B. Gold
                                          469 Seventh Avenue, Fifth Fl.
                                          New York, NY 10018
                                          (646) 766-1703

                                          *Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day I caused a true and correct copy of the foregoing to be filed using the Court's Electronic Filing System ("ECF System"). The document is available for viewing and downloading via the ECF System and will be served by operation of the ECF System upon all counsels of record.

Dated: September 4, 2020

**SEIDEN LAW GROUP LLP**

/s/ Dov B. Gold
    Dov B. Gold