# UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

CONVERGEN ENERGY LLC, et al.,

                Plaintiffs,

v.                                                    CASE NO.: 1:20-CV-03746 (LJL)

STEVEN J. BROOKS, et al.,

                Defendants.

---

## SPECIALLY APPEARING DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

---

Ryan. M. Billings
S.D.N.Y. Bar No. RB0378
Kohner, Mann & Kailas, S.C.
4650 N. Port Washington Road
Milwaukee, WI 53212

*Attorneys for Steven J. Brooks,*
*Gregory Merle, NianticVista Energy, LLC,*
*and Riverview Energy Corporation*

## **TABLE OF CONTENTS**

INTRODUCTION…………………………………………………………………………...1

FACTS………………………………………………………………………………………2

    A.    The Parties Entered Into Numerous Contracts Requiring Arbitration of This Dispute, And Requiring Any Litigation To Be Brought in Wisconsin……………2

    B.    All of the Pressing Concerns Libra Raised in Its Ex Parte Emergency TRO Have Been Resolved……………………………………………………………………3

    C.    Libra Brought Misappropriation And Stored Communication Act Claims That Fail to State a Claim, And Are Brought Only Against Certain Defendants…………………………………………………4

    D.    Libra Devotes Most of Its Brief to Matters Unrelated to Its Motion For a Preliminary Injunction…………………………………………………………5

        1.    Defendants have not violated the TRO……………………………………5

        2.    There has been no spoliation of evidence related to this case………………6

        3.    Defendants have made substantial efforts to conciliate with Libra in discovery ……………………….…………………………………...6

        4.    Libra's unsupported claims of interference are baseless…………………...8

ARGUMENT………………………………………………………………………………...9

    I.    THIS COURT SHOULD RESOLVE THRESHOLD JURISDICTIONAL AND VENUE ISSUES BEFORE ADDRESSING PLAINTIFFS' MOTION…………10

    II.    PLAINTIFFS CANNOT ESTABLISH IRREPERABLE HARM………………11

    III.    PLAINTIFFS CANNOT ESTABLISH A LIKELIHOOD OF SUCCESS...……12

    IV.    THE BALANCE OF HARDSHIPS TIPS TOWARDS DEFENDANTS………...14

    V.    PLAINTIFFS' FAILURE TO DESCRIBE THEIR TRADE SECRETS WITH SPECIFICITY PREVENTS ENTRY OF A PRELIMINARY INJUNCTION…...14

    VI.    PLAINTIFFS SHOULD BE REQUIRED TO POST A SUBSTANTIAL BOND BEFORE RECEIVING PROPERTY THEY SOLD TO DEFENDANTS………15

VII.    LIBRA'S ATTEMPTS TO CONFUSE THE ISSUES FAIL……………………16

 A. There has been no violation of the TRO…………………………………16

 B. Plaintiffs have not made the required showing under Rule 37
  to obtain relief………………………………………………………...…17

 C. Defendants have made substantial efforts to comply with Plaintiffs'
  overly-aggressive expedited discovery demands………………………...18

 D. Plaintiffs' tortious interference complaints (claims Plaintiffs have not even
  brought) are unfounded and have no bearing
  on any preliminary injunction……..……………………………………18

CONCLUSION…………………………………………………………………………...19

## **TABLE OF AUTHORITIES**

### **Cases**

*601 W. 26 Corp. v. Solitron Devices, Inc.,*
    291 F. Supp. 882 (S.D.N.Y. 1968)……………………………………………………..10

*Almontaser v. New York City Dep't of Educ.,*
    519 F.3d 505 (2d Cir. 2008)…………………………………………………………….10

*Broker Genius Inc. v. Seat Scouts LLC,*
    No. 17-CV-8627 (SHS), 2019 WL 452050 (S.D.N.Y. Feb. 5, 2019)……………………..16

*Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.,*
    645 F.3d 114 (2d Cir. 2011)……………………………………………………………17

*City of New York v. Mickalis Pawn Shop, LLC,*
    696 F.3d 206 (2d Cir. 2012)……………………………………………………………10

*Corning Inc. v. PicVue Elecs., Ltd.,*
    365 F.3d 156 (2d Cir. 2004)……………………………………………………………15

*Covidien Sales LLC v. Ethicon Endo-Surgery, Inc.,*
    No. 314-CV-917JCH, 2014 WL 5420212 (D. Conn. Oct. 22, 2014)……………………..16

*Do The Hustle, LLC. v. Rogovich,*
    No. 03 CIV. 3870(VM), 2003 WL 21436215 (S.D.N.Y. June 19, 2003)……………..10, 11

*DVComm, LLC v. Hotwire Commc'ns, LLC,*
    No. CV 14-5543, 2016 WL 6246824 (E.D. Pa. Feb. 3, 2016)……………………………18

*EFS Marketing, Inc. v. Russ Berrie & Co.,*
    76 F.3d 487 (2d Cir. 1996)……………………………………………………………..15

*Elsevier Inc. v. Doctor Evidence, LLC,*
    No. 17 Civ. 5540 (KBF), 2018 WL 557906 (S.D.N.Y. Jan. 23, 2018)……………………13

*Energy Capital Co. v. Caribbean Trading and Fidelity Corp.,*
    1994 WL 698210 (S.D.N.Y. Dec. 13, 1994)…………………………………………...18

*Grand River Enter. Six Nations, Ltd. v. Pryor,*
    481 F.3d 60 (2d Cir. 2007)……………………………………………………………..9, 11

*Gutman v. Klein, No. 03 CIV. 1570 (BMC),*
    2008 WL 5084182 (E.D.N.Y. Dec. 2, 2008)…………………………………………...18

*In re Platinum-Beechwood Litig.,*
    378 F. Supp. 3d 318 (S.D.N.Y. 2019)……………………………………………...9

*Int'l Bus. Machines Corp. v. Papermaster,*
    No. 08-CV-9078(KMK), 2008 WL 4974508 (S.D.N.Y. Nov. 21, 2008)…………………13

*Kronisch v. United States,*
    150 F.3d 112 (2d Cir. 1998)……………………………………………………18

*McAllister v. Goord,*
    No. 9:06-CV-0442 (TJM), 2009 WL 5216953 (E.D.N.Y. Apr. 30, 2018)……………...16

*Mitsubishi Motors N. Am. Inc. v. Grand Auto., Inc.,*
    No. CV18814SJFSIL, 2018 WL 2012875 (E.D.N.Y. Apr. 30, 2018)……………………16

*Paramedics Electromedicina Commercial, Ltda. v. GE Medical Systems Information Techs., Inc.,*
    369 F.3d 645 (2d Cir. 2004)……………………………………………………17

*Payment All. Int'l Inc. v. Ferreira,*
    530 F. Supp. 2d 477 (S.D.N.Y. 2007)…………………………………………11

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.,*
    685 F. Supp. 2d 456 (S.D.N.Y. 2010)…………………………………………18

*Regulatory Fundamentals Grp. LLC v. Governance Risk Mgmt. Compliance, LLC,*
    No. 13 CIV. 2493 KBF, 2014 WL 3844796 (S.D.N.Y. Aug. 5, 2014)……………………18

*Riley v. California,*
    573 U.S. 373 (2014)……………………………………………………...14

*Salinger v. Colting,*
    607 F.3d 68 (2d Cir. 2010)…………………………………………………9

*Sanchez v. DOCS Med Dep't,*
    No. 12-CV-141SR, 2013 WL 3420021 (W.D.N.Y. Aug. 21, 2013)……………………...19

*Sanders v. Air Line Pilots Ass'n, Int'l,*
    473 F.2d 244 (2d Cir. 1972)……………………………………………………15

*Schmidt v. Lessard,*
    414 U.S. 473 (1974)……………………………………………………...15

*Silberberg v. Bd. of Elections of the State of New York,*
    216 F. Supp. 3d 411 (S.D.N.Y. 2016)…………………………………………...9

*Starlift Logistics, Inc. v. Stacey,*
No. 05 CV 4162 (NGG), 2006 WL 2689618 (E.D.N.Y. Sept. 19, 2006)......................11

*Time Warner Cable, Inc. v. DIRECTV, Inc.,*
No. 06 CIV. 14245(LTS), 2007 WL 1296205) (S.D.N.Y. May 2, 2007)......................16

*Trafalgar Power, Inc. v. Aetna Life Ins. Co.,*
131 F. Supp. 2d 341 (N.D.N.Y. 2001)....................................................................16

## Statutes & Rules

18 U.S.C. § 1836.............................................................................................................13

Fed. R. Civ. P. 26(b).....................................................................................................14

Fed. R. Civ. P. 37(e)...............................................................................................17, 18

Fed. R. Civ. P. 65.............................................................................................14, 15, 16, 17

Specially Appearing Defendants Steven J. Brooks, NianticVista Energy, LLC, Gregory Merle, and Riverview Energy Corporation (collectively, "Defendants") respectfully submit this brief in opposition to Plaintiffs' ("Libra")[1] motion for a preliminary injunction.

## INTRODUCTION

Libra's brief in support of its motion is an assorted collection of inflammatory rhetoric and gripes about Brooks that bear no relation to Libra's required showing. The litany of complaints Libra raises are also entirely unfounded. For instance, the files Libra claims were deleted are unrelated to this case but readily available, such as the "smoking gun" file Libra highlights, which concerns whether a third-party's ex-girlfriend was cheating. More importantly, Libra's numerous efforts to disparage Brooks are irrelevant to the dispositive issues on this motion, as:

- This case must be arbitrated and the arbitrators should decide interim relief;

- Any irreparable harm Libra faced in May has been resolved by Defendants' substantial conciliation efforts over the summer;

- Libra's case is dependent upon the undoing of multiple contracts its General Counsel approved multiple times, and has no likelihood of success;

- Defendants would suffer considerable hardship if their personal information were handed over in bulk to Libra, and Libra faces no prejudice, as all discoverable information is fully preserved and available for merits discovery; and

- Libra has not identified its trade secrets with particularity (a requisite for an injunction), barring Defendants from meaningfully responding to Libra's claims and depriving the Court of the ability to enter a proper Order.

---

[1] As with Defendants' prior briefing, "CE" means Plaintiff Convergen Energy LLC, "L'Anse" means Plaintiff L'Anse Warden Electric Company, LLC, "Libra Capital" means Plaintiff Libra Capital US, Inc., "CEW" means Defendant Convergen Energy WI, LLC, "Niantic" means Defendant NianticVista Energy, LLC, "Riverview" means Defendant Riverview Energy Corporation, "Brooks" means Defendant Steven J. Brooks, "Merle" means Defendant Gregory Merle, "Hansen" means Defendant Theodore J. Hansen, "Mikkelson" means Defendant Brian R. Mikkelson, "Andueza" means Fidel Andueza, Libra's Chief Investment Officer and CE's, L'Anse's and CEW's President and Manager and Brooks' former supervisor, "Diaz" means Ydalberto (Bert) Diaz, Libra's General Counsel and CE's, L'Anse's and CEW's other Manager (with Andueza), and "BMO" means non-party BMO Harris Bank N.A., secured lender to L'Anse and CEW. "Opening Br." means Libra's brief in support of its motion (ECF No. 128). "Billings Decl.", "Brooks Decl." "Knechtel Decl." and "Swaminathan Decl." refer, respectively, to the Declarations of Ryan M. Billings, Steven J. Brooks, Michael Knechtel, and Vaidhynathan Swaminathan accompanying this brief.

## FACTS

**A.**    **The Parties Entered Into Numerous Contracts Requiring Arbitration of This Dispute, And Requiring Any Litigation To Be Brought in Wisconsin.**

As noted,[2] all of the following contracts require mandatory arbitration of this dispute:

- The Acquisition Agreement under which CEW was sold (ECF No. 92-3, §§ 9.7(a)-(c));

- The Supply Agreement, which was an exhibit to the Acquisition Agreement and a condition of closing of the sale of CEW (ECF No. 92-6, § 11); and

- At least four Employment Agreements Libra entered into with Brooks, Hansen and Mikkelson (ECF Nos. 92, at 17; 92-11, § 11; 92-12, § 9; 92-13, § 9).

(*See also* ECF Nos. 92, at 15-17, 21-25; 111, at 2-7 (discussing arbitrability).)

Other contracts require litigable claims to be brought exclusively in Wisconsin, including:

- The Services Agreement under which Hansen and Mikkelson provided post-closing management services to L'Anse (ECF No. 92-7, § 6.08);

- Hansen's and Mikkelson's non-disclosure agreements (ECF Nos. 92-14, § 10.1; 92-15, § 10.1); and

- The credit agreements with BMO that were a required part of the CEW sale. (ECF Nos. 92-9, § 9.17(a); 92-10, § 9.17(a)).

(*See also* ECF Nos. 92, at 18, 25-27; 111, at 7 (discussing the forum-selection clauses).)

Libra claims that some of these contracts were the product of fraud. However, Libra admits it learned of the purported fraud no later than February 1, 2020. (ECF No. 1, ¶¶ 41-44.) Aware of Brooks' involvement, Diaz went ahead and closed the sale of CEW and released Libra's signatures from escrow on February 3, two days later. (Brooks Decl. ¶ 8 & Ex. A.)

Libra also alleges that, after confronting Brooks and Andueza about the alleged fraud on

---

[2] Defendants discuss Libra's allegations at length in their brief in support of their motion to dismiss (ECF No. 92), and their brief in opposition to Libra's motion for leave to amend its Complaint (ECF No. 138).

February 3, it began an immediate investigation. (ECF No. 1, ¶¶ 41-44; ECF No. 117-1, ¶¶ 7, 45.)

Several weeks later on February 21, Libra entered into another agreement with Niantic (the

"Amended Closing Statement"), providing in pertinent part that:

> By signing this Amended and Restated Closing Statement each
> Party confirms and ratifies that the Closing was completed on the
> Closing Date.
> …
> The Buyer and Seller agree that there will be no further adjustments
> or changes to this Amended and Restated Closing Statement after
> the date hereof, as both Parties have confirmed that this document is
> now complete and accurate in all regards.
> …
> Other than as expressly modified pursuant to this Amended and
> Restated Closing Statement all of the terms, conditions and other
> provisions of the Acquisition Agreement…are hereby ratified and
> confirmed and shall continue in full force and effect in accordance
> with their respective terms.

(ECF No. 92-8, at 2.) Diaz, Libra's General Counsel, closed the CEW transaction both times, on

February 3 and 21, respectively. (*Id.*; Brooks Decl. Ex. A.)

## B.     All of the Pressing Concerns Libra Raised in Its Ex Parte Emergency TRO Have Been Resolved.

In its *ex parte* emergency temporary restraining order ("TRO") brief, Libra claimed that it

needed immediate injunctive relief to address: (1) an alleged hack of two EuroEnergy (Latvian)

email accounts that required administrative access to assess and address; (2) Libra's need for

historical EuroEnergy emails and Office 365 accounts; (3) Defendants' possession of certain

unspecified trade secrets on CEW's server; and (4) Defendants' possession of devices formerly

used while working for Libra. (ECF No. 25, at 3-6.) Libra admits that the first two concerns (the

most pressing) have been fully resolved due to Defendants' substantial conciliation efforts.

(Opening Br., at 6 & n.1.)

As to devices,[3] Brooks' work computer (the "HP") was forensically copied by Libra's IT consultant Aaron Weiss and provided to Libra on June 23. (Billings Decl. ¶ 4.) Brooks' work phone, his entire Gmail account, and the external drive referenced in Weiss's Declaration (ECF No. 131, ¶ 18) have also been forensically copied, and Brooks' work computer, work phone, and the external hard drive are in the exclusive possession of Defense counsel or its IT consultant. (Swaminathan Decl. ¶¶ 5-6; Billings Decl. ¶¶ 3-8.) Appropriate and reasonable steps have been taken to preserve any additional devices on which documents or information related to this case are likely to be found. (Billings Decl. ¶ 8.) On Defendants' side, everything they have related to this case has been preserved and will be available during merits discovery.

## C.   Libra Brought Misappropriation And Stored Communication Act Claims That Fail to State a Claim, And Are Brought Only Against Certain Defendants.

Libra's motion for a preliminary injunction is brought pursuant to its federal and state trade secret misappropriation claims and federal Stored Communications Act claims ("SCA Claims"). (ECF No. 1, ¶¶ 86-94, 100-124.) Under both the Complaint and proposed Amended Complaint, none of those claims are brought against Riverview or the Spanish Investors. (*Id.*; *see also* ECF. No. 117-1, ¶¶ 96-104, 116-140.) The Defendants against whom those claims have been brought have moved to dismiss them for failing to state a claim, among other reasons because Libra unambiguously sold all the intellectual property at issue to Niantic (twice). (ECF Nos. 92, at 13-14, 33-37, 38-40; 111, at 14-15, 17-19.)

Despite repeated requests for clarification, Libra has not identified with particularity or provided evidentiary support for:

(1)    Exactly what trade secrets are at issue;

---

[3] In its accompanying brief (ECF No. 142), CEW discusses its substantial efforts to sort through more than 264,000 emails and address Libra's CEW-related concerns. Defendants fully join in and incorporate CEW's brief by reference.

(2)     How each such trade secret meets the rigorous statutory requirements for trade
        secret information under federal and state law;

(3)     The evidence, for each (or any) trade secret, that Defendants acquired it by
        improper means or from a person who was under a duty to maintain its secrecy or
        limit its use (and not, for instance, merely because Libra left it on CEW's server at
        the time of sale); or

(4)     The evidence establishing that the trade secret has been used or there is a concrete
        and imminent threat that the trade secret will be disclosed.

At best, Libra identifies certain generalized categories of information that may exist in emails that

Libra neglected to remove from CEW's server before selling CEW (*e.g.*, ECF No. 132, ¶ 22), but

Libra does not set forth evidence establishing the four elements for any particular piece of

information that Libra alleges to be a trade secret. Further, the SCA claims are not at issue here.[4]

## D.     Libra Devotes Most of Its Brief to Matters Unrelated to Its Motion For a Preliminary Injunction.

Libra spends the bulk of its brief discussing issues that are irrelevant to the preliminary

injunction motion before the Court. However, lest the Court be misled by Libra's

mischaracterizations, hyperbole and ad hominem attacks, Defendants briefly address them.

### 1.      Defendants have not violated the TRO.

Libra claims that Brooks violated the TRO by deleting files from Brooks' work computer

on May 31, 2020. (Opening Br., at 8.) However, Brooks did not have possession of the HP on May

31,[5] and the files that were deleted on that date were personal files belonging to a third party,

---

[4] These claims concern email accounts related to CE, EuroEnergy, or L'Anse to which Defendants allegedly had possession or access. (ECF No. 1, ¶¶ 113-121; ECF No. 117-1, ¶¶ 129-133.) As explained in CEW's companion brief, all of the EuroEnergy email accounts have been provided to Libra, and Libra no longer claims (let alone presents any evidence) that Defendants possess email accounts owned by CE or L'Anse.

[5] Libra's claim that files were copied on May 31 is just wrong. (*See* Knechtel Decl. ¶ 16 (no copying was initiated in May); Swaminathan Decl. ¶ 14 (Weiss overlooked the fact that the last-accessed timestamp function was not working on the HP, so Weiss's conclusion that files were copied on May 31 is unsupported by the forensic evidence).)

unrelated to this matter, that were transferred from a USB drive to the recycling bin of the HP when the third party cleared out a personal USB drive for other use. (Brooks Decl. ¶¶ 19, 27; Knechtel Decl. ¶¶ 4, 9, 18-19; Swaminathan Decl. ¶ 6 (forensic analysis confirms Knechtel's account).) These personal files include the resume and cover letters of this third party, and personal matters relating to the third party's now ex-girlfriend, such as the "smoking gun" file that Libra highlights in its brief. (Knechtel Decl. ¶ 21 & Ex. A (ECF No. 139-1).) Defendants have not deleted any information related to this case, before or after the TRO, and Libra does not provide any evidence to support the claim that any relevant materials have been irretrievably lost. (Knechtel Decl. ¶¶ 19, 25; Swaminathan Decl. ¶ 12.) As noted, the HP was forensically copied by Libra, the copy has been in Libra's possession since June 23, and Brooks does not have access to his HP, his Libra cell phone, or the external drive Libra references (which remained unused after Brooks retrieved it on June 2). (Brooks Decl. ¶ 28; Billings Decl. ¶¶ 4-8; Swaminathan Decl. ¶ 11.)

**2.      There has no been no spoliation of evidence related to this case.**

No information related to this dispute was ever deleted, and even the personal files that were emptied from the third party's USB drive are available from other sources. (Knechtel Decl. ¶¶ 20, 25; Swaminathan Decl. ¶ 12.) For instance, Defendants submit the "smoking gun" file with these motion papers. (ECF No. 139-1.) All relevant information has been appropriately preserved, and Libra has not been prejudiced through deprivation of access to unrelated personal information.

**3.      Defendants have made substantial efforts to conciliate with Libra in discovery.**

Libra complains about the discovery Defendants have provided during the limited expedited discovery period, and identifies four areas on which the parties have disputes:

| Issue | Nature of Dispute |
|-------|-------------------|
| 1. Production of emails from Brooks' personal Gmail account. | Libra requested all "non-public" information related to any Libra entity. Brooks provided Libra a full copy of the HP and made a forensic copy of his Gmail account, but (*inter alia*) requested more specification of what Libra wanted, particularly with respect to trade secrets. Libra refused to narrow its requests or provide trade-secret guidance. |
| 2. Providing a full forensic copy of Brooks' Libra iPhone 8 and iCloud backup. | Brooks made a forensic copy of his iPhone 8, but requested that the parties discuss a protocol for removing personal information on the phone and iCloud backup that is unrelated to this case. Libra insisted on production of the entire phone and backup, and refused to discuss the possibility of removing personal information. |
| 3. Providing a full forensic copy of Brooks' personal iPhone 11. | Brooks noted that this is his personal cell phone, and at best Libra would be able to obtain information on the phone that is relevant to this case (information that is highly likely to be available from many other sources). Libra insisted on production of a complete forensic copy of the phone and backup, because Brooks "used the phone for work." |
| 4. Interrogatory responses as to the nature of Brooks' financial relationship to Niantic. | Brooks explained that he lent money to Niantic and personally guaranteed the debts of CEW to BMO. Libra disbelieves Brooks' answers, without any evidence to refute them. |

(Billings Decl. ¶¶ 27-37.)

Brooks provided his positions on issues 1-3 in writing on July 7, and offered to participate in a meet and confer conference to conciliate on these issues. (Billings Decl. ¶ 31 & Ex. C.) Issue 4 was not raised by Libra prior to this motion, except that Libra did ask for Brooks to identify the members of an LLC that loaned funds to Niantic, and Defendants provided this information on July 7. (*Id.* ¶ 32.) Libra then ignored these issues for 30 days, until its deadline to submit evidence in support of its preliminary injunction had lapsed, at which point Libra merely regurgitated its prior positions and demanded that Brooks comply with its demands. (ECF No. 129-5, at 1-2; Billings Decl. ¶ 43.) Further offers by Brooks to conciliate were met by repeated statements from

Plaintiffs' counsel that talking to Brooks' counsel was a "total waste of time." (*Id.* ¶¶ 18-21.) Libra did not file a letter-motion under this Court's Individual Practices in Civil Cases Rule 4(B), or otherwise bring the parties' disputes to the Court for resolution.

After considerable time and expense, including tens of thousands of dollars in IT consultant costs, Defendants have produced more than 1,000 pages of documents, nearly 48,000 emails, all the EuroEnergy email accounts and activity logs, and Brooks' entire work computer (140 Gigabytes of data). (Billings Decl. ¶¶ 30, 44.) Libra has not provided expedited discovery of any kind. (*Id.* ¶ 44.) Defendants asked Libra for only one substantive item—the "recorded confession" that Libra continuously references in its briefing, argument and Declarations in support of Libra's injunction motions. (*Id.*) Libra has refused to produce the recording. (*Id.*)

### 4.    Libra's unsupported claims of interference are baseless.

Although Libra did not bring any tortious interference claim in either its May 14 original Complaint or August 19 proposed Amended Complaint, and only Libra's misappropriation claims are at issue in this motion, Libra complains about several alleged interactions between Defendants and third parties. These allegations are based solely on the Declaration of Camilo Patrignani, who offers hearsay, double-hearsay, conjecture and speculation. For instance, Patrignani discusses a conversation he had with an unnamed Libra employee, vaguely relaying a discussion that the unidentified Libra employee purportedly had with an unnamed third party. (ECF No. 130, ¶ 10.) This is the kind of "evidence" Libra offers in support of gripes that are not even relevant.

Lest the Court be misled, the facts are:

- Because Libra has not informed third parties that it sold CEW, and still pretends it is the owner of CEW among other things on Libra's website, third parties continue to contact Defendants requesting Libra information, requiring CEW to tell them that CEW was sold to Niantic and has no ongoing relationship to Libra;

- Libra refuses to remove Mikkelson as the person responsible for paying the New

-8-

York state sales taxes of the CHP (combined heat and power) plants CE owns, causing Defendants substantial liability concerns when those CHP plants defaulted on the loan with their senior secured lender; and

• Counsel for Brooks' mother wrote a letter to Libra about the €549,000 debt that Libra acknowledged it owes to Brooks' mother, but has not paid back, a matter being handled by counsel for Brooks' mother in Spain—not Brooks.

(Brooks Decl. ¶¶ 33-47; ECF No. 130-1.)

Moreover, Libra is a multi-billion-dollar international conglomerate.[6] Defendants are four individuals and a fledgling million-dollar company that has already been pushed close to the point of extinction by Libra's bullying tactics, including L'Anse's theft of more than $500,000 in product from CEW during the pendency of this dispute. (ECF No. 138, at 11.) The idea that Defendants are trying to "intimidate" Libra is laughable, and that accusation is particularly offensive given that Libra extorted nearly $1 million in additional compensation from Defendants at the second closing, based in large part on Libra's threats to subject Brooks and his mother to criminal prosecution. (Brooks Decl. ¶¶ 13, 47.) But these matters can be addressed in arbitration.

## **ARGUMENT**

A preliminary injunction is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Silberberg v. Bd. of Elections of the State of New York*, 216 F. Supp. 3d 411, 416 (S.D.N.Y. 2016) (citing *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)). Such an injunction is awarded only in exceptional circumstances and "never awarded as of right." *In re Platinum-Beechwood Litig.*, 378 F. Supp. 3d 318, 326 (S.D.N.Y. 2019) (quoting *Salinger v. Colting*, 607 F.3d 68, 79 (2d Cir. 2010)). Plaintiffs must clearly establish irreparable harm and either a

---

[6] *See, e.g.*, https://www.libra.com/en/about-us/.

likelihood of success on the merits or sufficiently serious questions going to the merits and a balance of hardships "tipping decidedly" toward the plaintiff. *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 215 (2d Cir. 2012) (internal quotation omitted); *see also Almontaser v. New York City Dep't of Educ.*, 519 F.3d 505, 508 (2d Cir. 2008) (explaining that injunctive relief is discretionary even if all criteria are met).

Here, this Court should decide threshold jurisdictional and venue issues before addressing Plaintiffs' injunction motion. If the Court addresses the merits, Plaintiffs' motion should be denied, as any irreparable harm Libra could arguably have faced in May evaporated due to Defendants' substantial efforts to address Libra's concerns. Further, Libra cannot establish a likelihood of success on the merits, as it unambiguously sold the intellectual property in question to Niantic, has not identified or established that it has any trade secrets, and presents no evidence that Defendants have used or threatened to use any of Libra's unidentified trade secrets. In addition, the balance of hardships tips decisively in Defendants' favor, as Brooks would suffer considerable injury if his personal information were handed over in bulk to Libra, while Libra would suffer no injury in waiting until merits discovery to receive discoverable information. In addition, Libra's failure to define its trade secrets with particularity is fatal to its motion, as an injunction order must specify what is prohibited. If despite all this, the Court issues some form of injunction, Libra should post a substantial bond commensurate with the high value Libra claims the trade secrets have.

## I.   THIS COURT SHOULD RESOLVE THRESHOLD JURISDICTIONAL AND VENUE ISSUES BEFORE ADDRESSING PLAINTIFFS' MOTION.

Fundamental questions of jurisdiction and venue should be resolved before issuing a discretionary preliminary injunction. *See, e.g.*, *601 W. 26 Corp. v. Solitron Devices, Inc.*, 291 F. Supp. 882, 885 (S.D.N.Y. 1968) ("Where the Court's jurisdiction is a substantial issue in controversy, a preliminary injunction should not issue."), *aff'd*, 420 F.2d 293 (2d Cir. 1969); *Do*

*The Hustle, LLC. v. Rogovich*, No. 03 CIV. 3870(VM), 2003 WL 21436215, at *2 (S.D.N.Y. June 19, 2003) ("[U]pon a plaintiff's request for a preliminary injunction, [a] prima facie showing of jurisdiction will not suffice. A court must have in personam jurisdiction over a party before it can validly enter even an interlocutory injunction against him." (internal quotation omitted)); *Starlift Logistics, Inc. v. Stacey*, No. 05 CV 4162 (NGG), 2006 WL 2689618, at *5 (E.D.N.Y. Sept. 19, 2006) (lack of proper venue alone can serve as a basis for denying an injunction motion.).

This case: (1) must be arbitrated based on the parties' six separate contracts to arbitrate disputes; and (2) any litigable claims must be adjudicated in Wisconsin under the many exclusive forum-selection clauses to which the parties agreed. (*See supra* Facts A.) The Court should defer to the arbitration panel or Wisconsin courts to rule on the interim relief Libra requests, and should resolve the pending motion to dismiss first before wading further into the merits of this dispute.

## II.     PLAINTIFFS CANNOT ESTABLISH IRREPERABLE HARM.

In addition and independently, Libra's motion should be denied because Libra cannot establish irreparable harm, which Libra admits to be "the single most important prerequisite for the issuance of a preliminary injunction." (Opening Br., at 12 (quoting *Payment All. Int'l Inc. v. Ferreira*, 530 F. Supp. 2d 477, 480 (S.D.N.Y. 2007) (internal citation omitted)); *see also id.* (irreparable injury must be "neither remote nor speculative, but actual and imminent." (quoting *Grand River*, 481 F.3d at 66)).) Libra cannot establish, through clear and compelling evidence, that it would be irreparably harmed absent this Court's entry of a preliminary injunction.

Libra concedes that the Latvian "hacking" and Libra's access to historical records issues have been fully resolved. (Opening Br., at 6 & n.1.) That leaves: (1) Defendants' possession of devices over which Libra claims ownership; and (2) Defendants' access to emails that Libra left on CEW's server. (*Id.*, at 6.) Neither of these issues presents the threat of irreparable harm.

All of Brooks' Libra work devices and the external hard drive at issue have been forensically imaged, they are in the exclusive possession of counsel and their IT consultant, and Defendants have no access to the materials on those devices. (*See supra* Facts B.) All of the information on these devices has been preserved and is available for merits discovery. (*See id.*) CEW explains in its accompanying brief its substantial efforts to sort through 264,000 emails and make nearly 48,000 emails available to Libra, addressing this concern. There is no threat here.

Relying primarily on the May 18 Chrousos Declaration (which at this point is obsolete),[7] Libra makes vague claims that Defendants possess unidentified trade secrets that could damage Libra if disclosed to a Libra competitor. (ECF No. 132, ¶ 22.) But Libra makes no sincere effort to explain what Libra information Defendants currently possess, how the information could be used to injure Libra, and what evidence Libra has that there is any actual threat of harmful use. Further, Libra makes no effort to tie its generalized, subject-matter trade-secret categories to information that Defendants actually possess. The Court and Defendants are left to guess what trade-secret information Defendants allegedly have, how use of that information could damage Libra, and what evidence there is to suggest any real danger of disclosure.

In any event, Libra left large amounts of information on CEW's servers at the time of sale, made only belated attempts to get it back, and CEW has voluntarily provided to Libra any information CEW can identify as relating to Libra's businesses. (*See supra* Facts B; ECF No. 92, at 13-15.) Libra cannot establish irreparable harm; its motion should be denied.

### III.    PLAINTIFFS CANNOT ESTABLISH A LIKELIHOOD OF SUCCESS.

Libra's motion independently fails because Plaintiffs cannot establish a likelihood of

---

[7] Patrignani also speculates on the contents and possible use of information copied onto the external hard drive (which Brooks neither viewed nor has access to), based solely on the names of the files.

success on the merits. First, both the Complaint and proposed Amended Complaint fail to state a claim and should be dismissed with prejudice. (ECF No. 92, at 28-35.[8]) In addition, Plaintiffs have little hope of ultimate success.

All of the documents and information that Libra seeks in its motion were expressly sold to CEW through documents drafted or approved by Libra's General Counsel. (ECF No. 92, at 13-15.) Libra simply has no valid right to them, and its claims are destined to fail. *See* 18 U.S.C. § 1836(b)(1) (providing that, under federal law, only an "owner" of a trade secret may bring a claim); *Elsevier Inc. v. Doctor Evidence, LLC*, No. 17 Civ. 5540 (KBF), 2018 WL 557906, at *4 (S.D.N.Y. Jan. 23, 2018) ("[T]o survive a motion to dismiss, a party alleging that it owns a trade secret must put forth specific allegations as to the information owned and its value."); *see also* ECF No. 92, at 33-34 (providing additional authority).[9]

If Libra could somehow overcome this hurdle, Libra would need to prove with precision the trade secrets belonging to Libra that Defendants have, why and how they meet the rigorous requirements to qualify as trade secrets under applicable law, and that Defendants have used or disclosed them. (*See* Opening Br., at 14 (citing *Int'l Bus. Machines Corp. v. Papermaster*, No. 08-CV-9078(KMK), 2008 WL 4974508, at *7 (S.D.N.Y. Nov. 21, 2008) ("Where a court finds that an employee is in possession of trade secret information, the court must still determine whether that employee has actually misappropriated the information." (quotation omitted))).) Libra does

---

[8] Moreover, none of the trade secret claims at issue in this motion are brought against Riverview or the Spanish Investors, and these Defendants should not be subject to any injunction. (*See supra* Facts C.)

[9] *See also* ECF No. 111, at 14 (Libra tacitly admits it must undo the sales contracts before it can advance misappropriation claims). That will be an uphill battle, given Andueza's and Diaz's demonstrable knowledge of the alleged fraud before the first closing, and Libra's admitted knowledge of the material facts in the second.

not make any of these showings, and its brief contains no genuine attempt to do so.[10] The Court has no record on which to conclude that there are identifiable Libra trade secrets in Defendants' possession, and that Defendants have misappropriated them. Libra therefore cannot establish a likelihood of success on the merits, and its motion should be denied.

## IV.    THE BALANCE OF HARDSHIPS TIPS TOWARDS DEFENDANTS.

While the Court need not address the balance of hardships, as Libra cannot establish even "serious questions" going to the merits, the balance tilts squarely in Defendants' favor.[11] Libra asks the Court to force Brooks to turn over devices that contain irrelevant personal information. (*See supra* Facts D(2).) This would constitute an obvious hardship to Brooks, and Libra would suffer no hardship by being put in the normal position of all parties, who have a right only to relevant, proportional discovery (all of which has been preserved for exchange in merits discovery). *See* Fed. R. Civ. P. 26(b)(1); *see also Riley v. California*, 573 U.S. 373, 393-96 (2014) (explaining that smartphones capture our entire lives, and require special care in analyzing what is revealed when a phone is turned over). There is simply no cause to circumvent the discovery process by giving Libra a host of material to which it has no need or right to access.

## V.    PLAINTIFFS' FAILURE TO DESCRIBE THEIR TRADE SECRETS WITH SPECIFICITY PREVENTS ENTRY OF A PRELIMINARY INJUNCTION.

Libra's failure to identify the trade secrets at issue also prevents this Court from crafting a valid injunction (and Libra submits no proposed order to guide the Court). Pursuant to Rule 65(d):

> Every order granting an injunction and every restraining order …

---

[10] Indeed, when pressed about trade secret disclosures in response to Defendants' motion to dismiss, Libra claimed that its only evidence of disclosure occurred in 2019 when Brooks, Hansen and Mikkelson disclosed financial information, related to CEW, to Niantic. (ECF No. 107, at 15-16.) Libra cannot credibly claim that facts related to the fiscal performance of a company that Libra sold are actionable trade secrets belonging to Libra, nor can Libra plausibly argue that the disclosure of facts about CEW in 2019 presents any danger of future injury.

[11] In CEW's brief (ECF No. 142, incorporated by reference), CEW discusses the hardship CEW (and derivatively Niantic, who bought CEW) would suffer if it lost access to CEW's core business records.

> shall be specific in terms; [and] shall describe in reasonable detail,
> and not by reference to the complaint or other document, the act or
> acts sought to be restrained....

*Corning Inc. v. PicVue Elecs., Ltd.*, 365 F.3d 156, 158 (2d Cir. 2004) (per curiam) (quoting Fed. R. Civ. P. 65(d)). This Rule "reflects Congress' concern with the dangers inherent in the threat of a contempt citation for violation of an order so vague that an enjoined party may unwittingly and unintentionally transcend its bounds." *Id.* at 158 (quoting *Sanders v. Air Line Pilots Ass'n, Int'l,* 473 F.2d 244, 247 (2d Cir. 1972)). The Second Circuit has also explained that: "[B]asic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed." *Id.* (quoting *Schmidt v. Lessard,* 414 U.S. 473, 476 (1974)). For these reasons, "[a]n order which does not satisfy the requirement of specificity and definiteness will not withstand appellate scrutiny." *Id.* (quoting *EFS Marketing, Inc. v. Russ Berrie & Co.,* 76 F.3d 487, 493 (2d Cir. 1996) (internal quotation marks omitted)). Further, the precise acts that are forbidden must be ascertainable from the four corners of the injunction order, without reference to extrinsic documents. *Id.*

Libra's failure to define its trade secrets with any specificity makes it impossible for the Court to issue an appropriate injunction. Contrary to the *ex parte* proposed order Libra submitted in connection with its TRO, an appropriate injunction cannot bar a party from accessing "Plaintiffs' files," or "Plaintiffs' trade secrets," as this does not give explicit notice of what is forbidden, and would require reference to an external source to try to decipher what information is at issue (and even that task would be fruitless because Libra does not adequately define its trade secrets in any pleading it has filed). For this independent reason, Libra's motion should be denied.

## VI.   PLAINTIFFS SHOULD BE REQUIRED TO POST A SUBSTANTIAL BOND BEFORE RECEIVING PROPERTY THEY SOLD TO DEFENDANTS.

If the Court nevertheless considers entering an injunction, it should require Libra to post an appropriate bond. "The court may issue a preliminary injunction or a temporary restraining

order only if the movant gives security in an amount that the court considers proper to the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "When setting the bond amount, relevant considerations include potential lost profits, lost market share and associated costs of relaunch." *Covidien Sales LLC v. Ethicon Endo-Surgery, Inc.*, No. 314-CV-917JCH, 2014 WL 5420212, at *1 (D. Conn. Oct. 22, 2014); *see also Time Warner Cable, Inc. v. DIRECTV, Inc.*, No. 06 CIV. 14245(LTS), 2007 WL 1296205, at *2 (S.D.N.Y. May 2, 2007) ("The bond is intended to afford security only for those damages, if any, that might be proximately caused by the [wrongful] issuance of [an] injunction.").

Libra claims that CEW's trade secrets are worth at least the $10 million allegedly invested to develop them. (Opening Br., at 14.) With that amount at issue, courts have not hesitated to require bonds in the amount of several million dollars.[12] Libra should be required to post a comparable bond to cover the damages Niantic and CEW would suffer if they were denied use of CEW's core intellectual property and assets, potentially for years.

## VII.    LIBRA'S ATTEMPTS TO CONFUSE THE ISSUES FAIL.

Libra spends the bulk of its brief arguing matters that have no bearing on Libra's motion. The Court should reject Libra's desperate, baseless attempts to change the subject.

### A.    There has been no violation of the TRO.

The centerpiece of Libra's attempt to confuse the issues is Libra's claim that Brooks violated the Court's TRO. First, Brooks did not even have access to the HP on May 31, when the

---

[12] *See, e.g., Trafalgar Power, Inc. v. Aetna Life Ins. Co.*, 131 F. Supp. 2d 341, 353 (N.D.N.Y. 2001) (requiring a $2 million bond when property subject to the injunction was worth $7.6 million); *Broker Genius Inc. v. Seat Scouts LLC*, No. 17-CV-8627 (SHS), 2019 WL 452050, at *1 (S.D.N.Y. Feb. 5, 2019) (requiring a $2 million bond in case where plaintiff ultimately recovered $4.5 million); *Mitsubishi Motors N. Am. Inc. v. Grand Auto., Inc.*, No. CV18814SJFSIL, 2018 WL 2012875, at *8 (E.D.N.Y. Apr. 30, 2018) (requiring $2.5 million bond to secure injunction barring defendant from using intellectual property during suit).

alleged violations occurred. (*See supra* Facts D(1).) Libra's claims utterly miss the mark, as:

- Only personal files were deleted, and they are available from other sources;

- Brooks took reasonable steps to prevent loss of any relevant information; and

- Knechtel is a non-party who was unaware of the TRO and not acting in concert with Brooks (indeed, he disregarded Brooks' clear instructions) (*see id.*).

Fed. R. Civ. P. 65(d)(2)(C); *see also* Opening Br., at 9 (party's duty is to be "reasonably diligent in attempting to comply with what was ordered" (citing *Paramedics Electromedicina Commercial, Ltda. v. GE Medical Systems Information Techs., Inc.,* 369 F.3d 645, 657 (2d Cir. 2004))). Knechtel's actions also have no ongoing effect, as the devices in question were forensically copied and are safely in the hands of counsel. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144 (2d Cir. 2011) (explaining courts' obligation to fashion injunctive relief that is "no broader than necessary to cure the effects of the harm caused by the violation.").

### B.  Plaintiffs have not made the required showing under Rule 37 to obtain relief.

Libra argues that Defendants should be punished for alleged spoliation, but no spoliation occurred (*See supra* Facts D(2).) To obtain the relief it requests, Libra would have to show that:

(1)  The information in question should have been preserved;

(2)  It was lost due to Brooks' failure to take reasonable steps to preserve it;

(3)  The information cannot be restored or replaced through additional discovery;

(4)  Libra has been prejudiced by the loss of the information (in which case this Court could order measures no greater than necessary to cure the prejudice); and

(5)  Brooks acted with intent to deprive Libra of the information's use in this litigation.

Fed. R. Civ. P. 37(e)(1)-(2). Here, the information in question is irrelevant and not subject to a preservation obligation, Brooks acted reasonably to preserve relevant information, the information is available from other sources, Libra was not prejudiced, and Brooks neither deleted nor intended

to delete anything. This is simply not a Rule 37(e) issue.[13]

### C.   Defendants have made substantial efforts to comply with Plaintiffs' overly-aggressive expedited discovery demands.

Libra's attempts to paint a picture of discovery non-compliance fails, as:

- Libra did not meet and confer with Defendants as required and then file a letter-motion under the Court's Individual Practices in Civil Cases Rule 4(B). (*See supra* Facts D(3).) Instead, when disputes arose on a few discrete issues, Libra engaged in name-calling and pouting (*see id.*); and

- Libra's complaints are unfounded and self-created. Defendants have bent over backwards addressing Libra's concerns, spending tens of thousands of dollars and countless hours sorting through 264,000 emails, providing Libra with a full forensic copy of Brooks' work computer (Libra bases its arguments virtually exclusively on information it learned in June when Defendants voluntarily provided the HP), and identifying all parties to whom non-public Libra information was provided (*see id.*).

Any remaining issues should be resolved in merits discovery by the body who will ultimately administer this case, and all relevant information has been preserved to facilitate that. None of Libra's exaggerated complaints justify granting Libra injunctive or other relief.

### D.   Plaintiffs' tortious interference complaints (claims Plaintiffs have not even brought) are unfounded and have no bearing on any preliminary injunction.

In a further effort to change the subject, Libra claims that Defendants improperly interfered with Libra's relationships with certain (often unidentified) third parties. But Libra brings no

---

[13] The cases Libra cites are easily distinguishable. *See, e.g.*, *Energy Capital Co. v. Caribbean Trading and Fidelity Corp.*, 1994 WL 698210, at *5 (S.D.N.Y. Dec. 13, 1994) (holding party in contempt for failing to show up for depositions and hearings and committing 49 separate violations of monetary restrictions); *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998) (addressing the CIA's deliberate destruction in 1973 of all hard-copy files relating to the subject-matter at issue); *DVComm, LLC v. Hotwire Commc'ns, LLC*, No. CV 14-5543, 2016 WL 6246824, at *5 (E.D. Pa. Feb. 3, 2016) (court found that the information in question was crucial to the dispute); *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 469 (S.D.N.Y. 2010) (explaining that "It is well accepted that a court should always impose the least harsh sanction that can provide an adequate remedy."), *abrogated by Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135 (2d Cir. 2012); *Regulatory Fundamentals Grp. LLC v. Governance Risk Mgmt. Compliance*, LLC, No. 13 CIV. 2493 KBF, 2014 WL 3844796, at *14 (S.D.N.Y. Aug. 5, 2014) (party was an attorney who "deleted every relevant email he could find" from "his email archives, from his sent mail, from his deleted mail, and just to ensure that there was no way to recover the materials, from the server on which relevant emails were stored, twice."); *Gutman v. Klein*, No. 03 CIV. 1570 (BMC), 2008 WL 5084182, at *1 (E.D.N.Y. Dec. 2, 2008) (party made no specific objections to sanctions), *aff'd*, 515 F. App'x 8 (2d Cir. 2013).

tortious interference claim, and no such claim is before the Court on Libra's preliminary injunction motion. *See Sanchez v. DOCS Med. Dep't*, No. 12-CV-141SR, 2013 WL 4520021, at *4 (W.D.N.Y. Aug. 21, 2013) (party moving for injunction must tie injury to the claims alleged); *McAllister v. Goord*, No. 9:06-CV-0442 (TJM), 2009 WL 5216953, at *2 (N.D.N.Y. Dec. 30, 2009) (same). In any event, Libra's complaints are unfounded. (*See supra* Facts D(4).) The Court should reject Libra's attempt to distract from the relevant issues.

## <u>CONCLUSION</u>

Stripped of its laundry list of unfounded complaints about Brooks, Libra presents virtually no evidence in support of its preliminary injunction motion, falls far short of its burden of proof, and for the many reasons discussed above, Libra's motion should be denied.

Dated this 4th day of September, 2020

By:    <u>s/ Ryan M. Billings</u>
Ryan M. Billings
S.D.N.Y. Bar No. RB0378
**KOHNER, MANN & KAILAS, S.C.**
4650 N. Port Washington Road
Milwaukee, WI 53212-1059
Telephone:   (414) 962-5110
Facsimile:   (414) 962-8725
Email:    rbillings@kmksc.com

*Attorneys for Defendants Steven J. Brooks, NianticVista Energy, LLC, Gregory Merle, and Riverview Energy Corporation*

-19-