**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

CONVERGEN ENERGY LLC, et al.,

                Plaintiffs,

v.                                          CASE NO.: 1:20-CV-03746 (LJL)

STEVEN J. BROOKS, et al.,

                Defendants.

**DECLARATION OF RYAN M. BILLINGS**

Ryan M. Billings makes the following declaration under penalty of perjury.

1.     I am a shareholder with Kohner, Mann & Kailas, S.C. ("KMK"). Our firm represents Defendants Steven J. Brooks, Gregory Merle, NianticVista Energy, LLC, and Riverview Energy Corporation (the "SA Defendants," collectively with Convergen Energy WI, LLC, Theodore Hansen and Brian Mikkelson, "Defendants"), who have specially appeared in this action for the purpose of contesting jurisdiction and venue, and are also participating with a reservation of rights in proceedings related to Plaintiffs' injunction motions, in order to ensure that no action is taken that might impair their rights without due process. I base this Declaration on personal knowledge, and submit it in opposition to Plaintiffs' ("Libra" or the "Libra Group's") Motion for a Preliminary Injunction.

**I.     Preservation of Devices**

2.     Libra claimed, through the May 18, 2020 Declaration of Phaedra Chrousos (ECF Nos. 26, 132), that Brooks used a Lenovo computer for work. Libra's counsel was unaware that Brooks had exchanged that computer for a Hewlett Packard laptop ("HP") years ago, until I informed opposing counsel of this fact.

1

3.      The HP is now in the exclusive possession of Digital Intelligence, Inc. ("Digital Intelligence"), an outside forensic IT firm hired by KMK. Digital Intelligence is aware of this Court's Protective Order and Temporary Restraining Order. From the point I received the HP from Brooks' June 2 mailing, until August 27, 2020, the HP was in my exclusive possession.

4.      Following the directives of Aaron Weiss of Forensic Recovery, LLC, Libra's outside IT consultant, I allowed Weiss to assume remote control of the HP over the course of four separate sessions on June 19, 21 and 22, 2020. During those sessions, Weiss made a forensic copy of the HP's hard drive, which I then overnight mailed to Weiss, and confirmed his receipt of the imaged drive. From the time Weiss completed his work on June 22 until I gave the computer to Digital Intelligence on August 27, the HP remained powered off, and I did not touch the HP except while on the phone with Weiss, and only according to his express directions.

5.      The iPhone 8 that Brooks used for work with the Libra Group (the "iPhone 8") is also in my exclusive possession. Digital Intelligence made a forensic copy of the iPhone 8, which was completed on July 6, 2020. The copy will remain with Digital Intelligence until the parties come to an agreement on how to remove Brooks' personal information from the phone, or further Order of the Court. The SA Defendants are also willing to engage in the same process with respect to any iCloud backup of the iPhone 8, should there be a need to collect duplicative information from the backup. Since the image was made, the iPhone 8 has remained powered off and will stay in that state until the Court rules on Plaintiffs' Motion.

6.      Digital Intelligence has also forensically copied and preserved the entire Gmail account (including all emails) associated with Brooks' personal email address: stevebrooks17@gmail.com. That process was completed on July 6, 2020.

7. On August 27, I received the external hard drive that is discussed in Weiss's Declaration and was previously connected to the HP. The external hard drive is now in the exclusive possession of Digital Intelligence, who has made a forensic copy of the drive.

8. In sum, Brooks' work computer, phone, and the external hard drive in question are in my or Digital Intelligence's exclusive possession. Forensic copies have been made of all three devices, and no Defendant has access to any of these devices. Appropriate and reasonable steps have been taken to preserve any additional device on which documents or information related to this case are likely to be found.

## II.     Litigation History

9. Attached to this Declaration as Exhibit D is a summary I created of litigation activity, as well as the discovery and injunction conciliation efforts in which the parties have engaged in this and related cases. In this Declaration, I discuss only some of the key issues.

10. On May 19, Libra brought an emergency motion requesting an *ex parte* Temporary Restraining Order ("TRO"). This Court arranged for a conference call to take place at 4 p.m. on May 19 to discuss Libra's motion. I was retained by Steve Brooks and Greg Merle on May 15, and was retained by NianticVista Energy, LLC, and Riverview Energy Corporation only a couple of hours before the call. A true and correct copy of the transcript of the May 19, 2020 telephone call with the Court concerning is attached to this Declaration as Exhibit A.

11. On May 19, this Court entered a TRO that granted in part and denied in part Libra's emergency motion. (ECF No. 28.[1]) I promptly called the SA Defendants and informed them of the TRO and what the Court had ordered. I emphasized that nothing related to Libra or this case could be accessed, copied or deleted.

---

[1] References to "ECF No." refer to the filings in this action. References to "SA ECF No." refer to the documents filed in the related Supply Agreement action before this Court, Case No. 1:20-CV-05240-LJL.

12.     On May 22, June 1 and June 18, the parties jointly asked this Court for extensions of the Court's schedule on Libra's preliminary injunction motion, so that they could continue conciliation efforts. (ECF No. 61.) On June 19, this Court reset the preliminary injunction hearing for July 17. (ECF No. 62.) The extended schedule was now:

- July 9, noon—Declarations and exhibits in support of or opposition to Plaintiffs' preliminary injunction motion due;

- July 10, 11:59 p.m.—Deadline to depose witnesses who submitted Declarations;

- July 11, 11:59 p.m.—Libra's brief in support of preliminary injunction motion due;

- July 13, 11:59 p.m.—Defendants' brief in opposition to preliminary injunction due;

- July 14, 11:59 p.m.—Libra's reply in support of preliminary injunction due; and

- July 17, 3:30 p.m.—Hearing on Libra's motion.

Defendants noted this schedule in a July 2 email to Libra, and Libra's counsel confirmed the schedule in writing on July 6. (*See* accompanying Exhibit C at 6-7.)

13.     On July 9, Defendants timely served their Declarations and exhibits in opposition to Libra's preliminary injunction motion. Libra did not serve any Declaration or exhibit. Given this, Defendants asked Libra to clarify its intentions, and Libra belatedly asked Defendants to agree to an extension of the preliminary injunction schedule and hearing.

14.     On July 10, the parties jointly asked for a three-week extension on Libra's motion for a preliminary injunction. (ECF No. 74.) The Court reset the preliminary injunction hearing for August 12, 2020. (ECF No. 75.) The extended schedule was now:

- August 4, noon—Deadline for service of Declarations and exhibits in support of or opposition to the preliminary injunction;

- August 6, 11:59 p.m.—Deadline for Libra's brief in support of its motion;

- August 8, 11:59 p.m.—Deadline for Defendants' brief in opposition to Libra's motion;

- August 9, 11:59 p.m.—Deadline for Libra's reply in support of its motion;

- August 12, 3 p.m.—Hearing on Libra's motion.

15. On August 4, Defendants timely circulated their Declarations and exhibits in opposition to Libra's preliminary injunction motion. For the second time, Libra did not serve any Declaration or exhibit. Defendants contacted Libra and asked for clarification of Libra's intent with respect to the preliminary injunction, but Libra did not respond.

16. On August 7, noting that Libra's time to file a brief in support of its motion for a preliminary injunction had expired, this Court cancelled the August 12 hearing on Libra's motion, and directed Libra to consult with Defense counsel and either submit a new joint schedule or advise the Court as to the parties' respective positions by August 14. After business hours on August 7, Libra contacted Defendants and proposed an extended schedule.

17. On August 11, Defendants provided their preliminary injunction scheduling proposal in writing to Libra and offered to participate in a call to discuss. (ECF No. 114-1, at 4-5.)

18. On August 12, the parties conducted a short scheduling call to discuss the preliminary injunction schedule. During the call, Plaintiffs' counsel indicated that they intended to discuss the outstanding injunction and discovery issues in Libra's upcoming letter to the Court. Defense counsel asked to see a draft of the letter, to see if there were any areas in which Defendants could further conciliate and narrow the issues in dispute. Plaintiffs' counsel agreed to provide a draft of the letter. There was no discussion of discovery or substantive injunction issues during this call (Plaintiffs did not articulate any of their concerns), and this was not a meet and confer conference on either discovery or the injunction. It was merely a short scheduling call.

5

19. Later on August 12, Plaintiffs' counsel provided excerpts of the letter Libra intended to file with the Court indicating its intent on its preliminary injunction motion. In the draft letter provided to Defense counsel, Libra characterized "Emails and phone calls" with counsel for the SA Defendants as "a total waste of time." (ECF No. 114-1, at 2-3.)

20. On August 13, Defense counsel wrote to Plaintiffs' counsel, indicating the points on which Defendants understood the parties to have agreed during the short August 12 call. (ECF No. 114-1, at 1-2.) Plaintiffs' counsel responded by disputing some of the terms of the parties' agreement, and indicating that Libra would tell the Court there was no agreement. Plaintiffs' counsel reiterated that dealing with Defense counsel was a "total waste of time." (ECF No. 114-1, at 1.)

21. Later on August 13, Libra filed its letter to the Court concerning its preliminary injunction motion. (ECF No. 113.) Libra provided no explanation and no grounds for excusable neglect for its failure (twice) to meet the deadlines established in the Court's preliminary injunction schedule. Instead, Libra devoted the bulk of its letter to bringing up unrelated issues and gripes about Defendants. The letter closed by repeating that "Emails and phone calls" with Defense counsel "have been a total waste of time." (ECF No. 113, at 3.)

22. In Libra's brief in support of its motion for a preliminary injunction, Libra suggests that these terse, insult-ridden exchanges on August 12 and 13, during which Libra did not raise or discuss any substantive issue, were attempts "to avoid unnecessarily raising issues with the Court." (ECF No. 129, at ¶ 20.)

### III.   Discovery History and Conciliation Efforts

23. Again, the material discovery, injunction and conciliation efforts in which the parties engaged are detailed in the attached Exhibit D. This Declaration discusses just some of the key issues.

6

24. In May and June 2020, the parties had multiple calls, some among counsel, some among the IT consultants, about discovery, injunction and conciliation issues, including how to review and categorize the approximately 264,000 emails CEW has on its server. Over the next few months, CEW went through all of these emails, identified nearly 48,000 of them as Libra-related, and made all of those emails available for Libra's review.

25. On May 21, Libra served a set of interrogatories and document requests on Defendants, to which Defendants timely served their responses on June 11.

26. Also on June 11, Defendants served Libra with a short set of document requests. A true and correct copy of the June 11, 2020 document requests Defendants served on Plaintiffs on that date is attached to this Declaration as Exhibit B. Other than a prophylactic request for documents in support of its preliminary injunction motion (which Libra would need to provide anyway), Defendants asked for only one thing—a full copy of the "recorded confession" that Libra referenced numerous times in its Complaint and argument in support of its emergency TRO. Despite repeated reminders and follow-up requests, Libra has not responded in any way to the June 11 requests, and has not provided the recording or any expedited discovery in this case.

27. One June 15, the parties conducted a telephonic meet and confer conference on outstanding technical issues and Libra's discovery requests. I noted that Libra had told the Court that the limited purpose of expedited discovery was to ensure that Libra had identified all the custodians and devices that potentially possess Libra trade secrets. Defendants had identified in sworn interrogatory responses all persons and entities to whom non-public information about Libra had been disclosed since 2019, meeting that need. It was unduly burdensome at this stage, I argued, to ask Defendants to sort through all "non-public" information about Libra and produce it in

expedited discovery, when nearly of all those materials would have nothing to do with trade secrets. The request was just too broad.

28. Libra agreed to narrow its document requests. Defendants agreed to provide even more detail as to the persons and entities who had received non-public information concerning Libra since 2019. I also suggested that the parties treat Brooks' Gmail emails the same way they were treating the CEW emails, dividing them into categories of: 1) Libra-related; 2) Neutral; 3) CEW related. Plaintiffs' counsel rejected my suggestion. Finally, I mentioned that most of the Gmail emails would be between Brooks and Fidel Andueza. Andueza remains a Libra executive and Libra claims that he has been cooperating. (ECF No. 117, at 3.) Libra thus has access to Andueza's emails and does not need them from Defendants, especially during limited expedited discovery. Plaintiffs' counsel indicated that they were entitled to duplicative emails for "authentication" purposes, and that Plaintiffs would go to the Court on this issue immediately unless Defendants agreed.

29. On June 16, Libra served amended interrogatories and document requests on Defendants. Rather than reducing the scope of the document requests as discussed during our June 15 call, however, the amended document requests expanded the scope, seeking even more information than the original requests. Despite this, on June 22 Defendants produced more than 1,000 pages of documents in response to Libra's amended document requests. On June 24, Defendants served their written objections and responses to Libra's amended interrogatories, providing even more detail as to the parties to whom non-public information relating to Libra have been disclosed.

30. On June 23, I confirmed that Weiss had received the forensic copy of the HP. The copy contained approximately 140 Gigabytes of data (one Gigabyte can contain more than 100,000

pages of emails), and should have captured the vast majority of emails and electronic information that are possessed by Brooks and relevant to this case.

31. On July 6, Libra provided an email summarizing the issues in dispute. I responded on July 7 with the SA Defendants' views, and offered to participate in a meet and confer session to discuss all open issues. Libra did not substantively respond until August 6. A true and correct copy of the parties' July 6 and 7 correspondence is attached to this Declaration as Exhibit C.

32. The parties appear to have reached an impasse on four issues: (1) production of Brooks' Gmail emails during expedited discovery; (2) providing a full forensic copy of Brooks' Libra iPhone 8 and iCloud backup; (3) providing a full forensic copy of Brooks' personal iPhone 11; and (4) Libra not believing Brooks' sworn interrogatory responses concerning his financial relationship to NianticVista Energy, LLC ("Niantic"). Before filing its brief on August 26, Libra did not raise issue number 4 with me, except that Plaintiffs' counsel asked me to identify the members of Clark Kent, LLC, a lender to Niantic, and I provided this information on July 7 (*see* Exhibit C, at 2.)

33. Concerning the Gmail emails, one issue on which the parties have disagreed is the scope of expedited discovery. Plaintiffs have taken the view that, because part of their showing in support of a preliminary injunction is a likelihood of success on the merits, they are entitled to full merits discovery. Defendants disagree, and believe that view would render meaningless the Court's Order limiting expedited discovery to matters relevant to Plaintiffs' motion for a preliminary junction. (ECF No. 28, at ¶ 5(c).) The SA Defendants' views and the broader discussion are summarized on pages 2-3 of the attached Exhibit C.

34. Concerning Brooks' work iPhone 8, there is personal information unrelated to this case on that phone that Brooks would like to see removed prior to providing a copy of the phone

to Libra. The issue of personal use of work devices is a complicated one, and whether the employee had a reasonable expectation of privacy is a fact-intensive inquiry based on the totality of circumstances. *See, e.g.*, *Pure Power Boot Camp v. Warrior Fitness Boot* Camp, 587 F. Supp. 2d 548, 561 (Oct. 2008) (collecting cases). I have offered multiple times to meet and confer with Plaintiffs' counsel on this issue, but Plaintiffs' counsel have refused to discuss the matter. I do not want to remove information from the device unilaterally, especially given the Court's TRO, but the SA Defendants would be happy to turn over the iPhone 8 as soon as personal information is removed via a protocol agreed to by the parties or by Order of the Court. (*See also* Exhibit C at 1-2.)

35. Brooks' iPhone 11 represents the converse issue—occasional work use of a personal cell phone. The SA Defendants' view is that, at best, Libra may be entitled to relevant, proportional discovery of certain information that exists on that phone, and the same discovery can likely be obtained from other sources with less burden. Again, Plaintiffs' counsel have refused to conciliate on this issue. (*See also* Exhibit C at 1.)

36. With respect to Brooks' interrogatory responses, Libra appears simply not to believe Brooks' answers as to his relationship to Niantic. Libra has provided no evidence to rebut Brooks' sworn responses, and did not raise this issue with me before filing its brief in support of its motion for a preliminary injunction.

37. Libra did not participate in any meet and confer conference with me on any of these issues after my July 7 email, and did not file any letter-motion with the Court or otherwise present these disputes to the Court for resolution.

38. On July 10, Diaz improperly bypassed me and contacted Brooks directly, sending Brooks a letter complaining about CEW's email to Luminor. (ECF No. 130-2.) Diaz's over-the-

top letter misrepresented the facts and did not ask for any response, so other than informing Diaz that he should not be speaking directly with a party represented by counsel, I did not otherwise respond.

39. On July 12, Defendants renewed their offer to meet and confer, in particular with respect to the subpoena served on Elmerina Brooks. Libra did not respond.

40. On July 16, Plaintiffs' counsel contacted me and asked for a meet and confer call on Monday, July 20. I replied on July 17 that (as I had previously informed Plaintiffs' counsel) I would be on a family vacation the week of July 20-24, but I offered to meet and confer the day I got back (July 27). Libra did not respond.

41. On July 24, this Court granted in part and denied in part Elmerina Brooks' motion to quash. (ECF No. 99.) On July 30, Ms. Brooks produced 110 pages of documents in response to Libra's subpoena. Plaintiffs' counsel objected on August 3 to the two pages of Ms. Brooks' production that she had designated as Highly Confidential under the Court's Protective Order, and asked for the reason for one redaction in the production. I responded two days later (on August 5). I explained the basis of Ms. Brooks' Highly Confidential designation, but, in the spirit of compromise, Ms. Brooks produced a slightly redacted version of one of the documents in question that was designated as Confidential and therefore viewable by Libra. I explained that the second document had the same information as the first. Contrary to Plaintiffs' representation in their preliminary injunction papers, I did not "refuse" to address the second document, I just noted I did not see any reason why Libra needed to view the same information twice. I also explained the basis for the redaction about which Libra inquired. Libra did not ever respond to my August 5 email.

42. Shortly before midnight on August 3, Plaintiffs' counsel sent me an email claiming that Brooks had engaged in "unlawful acts," including "defaming," and "[i]mproperly

communicating" with certain unidentified third parties. Plaintiffs asked for confirmation by noon on August 4 that Brooks would cease and desist engaging in these acts, or Libra would seek injunctive relief. I noted that noon on August 4 was the deadline for service of Declarations and exhibits in support of or opposition to Libra's preliminary injunction motion, which did not seem to be a coincidence. The very formal tone of the email was also unusual, suggesting that Libra was gearing up to file something with the Court, regardless of Defendants' response. I replied by the August 4 deadline, asking for more information so that we could understand what Libra was talking about, but Libra declined to provide any additional information.

43. On August 6, Plaintiffs' counsel sent an email responding to my July 7 email on open discovery issues. Defendants found this email to be very confusing. First, it was sent 30 days after the email to which it responded. Second, the purpose of expedited discovery was to gather evidence to be submitted in support of or opposition to Libra's preliminary injunction motion. But the time to exchange evidence in support of or opposition to Libra's motion had lapsed, and Libra had not exchanged any evidence. We also noted that Libra had not responded to our August 4 email asking for Libra to clarify its intentions given its failure to meet the Court's preliminary injunction schedule. We did not understand the purpose of Plaintiffs' untimely email, which could not generate evidence that could be used in evaluating the preliminary injunction. I replied to counsel's email the next day, explaining our confusion. Libra did not respond. From August 7 to the date of this Declaration, Libra has not made any meaningful attempt to conciliate on any outstanding discovery or injunction issues related to the SA Defendants.

44. To summarize, Defendants have spent hundreds of hours and tens of thousands of dollars in IT consultant costs (not including attorney time) sorting through 264,000 emails, providing Libra all of the Latvian emails and activity logs, and providing tens of thousands of

emails and large amounts of data related to this case (even though this data was unquestionably sold to Niantic). Exhibit D to this Declaration gives a good sense of how much activity has gone on since this action was filed on May 14. Libra was asked to provide one thing (the recording), and refused to do so.

    I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated this 4th day of September, 2020.

                                             /s Ryan M. Billings
                                             Ryan M. Billings