| | |
|---|---|
| **From:** | Ryan M. Billings |
| **To:** | Michael Stolper; Dov B. Gold |
| **Cc:** | Benjamin D. LaFrombois; William E. Fischer |
| **Subject:** | RE: Outstanding Issues - SDNY |
| **Date:** | Tuesday, July 7, 2020 10:12:18 PM |

Michael,

I know that Ben's team is working hard on their briefing due today, but I wanted to get back to you on behalf of KMK's clients (the "SA Defendants") to the issues specific to them.

**Mr. Brooks' Personal Phone**

I have asked Plaintiffs twice to tell us where Ms. Chrousos obtained the serial number provided for the iPhone 11 referenced in her sworn statement to the Court, as it does not match any device of which the SA Defendants are aware. Plaintiffs have not responded. I have further asked Plaintiffs to articulate a reason why they believe they would be entitled to a full forensic copy of Mr. Brooks' personal phone. The response we received is that Mr. Brooks allegedly "used the phone for work," which is meaninglessly vague and a legally insufficient basis to demand a complete copy of a device full of personal material, including but not limited to privileged communications with counsel.

Mr. Brooks' personal phone is just that—his personal phone. I am open to further dialogue on why Plaintiffs believe they are entitled to a copy of the phone. In addition, reasonable steps have been taken to preserve the information on the phone (nearly all of which is likely duplicated elsewhere), and any requested information unique to that phone which is discoverable and unobjectionable will be provided during merits discovery. But if all Plaintiffs are willing to offer is that Mr. Brooks purportedly "used the phone for work," then we would need to take the matter up with the Court. Please attach a copy of this email to any filing with the Court.

**iPhone 8**

At Plaintiffs' request, Mr. Brooks risked his (and his mother's) personal health during this pandemic and travelled to his New York apartment to retrieve the iPhone 8. It is now in my possession. In response to Plaintiffs' questions, the software version is 13.3, the capacity is 64 GB, and the space available is 48.72 GB.

In working through this issue, it has come to my attention that the phone likely contains personal information related to Mr. Brooks. This will need to be removed in advance of providing the Libra information on the phone to Plaintiffs. I welcome a dialogue, probably involving the IT consultants, to brainstorm the best means of accomplishing this. I would prefer to work through mutual agreement, but if we cannot do that, then the Court would need to rule. The phone is not in use, but out of an abundance of caution, we have had it forensically imaged by an outside firm, to preserve all information pending agreement of the parties or Order of the Court.

On that note, although we do not believe there would be privileged materials on the copy of the HP hard drive we made under the direction of Aaron Weiss and provided to Plaintiffs, any disclosure by

**EXHIBIT C**

the SA Defendants of privileged materials through the imaged copy of that device would be inadvertent, and we expect Plaintiffs to follow applicable law if any such materials are discovered, including but limited to Fed. R. Civ. P. 26(b)(5)(B), Fed. R. Evid. 502, and N.Y. Rules of Prof'l Conduct R. 4.4(b).

**iCloud Backups**

Mr. Brooks informs me that the iPhone 8 was set up by Libra before it was given to him, including any iCloud-backup procedure. Presumably Libra has the information necessary to retrieve any iCloud backups related to work material on that phone, and the SA Defendants have no additional information about how that backup was set up. For Mr. Brooks' personal phone, the iCloud backup is an additional means of preserving material, but as it duplicates what is on the phone itself, the treatment would be the same as discussed above.

**Protective Order**

Plaintiffs had offered during the June 15 Meet and Confer Conference to provide a revised form of Judge Liman's standard Protective Order, as discussed among the parties. On June 18, Plaintiffs asked Defendants to revise the form, which we promptly did that same day. Plaintiffs objected on June 22 that one provision was superfluous, a concern Defendants addressed in an immediate email response. Since then, despite Defendants' repeated requests, we've heard nothing from Plaintiffs on this. A Protective Order needs to be submitted to the Court and put in place immediately. This is a prerequisite in all cases where discovery is sensitive, and should be a no-brainer in this case, where Plaintiffs allege that vital trade secrets are at issue. Please confirm Defendants' draft immediately and confirm that we have permission to file it. It is inappropriate to operate without such an Order, and we simply do not understand why Plaintiffs continue to ignore this issue.

**Expedited Discovery**

As to Clark Kent, LLC, I don't see that Plaintiffs actually asked for disclosure of members of lenders to Defendants. Nevertheless, in the spirit of good-faith cooperation, the sole member of Clark Kent is Elmerina Brooks. On that note, while our firm does not currently represent Ms. Brooks, a courtesy heads-up for scheduling and logistics purposes that we understand that Ms. Brooks intends to move to quash the subpoena served on her in advance of the return date.

With respect to Plaintiffs' amended discovery requests, we are struggling with several things. First, Plaintiffs have not meaningfully defined what they contend to be their trade secrets. Second, and relatedly, as we discussed at our June 15 Meet and Confer Conference and in our objections to Plaintiffs' document requests, Plaintiffs defined "Trade Secrets and Confidential Information of Plaintiffs" in their expedited requests as "all non-public data concerning Plaintiffs," which is unreasonably overbroad and stretches the concept of "Trade Secrets" beyond any recognizable definition of that legal term. It also lumps together "Trade Secrets" with "Confidential Information," which are separate subjects, and "Confidential Information" is not part of Counts V and VII of Plaintiffs' Complaint, the claims at issue with respect to the SA Defendants in Plaintiffs' preliminary injunction motion. Third, the stated purpose of seeking expedited discovery in Plaintiffs' TRO motion

**EXHIBIT C**

papers, and reiterated in the June 15 Meet and Confer Conference, was to identify parties who may have received Plaintiffs' trade secret information. The SA Defendants have identified in their interrogatory responses all persons who received non-public information concerning the Plaintiffs that either related to the sale of Convergen WI or was out of the ordinary course. The SA Defendants are not required to provide duplicative discovery in a more burdensome form. Fourth, Fidel Andueza has informed Mr. Brooks that Plaintiffs hacked Mr. Brooks' Gmail account before this litigation began. This is obviously a matter of serious concern to the SA Defendants. We have asked for a full disclosure of any such hacking (which, although improper and illegal, would have given Plaintiffs full access to emails from that account).

Despite all this, the SA Defendants' proposed solution to these difficulties was to treat Mr. Brooks' Gmails in the same fashion as the Convergen WI emails, dividing them into the three categories of: (1) Libra-only; (2) Neutral; and (3) Defendants-only, and providing categories (1) and (2) to Plaintiffs. Plaintiffs rejected that approach because it "feels like hiding the ball."

As an alternative, Plaintiffs informed us that they intended to narrow the scope of the document requests. However, rather than narrowing the scope and reducing the burden on the SA Defendants, the amended document requests that Plaintiffs served added entirely new requests, such as emails on any subject from anyone to an email address of Fidel Andueza, one of Plaintiffs' employees, when Plaintiffs have full access to that account. That was a point of concern the SA Defendants specifically raised at the Meet and Confer Conference, and instead of addressing it, the Plaintiffs expanded their request.

Nevertheless, the SA Defendants have attempted to meet Plaintiffs half-way, focusing their search on information that Plaintiffs might deem based on their pleadings to be an arguable "Trade Secret," which was the issue Plaintiffs told the Court justified their request for emergency *ex parte* relief. Those searches have not revealed responsive documents. As an example, there are emails circulated to obtain signatures on closing documents that are now in the public record. The SA Defendants do not understand how such emails could be considered in good-faith to be "Trade Secrets." The SA Defendants are happy to gather such emails in merits discovery and produce them. But we do not understand these kinds of emails to be the subject of Plaintiffs' preliminary injunction. Thus, we are trying to find putative "Trade Secrets," and are not finding them. Plaintiffs may contend that this is because Defendants are not using the correct definition of "Trade Secrets." We welcome dialogue to help us refine our searches. We will also serve formal objections memorializing our position.

**The SA Defendants' Requests**

A courtesy reminder that Plaintiffs' responses to the SA Defendants' modest June 11 document requests are due at the time for exchange of Declarations, currently 12 p.m. eastern on Thursday, July 9. Since, other than evidence the Court has required Plaintiffs to exchange at that time anyway, the SA Defendants merely asked for the tape recording that Plaintiffs have repeatedly referenced in their Complaint and preliminary injunction papers and argument, we expect this will pose no difficulty.

Michael, the issues involved here are complicated and perhaps not conducive to resolution through

**EXHIBIT C**

exchange of lengthy emails. We suggest we have a telephonic meet and confer conference to identify issues on which we can make further progress, and those on which we have reached an impasse and will need Court intervention. In the interim, can we avoid accusations of "gamesmanship"? They are not productive.

Ryan

**Ryan M. Billings, Esq.**
Kohner, Mann & Kailas, S.C.
4650 N. Port Washington Rd.
Washington Bldg., 2nd Floor
Milwaukee, WI  53212-1059
Phone:  414.962.5110
Fax:  414.962.8725
**Email:  rbillings@kmksc.com**
**Web** / **Bio**

---

**From:** Michael Stolper <mstolper@seidenlegal.com>
**Sent:** Monday, July 6, 2020 8:39 AM
**To:** Ryan M. Billings <RBillings@kmksc.com>; Benjamin D. LaFrombois <blafrombois@vonbriesen.com>
**Cc:** Dov B. Gold <dgold@seidenlegal.com>; Michael Stolper <mstolper@seidenlegal.com>
**Subject:** Outstanding Issues - SDNY

**Counsel,**

**To streamline the email communication, I am writing this one omnibus email to set forth the open issues.**

**Latvia Migration**

**Ben, in your 7/2 email you object to the migration to our domain name of choice, convergen.energy. This objection is holding up the migration. Your objection is baseless. Though we dispute the Acquisition Agreement as the product of fraud, by your clients' own words in that agreement Convergen Energy, LLC and its parent Convergen Energy Holdings LLC, were granted the right to continue to use the "Convergen Energy" name for 12 months. Presumably even the fraudsters recognized the need to transition the name once used by three separate companies and only one of those companies was sold. We intend to use the name for at least 12 months and possibly longer, depending on the outcome of the fraud determination. Any further delays to the Latvia migration will warrant judicial intervention.**

# EXHIBIT C

### Backup of Convergen Emails

What is the status of the respective IT folks making a backup of all Convergen emails, both pre-sale and post? My understanding is that the IT personnel agreed on a protocol for this to happen, whereby an encrypted version is sent to Aaron to hold in escrow with Ben holding the encryption key. We need to see the logs associated with Brooks, Mikkelson and Hansen's email accounts as soon as possible.

### Production of Convergen Emails Pre-sale

What is the status of your review of the Convergen pre-sale emails? You were to identify trade secrets of CEW and Libra/Convergen and produce everything other than what you deemed CEW trade secrets. The withheld documents are to be logged. You have provided no timetable for this to happen despite repeated requests from Dov. We need this information as soon as possible to avoid judicial intervention on this issue.

### Brooks' Hardware

Ryan, please advise if you are standing by your objection to having the iPhone 11 imaged. If yes, we will raise it with the Court.

We are waiting on the status of the iPhone 8 and answers to the vendor's questions about capacity, space used and software. We need this information as soon as possible for our vendor to determine whether imaging can be done remotely. The imaging needs to take place immediately.

We are also waiting on Brooks' password to iCloud in order to be able to run the forensic tool.

Finally, we need to agree on a protocol for wiping Brooks' hardware clean. I defer to the IT consultants to work this out.

### Mikkelson & Hansen Hardware

Ben, you had the drives of Hansen and Mikkelson's laptops imaged unilaterally, without any input from our IT consultants or signoff from either Dov or me. You further had Andreas recover deleted emails (but not other files) and include the deleted emails among other emails, again

# EXHIBIT C

without input from our IT consultants or signoff from us. We are assessing the extent your unilateral actions are problematic and will revert. At a minimum we need a forensic review and recovery of the entire drives to know, among other things, which emails were deleted and we need a log of any emails withheld.

In terms of timing, you object to producing the content from these drives because they do not relate to hacking. This doesn't make any sense because expedited discovery was not so limited. At a minimum we are entitled to see what is on those drives to assess the scope and timing of any disclosures of our trade secrets and proprietary information. We also need to know

**Expedited Discovery – Brooks, Merle, Niantic, and Riverview**

Ryan, you have not provided any production save for a single email, despite agreeing to do so by June 22, 2020. Please advise immediately the status of your production. Also, in your interrogatory answers you fail to identify the members of Clark Kent.

**Expedited Discovery – CEW, Hansen, Mikkelson**

Ben, while unlike Ryan you've actually produced a few documents, your production is woefully inadequate. Obvious things like emails with Brooks, Merle or the Spanish Investors are missing, save for a few emails with Brooks (but not on the issues raised in the complaint).

Gentlemen, the gamesmanship has to come to an end. I expect answers and deliverables immediately, as we are running out of time to resolve things. Otherwise, we will have to proceed with the schedule Ben put forth in his 7/2 email.

| | |
|---|---|
| 7-Jul | Reply to Stay SDNY AAA supply agreement arbitration |
| 9-Jul | Declarations Due |
| 10-Jul | Depositions |
| 11-Jul | Plaintiff's Brief for PI |
| 13-Jul | Defendant's Brief on PI |
| 14-Jul | Plaintiff's Reply Brief on PI |
| 16-Jul | EDWI Reply to Motion to Transfer |
| 17-Jul | PI Hearing and Answer Due. Motion for |

# EXHIBIT C

|   | Alternative Service.  Response Due date. |
|---|---|

**Michael**

# EXHIBIT C