UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

CONVERGEN ENERGY LLC, et al.,

        Plaintiffs,

v.                                  CASE NO.: 1:20-CV-03746 (LJL)

STEVEN J. BROOKS, et al.,

        Defendants.

## DECLARATION OF MICHAEL KNECHTEL

Michael Knechtel makes the following declaration under penalty of perjury.

1. I am a friend of Steve Brooks. I am over 18 years of age, and I base this Declaration on personal knowledge, in part to respond to certain statements made by Aaron Weiss ("Weiss") who I understand to be an IT consultant hired by the party suing Steve.

2. I have no formal education or professional experience in Information Technology. Everything I know has been self-taught.

3. Roughly 18 months ago, my personal computer was subject to a ransomware attack. In trying to recover my files, I downloaded a large number of forensic recovery and decryption tools, and put them on a set of USB drives. To this day I am not sure what all of them do. My experience dealing with that hack is part of my self-education. I told Steve about that incident, and through our friendship Steve was aware that I had some level of familiarity with computers. Steve knows almost nothing about computers.

4. In February 2020, I was staying with my mother in Norwalk, Connecticut. On February 16, 2020, Steve Brooks gave me a laptop computer, power cord, and external (My Passport) hard drive, and asked me to make a copy of his emails and the personal files on the

**EXHIBIT B**

desktop of his computer and to place the copy on the external hard drive Steve provided. Steve asked me only to make a copy. The computer, power cord and hard drive were in my exclusive possession from February 16, 2020, to June 2, 2020.

5. I thought copying the files would be a relatively easy task. I was able to copy the files that were located on the desktop relatively easily, and placed the copies on the external hard drive Steve had provided me.

6. I had difficulty copying Steve's emails. In late February and March, 2020 (I don't remember exactly what dates), I made a series of attempts to copy Steve's emails, and was unsuccessful. The computer was locked down and the copy attempts I was making could only be made in administrator mode, and I did not have the administrator password. Because I did not have an administrator password, I was also unable to install any programs on Steve's computer.

7. As I was working on Steve's computer in February and March 2020, my personal computer and cellphone were hacked again. So, during the same period that I was working on Steve's computer, I was also trying to recover files from my personal computer and cellphone, and because I could not use my own hacked computer for this, I used Steve's computer in an attempt to recover my own, which was not working properly during this time.

8. Specifically, in an attempt to recover my personal files, I tried to reinstall Windows (and Linux) on my personal computer, and I tried to boot my personal computer through a USB drive in an attempt to reinstall the operating system. I did *not* try to boot Steve's computer through a USB drive, or reinstall Windows or Linux on Steve's computer.

9. To reinstall an operating system (Windows or Linux) on my personal computer, I needed a blank USB drive. The only way to delete information from a USB drive is to connect it to a computer and use the computer to delete the files. Since the only working computer I had at

**EXHIBIT B**

the time was Steve's, I connected a USB drive to Steve's computer and deleted the files from the USB. These files from the USB are my personal files, not anything that was on Steve's computer.

10. To help try to recover my personal computer, I likely connected Steve's computer to the internet to download files to be able to boot my personal computer from a USB device. I do not specifically remember doing so, but it would make sense and I do not dispute Weiss's contention that this happened. Steve's computer may have automatically synched to OneDrive if I connected to the internet, but I did not look at OneDrive files or do anything with OneDrive.

11. I thought I might be able to use some of the programs I had put on my USB drives, in response to the hacks I suffered 18 months ago and this year, to copy Steve's emails. However, my USB drives are all unlabeled and all look the same. As I didn't have another working computer during the time, I ended up connecting a number of USB drives to Steve's computer, just to see what was on them so I could find the right one. Because I did not have the administrator password, I could not – and did not - install any programs on Steve's computer. Eventually I just gave up, turned the computer off, and the computer sat unused for several months.

12. I understand that Weiss has asserted that various programs were copied onto the hard drive or connected via USB to Steve's computer during the period I had it. None of the programs listed in Weiss's Declaration (*see* ¶¶ 25-50) were ever used or installed on Steve's computer by me (as noted, because I did not have the administrator password, I was unable to install any programs on Steve's computer). The programs that I recognized cited by Weiss were just on USB drives that I had connected to Steve's computer.

13. I did not send any encrypted email using Steve's computer.

14. Between April 10 and May 10, 2020, I attended a Wellness Retreat in upstate Connecticut. I had Steve's computer during this time, and vaguely recall turning it on during this

**EXHIBIT B**

period, but I did not access it in any material way during this period. On May 10, I moved to Westport, Connecticut.

15. In mid-to-late May, 2020, Steve contacted me. He said that there was litigation, and instructed me not to touch the computer. He said he would be coming to pick it up and send it to his lawyer. I don't know what a TRO is, and I don't recall Steve using that term (or injunction or anything like that), but Steve emphasized not to do anything to the computer.

16. By this point, Steve's computer had sat unused since March. I wasn't sure which power cord connected to his computer, so I booted up the computer and tried to connect a couple of power cords to it until I found the right one. When I did so, the external drive Steve gave me was still connected to the machine, and I saw that it powered on and an icon appeared on Steve's computer indicating it recognized the hard drive. I did not intentionally copy anything onto that external hard drive in May 2020, but it may have restarted or completed a copy process I had started earlier in March.

17. When I deleted my personal files from my USB drive, they were moved to the recycling bin on Steve's computer. I did not want my personal files to be on Steve's computer and available to others, so I emptied the recycling bin on Steve's computer.

18. The only files I deleted were files *I* put on Steve's computer, not anything that was on the computer when I got it. I did not tell Steve or anyone that I had done this and, at the time, I did not realize that I should not have done this.

19. I have reviewed the list of files from paragraph 22 of Weiss's Declaration. I did not delete any files on Steve's computer on March 24, 2020. All but two of the files Weiss lists appear to be ".lnk" files, which are just links to other files, not actual data files, and the same file "cleanup

**EXHIBIT B**

x.lnk" appears multiple times. I do not know what AP Power Download or what downloads3.txt are.

20. For the May 31 files, I recognize all but a few of those files as my personal files from the USB drive that I attempted to use to boot my personal computer. The few files I do not recognize are all ".lnk files," which means they are just shortcut links to files that exist on a computer, not files themselves.

21. For instance, "Bachelor Party de bone," "Bones Bachelor Party Math," and "Bones speech" relate to a wedding speech I gave for my friend (nicknamed Bone) over a year ago. "Cover Letter- Michael Knechtel," "letter to self before point 72 interview," "Michael Knechtel Resume Tech", "Michael Knechtel Resume," "Point 72 mentorship cover letter 2," "Point 72 mentorship cover letter," "questions for point72," "robin hood cover letter," "spruce cover lttr final," "spruce cover lttr.," "Boxwood Cover Letter- Michael Knechtel," "Michael Knechtel Resume," and "BOXWOOD RESUME AND COVER LETTER" are copies of my personal resumes and employer cover letters. The file "smoking gun.txt" is also my personal file, and contains personal notes I typed up and saved on my personal computer. A true and correct copy of this file is attached to this Declaration as Exhibit A. Because this file has sensitive personal information and has nothing to do with this case, I am asking the Court to accept the filing under seal.

22. None of these files have anything to do with Steve, and they were not, to my knowledge, copied onto his computer.

23. In summary, my only non-personal use of Steve's computer involved my attempt to copy his emails and personal files. I was unsuccessful in copying his emails. All files I copied for Steve were copied onto the external hard drive Steve provided me, and not copied to any other device or shared in any way.

# EXHIBIT B

24. On June 2, 2020, Steve picked up the computer, power cord, and external hard drive from me at my house in Westport.

25. I have preserved the USB drives I have and they are available for copying and inspection if needed.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated this 29th day of August, 2020.

_____<br>Michael Knechtel

# EXHIBIT B