UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONVERGEN ENERGY LLC, L'ANSE WARDEN ELECTRIC COMPANY, LLC, EUROENERGY BIOGAS LATVIA LIMITED, and LIBRA CAPITAL US, INC.<br><br>       Plaintiffs,<br><br>-against-<br><br>STEVEN J. BROOKS, NIANTICVISTA ENERGY LLC, GREGORY MERLE, RIVERVIEW ENERGY CORPORATION, DANIEL ESCANDON GARCIA, RAMON URIARTE INCHAUSTI, CHIPPER INVESTMENT SCR, SA, URINCHA SL, THEODORE JOHN HANSEN, BRIAN R. MIKKELSON, and CONVERGEN ENERGY WI, LLC,<br><br>       Defendants. | Index No. 1:20-cv-03746 (LJL) |

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT

Dated: September 9, 2020
New York, New York

             SEIDEN LAW GROUP LLP

             Michael Stolper
             Jake Nachmani
             Dov B. Gold
             469 Seventh Avenue, Fifth Fl.
             New York, NY 10018
             (646) 766-1703

             *Counsel for Plaintiffs*

Pursuant to Federal Rule of Civil Procedure 15(a) ("Rule 15(a)"), Plaintiffs Convergen Energy LLC, L'Anse Warden Electric Company, LLC, Euroenergy Biogas Latvia Limited, and Libra Capital US, Inc. ("**Libra**") (collectively, "Plaintiffs"), by and through their undersigned counsel, submit this reply memorandum of law in further support of their motion for leave to file an amended complaint.

## PRELIMINARY STATEMENT

Defendants concede that leave to amend a complaint is freely given, and yet they nevertheless object on the grounds of undue delay, prejudice, and futility. None of these arguments are colorable. Defendants do not even attempt to articulate or calculate how they have been harmed or delayed. As the Court is no doubt aware, the case is at the pleading stage, with two motions to dismiss pending. The suggestion of delay has no support. With respect to futility, Defendants merely parrot their motion to dismiss, which should be denied for the reasons in Plaintiffs' opposition papers.

Tellingly, Defendants ignore the very reason Plaintiffs stated for requesting leave to amend their complaint; namely, that:

> Plaintiffs did not anticipate that defendants would attempt to evade liability for their misconduct suggesting that it was blessed by one of Brooks' former colleagues, Fidel Andueza ("**Andueza**"), who conspired with him . . . Defendants have contended that Andueza, a senior Libra Capital employee, adequately represented Plaintiffs in the sale of the pellet plant and knew of Brooks' double-dealing. The Court, in turn, concluded that Andueza's authority to execute the operative agreements was uncontested even though the Complaint was silent with respect to Andueza.

Plaintiffs' Brief at 1. In other words, the opposition skirts over the fact that Defendants misled the Court concerning Andueza's role, and, consequently, triggered the need for Plaintiffs to amend the complaint and correct the record. Defendants spend an inordinate amount of time in their opposition (and in the companion reconsideration motion opposition) pointing out the uncontested

1

fact that Andueza's role in Defendant Steven Brooks' ("**Brooks**") fraudulent scheme was known to Plaintiffs (at least to some degree) before the complaint was filed. Defendants ignore Plaintiffs' legal argument based on Andueza's compromised position: because Defendants knew of Andueza's participation in the fraudulent scheme (and Plaintiffs' senior management did not), any agreement that he executed on Plaintiffs' behalf is void and deemed never to have come into existence. The true facts concerning Andueza are highly material and could affect the Court's determinations regarding, *inter alia*, the enforceability of the arbitration provision in the Supply Agreement. Any suggestion of futility is unfounded.

## ARGUMENT

### I. There Has Been No Undue Delay or Prejudice

In order to show that leave to amend should be denied, Defendants have to satisfy the heavy burden of showing that the proposed amendment is the result of "undue delay, bad faith, [or] dilatory motive[.]" *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 194 (2d Cir. 2015). Undue delay requires a showing that "a considerable period of time has passed between the filing of the complaint and the motion to amend" without a "valid reason for the neglect and delay." *Hickey Freeman Tailored Clothing, Inc. v. Chargeurs, S.A.*, 2018 WL 5729297, at *3 (S.D.N.Y. Nov. 1, 2018) (quoting *Park B. Smith, Inc. v. CHF Indus. Inc.*, 811 F. Supp. 2d 766, 779 (S.D.N.Y. 2011)). "Simply alleging that the plaintiff could have moved to amend earlier," without more, is insufficient to show undue delay. *Agerbrink v. Model Service LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016).

To meet this heavy burden, Defendants make two principal arguments: (i) "Libra's Amended Complaint is based on information known to Libra since 2019;"[1] and (ii) "Libra has also

---

[1] Def. Br. at 3.

dragged Defendants through expensive expedited litigation."[2] Neither proposition is supported factually or legally.

There has been no undue delay. As stated above, Plaintiffs knew about Andueza's role in the fraudulent scheme as of the filing of the initial complaint. However, the facts concerning the role of Andueza (a non-party) in the fraud were not critical to Plaintiffs' claims as pled in the initial complaint. Thereafter, Defendants mischaracterized the role of Andueza in their sur-reply papers, and the Court, in denying a stay of the Wisconsin arbitration, relied heavily on Andueza's alleged "undisputed" authority to bind Plaintiffs. In order to correct and amplify the record concerning Andueza, Plaintiffs timely filed this application for leave to amend and immediately moved for reconsideration of the Court's decision to deny a stay of the Wisconsin arbitration. Defendants' opposition fails to address these circumstances, which are the actual reason for the amendment. Significantly, Defendants have no substantive response to the amendment.

Further, Defendants' contentions regarding "delay" are belied by the fact that discovery has barely gotten off the ground, as Defendants have dragged their feet. Defendants have limited their discovery responses to the issue of misappropriation of trade secrets. The parties have not yet begun discovery on the fraud claim at the heart of this lawsuit. Indeed, Defendants have objected to any fraud-based discovery:[3]

> Defendants object to the Requests to the extent they are not narrowly tailored and targeted at documents or information needed to resolve Plaintiffs' motion for a preliminary injunction, the sole subject on which the Court has permitted expedited discovery, or to the extent the Requests otherwise exceed or vary from the scope of the Court's Order permitting expedited discovery.

Declaration of Dov Gold at 2.

---

[2] Def. Br. 5.
[3] Defendants complaint about "onerous expedited discovery." Def. Br. 2. Defendants Brooks, Niantic and Merle have produced a single email, forcing Plaintiffs to move to compel discovery.

3

Despite what Defendants contend about delay here, this case is only three months old. Two motions to dismiss are pending. Defendants do not cite to a single case denying leave to amend based on "undue delay" under these circumstances. *See Apotex Corp. v. Hospira Healthcare India Private Ltd.*, 2019 WL 3066328, at *9-10 (S.D.N.Y. July 12, 2019) (no undue delay where case was a year old, no discovery had taken place and, pursuant to an amended complaint, defendants would file a second motion to dismiss).

Defendants cite to cases where the requested amendment came unduly late in the litigation process; for example: (i) post judgment (*Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008)); (ii) when the parties were preparing for trial (*Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983) (six days before trial and "two years and nine months after the defense could properly have been asserted") and *Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71, 88 (2d Cir. 1998) (after discovery was complete and case was near resolution)); (iii) more than ten years after the litigation started (*Grace v. Rosenstock*, 228 F.3d 40, 51 (2d Cir. 2000)); (iv) after discovery ended and after the movant responded to summary judgment (*Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990)); and (v) after court-ordered deadlines to amend pleadings (*John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994) (four months after deadline) and *Lee v. Regal Cruises, Ltd.*, 116 F.3d 465 (2d Cir. 1997) (ten months after deadline and two years after information was available)). None have any applicability to this three-month old case at the pleading stage.

Indeed, Defendants' contention about delay lacks any credibility given that they have waged a multi-jurisdictional, scorched earth campaign to delay this Court's adjudication of the issues. Plaintiffs filed this singular lawsuit based on all the issues between Plaintiffs and Defendants. The Defendants, in turn, filed *two separate suits in Wisconsin*, both duplicative but

4

not as encompassing as this suit. They then filed an arbitration over the Supply Agreement, which is also before this Court. The number of motions and time spent on these extraneous proceedings is solely laid at Defendants' doorstep. Stated differently, it is Defendants' wasteful litigation tactics, set forth in an objective review of the various dockets, that have delayed this case. Defendants should not be rewarded for their blatant forum shopping and attempts to litigate the issues "piecemeal."

Similarly flawed is Defendants' contention that the "real emergency" is the pellet plant's money damages claim for unpaid pellets. The pellet plant's claim is compensable by money and, consequently, not an emergency under any applicable law. *See Bisnews AFE (Thailand) Ltd. v. Aspen Research Grp. Ltd.*, 437 F. App'x 57 (2d Cir. 2011) (denying a preliminary injunction because plaintiff could be fully compensated by money damages). Defendants' claim is also for a mere fraction of the monies Plaintiffs seek in this case, which Defendants have hobbled with their efforts at piecemeal litigation. If any side has been harmed by delay, it is Plaintiffs and not Defendants.

## II.     No Prejudice Exists to Warrant Denial of Leave to Amend

Leave to amend will be freely granted absent a showing of prejudice such that an amendment would: "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Pasternack*, 863 F.3d at 174 (internal quotations and citations omitted).

In arguing prejudice, Defendants resort to conclusory statements about delay and "stall tactics" intended to "starve" Defendants by not paying for pellets or agreeing to arbitrate. Def. Br. at 15-16. However, "mere delay" or "complaints of the time, effort and money" expended in

litigation do "not provide a basis for a district court to deny the right to amend." *Id.*

Plaintiffs' proposed amended complaint concerns the same transactions and agreements that are at issue in the initial complaint. The amendment will not require Defendants to expend significant additional resources to conduct discovery or trial. In any event, the law is clear that the mere expansion of cost or other burden resulting from an amendment is an insufficient basis for denying leave to amend. *See Agerbrink*, 155 F. Supp. 3d at 455 ("While some additional discovery will certainly be necessary, the possibility that an amendment will require the expenditure of additional time, effort, or money [does] not constitute undue prejudice.") (internal quotations and citations omitted); *Margel v. E.G.L. Gem Lab Ltd.*, 2010 WL 445192 at *12 (S.D.N.Y. Feb. 8, 2010) (noting that any "prejudice that would flow from any additional required discovery can generally be mitigated by adjustments to the discovery schedule."). Moreover, as stated above, any delay is exclusively the result of Defendants' tactics. If Defendants were really concerned about prosecuting the Supply Agreement claim in the most expedient manner possible, they would have foregone AAA and focused instead on prosecuting the claim in this case.

### III.   Plaintiffs' Proposed Amendment is Well Pled and Not Futile

Granting leave to amend is futile if it appears that plaintiff cannot address the deficiencies identified by the court and allege facts sufficient to support the claim. *See Joblove v. Barr Labs., Inc.,* 466 F.3d 187, 220 (2d Cir.2006). Here, the Court has not identified deficiencies with the Complaint. Defendants acknowledge this and state alternatively that the amended complaint "does not address any of the fundamental defects addressed in Defendants' motion to dismiss." Def. Br. 13. Thus, they argue, "any amendment would be futile." *Id.* Plaintiffs opposed Defendants' motion to dismiss with evidence and support for the Complaint's claims. The proposed amendment is not intended to remedy any defects because Plaintiffs do not concede the existence of any such defects.

Rather, the amended complaint is intended to plead additional facts relevant to non-party Andueza's ability to bind Plaintiffs when he was participating in their fraudulent scheme, an issue that is relevant to, among other things, the Court's determination regarding the enforceability of the arbitration provision of the Supply Agreement. This substantive point is left unaddressed by Defendants' brief.

Defendants instead focus on the fact that Plaintiffs' in-house attorney, Bert Diaz ("**Mr. Diaz**"), signed an Amended Closing Statement in the days immediately after Defendants' fraudulent scheme was discovered. They specifically highlight the following sentence from the Amended Closing Statement:

> Other than as expressly modified pursuant to this Amended and Restated Closing Statement, all of the terms, conditions and other provisions of the Acquisition Agreement and the O&M Agreement are hereby ratified and confirmed and shall continue to be in full force and effect in accordance with their respective terms.

Def. Br. at 7. From this sentence they conclude that "Diaz reaffirmed, in the Amended Closing Statement, the arbitration clauses in the Acquisition Agreement and Supply Agreement." Def. Br. at 13.

Defendants have taken the above-quoted sentence out of context and distorted its meaning. Mr. Diaz rejected the suggestion of ratification and explained that the entire provision including the above-quoted sentence was meant to limit the amendment of the Acquisition Agreement to just those terms set forth in the Amended Closing Statement (*i.e.*, harmonize the terms of the Amended Closing Statement with the Acquisition Agreement): "In the event of any conflict or inconsistency between the provisions of the Acquisition Agreement…and the provisions of this Amended and Restated Closing Statement, the provisions of this Amended and Restated Closing Statement shall control." ECF 108, 92-8.

"Ratification 'must be performed with full knowledge of the material facts relating to the

7

transaction, and the assent must be clearly established and may not be inferred from doubtful or equivocal acts of language.'" *Cammeby's Mgmt., Co., LLC v. Affiliated FM Ins. Co.*, 152 F. Supp. 3d 159, 165 (S.D.N.Y. 2016) (quoting *Chemical Bank v. Affiliated FM Ins. Co., 169 F.3d 121, 128 (1999),* vacated on other grounds sub nom.); "Ratification requires clearly established intent." *Principal Life Ins. Co. v. Locker Grp.*, 869 F. Supp. 2d 359, 366 (E.D.N.Y. 2012). The Amended Closing Statement was never intended to ratify the Acquisition or Supply Agreements. Diaz Decl. at 3 (ECF 108). As Mr. Diaz explained, the Amended Closing Statement was *not* meant to release or otherwise impact claims based on the Defendants' fraudulent conduct. To the contrary, at the time of the Amended Closing Statement, Plaintiffs had put Brooks on notice of fraud claims and demanded that Brooks repay the shortfall between the fraudulent purchase price and the fair market price as determined by an independent valuation of the pellet plant. *See* Diaz Decl. at 4 (ECF. 108). Plaintiffs expressly required the independent valuation to be completed before determining the amount of Brooks' liability to Libra. *See Id*. If the Amended Closing Statement were somehow intended to relinquish Plaintiffs' stated fraud claim, the Amended Closing Statement would have included a release or comparable language. It does not contain any release language, address the issue of fraud, or discuss the material undervaluation of the plant. ECF. 92-8.

      Defendants suggest that the timing of the Closing Statement in relation to Plaintiffs' initial discovery of the fraud (a few weeks later) bolsters their claim of ratification. Specifically, Defendants contend that the Amended Closing Statement was executed "after Libra's investigation of the purported fraud at issue." Def. Br. at 2. The suggestion that the investigation concluded, and that Plaintiffs knew all that they needed to know about the fraudulent scheme three weeks after it was first discovered in unsupported. The Amended Closing Statement itself belies the suggestion. In it, Plaintiffs requested, and Defendants agreed to maintain Defendant Brian Mikkelson as a

consultant to continue to help oversee the pellet and power plants during the transition. ECF. 92-8. By April, Plaintiffs terminated Mikkelson and by May 14 Mikkelson was named in this lawsuit as a defendant co-conspirator with Brooks. ECF. 1. Had Plaintiffs concluded their fraud investigation by the date of the Amended Closing Statement, they would not have opted to keep a fox in the hen house.

In any event, it is now clear that Defendants have raised a dispute concerning the meaning and import of the Amended Closing Statement. However, all disputes under the Amended Closing Statement call for jurisdiction in New York:

> Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Agreement may be brought against any of the parties in the courts of the State of New York, County of New York, or, if it has or can acquire jurisdiction, in the United States District Court for the Southern District of New York, and each of the parties consents to the jurisdiction of such courts (and of the appropriate appellate courts) in any such action or proceeding and waives any objection to venue laid therein.

ECF 92-8. Thus, whether Mr. Diaz ratified the Acquisition Agreement and Supply Agreement is a question for this Court, not for the AAA in Wisconsin. Not surprisingly, Defendants omit from their brief any mention of the above-quoted forum provision. Defendants cannot selectively enforce the Amended Closing Statement. Having made their ratification argument based on the Amended Closing Statement, they have conceded that the Amended Closing Statement determines the appropriate forum for this dispute.[4]

---

[4] In the context of futility, Defendants also try to inject the employment agreements of the individual Defendants because those agreements contain arbitration provisions. Def. Br. 2. Defendants overlook the simple fact that none of Plaintiffs' claims are predicated on those employment agreements. This is a fraud case pure and simple carried out and assisted by faithless servants, the nominal buyer (Gregory Merle) and their funding source (the Spanish Defendants). Even if the employment contracts were at issue, none require arbitration under the circumstances. For example, Brooks and Mikkelson's employment agreements do not require arbitration "for any claim in which the Company seeks injunctive or other equitable relief [for violations of confidentiality]." Declaration of Dov Gold at 2; Dkt. 92-11.

## **CONCLUSION**

For all the foregoing reasons, the Court should grant Plaintiffs' motion.

| | |
|---|---|
| Dated: September 9, 2020<br>New York, New York | SEIDEN LAW GROUP LLP<br><br>By: /s/ Michael Stolper<br>  Michael Stolper<br>  Dov B. Gold<br>  Jake Nachmani<br>  469 Seventh Avenue, Fifth Fl.<br>  New York, NY 10018<br>  (646) 766-1703<br><br>*Counsel for Plaintiffs* |

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day I caused a true and correct copy of the foregoing to be filed using the Court's Electronic Filing System ("ECF System"). The document is available for viewing and downloading via the ECF System and will be served by operation of the ECF System upon all counsels of record.

Dated: September 9, 2020                                            SEIDEN LAW GROUP LLP


                                                                                   /s/ Michael Stolper
                                                                                   Michael Stolper