EMPLOYMENT AGREEMENT

EMPLOYMENT AGREEMENT, dated as of January 7, 2014, between LIBRA CAPITAL US, INC, a Delaware corporation having an office at 134 East 40th Street, New York, New York 10016 (the "Company"), and Steven J. Brooks, an individual residing at 75 Inwood Drive, Darien, CT 06820.

WHEREAS, the Company desires to employ the Employee and the Employee desire to be employed by the Company under the terms and conditions set forth herein.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency for which are hereby acknowledged, the parties hereby agree as follows:

1. <u>Retention as Employee: Duties.</u> The Company hereby employs the Employee in the position of Associate. The Employee hereby accepts such employment agrees to devote the Employee's full business time, attention and energies to the performance of the Employee's duties hereunder.

2. <u>Compensation.</u> For all services rendered hereunder by the Employee, the Company shall pay the Employee a base salary ("Base Salary") at an annual rate of $110,000.00 payable by periodic instalments in accordance with the Company's regular payroll practices as in effect from time to time. The Company, in its sole and absolute discretion, may determine to increase the Base Salary from time to time. The Company, in its sole and absolute discretion, may determine to award the Employee a bonus for services performed during any calendar year, which, if awarded, would be payable in the year following the year in which such service were provided. All amounts of compensation, and such other amounts payable to the Employee under this Agreement, are subject to all applicable tax, Social Security and other legally required withholding pursuant to any law of regulation.

3. <u>Benefits and Reimbursement.</u> During the term of this Agreement, the Employee shall be entitled to the following benefits (collectively, "Benefits"):

   a) The Employee shall be entitled to take paid vacation during each calendar year in accordance with the provisions of Libra Capital US, Inc. Employee Handbook ("Handbook"), which is subject to unilateral amendment by the Company in its sole and absolute discretion. Vacation may be taken at the mutual convenience of the Employee and the Company. Up to five unused vacation days may be carried over to any succeeding calendar year.
   b) The Employee shall be entitled to participate in the Company's employee benefit plans maintained for employees generally, in accordance with the provisions of the plan documents under which such plans are maintained. Such benefit plans are subject to unilateral discretion may be limited by applicable law.
   c) The Employee shall be reimbursed by the Company for all reasonable business expenses incurred by the Employee in connection with the performance of the Employee's services under this Agreement, subject to the Company's policies in effect from time to time with respect to such

1

expenses, including the Company's requirements with respect to reporting an documentation of such expenses.

4. <u>No Other Business Activities.</u> The Employee shall not, during the term of this Agreement, be engaged in any other business activity without prior written consent of the Company, except that the foregoing shall not be deemed to prevent the Employee from making and supervising passive investments in other and different businesses, provided that the same (a) are not in completion with the business of the Company and (b) do not interfere with the performance of the Employee's duties hereunder; provided, however, that notwithstanding the foregoing, the Employee may own, directly or indirectly, solely as an investment, securities of any such person which are traded on any national securities exchange or NASDAQ if the Employee (A) is not a controlling person of, or a member of a group which controls, such person and (B) does not, directly or indirectly, own 5% or more of any class of securities of such person.

5. <u>Company Policies</u>. The Employee will be subject to all rules and policies applicable to employees of the Company generally or at Employee's level as set forth in the Handbook or as otherwise provided by the Company.

6. <u>Representations</u>. The Employee represents and warrants to the Company that the Employee is not party to any agreement or any other contractual or other binding obligations or subject to any applicable policy that would prevent or restrict the Employee from performing the Employee's duties and responsibilities for the Company, including, without limitation, any agreements or other obligations or documents relating to non-competition, non-solicitation of clients, customers or employees, confidentiality, trade secrets or proprietary information.

7. <u>Confidentiality</u>.

a) The Employee acknowledges that the Employee has been inform by the Company that as a result of the Employee's employment by the Company, the Employee will obtain proprietary, trade secrets and confidential information concerning the business of the Company and its Affiliates, the owners of the Company and its Affiliates, employees of the Company and its Affiliates, and the family members of such owners and employees, including without limitation: (i) discoveries, ideas, concepts, software, plans, techniques, models, data or documentation relating to strategic and business plans, investment and strategies and plans, and potential investment opportunities; (ii) the Employee's compensation and other terms of this Agreement; (iii) financial information relating to the Company and Affiliates; (iv) financial and personal information relating to the owners of the Company and its Affiliates, employees of the Company and its Affiliates, and the family members of such owners and employees; and (v) information that is provided to the Company or its Affiliates in confidence, or subject to confidential agreements, in connection with investments or potential investments (collectively, "Confidential Information") and any corporation, limited liability company, partnership, limited partnership, or any other form of business enterprise, other than the Company, in which Libra directly or indirectly has an ownership interest. The Employee further acknowledges that the Company's Affiliates,

2

and the family members of such owners and employees, are third party beneficiaries of the confidentiality protection in this Section 7.

b) The Employee agrees that the Employee will not at any time, either during the term of this Agreement or thereafter, divulge to any person, firm, corporation or any other entity or otherwise make use of any Confidential Information obtained or learned by the Employee during the course of the Employee's employment with the Company, or prior to the commencement hereof, with regard to the operational, financial, business or other affairs of the Company, its owners, officers and directors except (i) in the course of, and to the extent necessary in, the proper performance of the Employee's duties hereunder, (ii) with the Company express written consent (iii) to the extent that any such information is in the public domain other than as a result of the Employee's breach of any of the Employee's obligations hereunder, or (iv) where required to be disclosed by court order, subpoena or other government process. In the event that the Employee shall be required to make a disclosure pursuant to the provisions of clause (iv) above, the Employee promptly, but in no event more than two business days after learning of such subpoena, court order or other government process nor less than 24 hours prior to the return date for any such subpoena, court order or other government process, shall notify (by personal delivery or by telecopy, confirmed by mail) the Company and , at the Company's expense, the Employee shall (1) take all necessary steps requested by the Company to defend against the enforcement of such subpoena, court order or government process, and (2) permit the Company to intervene and participate with counsel of its choice in any proceeding relating to the enforcement thereof.

c) Upon termination of the Employee's employment with the Company, or at any time the Company may so request, the employee will promptly deliver to the Company al data, memoranda, notes, record, reports, manuals, drawings, blueprints and other documents and all computer software, hardware and discs and any other memory storage facility (and all copies thereof) relating to the business of the Company and al property associated therewith, which the Employee may then possess or have under the Employee's control, other than information relating to the Employee's own compensation and benefits.

8. <u>Term: Employment-At-Will</u>. This Agreement shall commence on [date] or such other date as is agreed between the Company and Employee. This Agreement is for an indefinite term, with the understanding that the Employee's employment with the Company is at-will. The Employee may resign at any time for any reason by giving written notice to the Company of the date of such resignation at least two weeks in advance of the resignation date. The Company may terminate the Employee's employment at any time for any reason by giving written notice to the Employee of the date of such termination at least two weeks in advance of the termination date, except that: (a) the Company may terminate employment for Cause without advance notice; and (b) for a termination for reasons that then Cause, the Company may, it is sole and absolute discretion, provide a shorter or no notification period, and pay the Employee's base salary for the number of additional working days the Employee would have worked if the Employee had received two weeks notice. For purposes of this Section 8, "Cause" means shall mean (i)violation of Company policies; (ii) refusal to perform the Employee's duties, responsibilities or obligations, or other insubordination; (iii) fraud, theft, misappropriation of funds, embezzlement or dishonesty; or (iv) conviction of a crime or please of guilty or *nolo contender* involving

3

a crime, whether or not involving the Company. If the Employee's employment ceases for any reason, this Agreement shall terminate as of the date of such termination, except for the obligations set forth in Section 7 of this Agreement, which shall continue in effect after employment ceases for any reason, and the provisions in Sections 9, 10 and 11 as such provisions apply to any dispute between the Employee and the Company that arose before the termination of employment, or that arises under Section 7 at any time.

9. <u>Injunctive and Other Equitable Relief.</u>

a) The Employee agrees that: (i) the Company and its Affiliates, the owners of the Company and its Affiliates, employees of the Company and its Affiliates, and the family member of such owners and employees, will suffer substantial damage which will be difficult to compute if the Employee breaches any of the terms, provisions or conditions in Section 7 of this Agreement; and (ii) the provisions of Section 7 of this Agreement are reasonable and necessary for the protection of the business of the Company and its Affiliates, and the privacy interests of the owners of the Company and its Affiliates, employees of the Company and its Affiliates, and the family members of such owners and employees. The Employee, therefore, consents and agrees that if the Employee violates any of the provisions of Section 7 hereof, the Company shall be entitled, in addition to any other remedies it may have at law, to the remedies of injunction specific performance and other equitable relief for a breach by the Employee of Section 7 of this Agreement from any court of competent jurisdiction. This Section 9 shall not, however, be construed as a waiver of any of the rights which the Company may have for damage or otherwise.

b) Any waiver by the Company of a breach of any provision of Section 7 hereof shall not operate or be construed as a waiver of any subsequent breach of such provision or any other provision hereof.

c) The Employee agrees that if one or more of the provisions contained in Section 7 shall for any reason be held to be excessively broad as to scope, activity or subject to as to be unenforceable, such provision or provisions shall be construed by the appropriate judicial body by limiting and reducing it or them so as to be enforceable to the maximum extent compatible with the applicable law as it shall then appear.

d) The Employee's obligations under Section 7 shall be binding upon the Employee's heirs, executors, administrators and legal representatives.

10. Arbitration. The Company and the Employee agree that any claim, dispute or controversy arising under or in connection with this Agreement, or otherwise in connection with the Employee's employment by the company or termination of the Employee's employment (including, without limitation, any such claim, dispute or controversy arising under any federal, state or local statute, regulation or ordinance or any of the company's employee benefit plans, policies or programs), except for any claim in which the Company seeks injunctive or other equitable relief against the Employee for violating Section 7 of this Agreement (whether the Company solely seeks equitable relief or seeks both equitable and legal relief), shall be resolved solely and exclusively by binding, confidential, arbitration. The arbitration shall be held in New York City, New York. The arbitration shall be conducted in accordance with the National Rules for the Resolution of Employment Disputes (the "Rules") of the

4

American Arbitration Association ("the AAA") in effect at the time of the arbitration, except that the Company pay all filing fees, forum fees and arbitrator fees in connection with such arbitration. The award of the arbitrator shall be set forth in writing and be binding and conclusive on all parties. Any action to enforce or vacate the arbitrator's award shall be governed by the Federal Arbitration Act, if applicable, and otherwise by New York state law.

11. <u>Miscellaneous</u>.

a) This Agreement shall be governed by and construed in accordance with the laws of the State of New York, except as otherwise provided in Section 10.

b) This Agreement sets forth the entire agreement between the parties hereto with respect to the subject matter hereof and is intended to supersede all prior negotiations, understandings and agreements between the parties.

c) No provision of this Agreement may be waived or amended, except by a writing signed by the parties hereto.

d) This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and together which shall constitute one and the same instrument.

e) This Agreement shall be binding upon and all inure to the benefit of, the parties hereto and their respective successors, assigns and personal representatives.

f) Any and all notices or other communications hereunder shall be sufficiently given if sent by hand, overnight courier or by certified mail, return receipt requested, postage prepaid, addressed to the party to receive the same as its or the Employee's address as set forth on page 1 hereof, or to such other address as the party to receive the same shall have specified by written notice in the manner provided for this Section 11(f). Such notices or other communications shall be deemed to have been given upon receipt if given by hand or by overnight courier, and five days after the date deposited in the mail.

INWITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

LIBRA CAPITAL US, INC.

By: _____ Date: 1.7.14
Hannah Peters Siegfried
Director of Human Resources, NY

By: _____ Date: 1/7/2014
Steven J. Brooks