IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| CONVERGEN ENERGY LLC, L'ANSE WARDEN ELECTRIC COMPANY, LLC, EUROENERGY BIOGAS LATVIA LIMITED, and LIBRA CAPITAL US, INC.<br><br>Plaintiffs,<br><br>v.<br><br>STEVEN J. BROOKS, NIANTICVISTA ENERGY LLC, GREGORY MERLE, RIVERVIEW ENERGY CORPORATION, DANIEL ESCANDON GARCIA, RAMON URIARTE INCHAUSTI, CHIPPER INVESTMENT SCR, SA, URINCHA SL, THEODORE JOHN HANSEN, BRIAN R. MIKKELSON, and CONVERGEN ENERGY WI, LLC.,<br><br>Defendants. | Case No. 1:20-cv-03746(LJL) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF THE SPANISH DEFENDANTS' MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

I.  PRELIMINARY STATEMENT ....................................................................... 1

II.  ARGUMENT ............................................................................................... 2

   A.  Plaintiffs' "Statement of Facts" Is Deficient ....................................... 2

     1. Personal Jurisdiction ..................................................................... 3

     2. Aiding and Abetting Liability ......................................................... 5

   B.  Jurisdictional Discovery is Not Warranted ........................................ 7

   C.  The Court Does Not Have Personal Jurisdiction Under CPLR § 302(a)(3)(ii) 13

     1. Plaintiffs' Claims Do Not Arise From The Spanish Defendants' Tortious Act Committed Outside New York ...................................................... 14

     2. The Spanish Defendants Could Not Have Expected Consequences in New York ...................................................................................... 15

     3. The Spanish Defendants Do Not Derive Substantial Revenue From International Commerce .................................................................. 21

   D.  The Exercise of Personal Jurisdiction Over The Spanish Defendants Does Not Comport with Due Process .............................................. 23

     1. The Spanish Defendants Do Not Have Minimum Contacts With New York  23

     2. An Exercise of Personal Jurisdiction Over The Spanish Defendants Would Not Be Reasonable ............................................................................. 26

   E.  Plaintiffs' Aiding and Abetting Claims Are Not Adequately Pled ................. 29

     1. Plaintiffs Fail to Adequately Plead Fraud with Particularity .......................... 29

     2. Plaintiffs Fail To Identify Any Factual Allegations Creating A Strong Inference That Any Of The Spanish Defendants Had Actual Knowledge Of The Alleged Fraud Or Breach Of Fiduciary Duty ................................................. 29

     3. Plaintiffs Fail To Adequately Plead "Substantial Assistance." ...................... 33

   F.  Plaintiffs Fail To Address Numerous Other Deficiencies In Their Complaint 33

III.  CONCLUSION ............................................................. 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*,
651 F. Supp. 2d 155 (S.D.N.Y. 2009) ............................................................. 32

*In re Agape Litig.*, 773 F. Supp. 2d 298 (E.D.N.Y. 2011) ........................................ 31

*Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102
(1987) ....................................................................................... 27

*Briley v. Blackford*, No. 89 CIV. 8365 (PNL), 1990 WL 124341
(S.D.N.Y. Aug. 21, 1990) ..................................................................... 19

*Bulk Oil (USA) Inc. v. Sun Oil Trading Co.*, 584 F. Supp. 36 (S.D.N.Y. 1983) ................ 23

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ........................................ 17

*Calder v. Jones*, 465 U.S. 783 (1984) ........................................................ 24

*Casio Computer Co. v. Sayo*, No. 98CV3772 (WK), 2000 WL 1877516
(S.D.N.Y. Oct. 13, 2000) ..................................................................... 33

*Dandong v. Pinnacle Performance Ltd.*,
No. 10 CIV. 8086 LBS, 2011 WL 5170293 (S.D.N.Y. Oct. 31, 2011) ............................. 32

*Davidson Extrusions, Inc. v. Touche Ross & Co.*, 131 A.D.2d 421 (1987) ...................... 19

*Digital Lab Sols., LLC v. Stickler*, 2007 WL 700821 (S.D.N.Y. Mar. 7, 2007) ............. 22, 23

*DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405 (S.D.N.Y. 2010) ............... 19

*Dix v. Peters*, 374 F. Supp. 3d 213 (N.D.N.Y. 2019) .......................................... 27

*Falow v. Cucci*, No. 00 Civ. 4754(GBD), 2003 WL 22999458
(S.D.N.Y. Dec. 19, 2003) ...................................................................... 4

*Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 402 N.E.2d 122
(1980) ....................................................................................... 25

*Gear, Inc. v. L.A. Gear California, Inc.*, 637 F.Supp. 1323 (S.D.N.Y.1986) .................... 9

*Glob. Intellicom, Inc. v. Thomson Kernaghan & Co.*, No. 99 CIV 342 (DLC),
1999 WL 544708 (S.D.N.Y. July 27, 1999) ..................................................... 26

*Gmurzynska v. Hutton*, 257 F. Supp. 2d 621 (S.D.N.Y. 2003), *aff'd*, 355 F.3d 206 (2d Cir.2004)........................................................................................................29

*Grove Valve & Regulator Company v. Iranian Oil Services*, 87 F.R.D. 93 (S.D.N.Y.1980) .........................................................................................................9

*Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc*., 331 F. Supp. 3d 130 (S.D.N.Y. 2018) ...........................................................................................................12

*Ingraham v. Carroll*, 90 N.Y.2d 592, 687 N.E.2d 1293 (1997) ................................22

*Inspired Capital, LLC v. Conde Nast*, 803 F. App'x 436 (2d Cir. 2020).....................32

*Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982) (Powell, J., concurring in the judgment) ....................................................9

*Jazini v. Nissan Motor Co*., 148 F.3d 181 (2d Cir.1998)..........................................8

*JP Morgan Chase Bank v. Winnick*, 406 F. Supp 2d 247 (S.D.N.Y. 2005) .................31

*Kernan v. Kurz-Hastings, Inc*., 175 F.3d 236 (2d Cir. 1999) ....................................17

*Kinetic Instruments, Inc. v. Lares*, 802 F.Supp. 976 (S.D.N.Y.1992) ........................20

*Krys v. Pigott*, 749 F.3d 117 (2d Cir. 2014) ..........................................................31

*Langenberg v. Sofair*, No. 03 CV 8339, 2006 WL 2628348 (S.D.N.Y. Sept. 11, 2006)..............................................................................................8

*Lerner v. Fleet Bank, N.A*., 459 F.3d 273 (2d Cir.2006) ..........................................32

*Lewis v. Madej*, 2015 WL 6442255, (S.D.N.Y. Oct. 23, 2015), (ii)..........................16

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013)....................24

*Madison Capital Markets, LLC v. Starneth Europe B.V*., No. 15 CIV 7213, 2016 WL 4484251 (S.D.N.Y. Aug. 23, 2016) ...............................6, 15, 17, 25

*Maersk, Inc. v. Neewra, Inc.*, 554 F. Supp. 2d 424 (S.D.N.Y. 2008) .........................25

*Maldonado v. Rogers*, 99 F. Supp. 2d 235 (N.D.N.Y. 2000) .............................9, 11, 12

*Mega Tech Int'l Corp. v. Al-Saghyir Establishment*, No. 96 CIV 8711 LBS, 1999 WL 269896 (S.D.N.Y. May 3, 1999) ..............................................................27

*Metro. Life Ins. Co. v. Robertson-Ceco Corp*., 84 F.3d 560 (2d Cir. 1996)..........................26, 27

*MLSMK Investments Co. v. JP Morgan Chase & Co*.,737 F.Supp.2d 137 (S.D.N.Y.2010)..........................................................................................................32

*Mortg. Funding Corp. v. Boyer Lake Pointe, LC*, 379 F.Supp.2d 282
(E.D.N.Y.2005)..................................................................................................................19

*Nat'l Westminster Bank PLC v. Ret. Care Assocs., Inc.*,
1999 WL 239677 (S.D.N.Y. Apr. 23, 1999)....................................................................16

*O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674 (2d Cir.1991)...........................30

*Palace Exploration. Company v. Petroleum Development Company*,
41 F. Supp. 2d 427 (S.D.N.Y. 1998), (iii)........................................................................16

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
446 F. Supp. 2d 163 (S.D.N.Y. 2006)...............................................................................33

*Pilates, Inc. v. Current Concepts Kenneth Endelman*,
No. 96 CIV. 0043 (MGC), 1996 WL 599654 (S.D.N.Y. Oct. 18, 1996) ......................20

*Regenlab USA LLC v. Estar Techs. Ltd.*,
No. 16-CV-08771 (ALC), 2017 WL 3601304 (S.D.N.Y. Aug. 17, 2017) ......................14

*Ronar, Inc. v. Wallace*, 649 F. Supp. 310 (S.D.N.Y. 1986)............................................21

*Rosenberg v. PK Graphics*, No. 03 Civ. 6655(NRB), 2004 WL 1057621
(S.D.N.Y. May 10, 2004)..................................................................................................13

*Sandoval v. Abaco Club on Winding Bay*, 507 F.Supp.2d 312 (S.D.N.Y.2007) ............4

*Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 346 F. Supp. 3d 473 (S.D.N.Y. 2018).......33

*In re Sledziejowski*,
No. 13-22050 (RDD), 2016 WL 6155929 (Bankr. S.D.N.Y. Oct. 21, 2016)................18

*SPV Osus Ltd. v. UniCredit Bank Austria*,
No. 18-CV-3497(AJN), 2019 WL 1438163 (S.D.N.Y. Mar. 30, 2019) .................12, 13

*State of New York v. Mountain Tobacco Co.*, No. 12-CV-6276(JS)(SIL),
2016 WL 324970 (E.D.N.Y. Jan. 26, 2016) .....................................................................5

*In re Sumitomo Copper Litig.*, 120 F. Supp. 2d 328 (S.D.N.Y. 2000), and (iv).....16, 26

*In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659 (2d Cir.2013)..........................24

*Texas Int'l Magnetics, Inc. v. BASF Aktiengesellschaft*,
31 Fed.Appx. 738 (2d Cir.2002).........................................................................................9

*Trafalgar Capital Corp. v. Oil Producers Equip. Corp.*, 555 F. Supp. 305
(S.D.N.Y. 1983)..................................................................................................................21

*U.S. Pharm. Corp. v. Breckenridge Pharm., Inc.*,
No. 1:09-CV-2050-TWT, 2010 WL 3731112 (N.D. Ga. Sept. 16, 2010) .......................................6

*Walden v. Fiore*, 134 S. Ct. 1115 (2014) ........................................................................................17

*Wego Chem. & Mineral Corp. v. Magnablend Inc.*,
945 F. Supp. 2d 377 (E.D.N.Y. 2013) .............................................................................................8

*Williams v. PMA Cos., Inc.*, 419 F. Supp. 3d 471 (N.D.N.Y. 2019) ..............................................3

*Yash Raj Films (USA) Inc. v. Dishant.com LLC*,
No. 08 Civ. 2715, 2009 WL 4891764 (E.D.N.Y. Dec. 15, 2009) .................................................13

*Yellow Page Solutions, Inc. v. Bell Atl. Yellow Pages Co.*,
2001 WL 146816 (S.D.N.Y. Nov. 19, 20001) ................................................................................2

**Statutes**

N.Y. C.P.L.R. § 301 .......................................................................................................................10

N.Y. C.P.L.R. § 302 .................................................................................................................. *passim*

**Other Authorities**

Federal Rule of Civil Procedure 9(b) ......................................................................................... *passim*

Federal Rule of Civil Procedure 12(b)(2) .................................................................................. *passim*

Federal Rule of Civil Procedure 12(b)(6) .................................................................................. *passim*

Defendants Daniel Escandón Garcia ("Escandón"), Ramón Uriarte Inchausti ("Uriarte"), Chipper Invest SCR, S.A., ("Chipper") and Urincha SL ("Urincha") (collectively, the "Spanish Defendants") respectfully submit this Reply Memorandum of Law, along with the Declaration of Vincent Filardo, Jr., Esq. ("Filardo Decl."), and the Reply Declarations of Daniel Escandón Garcia ("Escandón Decl.") and Ramón Uriarte Inchausti ("Uriarte Decl.") executed on September 11, 2020, in further support of the Spanish Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 9(b) and 12(b)(2), (6) for lack of personal jurisdiction and failure to state a claim ("Motion"). D.E. 122.  For the reasons set forth herein and in the Memorandum of Law in Support of the Spanish Defendants' Motion to Dismiss ("Memorandum" or "Mem."), the Spanish Defendants respectfully request that the complaint against them be dismissed in its entirety for lack of personal jurisdiction and failure to state a claim.

## I.      PRELIMINARY STATEMENT

Plaintiffs sidestep the arguments raised in the Spanish Defendants' Memorandum and ignore the woefully inadequate allegations in the Complaint which fails to plead <u>any</u> facts that would support the exercise of personal jurisdiction over the Spanish Defendants or be sufficient to state a claim for the aiding and abetting causes of action asserted against them. Instead, Plaintiffs repeat the same conclusory allegations of the Complaint as if they would now be sufficient to establish personal jurisdiction and state a cause of action simply because their counsel repeats them in his sworn declaration. *See* Plaintiffs' Memorandum of Law Opposing the Spanish Defendants' Motion to Dismiss ("Response" or "Resp."), D.E. 147. Those allegations remain insufficient to support personal jurisdiction over the Spanish Defendants or state a claim upon which relief can be granted against them.

Perhaps not surprisingly, Plaintiffs now seek to embark on a jurisdictional fishing expedition based on their counsels' speculation and baseless assertions about the possible existence of facts or documents that *might* support an as yet-to-be-pled basis for personal jurisdiction. Plaintiffs cannot be permitted a backdoor around threshold pleading requirements to acquire jurisdictional discovery upon the unsupported conjecture of their counsel. Rather, Plaintiffs are required to make a "sufficient start" toward alleging personal jurisdiction in their Complaint before they can be entitled to seek jurisdictional discovery. The Complaint fails to do so because Plaintiffs have no basis to assert personal jurisdiction over the Spanish Defendants in this district, nor does such a basis for jurisdiction exist.[1] Importantly, the sworn testimony in the August 20, 2020 declarations of Messrs. Escandón and Uriarte ("Declarations" or "Decl.") remains unrebutted by cognizable evidence. Considering their unrebutted testimony there can be no basis upon which to grant Plaintiffs request for jurisdictional discovery, and the Complaint must be dismissed for lack of personal jurisdiction and failure to state a claim.

## II.     ARGUMENT

### A.  Plaintiffs' "Statement of Facts" Is Deficient

It is black-letter law that when a moving party provides evidence supporting its motion to dismiss for lack of personal jurisdiction, the opposing party cannot merely rely on the conclusory allegations in its Complaint. *Yellow Page Solutions, Inc. v. Bell Atl. Yellow Pages Co.,* 2001 WL 146816, at *3 (S.D.N.Y. Nov. 19, 20001) ("The plaintiff [in opposing a 12(b)(2) motion] cannot rely merely on conclusory statements or allegations; rather, the prima facie showing must be 'factually supported.'"); 4 Fed. Prac. & Proc. Civ., Procedural Aspects of Personal Jurisdiction, §

---

[1] By signing the Complaint pursuant to Federal Rule of Civil Procedure 11, Plaintiffs' counsel has certified to the Court that they have undertaken a reasonable investigation into the facts of this case -- including all jurisdictional facts -- and that the Complaint contains their relevant good-faith allegations ascertained from that investigation. Fed. R. Civ. P. 11.

1067.6 (4th ed.) ("When a defendant provides affidavits to support a Rule 12(b)(2) motion, the plaintiff may not simply rest on the allegations of the complaint."). Yet, Plaintiffs' Response merely recites the same conclusory allegations of the Complaint identified as insufficient in the Memorandum, and seeks to lend them some legitimacy by recasting them nearly verbatim in the declarations of Fidel Andueza ("Andueza Decl.") and Dov Gold, Esq. ("Gold Decl."). Where Plaintiffs introduce "new" facts through these declarations, they are not factually supported or supportable, have no impact on the exercise of personal jurisdiction over the Spanish Defendants or Plaintiffs' aiding and abetting claims, or, as established in the Reply Declarations, are simply incorrect.

### 1. Personal Jurisdiction

Plaintiffs begin by arguing that paragraphs 25 and 52 of the Complaint adequately assert personal jurisdiction over the Spanish Defendants. Resp. at 6. These paragraphs contains nothing more than conclusory statements that "each defendant . . . participated in and benefitted from the fraudulent scheme orchestrated and consummated in New York," "each defendant wired money to New York, directly or indirectly through Nianticvista Energy, LLC ("Niantic")," and "each of the defendants had extensive contacts with Brooks while he was in New York." D.E. 1 ¶¶ 25, 52. As explained at length in the Memorandum, the Complaint (including these paragraphs) fails to specifically identify each Spanish Defendant's contact with New York and lacks "the factual specificity necessary to confer jurisdiction as conclusory statements without supporting facts are insufficient." *Williams v. PMA Cos., Inc.*, 419 F. Supp. 3d 471, 487 (N.D.N.Y. 2019); *see* Memo. at 12-29.

Next, Plaintiffs raise "new" facts without articulating their relevance to the issues on this Motion. For example, Plaintiffs note that Clemente Mueller P.A. has offices in Manhattan and the

lawyers involved are licensed in New York. Resp. at 6; Gold Decl. ¶ 10. The fact that an unrelated third party, Clemente Mueller P.A., also happens to have a New York office has no bearing on each of the Spanish Defendants' purposeful connections with New York. Chipper wired funds to Clemente Mueller, P.A. in *New Jersey* from *Spain*, and no Spanish Defendant had any other interaction with Clemente Mueller, P.A. Escandón Decl. ¶¶ 21-24; Escandón Reply Decl. ¶¶ 9, 16, 20; Uriarte Decl. ¶¶ 28-30; Uriarte Reply Decl. ¶¶ 9, 18.

Plaintiffs also assert that the closing of the Acquisition Agreement and Supply Agreement took place in New York. Andueza Decl. ¶ 20. But this is contrary to the text of the Acquisition Agreement, which states that closing is to take place in Cedar Knolls, New Jersey, unless the parties mutually agreed on a different location. Acquisition Agreement ¶ 1.3(b). In any event, the fact that these agreements may have closed in New York does not move the center of gravity of the transactions or this dispute to New York when the assets being sold and the seller and buyer are located in Wisconsin, Delaware, and New Jersey and the contract is governed by Delaware law. *See* Memo. at 16-18; *Falow v. Cucci,* No. 00 Civ. 4754(GBD), 2003 WL 22999458, *5 (S.D.N.Y. Dec. 19, 2003) ("the unilateral activity of plaintiff executing a contract in New York is an insufficient basis upon which to acquire jurisdiction over a non-domiciliary defendant"); *Sandoval v. Abaco Club on Winding Bay*, 507 F.Supp.2d 312, 317 (S.D.N.Y.2007) (holding that the fact that the plaintiff's employer signed the agreement in New York did not subject the defendant to personal jurisdiction in New York). None of the Spanish Defendants negotiated or are parties to the Acquisition Agreement and did not participate in any such closing. Escandón Decl. ¶¶ 26, 35; Uriarte Decl. ¶¶ 27, 39.

Finally, Plaintiffs also make much of the fact that the Spanish Defendants have refused to produce any agreement memorializing their investment in the Pellet Plant Acquisition and

speculate that since unrelated third parties such as Elmerina Brooks and "a Spaniard not named in this lawsuit" invested in the Pellet Plant through New York law-governed agreements. Resp. at 6. As discussed in detail *infra*, and as provided in the reply declarations of Messrs. Escandón and Uriarte, no such agreement exists. *See infra* at § B; Escandón Reply Decl. ¶¶ 6,7, 18; Uriarte Reply Decl. ¶¶ 6, 7, 16.

### 2. Aiding and Abetting Liability

Second, Plaintiffs' Statement of Facts repeats the Complaint's conclusory allegations of the Spanish Defendants' knowledge of and involvement in the alleged fraud as if that would be sufficient to establish the elements of their aiding and abetting claims. Resp. at 3-5. As explained in the Memorandum, the allegations of the Complaint are insufficient to satisfy the relatively more lenient standard of Rule 12(b)(6), let alone Rule 9(b)'s particularity requirements. *See* Memo. at 23-28, 43-52.

Plaintiffs' attempt to amplify the allegations of the Complaint through Andueza's declaration is similarly unavailing. In his declaration, Andueza asserts that Mr. Uriarte and Mr. Escandón "knew that I worked for the Company out of New York," "knew that both Brooks and I worked for the Company's senior executives in the new York office," "knew of Brooks' dual role as the seller's representative and as a principal of the buyer" and that "I believe based on the totality of the circumstances, that Uriarte and Escandon knew of Brooks' undisclosed conflicting roles." Andueza Decl. ¶¶ 16, 19. These statements attest to the knowledge of others and, unless Andueza is clairvoyant, are not made with personal knowledge. Indeed, Andueza does not even bother to affirm that any of the statements made in his affidavit are based upon his personal knowledge. Accordingly, Andueza's speculation as to the Spanish Defendants' knowledge is no better than the baseless allegations in the Complaint and is inadmissible and entitled to no weight. *See State of*

5

*New York v. Mountain Tobacco Co.,* No. 12-CV-6276(JS)(SIL), 2016 WL 324970, at *6 (E.D.N.Y. Jan. 26, 2016) (disregarding plaintiff's declaration in support of personal jurisdiction "containing assorted statements that relate to personal jurisdiction over [defendant] to the extent that it asserted facts that were not based on personal knowledge."); *U.S. Pharm. Corp. v. Breckenridge Pharm., Inc.,* No. 1:09-CV-2050-TWT, 2010 WL 3731112, at *4 (N.D. Ga. Sept. 16, 2010) (holding no personal jurisdiction and according supporting affidavit no weight because it did "little more than restate the allegations in the complaint . . . [and] it is not based on the personal knowledge of [affiant]."). Moreover, even if these statements were credited, they simply reiterate the conclusory non-specific allegations in the Complaint and do not satisfy Rule 9(b) or 12(b)(6). *Madison Capital Markets, LLC v. Starneth Europe B.V.*, No. 15 CIV. 7213, 2016 WL 4484251, at *7 (S.D.N.Y. Aug. 23, 2016) (according unsupported conclusory affidavit of New York connections no weight in § 302(a)(3)(ii) analysis because "these conclusory assertions are not plausibly supported by the facts.").

Plaintiffs also attempt to cure the Complaint's insufficient group pleading by pointing to facts they assert demonstrate that the Spanish Defendants should all be considered one and the same. Specifically, Plaintiffs baselessly argue that Chipper and Urincha are Mr. Escandón and Mr. Uriarte's "personal investment vehicles," and that they each "have a financial stake in Chipper." Resp. at 4. Plaintiffs' factually unsupported assertions are false. Urincha is 51% owned by Mr. Uriarte's father, Jose Ramón Uriarte. Uriarte Reply Decl. ¶ 14(a). The remaining 49% ownership is split between Mr. Uriarte and his two sisters. *Id.* at (b)-(d). Similarly, Chipper is 50% owned by Urincha and 50% owned by Numala Invest, SL, an entity owned by the members of the Escandón family. Escandón Reply Decl. ¶ 14. Accordingly, neither Mr. Uriarte nor Mr. Escandón has any direct interest in Chipper. Uriarte Reply Decl. ¶ 3; Escandón Reply Decl. ¶ 3. Nor do they control

Chippers' day-to-day operations – Urincha's and Chipper's investment decisions are undertaken by their respective board of directors, not solely by Mr. Uriarte or Mr. Escandón. Uriarte Reply Decl. ¶¶ 8, 10; Escandón Reply Decl. ¶¶ 8, 10.

Plaintiffs also attempt to get around the Complaint's group pleading deficiencies by arguing that the Spanish Defendants jointly invested in the Pellet Plant Acquisition in light of defendant Brooks' response to an interrogatory, in which he responded that Mr. Uriarte, Mr. Escandón, and Chipper are direct or indirect lenders to 4406 Cypress Lane LLC ("Cypress"), the indirect owner of Convergen Energy WI, LLC and the alleged owner of Niantic. Gold Decl. ¶¶ 7, 9. Brooks' response to the interrogatory was not based upon his personal knowledge, nor is it true. Indeed, Brooks' counsel served an amended response to Plaintiffs' interrogatories on September 9, 2020 affirming that:

> Defendants do not have personal knowledge of Chipper's ownership structure, and have learned information subsequent to their June 24 Responses revealing that their beliefs concerning Daniel Escandon Garcia's and Ramon Uriarte Inchausti's status, as indicated in those June 24 Responses, were incorrect . . . .

Filardo Decl. ¶ 3, Ex. A. Chipper's investment in the Pellet Plant Acquisition was structured as a share purchase in Niantic. Escandón Reply Decl. ¶ 18. Chipper wired funds to Clemente Mueller, P.A. in New Jersey who then remitted the funds to the seller of the Pellet Plant, Convergen Energy, LLC. *Id.* ¶ 16. Chipper did not provide any funds to Cypress. *Id.* ¶ 19. Despite Chipper's investment, the shares were never issued to it. *Id.* ¶ 18. Moreover, none of the Spanish Defendants – including Chipper – entered into any written agreement with respect to the investment. Uriarte Reply Decl. ¶¶ 6, 16; Escandón Reply Decl. ¶¶ 6, 18.

## B. Jurisdictional Discovery is Not Warranted

Plaintiffs assert that they are entitled to jurisdictional discovery based on speculative allegations of the Spanish Defendants' potential connections to New York. This fishing expedition

seeks information that has already been disclosed and, as provided in the Reply Declarations of Messrs. Uriarte and Escandón, and in their August 20, 2020 Declarations, would not yield any facts that would subject any of the Spanish Defendants to personal jurisdiction in New York.

The Complaint's conclusory allegations that the Spanish Defendants, as a collective group, had "extensive contacts with Brooks while he was in New York," "knew that he was a senior officer of Convergen" and "wired money to New York, directly or indirectly through Niantic" fail to provide sufficient factual specificity to establish a *prima facie* case of personal jurisdiction and are therefore insufficient to warrant jurisdictional discovery. Memo. at 12-42. *Jazini v. Nissan Motor Co*., 148 F.3d 181, 185 (2d Cir.1998) ("[p]rior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith . . . legally sufficient allegations of jurisdiction, i.e., by making a *prima facie* showing of jurisdiction."); *Wego Chem. & Mineral Corp. v. Magnablend Inc*., 945 F. Supp. 2d 377, 386 (E.D.N.Y. 2013) ("[W]hen a plaintiff has not even made a *prima facie* showing of personal jurisdiction, it is 'well within' a court's discretion to deny jurisdictional discovery.") (quoting *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 255 (2d Cir.2007)); *see also Langenberg v. Sofair*, No. 03 CV 8339, 2006 WL 2628348, at *6 (S.D.N.Y. Sept. 11, 2006) (explaining that "where the plaintiff has failed to make out a *prima facie* case, courts have displayed an unwillingness to grant additional discovery on jurisdictional issues" and collecting cases). Indeed, the declarations of Messrs. Uriarte and Escandón provide sworn testimony contradicting those allegations and remain unrebutted by any admissible evidence. Escandón Decl. ¶¶ 12, 14, 19, 21-24, 27; Uriarte Decl. ¶¶ 10-16, 18-25, 28-31.

Moreover, courts rarely exercise their discretion to permit even limited discovery when a plaintiff has made less than a *prima facie* showing of personal jurisdiction, and only do so if the plaintiff requests tailored discovery that "might uncover a basis for jurisdiction; but if no such

possibility exists, to permit discovery would not be proper." *Grove Valve & Regulator Company v. Iranian Oil Services,* 87 F.R.D. 93, 96 n. 3 (S.D.N.Y.1980); *Maldonado v. Rogers*, 99 F. Supp. 2d 235, 240 (N.D.N.Y. 2000) (explaining that to obtain jurisdictional discovery, "Plaintiffs must, at the very least, assert factual allegations to support personal jurisdiction through the pleadings and affidavits submitted by the parties"). The Second Circuit has explained that "sparse" and "conclusory non-fact specific jurisdictional allegations" are insufficient to warrant additional jurisdictional discovery, while in contrast, allegations that are adequately pled, but "insufficiently developed" may warrant additional discovery. *Texas Int'l Magnetics, Inc. v. BASF Aktiengesellschaft,* 31 Fed.Appx. 738, 739 (2d Cir.2002). Here, Plaintiffs' "conclusory non-specific allegations" do not warrant jurisdictional discovery. Their baseless and speculative requests would not uncover any relevant jurisdictional facts, and their vexatious attempts to continue this action against the Spanish Defendants should be denied. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 715 (1982) (Powell, J., concurring in the judgment) ("A plaintiff is not entitled to discovery to establish essentially speculative allegations necessary to personal jurisdiction."); *Gear, Inc. v. L.A. Gear California, Inc.,* 637 F.Supp. 1323, 1328 (S.D.N.Y.1986) ("Discovery need not be granted to allow plaintiff to engage in an unfounded fishing expedition for jurisdictional facts . . . .").

Plaintiffs assert that they are entitled to jurisdictional discovery on the following issues: (1) whether the Spanish Defendants engage in international business outside of the United States and the extent of that business; (2) there is a "likelihood" that Chipper entered into some kind of promissory note or guarantee agreement similar to other investors that *might* include some connection to New York; (3) the scope of the Spanish Defendants' contacts with Brooks and how the investment was presented that "speaks to the Spanish Defendants' intentional conduct directed

at Plaintiffs in New York;" and (4) that the Spanish Defendants other than Chipper may have an interest in the Pellet Plant based on their relationship to each other and the source of the funds Chipper used for the wire transfer. Response at 7-8.

First, these discovery requests seek information that the Spanish Defendants have already provided. Both corporate Spanish Defendants expressly stated that they do not regularly conduct any business outside of Spain and have no offices or employees outside of Spain. *See* Urincha Decl. ¶¶ 34, 37 (Urincha's primary business is the construction, acquisition, and investment on the share of capital of unlisted non-financial corporations in Spain. It does not regularly conduct any business outside of Spain . . . ."); Escandón Decl. ¶¶ 33-34 (explaining that Chipper's primary business is in Spain, it does not regularly conduct any business outside of Spain and that the investment in the Pellet Plant Acquisition was Chipper's first and only investment in a project located in the United States). Messrs. Uriarte and Escandón similarly affirmed that they do not conduct any business in the United States and have affirmed in their Reply Declarations that they do not receive any income from international commerce. Escandón Reply Decl. ¶ 2; Uriarte Decl. ¶ 2. These sworn declarations remain unrebutted by Plaintiffs.

Moreover, there is no guarantee agreement, promissory note, or other contract memorializing Chipper's investment in the Pellet Plant. Uriarte Reply Decl. ¶¶ 6, 7, 16; Escandón Reply Decl. ¶¶ 6, 7, 18. Plaintiffs' counsel was advised of the same on September 1, 2020. *See* D.E. 148-6 at 1 ("[w]e cited to, and are aware of, no documents or agreements in which my clients accepted the jurisdiction of this court."). Accordingly, there are no documents to produce and Plaintiffs' allegations that the Spanish Defendants are maliciously withholding the existence of this non-existent document is a naked attempt to mislead the Court.

Messrs. Escandón and Uriarte have already provided a full and complete chronology of their contacts with Brooks and Andueza in their August 20, 2020 Declarations. Uriarte Decl. ¶¶ 9-25; Escandón Decl. ¶¶ 9-20. Contrary to Plaintiffs' counsel's baseless assertions, Brooks and Andueza approached the Spanish Defendants in Spain, proposed an investment in the Pellet Plant Acquisition in Wisconsin, and negotiated the amount of the investment in Spain. *Id.* Messrs. Escandón and Uriarte, and Urincha have already affirmed that they have no equity or other financial interest in the Pellet Plant, Cypress, Convergen Energy, WI LLC, or Niantic; likewise as to Chipper except it may have an equity interest in Niantic if its shares are ever issued. Uriarte Reply Decl. ¶¶ 3-5, 11-13; Escandón Reply Decl. ¶¶ 3-5, 11-13. Messrs. Escandón and Uriarte have also testified as to Chipper's and Urincha's ownership, that no Spanish Defendant lent any funds to Cypress, that neither Mr. Escandón nor Mr. Uriarte personally exercise control over Chipper, that no Spanish Defendant engaged Clemente Mueller, P.A. or any other legal counsel in connection with Chipper's investment in the Pellet Plant Acquisition, that the funds Chipper used for the investment came from its shareholder, Numala Invest, SL, and that it paid back those funds approximately six months later in August 2020. Uriarte Reply Decl. ¶¶ 8-14, 17, 18; Escandón Reply Decl. ¶¶ 8-14, 17, 19, 20. All of these facts are contrary to the false assertions made by Plaintiffs' counsel.

Second, many of Plaintiffs' requests seek discovery on "factual allegations [that are not] even asserted in the Complaint." *Maldonado*, 99 F. Supp. 2d at 240. Plaintiffs did not plead <u>any theory of jurisdiction</u>, and the allegations in the Complaint are entirely conclusory. *See, e.g.* D.E. 1 ¶ 25 (explaining that the Court has personal jurisdiction by virtue of "extensive contacts" with Brooks and wiring funds to New York). As such, they cannot now request discovery on whether Plaintiffs engage in international commerce, the content of their communications with Brooks, or whether

they entered into a promissory note in a naked attempt to satisfy their unpled jurisdictional theory. *See, e.g. Maldonado*, 99 F. Supp. 2d at 240 (denying jurisdictional discovery on whether defendants engaged in international or interstate commerce because plaintiff had failed to plead any factual allegations to support that claim in the complaint); *SPV Osus Ltd. v. UniCredit Bank Austria*, No. 18-CV-3497(AJN), 2019 WL 1438163, at *12 (S.D.N.Y. Mar. 30, 2019) ("To warrant jurisdictional discovery, a 'plaintiff must make a 'sufficient start' toward establishing jurisdiction[.]' . . . Therefore, if Plaintiff's allegations are too conclusory, nonspecific, or otherwise inadequate, they will 'not merit jurisdiction-related discovery.'") (quoting *Doe v. Delaware State Police*, 939 F. Supp. 2d 313, 333 n.11 (S.D.N.Y. 2013)) (other citations omitted).

Moreover, Plaintiffs do not and cannot explain how their additional discovery requests would fill in the gaps of their unpled jurisdictional theories. Resp. at 7-8. Indeed, the only rationale Plaintiffs provide for this discovery is a single conclusory sentence stating that discovering the scope of Plaintiffs' contacts with Brooks will "speak to the Spanish Defendants' intentional conduct directed at Plaintiffs in New York." *Id.* at 8; *Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*, 331 F. Supp. 3d 130, 147 n.3 (S.D.N.Y. 2018) (explaining that a court will not grant jurisdictional discovery if a plaintiff "<u>has made no indication of a theory on which personal jurisdiction would be proper</u> . . . <u>nor explained how discovery would permit it to support any such theory if it did exist</u> . . . .") (emphasis added).

Finally, the unrebutted facts in the Reply Declarations of Messrs. Escandón and Uriarte establish that the Spanish Defendants: (i) do not derive substantial revenue from international commerce; (ii) could not reasonably foresee that Chipper's investment in the sale of a Wisconsin Pellet Plant to a Delaware entity through a contract governed by Wisconsin law – which was negotiated entirely in Spain – would have an impact in New York; (iii) have no interest in the

Pellet Plant; and (iv) entered into no promissory note, guarantee or other agreement in connection with Chipper's investment in the Pellet Plant Acquisition. Uriarte Reply Decl. ¶¶ 2-7, 11-13, 16; Escandón Reply Decl. ¶¶ 2-7, 11-13, 18.

Accordingly, jurisdictional discovery is not warranted because "[w]hatever speculations or hopes plaintiff[s] may have that further connections to New York will come to light in discovery, plaintiff has not provided sufficient facts to establish the jurisdiction that is a prerequisite to any such discovery." *Rosenberg v. PK Graphics,* No. 03 Civ. 6655(NRB), 2004 WL 1057621, at *1 (S.D.N.Y. May 10, 2004) (emphasis added). Plaintiffs are not entitled to utilize discovery to make their case for them when they have not met the threshold requirement of pleading a factually specific basis for personal jurisdiction over each of the Spanish Defendants. *Yash Raj Films (USA) Inc. v. Dishant.com LLC*, No. 08 Civ. 2715, 2009 WL 4891764 at 11 (E.D.N.Y. Dec. 15, 2009) (denying plaintiff's request for jurisdictional discovery as it would not cure the fatal deficiencies in plaintiff's jurisdictional pleading); *SPV Osus*, 2019 WL 1438163, at *12 (denying jurisdictional discovery because "Plaintiff does not point to any particular facts that it would hope to discover that would permit this Court to exercise jurisdiction. The most Plaintiff does is imply . . . that discovery is appropriate as it might allow Plaintiff to gauge the extent of parent companies' control over subsidiaries, without stating . . . how these would be sufficient to allow for the exercise of personal jurisdiction . . . Plaintiff does not advance any theory of jurisdiction . . . Plaintiff has therefore neither made a sufficient start toward establishing jurisdiction, nor sufficiently indicated how discovery could remedy the problems identified by the Court.") (emphasis added).

### C.  The Court Does Not Have Personal Jurisdiction Under CPLR § 302(a)(3)(ii)

Only in their Response do Plaintiffs finally identify a basis for jurisdiction over any of the Spanish Defendants, the commission of a tortious act outside the state causing injury in the state

when the tortfeasor should expect the act to have consequences in New York and he or she derives substantial revenue from interstate or international commerce under CPLR § 302(a)(3)(ii).[2] As explained in the Memorandum, the Complaint fails to adequately allege the elements of personal jurisdiction under this, or any other, jurisdictional theory.

### 1. Plaintiffs' Claims Do Not Arise From The Spanish Defendants' Tortious Act Committed Outside New York

Plaintiffs assert that they have pled a "colorable claim" that the Spanish Defendants committed a tortious act outside the state, namely aiding and abetting Brooks' fraud and breaches of fiduciary duty by: agreeing to provide funds for the investment while "having full knowledge that Brooks was Plaintiffs' employee and was himself investing in the deal – and thus was secretly and fraudulently on both sides of the acquisition." Resp. at 11. But as discussed at length in the Memorandum, the Complaint merely contains conclusory allegations that the Spanish Defendants "knew of Brooks' role and responsibilities at the company . . . [and] enabled and participated in Brooks' fraudulent scheme." D.E. 1 ¶ 83. These conclusory assertions do not rise to the level of a colorable cause of action. *See* Memo. at 42-52. Plaintiffs have similarly failed to explain how their claims arise from Chipper's investment in the Pellet Plant Acquisition or wire transfer; the only explanation they offer is that: "Brooks could not have perpetuated the fraud without funding from the Spanish Investors." *Id.* ¶ 77; *see Regenlab USA LLC v. Estar Techs. Ltd.*, No. 16-CV-08771 (ALC), 2017 WL 3601304, at *4 (S.D.N.Y. Aug. 17, 2017) (explaining that "conclusory allegation[s] will not suffice to provide a 'colorable basis' for jurisdiction."). In fact, Chipper is only one of multiple investors and Plaintiffs' allegation that Chipper's $500,000 wire transfer was

---

[2] Ironically, Plaintiffs make much of the fact that the Spanish Defendants' arguments relating to other bases for jurisdiction, namely § 302(a)(1), are inapplicable, but neglect to mention that their woefully deficient pleadings forced the Spanish Defendants to speculate as to Plaintiffs' basis for jurisdiction. Moreover, Plaintiffs do not contest that the Spanish Defendants are not subject to jurisdiction under § 302(a)(1).

somehow crucial is simply not credible given that the consideration for the Pellet Plant Acquisition was $5.5 million. Acquisition Agreement at 2.

### 2. The Spanish Defendants Could Not Have Expected Consequences in New York

In the Memorandum, the Spanish Defendants explained that they could not have reasonably expected their investment in the sale of a Wisconsin Pellet Plant to a Delaware entity that they negotiated entirely in Spain to have consequences in New York. Memo. at 28-29. In Response, Plaintiffs seek to recharacterize the investment as "engaging in intentionally tortious conduct towards a New York-based party" and assert that the Spanish Defendants should have expected their investment to have consequences in New York because they "knew" Brooks and Andueza were New York parties and "knew" the fraud was being perpetrated in New York. Resp. at 13-17. In support, Plaintiffs rely on eight factual assertions, which are either conclusory, inadmissible speculative statements from Andueza about the Spanish Defendants' knowledge, tangential and irrelevant purported connections to New York, or connections unilaterally initiated by Plaintiffs. Tellingly, Plaintiffs analogize to no caselaw where similar facts were found to satisfy this element of § 302(a)(3)(ii) and the scant authority they provide is easily distinguished.

First, Plaintiffs fail to explain how the conduct of any of the Spanish Defendants constitutes "intentionally tortious conduct targeting Plaintiffs in New York," and fail to identify the other "facts already in the record [that] demonstrate intentional conduct directed towards New York." Resp. at 14. Nowhere do Plaintiffs provide any factual allegations that any of the Spanish Defendants intentionally sent email communications or funds to Brooks to encourage him to make misrepresentations and breach his duties to Convergen. *See Madison*, 2016 WL 4484251, at *7 (holding defendants could not have anticipated consequences in New York from foreign investment based on telephone calls and meetings in New York where "Plaintiff has not offered

any plausible connection between these alleged New York contacts, on one hand, and events allegedly giving rise to its claims, on the other hand."). Unlike the parties in the precedent to which Plaintiffs cite, none of the Spanish Defendants engaged in intentionally tortious conduct targeting Plaintiffs in New York: (i) none of them intentionally blocked Plaintiffs' registration of a trademark in New York, *Lewis v. Madej*, 2015 WL 6442255, at *4 (S.D.N.Y. Oct. 23, 2015), (ii) none of them made any misrepresentations to Plaintiffs in New York, *Related Companies, L.P.*, 2017 WL 6507759, at *5; *Palace Exploration. Company v. Petroleum Development Company*, 41 F. Supp. 2d 427 (S.D.N.Y. 1998), (iii) none of them intentionally engaged in fraudulent copper trading activities in New York to manipulate the price of copper futures in New York, *In re Sumitomo Copper Litig.*, 120 F. Supp. 2d 328, 333 (S.D.N.Y. 2000), and (iv) none of them intentionally failed to pay for an engagement agreement that was executed and negotiated in New York. *Nat'l Westminster Bank PLC v. Ret. Care Assocs., Inc.*, 1999 WL 239677, at *3 (S.D.N.Y. Apr. 23, 1999).

Contrary to Plaintiffs' assertions, the admissible factual record indicates that each of the Spanish Defendants' only contacts with New York were limited to responding to emails unilaterally initiated by Brooks discussing an investment in an entirely foreign acquisition and Chipper's transmission of funds to Clemente Mueller, P.A. in New Jersey from Spain through a wire transfer that was incidentally routed through New York by BBVA. As explained in the Memorandum and the August 20, 2020 Declarations of Messrs. Escandón and Uriarte, none of the Spanish Defendants knew that Brooks was engaged in a fraudulent scheme, and their communications with Brooks, along with Chipper's wire transfer, reflect a good faith negotiation in Spain of an investment in a Wisconsin transaction. Uriarte Decl. ¶¶ 10, 11, 14-16 21-23, 31;

Escandón Decl. ¶¶ 9, 12, 17-19, 27. Plaintiffs' Response provides no detailed factual assertions, or admissible factual assertions, to the contrary.

Moreover, Plaintiffs' unilateral contacts with the Spanish Defendants from New York do not constitute intentionally tortious conduct by the Spanish Defendants directed at New York. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (explaining that due process "ensures that a defendant will not be haled into a jurisdiction solely as a result of the unilateral activity of another party or a third person); *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) ("[T]he relationship must arise out of contacts that the defendant *himself* creates with the forum State . . . not the defendant's contacts with persons who reside there."). Nor do Plaintiffs' unilateral contacts with New York indicate that the Spanish Defendants should have expected Chipper's investment in the Wisconsin Pellet Plant, negotiated in Spain, to have <u>direct consequences</u> in New York. *Madison*, 2016 WL 4484251, at *6 ("[T]he New York Court of Appeals has ruled that the nonresident tortfeasor must have expected their tortious activity to <u>have a direct consequence</u> in New York. <u>. . . The indirect financial loss resulting from the fact that the injured party resides in New York</u> . . . <u>does not qualify as an expectation of direct consequences.</u>") (emphasis added).

Second, Plaintiffs conveniently fail to mention that this element of § 302(a)(3)(ii) is effectively coterminous with the Due Process Clause's foreseeability requirement and therefore to establish that any of the Spanish Defendants could reasonably expect Chipper's investment to have consequences in New York, they must have each purposefully availed themselves "of the benefits of the laws of New York such that the defendant may reasonably anticipate being haled into New York court . . . ." *Kernan v. Kurz-Hastings, Inc*., 175 F.3d 236, 241 (2d Cir. 1999). As discussed at length in the Memorandum, the Spanish Defendants did not purposefully avail themselves of

17

New York and could not reasonably foresee being haled into New York on the basis of Chipper's investment in an entirely foreign transaction negotiated in Spain. *See* Memo. at 30-33, 35-38.

Third, the conclusory and unsupported statements in Andueza's declaration that the Spanish Defendants "knew" that Brooks and Andueza were New York-based employees, knew that Brooks was on both sides of the transaction and was selling the Pellet Plant below market value, and knew that Brook and Andueza were affiliated are insufficient to establish the foreseeability requirement. Resp at 13-14. As discussed *supra* at pp. 5-6, these statements are not based on Andueza's personal knowledge, and even if they were admissible, they are entirely conclusory and are therefore entitled to no weight. The Spanish Defendants have testified that they had no knowledge of Brooks' fraudulent dealings and Plaintiffs have failed to provide any admissible evidence to the contrary. Escandón Decl. ¶ 27; Uriarte Decl. ¶ 31.

Plaintiffs also fail to explain how their assertions lead to the conclusion that each of the Spanish Defendants could reasonably anticipate consequences in New York given the overwhelmingly foreign nature of the transactions and parties at issue. Specifically, Plaintiffs fail to explain how: (i) Brooks' initiated contact with the Spanish Defendants through Andueza in Spain while Brooks happened to be in New York; (ii) Chipper's wire transfer to New Jersey, incidentally routed through New York by BBVA; or (iii) the closing that allegedly took place in New York would lead to a conclusion that each of the Spanish Defendants could reasonably have expected their negotiations in Spain regarding Chipper's investment (originating from Spain to New Jersey) in the sale of a Wisconsin Pellet Plant to a Delaware Entity through a contract governed by Delaware law to have a tortious effect in New York. *See* Memo. at 35-38; *In re Sledziejowski,* No. 13-22050 (RDD), 2016 WL 6155929, at *5 (Bankr. S.D.N.Y. Oct. 21, 2016), at *5 (noting "the overwhelmingly foreign nature of the transactions at issue" and holding

defendants could not reasonably anticipate suit in New York); *Davidson Extrusions, Inc. v. Touche Ross & Co.*, 131 A.D.2d 421, 423 (1987) (English Defendant could not expect breach of contract and related misrepresentations tortious activity relating to sale of factory in Cyprus to have an effect in New York even though buyer was New York party and Defendant advertised the sale in national publication and received overseas telephone calls from buyer in New York); *Briley v. Blackford*, No. 89 CIV. 8365 (PNL), 1990 WL 124341, at *9 (S.D.N.Y. Aug. 21, 1990) (holding no foreseeable consequences in New York based solely upon the plaintiff's domicile in the state).

Recognizing their shortcomings, Plaintiffs' attempt to argue that consequences in New York were apparent because New York was at the center of the allegedly fraudulent transaction based only upon Brooks' and Convergen's New York domicile and that allegedly Brooks "hatched the scheme" in New York. These arguments are similarly unavailing; Plaintiffs' unilateral connections to New York are not relevant in determining whether the Spanish Defendants' could anticipate consequences in New York. *See DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 420 (S.D.N.Y. 2010) (holding center of gravity of transaction was not New York even though Plaintiffs were New York parties because performance was in Argentina and counterparties were located in Argentina); Memo. at 16-21 (explaining that the center of gravity of this action is not New York because, except for two Plaintiffs and Brooks, every other party to the action is not a New York citizen or entity, every transaction at issue involves assets and parties in Wisconsin, Delaware, and Michigan, and is governed by the laws of those states, and the Spanish Defendants have no New York presence whatsoever, and collecting cases); *Mortg. Funding Corp. v. Boyer Lake Pointe, LC*, 379 F.Supp.2d 282, 287–88 (E.D.N.Y.2005) ("Even though the Plaintiff may have expended time, energy and resources in New York . . . carrying out [its] obligations under the alleged contract, the Plaintiff's business interactions with New York are not at issue when

assessing personal jurisdiction. Rather, the Court must evaluate the Defendants' activities and conduct [in New York].").

Moreover, Plaintiffs' attempt to cure their group pleading deficiencies by arguing that "Uriarte, Escandón and Urincha are intimately related to and in fact control Chipper" based on "Spanish public records," and therefore Chipper's wire transfer to New Jersey can be imputed onto the remaining Spanish Defendants is also unavailing. Resp. at 11, 16. First, even if the wire transfer could be imputed to all Spanish Defendants, Plaintiffs do not explain how a wire transfer to New Jersey is relevant to the foreseeability of consequences in New York. Second, Plaintiffs provide no factual support for their contention that Uriarte, Urincha, and Escandón control Chipper and their "general allegation that an officer controls a corporation is not sufficient to establish personal jurisdiction." *Pilates, Inc. v. Current Concepts Kenneth Endelman*, No. 96 CIV. 0043 (MGC), 1996 WL 599654, at *3 (S.D.N.Y. Oct. 18, 1996); *Kinetic Instruments, Inc. v. Lares,* 802 F.Supp. 976, 982 (S.D.N.Y.1992) (explaining that allegation that officer sold infringing product "through a corporation which he controls" was insufficient). Third, as explained in their August 20, 2020 Declarations and the Reply Declarations, Messrs. Uriarte and Escandón do not have a direct interest in, nor do they control, Chipper, and its corporate formalities are observed. Uriarte Reply Decl. ¶¶ 3, 10, 13, 14; Escandón Reply Decl. ¶¶ 8, 10, 14

Finally, Plaintiffs deliberately misrepresent that "[t]he Spanish Defendants agreed to invest in connection with the purchase of the pellet plant based on guarantees by Brooks, which called for New York jurisdiction." Resp at 14 (citing Gold Decl. ¶¶ 3-6, 8). The cited portions of Gold's declaration merely assert that unrelated third parties Elmerina Brooks and Javier Ferraz entered into guarantees and promissory notes signed by Brooks. Gold Decl. 3-6, 8. No evidence exists to support the contention that any of the Spanish Defendants relied on a guarantee by Brooks, and as

provided in the Reply Declarations, and stated directly to Plaintiffs' counsel via email, none of the Spanish Defendants entered into or relied upon any guarantee agreement in connection with Chipper's investment in the Pellet Plant Acquisition. Plaintiffs' representation to the contrary is a baseless and sanctionable falsehood and has no bearing on whether any of the Spanish Defendants could anticipate any consequences in New York from Chipper's investment in the Pellet Plant Acquisition.

### 3. The Spanish Defendants Do Not Derive Substantial Revenue From International Commerce

Plaintiffs assert that the Spanish Defendants derive substantial revenue from international commerce because: (1) Chipper invested $500,000 in the Pellet Plant Acquisition; (2) Mr. Uriarte, through Urincha invested over $2 million in a United Kingdom shipping investment; and (3) Andueza asserts that Mr. Uriarte is a sophisticated international businessman. Resp. at 17-19. None of these assertions establish that any of the Spanish Defendants derive substantial revenue from international commerce. Nor are any of these assertions sufficient to rebut the sworn testimony of Messrs. Escandón and Uriarte to the contrary.

First, Plaintiffs make no allegations as to Mr. Escandón, apparently conceding that he does not derive any revenue from international commerce. Second, the Complaint does not allege that any of the Spanish Defendants' receive any revenue from international commerce. Third, Plaintiffs misrepresent the relevant caselaw. Contrary to their assertions, it is entirely proper to dismiss an action where a plaintiff has failed to establish the substantial revenue prong. *Ronar, Inc. v. Wallace*, 649 F. Supp. 310, 316 (S.D.N.Y. 1986) ("Each of the four elements [of § 302(a)(3)(ii) is <u>essential</u> . . .Thus, if the court finds that plaintiff has failed to make an adequate showing of substantial revenue, it need not reach the first three elements [of § 302(a)(3)(ii).]") (emphasis added); *Trafalgar Capital Corp. v. Oil Producers Equip. Corp.*, 555 F. Supp. 305, 310 (S.D.N.Y.

1983) ("Each element [of § 302(a)(3)(ii)] is essential. Because plaintiff has failed to proffer sufficient evidence that the individual defendants come within the fourth element [substantial international revenue], it is dispositive of the issue."). Indeed, Plaintiffs themselves explain that in *Digital Lab Sols., LLC v. Stickler*, 2007 WL 700821 (S.D.N.Y. Mar. 7, 2007), "the exercise of jurisdiction was proper under CPLR 302(a)(3)(ii) <u>on all but the 'substantial revenue' factor</u>." Resp. at 17 (citing *id.*) (emphasis added).

In reviewing whether a non-domiciliary derives "substantial revenue" from international commerce, "[a]mong the most important facts of each case are the overall nature of the defendant's business and the extent to which he can fairly be expected to defend lawsuits in foreign forums." *Digital Lab Sols., LLC*, 2007 WL 700821, at *4. The "[international] commerce prong of CPLR 302(a)(3)(ii) . . . require[es] a showing that defendant was engaged in *extensive* business activities on an interstate or international level." *Ingraham v. Carroll*, 90 N.Y.2d 592, 599, 687 N.E.2d 1293, 1296 (1997) (emphasis in original). As discussed in the Memorandum, and as stated in Messrs. Escandón and Uriarte's August 20, 2020 Declarations and the Reply Declarations, none of the Spanish Defendants derive substantial revenue from international commerce, they are primarily engaged in local investment in Spain, and the investment in the Pellet Plant Acquisition was Chipper's first and only investment in the United States. Uriarte Decl. ¶ 5, 36-37. Escandón Decl. ¶ 6, 32-34; Uriarte Reply Decl. ¶ 2; Escandón Reply Decl. ¶ 2; *see Digital Lab Sols., LLC*, 2007 WL 700821, at *4 ("These defendants do not regularly do business outside of California. Their business is local in nature. RecCenter consists of one photographic studio in Los Angeles, and Stickler resides in Los Angeles. Defendants did not solicit business outside of California. The failed Operating Agreement with plaintiff was defendants' only venture into interstate commerce, and defendants did not gain substantial revenue from it.").

Further, Urincha's $2 million investment in an unrelated shipping investment and Chipper's $500,000 investment in the Pellet Plant Acquisition, which Plaintiffs argue are indicative of "substantial revenue" from international commerce are not even revenue, they are capital expenditures and none of the Spanish Defendants received anything in return for Chipper's investment in the Pellet Plant Acquisition. Uriarte Reply Decl. ¶ 16; Escandón Reply Decl. ¶ 18; *see Digital Lab Sols., LLC*, 2007 WL 700821, at *4 (explaining that $10,000 law firm bill was a debt and could not be viewed as revenue and that investment in failed venture in California produced no revenue and could not be considered substantial international revenue). Finally, as with the other allegations in their Complaint, Plaintiffs fail to adequately allege that *each* Spanish Defendant derives substantial revenue from international commerce in the Complaint, and even if Chipper or Urincha received substantial revenue from international commerce (they do not) it would not be attributable to Messrs. Escandón and Uriarte as a matter of New York Law. *See Bulk Oil (USA) Inc. v. Sun Oil Trading Co.,* 584 F. Supp. 36, 41 (S.D.N.Y. 1983) ("[T]his court decline[s] to attribute revenue derived by a corporation for its interstate commerce to its sole shareholder for section 302(a)(3)(ii) purposes . . . [plaintiffs] are incorrect in reasoning that the revenue derived by Louran is automatically attributable to its sole shareholder defendant Norman . . . Jurisdiction over Louran and not over defendant Norman as an individual could be obtained by demonstrating that Louran received substantial revenues from interstate commerce.") (quoting *Lehigh Valley Industries v. Birenbaum,* 389 F.Supp. 798 (S.D.N.Y.), *aff'd,* 527 F.2d 87 (1975)).

### D.  The Exercise of Personal Jurisdiction Over The Spanish Defendants Does Not Comport With Due Process

#### 1. The Spanish Defendants Do Not Have Minimum Contacts With New York

23

Plaintiffs do not address any of the arguments or points of law in the Memorandum concerning each of the Spanish Defendants' lack of Constitutional minimum contacts with New York. Instead, Plaintiffs again rely on conclusory assertions that the Spanish Defendants engaged in unspecified "intentional tortious activity" "which they reasonably should have expected to have consequences in New York, and which readily demonstrate their 'minimum contacts" with New York" Resp. at 19-20. As discussed *supra* at pp. 15-16, Plaintiffs fail to specifically identify any intentionally tortious conduct directed by any of the Spanish Defendants at Plaintiffs in New York, and the precedent upon which Plaintiffs rely is strikingly inapposite.

In *Calder v. Jones*, 465 U.S. 783, 791 (1984), the Supreme Court held that California had personal jurisdiction over a Florida newspaper in a libel action based on the newspaper's intentional publication of a libelous story concerning the California plaintiff because "California is the focal point both of the story and the harm suffered." *Id.* at 789. Here, the "focal point" of the action based on the parties and the underlying contracts is Wisconsin or perhaps Delaware, not New York. In *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 173 (2d Cir. 2013), the Second Circuit expressly held that the *Calder* "effects test" did not apply. In fact, *Licci* supports the Spanish Defendants' position. There, the court explained that in *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 676 (2d Cir.2013), and related cases, personal jurisdiction was found not to comport with due process where Saudi princes and certain banks had provided funding to Muslim charities that foreseeably funded al Qaeda and maintained bank accounts for al Qaeda members because although the consequences may have been foreseeable, "foreseeability is not the standard for recognizing personal jurisdiction" and the funding and support of al Qaeda was not conduct "expressly aimed" at residents of the United States. *Id.* The same is true here. Even if the Spanish Defendants could possibly have foreseen some injury in New York from their

investment because Libra and Convergen were New York parties (they did not and could not), they did not expressly aim any intentionally tortious conduct at Plaintiffs in New York and Plaintiffs have failed to show otherwise. *See Fantis Foods, Inc. v. Standard Importing Co*., 49 N.Y.2d 317, 326, 402 N.E.2d 122 (1980) ("[CPLR § 302(a)(3)] jurisdiction . . . must be based upon a more direct injury within the State and a closer expectation of consequences within the State than the indirect financial loss resulting from the fact that the injured person resides or is domiciled there."); *Madison*, 2016 WL 4484251, at *6 (holding Swiss defendants who negotiated and executed contract abroad did not intentionally direct conduct at New York despite conclusory affidavit asserting that plaintiff had numerous meetings and calls with Defendants from New York).

Plaintiffs also argue that the actions of the Spanish Defendants' "co-conspirators in New York" are attributable to them, such that the Spanish Defendants purposefully availed themselves of New York through the co-conspirators. The Complaint, however, alleges no such conspiracy. Moreover, Plaintiffs again fail to explain what specific actions of these purported co-conspirators constitutes purposeful availment of New York, and how any such action could be attributable to any of the Spanish Defendants. More fundamentally, Plaintiffs either do not understand or deliberately misrepresent New York law on this issue. Plaintiffs do not allege any conspiracy claims in their Complaint, nor do they allege that Brooks, Merle, Niantic, or any other alleged tortfeasor was an agent of any of the Spanish Defendants and thus their cited precedent does not support their assertions. *See Maersk, Inc. v. Neewra, Inc.*, 554 F. Supp. 2d 424, 445 (S.D.N.Y. 2008) (explaining that "[t]he New York activities of a co-conspirator may also be imputed to an out-of-state tortfeasor for jurisdictional purposes under an agency rationale" and that tortfeasor's son and nephew were acting as tortfeasor's authorized agent in complicated "international shipping

fraud syndicate") (emphasis added); *Glob. Intellicom, Inc. v. Thomson Kernaghan & Co.*, No. 99 CIV 342 (DLC), 1999 WL 544708, at *19 (S.D.N.Y. July 27, 1999) (holding that Canadian defendant had minimum contacts because he was an officer of conspirator corporation, expressly signed relevant agreements as an agent of that corporation, and was a key member in the alleged conspiracy to short sell and depress stock prices of Plaintiff); *In re Sumitomo Copper Litig.*, 120 F. Supp. 2d at 342 (explaining that the exercise of jurisdiction over defendants who engaged in international conspiracy to defraud the New York copper market did not violate due process because they intentionally sought to defraud a New York mercantile exchange).[3]

## 2. An Exercise of Personal Jurisdiction Over The Spanish Defendants Would Not Be Reasonable

Plaintiffs misstate the standard for reasonableness under the Due Process clause. Since Plaintiffs have failed to make a threshold showing of minimum contacts, the Spanish Defendants' burden in demonstrating reasonableness is <u>minimal</u>. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569 (2d Cir. 1996) ("[T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant needs to show in terms of unreasonableness to defeat jurisdiction.").

As to the first reasonableness prong, other than proclaiming it to be the case, Plaintiffs provide no evidence that any of the Spanish Defendants are international executives or businesses that could easily travel to New York for litigation. Further, as explained in the Memorandum and contrary to their assertions, Plaintiffs' burden of litigating in an inconvenient forum does not

---

[3] Throughout the Response, Plaintiffs attempt to "distinguish" the Spanish Defendants' caselaw in footnotes. But they do not actually analyze how the facts or law are distinct from the instant action. Instead, they merely reiterate the holding of the case and assert in conclusory fashion that the case is inapposite or "unlike here." *See, e.g.* Resp. at 21 ("unlike here, defendant's tortious conduct was directed at Italy, not New York, by defendant's attempt to 'corrupt two arbitrations in Milan that applied Italian law to facts relating to the Italian medical malpractice insurance market.") (citing *AmTrust Fin. Servs., Inc. v. Lacchini*, 260 F. Supp. 3d 316, 333 (S.D.N.Y. 2017)).

outweigh the Spanish Defendants' burden because Plaintiffs are all affiliated corporate entities located in different states who could very easily coordinate their actions in any of those forums. As the Supreme Court has explained: the "unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction . . . ." *Asahi Metal Indus. Co. v. Superior Court of California*, *Solano Cty*., 480 U.S. 102, 114 (1987). Moreover, while the "conveniences of modern communication and transportation" may reduce the burden somewhat, it does not remove the burden of litigating in a foreign court, particularly during a global pandemic. Indeed, the Spanish Defendants would need to review ever-shifting quarantine requirements, travel restrictions, and hire Spanish-language translators to effectively litigate in their non-native language. *See Mega Tech Int'l Corp. v. Al-Saghyir Establishment,* No. 96 CIV 8711 LBS, 1999 WL 269896, at *6 (S.D.N.Y. May 3, 1999), on reconsideration, No. 96 CIV. 8711 (LBS), 1999 WL 314179 (S.D.N.Y. May 18, 1999) (noting that despite the "conveniences of modern communication and transportation," it would still be both costly and cumbersome for Saudi Arabian defendant to litigate in New York).

Second, Plaintiffs fail to adequately explain how New York has a strong interest in the resolution of this case. Plaintiffs do not address the fact that two of the Plaintiffs are not New York parties, that the relevant contracts concern foreign assets and are governed by Delaware and Wisconsin Law. Moreover, Plaintiffs' conclusory assertion that the Spanish Defendants' precedent is inapposite is false. *Metro. Life Ins.* primarily based its holding that Vermont had no interest in the action because, like here, the relevant actions took place outside the forum state. 84 F.3d at 574. Similarly, in *Dix v. Peters*, 374 F. Supp. 3d 213, 227 (N.D.N.Y. 2019), the court held that New York had little interest in adjudicating the dispute because, like here, the contract was formed

out of state and the plaintiff, like every Plaintiff except Libra and Convergen, was resident in another more convenient forum.

Third, Plaintiffs fail to address the Memorandum's arguments that they do not have uniform interests in obtaining convenient relief in New York because only two of Plaintiffs are New York residents, Plaintiffs could easily litigate in Michigan or Delaware because they are a conglomerate that can coordinate actions, and that New York would be an inconvenient forum given that the contracts at issue involve foreign law and enforcing any judgment against the numerous non-New York parties would require further enforcement litigation.

Fourth, Plaintiffs ignore that by their own admission, much of the documentary evidence and witnesses relevant to this action are located in Wisconsin, Florida, Spain, and Michigan, not New York. *See, e.g.* D.E 1 ¶¶ 40 (describing that Merle sent a fraudulent letter of intent via his Delaware corporation in Florida), 48 (describing the fraudulent purchase of the shredder in Wisconsin), 49 (describing unlawful payments for Hansen's employment at the Power Plant in Michigan).[4]

Finally, Plaintiffs ignore that other jurisdictions have an interest in this matter, responding instead with the conclusory assertion that it "does not present a compelling case why interstate comity concerns would render the exercise of jurisdiction unreasonable." Resp. at 24-25. The numerous other jurisdictions implicated in this matter (Latvia, Wisconsin, Delaware, Michigan, New Jersey, Florida, and Spain) have a strong interest in enforcing their laws, enforcing contracts made in their state, and providing redress for their citizens. This is particularly relevant here where most Plaintiffs are Delaware corporations and the relevant agreements involve Wisconsin and

---

[4] Plaintiffs argue that as a "related action" was transferred to this Court, discovery could easily be coordinated between the actions. But this "related action" is merely a dispute between the Power Plant and Pellet Plant over payment for pellets under the Supply Agreement and is therefore only tangentially related to this action, which revolves around the Acquisition Agreement and Brooks' allegedly fraudulent misrepresentations and duties owed to Convergen.

Michigan property and are governed by Delaware and Wisconsin law. *See Gmurzynska v. Hutton*, 257 F. Supp. 2d 621, 628 (S.D.N.Y. 2003), *aff'd*, 355 F.3d 206 (2d Cir.2004) (explaining that as to the fifth factor "Germany unquestionably has a strong interest in enforcing its own business competition laws with respect to tortious acts allegedly committed in its own country by its own residents.").

### E.  Plaintiffs' Aiding and Abetting Claims Are Not Adequately Pled

#### 1. Plaintiffs Fail to Adequately Plead Fraud with Particularity

Plaintiffs apparently concede that the alleged misrepresentations of Brooks were inadequately plead in the Complaint, D.E. 1 ¶¶ 62-63.  Now, they rely instead on a single factual allegation, not cited in the Complaint's causes of action, asserting that on September 3, 2019, Brooks "reached out" to Convergen's General Counsel to request a non-disclosure agreement for Niantic and represented that Niantic's interest was unsolicited, that Niantic and Riverview were owned by Merle, and failed to disclose his interest in Niantic. D.E. 1 ¶ 33. This statement is also insufficiently particular under Rule 9(b) because there is no indication of what the actual statements were or whether they were made by telephone, email, or post.

#### 2. Plaintiffs Fail To Identify Any Factual Allegations Creating A Strong Inference That Any Of The Spanish Defendants Had Actual Knowledge Of The Alleged Fraud Or Breach Of Fiduciary Duty

Plaintiffs argue that the Complaint adequately pleads that the Spanish Defendants had actual knowledge of Brooks' myriad misrepresentations and breaches of fiduciary duty because it "sets forth the Spanish Defendants' motivation for concealing brooks' double dealing." Resp. at 27. In support, Plaintiffs reiterate their conclusory assertions that the Spanish Defendants had actual knowledge of the fraud because "they were investors buying on the cheap" and that "that the Spanish Investors knew that Brooks was a senior officer of the Company, that he was

overseeing the pellet plant, and that he was a financial stakeholder in the buyer." Resp. at 27 (citing D.E. 1 ¶ 52).[5] Plaintiffs also point out that Uriarte failed to deny that he knew that Brooks was working for both the buyer and the seller in his Declaration, and that in Brooks' recorded confession he "acknowledged the knowing participation of the other defendants." Resp. at 28 (citing D.E. 1 ¶ 5). None of these purported revelations create the requisite strong inference of actual knowledge.

"[W]hile Rule 9(b) permits scienter to be demonstrated by inference, <u>this must not be mistaken for license to base claims of fraud on speculation and conclusory allegations. An ample factual basis must be supplied to support the charges.</u>" *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir.1991) (emphasis added). Plaintiffs' argument puts the cart before the horse; the Spanish Defendants had no motivation to and did not conceal anything because they had no actual knowledge of Brooks' alleged misrepresentations, fiduciary duties, and double dealing.

The Complaint, of course, contains no particularized factual bases to support Plaintiffs' allegations, and Messrs. Escandón and Uriarte have testified in their August 20, 2020 Declarations that the Spanish Defendants had no knowledge of any fraud. Plaintiffs have offered no admissible evidence to rebut that testimony. Escandón Decl. ¶ 27; Uriarte Decl. ¶ 31; *see, e.g.* D.E. 1 ¶ 52 ("The Spanish Investors knew that Brooks was a senior officer of the Company, knew that he was . . . a financial stakeholder in the buyer (Niantic)."). Brooks' purported recorded confession is also not evidence of actual knowledge as it has never been produced and the Complaint merely provides a conclusory statement that Brooks confessed that "the Spanish Investors had funded the fraudulent acquisition of the Pellet Plant." *Id.* A conclusory statement from Brooks that the Spanish

---

[5] Plaintiffs also rely on Andueza's declaration where they argue he "sets forth what the Spanish Defendants knew of the fraud." *Id.* As noted *supra*, Andueza's conclusory statements about the knowledge of third parties are not based on personal knowledge and are not entitled to any weight. *See supra*, pp. 5-6.

Defendants collectively provided funding for the Pellet Plant Acquisition does not constitute particularized factual support creating a strong inference that <u>each</u> individual Spanish Defendant had <u>actual knowledge</u> of Brooks' fiduciary obligations to Convergen, his alleged breach of those duties, and his alleged misrepresentations relating to the sale price of the Pellet Plant and interest in Niantic. *Krys v. Pigott*, 749 F.3d 117, 131 (2d Cir. 2014) (affirming dismissal of aiding and abetting fraud claim under Rule 9(b) because "the allegation that appellees knew[ ] the RTLs did not serve any legitimate business purpose . . . is . . . conclusory."); *JP Morgan Chase Bank v. Winnick*, 406 F. Supp 2d 247, 254 (S.D.N.Y. 2005) (explaining that allegations as to aiding and abetting fraud must "be pled with specificity as to each defendant."); *In re Agape Litig.*, 773 F. Supp. 2d 298, 325 (E.D.N.Y. 2011) (holding no actual knowledge of breach of fiduciary duty arising from investment agreement because "Plaintiffs have not plausibly alleged that [defendant] had knowledge of the <u>precise agreement between [defendant] and the Plaintiffs, and the scope of [defendant's] authority to invest under that agreement</u>.") (emphasis added).

Moreover, Andueza's speculative and conclusory assertions as to the Spanish Defendants' knowledge is not entitled to any weight, even if it is admissible, and does not even mention any particular Spanish Defendant's knowledge of any fiduciary duties. *See generally* Andueza Decl. Moreover, Mr. Uriarte's omission in his Declaration is not evidence creating a strong inference under Rule 9(b) that each individual Spanish Defendant had *actual knowledge* of Brooks' misrepresentations, fiduciary duties to Convergen, and breach of those duties. As noted in the Memorandum, cases with vastly more circumstantial evidence of knowledge of fraud have been held to not provide a "strong inference" of actual knowledge." *In re Agape.*, 773 F. Supp. 2d at 313 ("at most the Plaintiffs allege that [defendant] was aware that [fraud perpetrator] was . . . acting improperly . . . [defendant's] knowledge that [perpetrator] <u>was acting improperly in one capacity</u>

31

does not raise a strong inference that BOA had actual knowledge of the underlying fraudulent scheme.") (emphasis added); *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 293 (2d Cir.2006) ("The plaintiffs allege in detail that the banks knew that Schick engaged in improper conduct that would warrant discipline by the Appellate Division, but those alleged facts do not do not give rise to the 'strong inference,' required by Federal Rule of Civil Procedure 9(b), of actual knowledge of his outright looting of client funds."); *MLSMK Investments Co. v. JP Morgan Chase & Co.*, 737 F.Supp.2d 137, 144 (S.D.N.Y.2010) ("While it may be true that Defendants could have connected the dots to determine that Madoff was committing fraud, Plaintiff offers no facts to support the claim that they actually reached such a conclusion.").

The precedent Plaintiffs cite in support of their argument does not support a contrary conclusion. In *Dandong v. Pinnacle Performance Ltd*., No. 10 CIV. 8086 LBS, 2011 WL 5170293, at *11 (S.D.N.Y. Oct. 31, 2011), the complaint contained "particularized facts" detailing actual knowledge of the fraudulent investments and cited to public statements from the defendant indicating its knowledge of the fraud. The same is true of *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 651 F. Supp. 2d 155, 178 (S.D.N.Y. 2009). There, the complaint contained allegations in "painstaking detail" suggesting actual knowledge of financial fraud including: that rating agencies created new credit-rating models that eased standards for evaluating creditworthiness of certain securities, that defendant received non-public information demonstrating that certain securities ratings were false, and by virtue of their expertise as investment banks knew that the investments contained risky securities that did not deserve high ratings. Here, the Complaint has no such detail. Andueza's baseless assertions do not cure that fatal defect. *See* Memo. at 44-45, 49; *Inspired Capital, LLC v. Conde Nast*, 803 F. App'x 436, 439 (2d Cir. 2020) ("Plaintiffs' allegations that defendants . . . 'knew that [corporate representative] . . .

owed and was breaching his fiduciary duties," <u>are conclusory and cannot save their aiding and abetting breach of a fiduciary duty claim</u>.") (emphasis added).

### 3. Plaintiffs Fail To Adequately Plead "Substantial Assistance."

The Complaint contains no allegations of proximate cause and Plaintiffs barely muster any counterargument in their Response. Plaintiffs merely assert that "[t]he Complaint repeatedly states that the Spanish Defendants assisted the fraud by providing the funds necessary to acquire the pellet plant and maintaining the secrecy of the fraud from Plaintiffs." Resp. at 28 (citing D.E. 1 ¶¶ 17-20, 77).[6] These allegations are entirely conclusory assertions of but-for cause, which is not a sufficiently particularized showing of substantial assistance. *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 201-02 (S.D.N.Y. 2006) (explaining that allegations of "[b]ut-for' causation [are] insufficient; aider and abettor liability requires the injury to be a direct or reasonably foreseeable result of the conduct."); *Casio Computer Co. v. Sayo*, No. 98CV3772 (WK), 2000 WL 1877516, at *16 (S.D.N.Y. Oct. 13, 2000) ("[The] Complaint is deficient in failing to allege . . . factual support to demonstrate how each wire transfer advanced the scheme to defraud. Conclusory allegations that defendants' conduct was fraudulent are inadequate to satisfy the particularity of fraud required by Rule 9(b)."). Accordingly, Plaintiffs have failed to adequately plead their aiding and abetting claims and they should be dismissed in their entirety.

### F.   Plaintiffs Fail To Address Numerous Other Deficiencies In Their Complaint

---

[6] The single case Plaintiffs' cite in support is distinguishable on the facts at issue here. In *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 346 F. Supp. 3d 473, 491 (S.D.N.Y. 2018), the court found that Credit Suisse's knowing contribution to an atypical finance transaction when it "devis[ed] the marketing and financing scheme" and Plaintiffs evidence of Credit Suisse's guaranteed "extraordinary economic motivation to aid in the fraud," and evidence of its employees admitted awareness of problems with devising the deals, were sufficient to constitute substantial assistance. The Spanish Defendants did not devise any scheme and Plaintiffs have provided no evidence that the Spanish Defendants were "guaranteed exorbitant returns."

Finally, Plaintiffs' fail to address numerous other issues that the Spanish Defendants identified in the Memorandum, including that:

- The Complaint fails to adequately plead any jurisdictional theory, Memo. at 9;

- The Complaint improperly groups together all Spanish Defendants and alleges that they engaged in identical conduct rather than individually identifying what contacts each Spanish Defendant has with New York and how each Spanish Defendant is liable for aiding and abetting the alleged fraud and breach of fiduciary duty, Memo. at 11, 15-16;

- The parties in this action and the transactions at issue are overwhelmingly foreign, Memo. at 16-20;

- The Spanish Defendants do not do any business in New York and have never purposefully availed themselves of its laws or the privilege of doing business there, Memo. at 30-32;

- The Spanish Defendants did not sign and were not involved in the negotiation of the Acquisition Agreement or Supply Agreement, Memo. at 18, 35;

- Chipper's wire transfer was directed to Clemente Mueller P.A. in New Jersey and was only incidentally routed through New York by BBVA, Memo. at 14, 21, 37;

- The Complaint does not allege that the Spanish Defendant's contacts with New York are sufficiently related to their injuries as required under the Due Process Clause, Memo. at 33-35; and

- The proposed amended complaint contains nearly identical conclusory assertions as to the Spanish Defendants' involvement in and knowledge of the alleged fraud and breach of fiduciary duty, Memo. at 52 n. 5.

## III.      CONCLUSION

For the foregoing reasons, each of the Spanish Defendants respectfully request that the

Court dismiss all of Plaintiffs' claims against them with prejudice.


Dated: September 11, 2020
New York, NY

                    Respectfully submitted,


                    By:  /s/ Vincent Filardo Jr.

                        Vincent Filardo, Jr.
                        Evan Zatorre

                        KING AND WOOD MALLESONS LLP
                        500 Fifth Avenue, 50th Floor
                        New York, NY 10110
                        Tel.: (347) 926-7570
                        vincent.filardo@us.kwm.com
                        evan.zatorre@us.kwm.com

                        *Attorneys for Defendants Daniel Escandón Garcia, Ramón Uriarte Inchausti, Chipper Invest SCR, S.A., and Urincha, SL*